# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| IN RE: | CASE NUMBER: |
|---|---|
| **THE BABCOCK & WILCOX COMPANY** | 00-10992 |
| DEBTOR | SECTION "B" |

<u>Jointly Administered With</u>

| | |
|---|---|
| DIAMOND POWER INTERNATIONAL, INC. | 00-10993 |
| BABCOCK & WILCOX CONSTRUCTION CO., INC. | 00-10994 |
| AMERICON, INC. | 00-10995 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING
CORE MATTERS AND PROPOSED FINDINGS OF FACT,
CONCLUSIONS OF LAW AND RECOMMENDATIONS TO
THE DISTRICT COURT WITH RESPECT TO NON-CORE MATTERS**

Outline

I.    Introduction
II.   Background
     A. The Debtors
     B. Description of the Plan
III.  The Court has Jurisdiction to Enter Certain Insurance Related Findings
IV.  The Joint Plan Meets the Requirements of §1129
     A. The Plan complies with the applicable provisions of title 11, including the classification of claims under §1122 and the contents of the Plan under §1123
        1. Classification and Treatment
        2. Adequate Means for Implementation
     B. The Plan meets the requirements of §1129(a)(2), (4), and (5)
     C. The Plan meets the requirements of §1129(a)(7)-(10)
     D. The Plan satisfies the requirements of §1129(a)(11)
     E. Cram Down Requirements of §1129(b) have been satisfied
        1. Unfair Discrimination
        2. Fair and Equitable
V.   The Plan has Been Filed in Good Faith, and not by Means Forbidden by Law
     A. The Plan is a result of extensive negotiations and is not a collusive agreement between the Debtors, McDermott and plaintiff's lawyers
     B. The Insurer's Contractual Rights
        1. Anti-Assignment Clauses

    2. Anti-Assignment, Management of Claims, Cooperation and Consent Clauses Preemption Under Section 1123(a)(5).
  C. Payment of Valid Claims
VI. The Plan's Discharge and Injunctive Provisions Satisfy the Requirements of the Bankruptcy Code
  A. Uncontested Matters
  B. Contested Matters
  C. Section 105 Injunction
    1. Identity of Interest
    2. Substantial Contribution
    3. Essential to Reorganization
    4. Acceptance of the Plan by Impacted Class
    5. Substantially Full Payment to Impacted Class
    6. Full Payment of Nonsettling Claimants
VII. Executory Contracts
  A. Insurance Policies
  B. Coverage in Place Agreements
VIII. Apollo Parks Issues
  A. Background Facts
  B. The Plan, as it relates to Apollo/Parks, is Proposed in Good Faith
  C. The Plan does not violate the Price Anderson Act
  D. The Court's jurisdiction to determine insurance related findings
  E. Proposed Findings of Fact and Conclusions of Law that ANI has Forfeited Rights under the Policies, such as the Management of Claims, No Action, and Consent to Settlement Provisions
    1. Breach of Duty to Settle
    2. Breach of Duty to Defend
    3. Denial of Coverage
  F. Reasonable Settlement
IX. Other Objections
  A. Lack of Notice
  B. Objections Specific to Ace Companies
X. Conclusion

I.  **INTRODUCTION.**

This matter came before the court as a hearing on confirmation of the third amended joint plan of reorganization as of June 25, 2003 with technical modifications as of October 1, 2004 proposed by the Debtors[1], the Asbestos Claimants' Committee, the Future Claimants'

---

[1] See title for the names of the four debtors.

to contest claims does not indicate a lack of good faith.

The TDP's are not as stringent as the insurers would like. They are, however, more stringent than the standards employed by the Debtors, and approved by the insurers, prior to bankruptcy. They are also consistent with standards employed by various other courts in the handling of asbestos injury claims under trust procedures.[99] The insurers have not made a showing that the criteria which they want have been accepted by any other bankruptcy court dealing with an asbestos trust. Rather than providing for the payment of "invalid claims," the Plan is the result of a negotiated settlement proposing to pay claimants in a fashion consistent with past practices approved by insurers, and consistent with practices found reasonable by other courts considering the asbestos liabilities of Debtors. The court finds that the Plan and associated documents satisfy the requirements of §1129(a)(3).

## VI. THE PLAN'S DISCHARGE AND INJUNCTIVE PROVISIONS SATISFY THE REQUIREMENTS OF THE BANKRUPTCY CODE.

The Plan provides for the Asbestos PI Channeling Injunction and the Asbestos Insurance Entity Injunction to be issued in connection with its Trusts, under §524 and the Asbestos PI Channeling Injunction and Asbestos Insurance Entity Injunction under §105(a). These injunctions, and the related Plan discharge provisions, satisfy the requirements of the Bankruptcy Code.

Section 524 generally provides for the effects of discharge, and 524(g) provides for an injunction to supplement the injunctive effect of a discharge. The Plan has met all requirements of §524(g).

---

[99] These include the Celotex Trust, Manville Trust, Eagle Pitcher Trust and UNR Trust. Exhibit 169, App. B, 1-12.

-46-

A. <u>Uncontested matters.</u>

The parties do not contest that the Plan meets the requirements of several sections, including §§524(g)(2)(B)(i)(I) - (IV),[100] 524(g)(2)(B)(ii)(II)[101], (IV)(aa),[102] and 524(g)(2)(B)(ii)(V).[103] Other provisions of §524(g) are not disputed, although uncontested facts were not entered in connection with these sections. These include 524(g)(2)(B)(ii)(I), that the debtors will be subject to substantial future demands for payment arising from their asbestos-related activities and (III), that the pursuit of the Asbestos PI Trust Claims outside the Plan will threaten the Plan's purpose to deal equitably with asbestos claims and future demands.

Dr. Peterson and Dr. Florence, experts retained by the ACC and FCR, were recognized by the court as experts in valuation. Dr. Peterson estimated the Debtors' present and future claims. His methodology assumed that, absent evidence to the contrary, future claims would broadly follow historical patterns with respect to: (1) claims against B&W relative to the continuing incidence of asbestos-related cancers in the general population; (2) the ratio of non-malignant to malignant claims, and (3) amounts paid to settle claims for different diseases.[104] His methodology also factored in foreseeable changes in factors affected by non-epidemiological influences, including (1) changes in the propensity to file against B&W, (2) the ratio of non-malignant to malignant disease claims, and (3) the amounts paid to settle cases.

---

[100] Pretrial Order, Uncontested Facts 31, 32, 34, 35.

[101] Pretrial Order, Uncontested Fact 39.

[102] Pretrial Order, Uncontested Facts 39, 40.

[103] Pretrial Order, Uncontested Facts, 13, 38.

[104] Peterson testimony, October 22, 2003; Exhibit 166.

Dr. Peterson testified that if B&W had remained in the tort system, its total present and future asbestos-related liability would range between $7.099 billion and $9.043 billion.[105] Dr. Peterson also estimated the number and value of future claims that would be filed against the Asbestos PI Trust. Under the Plan TDPs, he testified that B&W's asbestos-related liabilities would be between $5.2 billion and $7.8 billion.[106]

Dr. Florence testified that utilizing several scenarios, based upon B&W's historical experience, B&W and its insurers would have faced significant asbestos-related personal injury claims had B&W not filed for bankruptcy: (1) $491 million in 2000; (2) between $793 million and $1.44 billion in 2001; (3) between $1.091 billion and $2.259 billion in 2002, and (4) between $1.39 billion and $3.041 billion in 2003.[107]

The expert testimony of John C. Butler was also offered by the ACC as to when B&W's coverage for its remaining products liability policies would have been exhausted had B&W not filed for bankruptcy. Using the liability scenarios offered by Dr. Petersen and Dr. Florence, Mr. Butler testified that B&W's nearly $1.2 billion in remaining products coverage would have been completely exhausted by the end of the year 2004 if B&W had not filed for bankruptcy.[108]

---

[105] Exhibit 166, at Table 15.

[106] Id., Table 18.

[107] Exhibit 169b.

[108] Exhibit 188.

The court finds that the experts are credible[109], and that Plan Proponents have demonstrated that the Debtors would be subject to substantial future demands for asbestos related claims. The Plan Proponents have also demonstrated to the court's satisfaction that the pursuit of such demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with claims and future demands. The Plan provides a mechanism to channel claims to the trust, have each claim rated in accordance with the TDPs and for claims to be paid in accordance with a proposed schedule. Absent such a mechanism, claims would be paid on a first come, first serve basis, with the likelihood that insurance coverages would be exhausted within a short time, leaving little or nothing to pay later filed claims. Additionally, the Court finds that the Plan meets the requirements of the Code on all uncontested matters relating to the §524(g) injunction.

B. <u>Contested matters</u>.

Certain Insurers have objected that §524(g)(2)(B)(i)(II) requires funding by the contribution of securities and future payments, which the Plan does not clearly do.[110] The Plan provides for the funding of the Asbestos PI Trust by the transfer of, among other things, all of the capital stock of B&W, which will be accomplished by a transfer from BWICO. It follows that if the Trust is the

---

[109] The insurers argue that the testimony of Dr. Peterson and Dr. Florence should not be accepted because this court rejected their testimony in the avoidance action by holding that B&W was not insolvent at the time. *See In re Babcock & Wilcox Co.*, 274 B.R. 230, 254 (Bankr. E.D.La. 2002). This argument has no validity because:
  1) the evaluations were as of a different time and for a different purpose;
  2) only the figures and not the import of their testimony has changed. That is, they felt B&W was insolvent in 1998 because of future claims. Now they testify the enormity of the claims is greater and presumably B&W is even more insolvent.

[110] "Certain Insurers" includes a large group of insurers, including TIG, Mt. McKinley Insurance Company and Federal Insurance Company. B&W contends that this section is uncontested, and that uncontested fact no. 32 covers this provision.

-49-

a third party to be the beneficiary of an injunction, so long as the conditions and requirements of the section are met. The Plan provides for the Debtors and the MII Indemnified Parties to be subject to the protections of the channeling injunction.

Plan Proponents agree that certain of Ace's claims, including claims for indemnity against MII Indemnified Parties and Creole Insurance Co. will be channeled to the Asbestos PI Trust, but assert that this is permitted by §524(g). This court agrees. While it is premature at this point to determine the effect of implementation of the channeling injunction, the relief sought by the Plan is likely within the protection found in §524(g). The Plan provides that the Asbestos PI Channeling Injunction will enjoin Ace from proceeding against MII or the collateral pledged by MII under its agreements with Ace. This is permitted by the terms of §§524(g)(4)(A)(ii), which permits the channeling injunction to bar actions against an identifiable third party directly or indirectly liable for claims against the debtor.[270] MII is such a party as an owner or ultimate parent of the Debtors. Similarly, Creole as the captive insurer of B&W, is a third party that provided insurance to the Debtor or a related party under the section.

## X. CONCLUSION

For the reasons expressed in the foregoing opinion, the Court recommends that the Plan be confirmed. In accordance with Bankruptcy Rule 9033:

> Within 10 days after being served with a copy of the proposed findings of fact and conclusions of law a party may serve and file with the clerk written objections which identify the specific proposed findings or conclusions objected to and state the grounds for such objection. A party may respond to another party's objections within 10 days after being served with a copy thereof. A party objecting to the bankruptcy

---

[270] *In re Combustion*, 295 B.R. 459, 482 (Bankr. D. Del. 2003)("To the extent that [nondebtors] are sued as a result of their prior affiliation with Debtor or other relationship with Debtor as provided in 524(g)(4), the channeling injunction is properly applied to them.").

judge's proposed findings or conclusions shall arrange promptly for the transcription of the record, or such portions of it as all parties may agree upon or the bankruptcy judge deems sufficient, unless the district judge orders otherwise.

The Plan requires that numerous findings of fact be made in connection with confirmation. To the extent that findings are required for confirmation, they are adopted. The Debtors are directed to submit a draft order.

New Orleans, Louisiana, October 8, 2004.

                                                          Jerry A. Brown
                                                         U.S. Bankruptcy Judge