IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------- :
IN RE:                                              :
                                                    :   Chapter 11
USG CORPORATION, *et al.*,                          :
                                                    :   Case Nos. 01-2094 (JKF)
                                                    :   (Jointly Administered)
           Debtors.                                 :
---------------------------------------------------- :
USG CORPORATION, *et al.*,                          :
                                                    :
           Movant                                   :
                                                    :
       v.                                           :
                                                    :
OFFICIAL COMMITTEE OF                               :
ASBESTOS PERSONAL INJURY                            :   Civil Action No. 04-1560 (JFC)
CLAIMANTS, OFFICAL COMMITTEE                        :
OF UNSECURED CREDITORS,                             :
OFFICIAL COMMITTEE OF                               :   Hearing:  June 13, 2005 at 2:00 pm
ASBESTOS PROPOERTY DAMAGE                           :
CLAIMANTS AND LEGAL                                 :
REPRESENTATIVE FOR FUTURE                           :
CLAIMANTS,                                          :
                                                    :
           Respondents.                             :
---------------------------------------------------- :

**JOINT REPLY OF THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS AND THE LEGAL REPRESENTATIVE FOR FUTURE ASBESTOS CLAIMANTS TO DEBTORS' BRIEF REGARDING REQUEST FOR DISCOVERY IN ADVANCE OF HEARING ON ISSUES TO BE CONSIDERED IN <u>ESTIMATION AND IN FURTHER SUPPORT OF THE REQUEST FOR DISCOVERY</u>**

| | |
|---|---|
| Marla Rosoff Eskin (DE No. 2989) | CAPLIN & DRYSDALE, CHARTERED |
| Kathleen Campbell (DE No. 4229) | Elihu Inselbuch |
| CAMPBELL & LEVINE, LLC | 399 Park Avenue |
| 800 N. King Street | New York, NY  10022–4614 |
| Suite 300 | Tel: (212) 319–7125 |
| Wilmington, DE 19801 | Fax: (212) 644-6755 |
| Tel: (302) 426–1900 | |
| Fax: (302) 426-9947 | - and - |

Counsel to the Official Committee of Asbestos
Personal Injury Claimants

{D0044289:1 }

          Peter Van N. Lockwood
Nathan D. Finch
Walter B. Slocombe
Kimberly N. Brown
One Thomas Circle, NW
Washington, DC  20005
Tel: (202) 862–5000
Fax: (202) 429-3301

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
James L. Patton (DE No. 2202)
Sharon Zieg (DE No. 4196)
Sean Greecher (DE No. 4484)
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

Local Counsel to the Legal Representative
for Future Asbestos Claimants

KAYE SCHOLER LLP
Michael J. Crames
Jane W. Parver
Andrew A. Kress
425 Park Avenue
New York, NY 10022
(212) 836-8000

National Counsel to the Legal Representative
for Future Asbestos Claimants

{D0044289:1 }

## INTRODUCTION

The Official Committee of Asbestos Personal Injury Claimants ("ACC") and Dean Trafelet, the Legal Representative for Future Asbestos Claimants ("FCR"), jointly submit this brief regarding the need for and the proper scope of discovery in advance of the hearing regarding the selection of the appropriate methodology to be used to estimate the Debtors' asbestos-related liabilities.

The "estimation methodology" dispute now pending before this Court presents the Court with the need to decide between two sharply contrasting methodologies for estimation. Debtors maintain that "a central issue" between the parties is over whether in estimation, "the Court will consider the merits of the asbestos personal injury claims" of those who advance claims for injuries from exposure to Debtors' asbestos-containing products. Debtors' Brief Regarding Request for Discovery in Advance of Hearing on Issues to be Considered in Estimation ("DB1"). That fundamentally misstates the issue. The ACC and FCR in no way dispute that the estimation that the Court is required to make here should be of the aggregate amount of present and future asbestos personal injury claims against Debtors that are "valid" in that they would have value in the legal system.[1] *Cf. Owens Corning v. Credit Suisse First Boston*, No. 04-00905, slip op. at 4 (D.Del. March 31, 2005) (Fullam, J.) (attached hereto as **Exh. A**) (In estimation "claims are to be

---

[1]   Debtors' insinuation (DB 1-2) that their position was adopted at an earlier stage is simply wrong. Debtors note only that Judge Wolin observed at one point that, when claims are challenged in bankruptcy, "the Court will, within the constraints of the law, reject unsubstantiated claims." DB 1. They neglect to point out that he immediately added that "this Court can do so only within the context of the law binding on it and upon the claims before it. It is basic that federal bankruptcy jurisdiction does not oust state law governing claims on a debtor's estate. . . . An unbroken line of authority holds that state law claims are governed by state law, even after the debtor invokes federal bankruptcy protection. . . . As to the application of federal or state substantive law to the merits of the claims themselves, the Court has no discretion." February 19, 2003 Order at 4-5.

appraised on the basis of what would have been a fair resolution of the claims in the absence of bankruptcy.").

Estimation cannot legitimately be used to change the substantive standards for what are legally cognizable claims under tort law. Nor can it lawfully be used to determine whether particular individuals with certain types of claims will be paid, and if so, how much; that is the function of the trust that – all parties agree – will be set up under Section 524(g) when a court-approved plan of reorganization is finally in place.

## DISCUSSION

I. **The Proper Standard for Estimating Meritorious Claims is What Claims are Compensable Under State Law, of Which the Best Available Measure is Debtors' Experience in the Tort System**

The real "central issue" relevant to the choice of estimation methodology is whether the estimation will seek to determine the aggregate value of the claims according to the standards of the tort law of the several states as it actually exists, or under some brand-new set of drastically more defense-friendly standards that Debtors ask the Court to invent. That the issue is the choice of *standards* by which to estimate aggregate value is the reason that discovery in limited areas is needed before the hearing on estimation methodology.

The position of the ACC and FCR is that the test of the "validity" and "merits" of claims is that set by the tort laws of the various states and that the best available way to apply that test is by consideration of Debtors' own record in cases under those laws. USG has extensive – and expensive – experience in that tort system. It has paid directly and through the Asbestos Claims Facility ("ACF") and the Center for Claims Resolution ("CCR"),[2] of which it was a part, untold

---

[2]  The ACF and CCR were organizations set up by groups of corporations that were subject to asbestos claims. Under agreements among their members, they operated to share the administration of asbestos claims, conduct settlement and litigation on a collective basis, and

amounts to skilled counsel to defend it. It has reviewed claims and rejected tens of thousands of them as insufficient.[3] It has also paid (by judgment or settlement, directly or indirectly through the ACF or CCR) some 220,000 claims at average per-claim costs rising steadily as time went on. No doubt in many of those cases, Debtors' managers and their counsel regretted the outcome, and settled, not because they thought the plaintiffs were unquestionably "right" in some abstract sense, and still less because they believed the plaintiffs should be entitled to anything under whatever standards of liability they would have established if they had had the power to write the rules. Rather, like other defendants, Debtors settled because they realized that, under the law as it stands, the plaintiffs' cases presented real risks of substantial awards of damages. It is no doubt equally true that many plaintiffs and their counsel believed the settlements did not measure the "true" value of their claims in some abstract sense of what they thought fair and just, but were acceptable only because of the risks of trial and the costs of delay.

The point is that, under our legal system, claims have value, not because both sides agree completely on their merits and their value, but because, under existing legal standards, they present to defendants a sufficient practical potential for the plaintiff to be successful – and to the plaintiffs a sufficient risk of failure and delay – to make it advantageous for defendants to offer to settle and for plaintiffs to accept the defendants' offers, rather than either side risking trial.

---

allocate costs of both defense and settlement. The ACF operated from 1985 to 1988; the CCR from 1988 to 2001.

[3]   During the time Debtors were participants in the CCR, this function was carried out by the staff of that organization, the agreement for whose establishment prescribed that the CCR had to require "valid evidence to support each claim against participating producer members, and shall require credible medical evidence in each case prior to making payment to a claimant. [CCR] personnel shall be responsible for obtaining such evidence from each claimant and verifying it." Producer Agreement Concerning Center for Claims Resolution, § IV, at 7-8 (Sept. 28, 1988).

In short, the merits of hosts of asbestos claims against USG have been exhaustively considered in the tort system. It follows that in this asbestos bankruptcy proceeding, as in the many others, Debtors' tort system experience prior to filing is the appropriate base on which the Court can estimate what it is that must be estimated – the approximate aggregate amount of asbestos-related personal injury liabilities that Debtors would have faced had they not filed for Chapter 11 protection but rather remained subject to the tort system.

Estimation, by definition, requires approximating an unknown quantity – here the amount of the pending and future asbestos-related personal injury liability that faced Debtors at the time they filed under Chapter 11. That approximation requires considering some known quantities – here the past history of claims and science-based projections of future diseases. There is a well-established process for that sort of estimation. Over the course of many asbestos bankruptcy proceedings in which estimation has been required, experts have developed, and the courts have applied, a methodology for using the patterns shown by the past experience of a debtor and similarly situated companies – together with recognized scientific information about the likely future incidence of asbestos-related diseases and appropriate adjustments for foreseeable changes in the future – to produce estimates of the value of pending and future claims against the debtor.[4] The ACC and FCR maintain that that methodology should be employed here.

Debtors contend, however, that the tort system in which they operated was fundamentally defective, apparently even maintaining that they were denied the opportunity, required by due

---

4   Extensive argument about the relative merits of the two approaches is premature here, but Debtors' contention that the ACC and FCR would have estimation "rely solely upon certain claims resolution history" (DB 1) is simply wrong. The methodology we advocate does not mechanically extrapolate past events; it uses Debtors' actual history as a base for analysis of what their experience shows about claims against them, and it not only allows for, but requires, that foreseeable trends in the future, *e.g.*, in disease incidence and claims resolution costs, be taken into account.

process, to present defenses.[5] Therefore, they argue, their experience in the tort system and in settling claims prior to their Chapter 11 filing cannot be taken as the guide for estimation. Instead, they propose a complex, multi-stage process. They would have the Court address five substantive propositions about asbestos liability[6] and, on that basis, promulgate a set of

---

[5]   Debtors maintain that "where claims are contested, as in this case, due process guarantees Debtors the opportunity to present a meaningful defense to those claims." DB 1. The ACC and FCR will respond more fully to this point in subsequent briefing on the merits of the choice of method. For present purposes, it is sufficient to note that this argument illustrates why discovery is needed prior to a hearing on estimation methodology. Discovery of Debtors' tort system experience is centrally relevant to the premise of Debtors' due process claim – that Debtors were somehow prevented from advancing in the tort system the substantive positions they would like the Court to consider now. If Debtors believe there is a legal theory that was unavailable to them during the many years in which they resolved cases in the tort system, they have not shared that belief with the Court or the other parties. All the substantive claims on which Debtors now seek this Court's decisions are familiar to all sides of the asbestos controversy. Debtors' defenses based on these positions, and their evaluation of their likely efficacy, are reflected in Debtors' claims resolution and judgment history. The statistical extrapolations from those data used in the estimation will thus take Debtors' defenses into account.

In any event, estimating aggregate asbestos personal injury liabilities pursuant to 11 U.S.C. § 502(c) on the basis of the methodology we propose and that has been used in other, similar cases, rather than by the process Debtors advocate does not violate due process. *See In re Baldwin-United Corp.*, 55 B.R. 885, 898-902 (Bankr. S.D. Ohio 1985). The notion that due process guarantees to Debtors some particularized form of procedure — such as promoting court-legislated mandatory "characteristics" that have no basis in tort law — is unfounded. The Due Process Clause does not guarantee Debtors the right to insist on conducting the estimation according to the precise script that they prefer. The Third Circuit has repeatedly held that "[t]he constitutional requirements of due process are not technical, nor is any particular form of procedure always necessary to provide due process." *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996). By voluntarily seeking bankruptcy protection, Debtors have necessarily accepted the panoply of procedures ordained by Chapter 11, including the requirement that claims be estimated if their liquidation "would unduly delay the administration of the case." 11 U.S.C. § 502(c) (2004).

[6]   The five propositions are (1) that USG sold predominately a chrysotile form of asbestos and that form cannot cause mesothelioma, (2) that asbestos cannot be a contributing factor in lung cancer unless the victim also has diagnosed asbestosis, (3) that asbestos does not contribute to causing any form of cancer other than mesothelioma, (4) that claimants whose lungs have been affected by asbestos but who do not manifest "impairment" as defined by Debtors, *i.e.*, certain degrees of reduced lung function as measured by tests prescribed by Debtors, have no legal claim (or at least none that should be recognized for estimation purposes), and (5) that the nature of certain claimants' occupations are such that it is impossible that their exposure to Debtors' asbestos-containing products could be a contributing factor in their illnesses.

mandatory substantive "characteristics" that claims must have in order to be counted in the estimation (DB 1); the Court would thereafter be asked somehow to scrutinize a sample of the pending claims for the presence of these "characteristics;" and then it would have somehow to project the results of its scrutiny to disallow many, perhaps most, of the pending and future claims.  DB 7-8.

II.     **Discovery Prior to Hearing and Decision on Choice of Estimation Methodology is Needed in Two Areas:  to Probe Debtors' Factual Contentions About Their Tort System History, and to Clarify How Their Unprecedented Estimation System is Proposed to Work**

The ACC and FCR submit that, to permit an orderly and informed presentation to the Court of the information it should have to assist in making this choice between their proposed methodology and that advocated by Debtors, discovery is needed in two respects prior to the hearing on the choice:[7]

- First, the core of Debtors' contention that the Court should use a whole new process for estimation is the assertion that Debtors' tort system experience was not a proper measure of the validity of the claims against them and therefore should not be used as a basis for estimating future claims.  That contention necessarily rests on a series of factual assertions.[8]  The facts at issue include, for example, how, if at all, Debtors were barred

---

[7]     Debtors complain (DB 2) that the ACC and FCR are now seeking pre-hearing discovery "for the first time."  In fact, the position that certain such discovery is necessary has been set forth repeatedly in meet-and-confer discussions and in written correspondence and formally presented in our "decision tree" submission, in accordance with the Court's direction at the December 21, 2004 status conference, that the parties should address whether discovery would be needed prior to a hearing on estimation methodology.

[8]     *E.g.*, "Debtors have settled tens of thousands of asbestos claims for reasons having nothing to do with the merits of those claims," Case Management Statement Re: Asbestos Personal Injury Estimation 14 (Dec. 7, 2004); "[S]ettlements made on Debtors' behalf reflect a business judgment that was most often made without regard to the merits of the cases," Memorandum of Points and Authorities in Support of Debtors' Motion for Case Management Order for Substantive Estimation Hearings 18 (June 21, 2002); "[State trial court] procedures . . .

from presenting the various "scientific" defenses and substantive arguments they want the Court to adopt now; what were the successes and failures when those same defenses and arguments were presented in courts; what were the standards that Debtors' management, counsel, and insurers applied before settling; and to what degree, if any, did Debtors settle claims known to them and their advisers to be bogus, as contrasted to settling those presenting real threats of expensive defeats.  These are all matters of fact, not law; all are presented by Debtors' contentions, and all are matters on which the Court must hear evidence, not merely the unsupported assertions of counsel or quotations from selected press reports and academic articles.  Therefore they are appropriately subjects of discovery.

- Second, despite Debtors' multiple (and varying) submissions over the course of this proceeding and statements in meet-and-confer discussions, many important details of what Debtors actually propose are still obscure.  Most fundamentally, in respect of their "five questions," it is not clear whether (1) Debtors contend that, according to existing legal standards, including *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), their position on these issues must be accepted as a matter of law, *i.e.*, that there is no disputable issue; or (2) they intend to ask the Court to weigh evidence and declare universally applicable substantive rules of liability on what would otherwise be triable issues of fact in particular cases.  For example, it is not clear whether in connection with the "chrysotile defense," they intend to ask the Court, on the one hand, to rule on whether

---

have forced settlement of tens of thousands of non-meritorious claims and forced settlement of other claims at inflated values," Debtors' Informational Brief 13 (June 27, 2001).

there is a valid *Daubert* challenge to *all* possible expert testimony refuting the defense,[9] or, on the other hand, to make a substantive decision on the validity of the defense, after hearing experts (and other relevant evidence on such issues as contamination) from both sides, with that decision then to be applied as a universal rule.[10]

**III.   In the Areas Where Pre-Hearing Discovery is Needed, it Would be Reciprocal, but Until a Methodology is Established by the Court, Full-Scale Discovery on the Issues that Would be Presented Under Both Models Would be Wasteful and Time-Consuming**

Debtors say they "understand that the ACC does not contemplate mutual and complete discovery on these issues." DB 3. That understanding is mistaken. The ACC and the FCR agree that discovery is a two-way street, and if Debtors believe other factual issues are relevant to the *choice* of method, as contrasted to the *application* of a method once chosen, they have been free to say so and propose discovery related to them. They have not done so.[11]

Debtors appear to propose that there either be no discovery at all prior to the Court's decision on how estimation should be done or that there should be discovery on "all medical, scientific, and factual questions relevant to estimation of U.S. Gypsum's liability." DB 4-5.

---

[9]   Moreover, there is a dispute over whether Debtors' supposedly "pure" chrysotile products were in fact contaminated by other forms of asbestos. It is unclear whether Debtors expect only that the Court will determine whether that dispute presents a triable issue of fact, or that it will somehow decide on a once-for-all basis whether all the asbestos products at issue were in fact "pure."

[10]   If Debtors propose anything like the latter option, that is, having the Court promulgate substantive rules barring recovery on what would be legally cognizable claims in the tort system, they will be exposed as proposing, in the guise of estimation, a course of action that would for all practical purposes determine the allowance of individual personal injury claims without giving the individual claimants a right to be heard or have their tort claims considered by a jury in contravention of 28 U.S.C. §§ 157(b)(2)(B), 157(b)(5), and 1411 – or one that would require this Court to conduct thousands upon thousands of jury trials.

[11]   Debtors suggest (DB 5-6) that "claimant discovery" – by which they seem to mean exploration of the work history of individuals with pending claims against them – is somehow relevant to the choice of methodology, yet they insist (DB 1), inconsistently, that their proposals do "not mean that estimation determines the merits of the claims of particular individuals."

This all-or-nothing approach is misconceived. As explained above, a limited number of factual issues are at the heart of the choice-of-methodology question and discovery on them is necessary now. It would be wasteful, however, to conduct – before knowing which methodology will be used – all the discovery that would eventually be necessary under either methodology. In particular, the full-scale factual development of the questions presented by Debtors' "five questions" would be necessary under only Debtors', but not under our proposed estimation methodology. If Debtors' methodological approach were adopted, both sides would have to marshal detailed scientific and technical evidence on the substance of Debtors' "five questions."[12] Assembling the evidence and conducting discovery regarding them would be a vastly expensive and time-consuming effort, and it would be an effort that would turn out to have been entirely unnecessary and irrelevant if, as we urge, the Court directs that estimation is to proceed in the normal manner. Accordingly, discovery should be limited to those issues that are relevant to the choice of methods, with discovery necessary to apply whichever method is chosen deferred until that choice is made.[13]

**IV.    Debtors' Claims Database is Not, Standing Alone, Sufficient as a Factual Basis to Explore Debtors' Allegations About Their Tort System History**

---

[12]    It is equally true that there are issues of fact about projecting Debtors' liability – such as the basis for assumptions about future trends in settlement values or propensities to sue – that could be important under the methodology that we advocate that would (apparently) be treated as irrelevant if Debtors' estimation methodology were adopted, but on which expert evidence would need to be prepared by both sides (with mutual discovery) if our estimation methodology were chosen.

[13]    To the degree that Debtors have formed the impression that the asbestos claimants' representatives are seeking discovery at this stage to support their arguments on the scientific and technical substance of the "five questions," we take this opportunity to make clear that is not our intention. As our opening brief stated, the only pre-hearing discovery sought prior to the methodology decision with respect to the "five questions" is clarification of how Debtors propose to proceed. Accordingly, the discovery we seek would not have to be repeated, as Debtors claim to fear (DB 6) if their methodology were adopted.

Debtors maintain that discovery of their tort system history is unnecessary because the asbestos claimants' representatives "already [have] the *very same database* that Debtors have." DB 6 (emphasis in original). The database to which the ACC and FCR have access however, provides only basic data on the claims, such as the names and residences of claimants, identity of their counsel, the disease and exposure claimed, time of filing and disposition, and status (open, closed without payment, settlement amount, etc.). This data base does provide a solid (though not the exclusive) basis for the application of the methodology we advocate, but it does not provide any significant information relevant to Debtors' claims that Debtors' tort system experience is somehow not a true measure of their tort system liability. The database (obviously) does not, for example, convey any information at all on Debtors' reasons for settlement, much less identify claims that were settled despite Debtors' alleged belief that they were bogus. It is Debtors, not the asbestos claimants' representatives, who maintain that it is necessary to go behind the actual record of claims handling to see the "true" picture. It is nonsense to contend that the very record whose significance Debtors dispute so fundamentally is the only body of factual data about that history that needs to be considered.

V.  **Discovery Concerning Sampling Techniques is Premature, Because it Would be Irrelevant if Debtors' Methodology is Not Chosen, and in Any Event it Would Not be Possible to Explore the Statistical Questions Presented Until Initial Proceedings had Established the Factors for Which the Sample is to be Used**

Debtors propose that each side prepare expert reports on the statistical issues involved in the sampling that would be a part of the latter stages of their proposed process, if it were adopted. DB 7-8. This proposed exchange of statistical expert opinions would, at this point, be premature and wholly abstract.

It is certainly the case that any effort to use sampling would involve difficult statistical as well as legal questions and that, assuming arguendo that the legal obstacles to sampling could be

{D0044289:1} 10

overcome, there would need to be a factual record on how to do sampling in a way that would produce accurate results. However, sampling techniques must be assessed in light of the specific purposes for which the sample is to be used. Sampling would be involved in estimation in this case only if Debtors' methodology were adopted, and then only if the "five questions" process produced some sort of set of standards to be applied to a sample. There are so many combinations and permutations of possible results of the earlier stages of Debtors' process that any effort at this point to explore the statistical issues is hopelessly premature. Accordingly, any pre-hearing discovery related to sampling should, in our view, be limited to that necessary to clarify how sampling would figure in the process, not the statistical issues that would eventually be presented if the process reached the stage at which sampling would be required, and for that reason, we do not seek discovery on the statistical aspects prior to the hearing on choice of methodology.

Date:   May 26, 2005

Respectfully submitted,

CAMPBELL & LEVINE, LLC

/S/ Marla Rosoff Eskin
Marla Rosoff Eskin (DE No. 2989)
Kathleen Campbell (DE No. 4229)
800 N. King Street
Suite 300
Wilmington, DE 19801
Tel: (302) 426–1900
Fax: (302) 426-9947

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
399 Park Avenue
New York, NY  10022–4614
Tel: (212) 319–7125
Fax: (212) 644-6755

- and -

{D0044289:1 } 11

Peter Van N. Lockwood
Nathan D. Finch
Walter B. Slocombe
Kimberly N. Brown
One Thomas Circle, NW
Washington, DC 20005
Tel: (202) 862–5000
Fax: (202) 429-3301

Counsel to the Official Committee of Asbestos
Personal Injury Claimants


YOUNG CONAWAY STARGATT
& TAYLOR, LLP

/S/ Sharon Zieg
James L. Patton (DE No. 2202)
Sharon Zieg (DE No. 4196)
Sean Greecher (DE No. 4484)
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Tel: (302) 571-6600
Fax: (302) 571-1253

Local Counsel to the Legal Representative
for Future Asbestos Claimants

KAYE SCHOLER LLP
Michael J. Crames
Jane W. Parver
Andrew A. Kress
425 Park Avenue
New York, NY 10022
(212) 836-8000

National Counsel to the Legal Representative
for Future Asbestos Claimants