14

129 B.R. 710
129 B.R. 710, Bankr. L. Rep. P 74,030
(Cite as: 129 B.R. 710)

Motions, Pleadings and Filings

United States District Court, E.D. New York and S.D. New York.

**In re JOINT EASTERN AND SOUTHERN DISTRICT ASBESTOS LITIGATION.**
**United States Bankruptcy Court Southern District of New York.**
**In re JOHNS-MANVILLE CORPORATION, et al., Debtors.**
**Bernadine K. FINDLEY, as Executrix of the Estate of Hilliard Findley, Uma Lail Caldwell, as Executrix of the Estate of Odell Caldwell, Edward Lindley, Joseph C. Jones and James William Barnette, Jr., on behalf of themselves, and all others similarly situated as beneficiaries of the Manville Personal Injury Settlement Trust, Plaintiffs,**
**v.**
**Donald M. BLINKEN, Daniel Fogel, Francis H. Hare, Jr., Christian E. Markey, Jr. and John C. Sawhill, solely in their capacity as Trustees, Defendants.**

**Bankruptcy Nos. 82 B 11656 (BRL)-82 B 11676 (BRL).**
**Civ. A. No. 90-3973.**

**June 26, 1991.**

**EXCERPT**

USG B 0236

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

APPENDIX C

May 7, 1991
TO: Jack B. Weinstein
FROM Mark A. Peterson
SUBJECT: Estimating total expected costs among all defendants for indemnity and defense of pending asbestos claims

This report estimates the total costs that asbestos defendants might be expected to pay for presently pending personal injury claims. The estimates are based primarily on data about past claims settled by the Manville Trust. The report addresses most of the limitations of the data and methods of estimation by using assumptions that provide ranges around the uncertainties created by these limitations. Based on these assumptions, the analyses suggest what defendants' expected costs might be, if asbestos litigation were to continue as it has in the past.

However, asbestos litigation is changing so significantly that the present analyses are unlikely to provide a realistic estimate of what asbestos defendants' future expenses will actually be. In particular, the analyses lack data about apparent changes in the characteristics of claims and in the values placed on claims as major defendants run out of money and new defendants enter. The uncertainties that are created by this lack of data cannot be finessed through use of alternative assumptions. As the conclusion to this report discusses, these uncertainties can only be reduced by further analyses based on additional data.

In principle, the total value of pending claims--what all asbestos defendants including Manville might expect to have to pay to defend and compensate only those claims now pending against

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



them--can be estimated from information available about past and pending claims against the Manville Trust. The analysis begins with the number and types of claims pending against the Trust. For each asbestos-related disease, the number of pending claims is multiplied by the expected average payment by all defendants for that disease. The expected average payment by all defendants is estimated as the average past payments by the Manville Trust for that disease, divided by historic share of full payments that has been made by the Trust, because the following equations are equivalent:

Total payments x Manville share = Manville payment
Total payments

= Manville payments / Manville share.

The expected payments for each disease are totaled and an estimate of expected defense costs is also added.

Although simple in principle, this calculation is limited in the following ways:

First, some of the past and pending Manville claims involve no other defendants. These "Manville-only" claims received larger payments from the Manville Trust, but do not create liability on the part of other defendants.

Second, some of the claims pending against Manville have already been resolved by codefendants. The total value of all pending asbestos claims includes Manville's liability for these claims, but not liability for the codefendants who have already resolved a claim.

Third, assumptions must be made about the Manville share of liability in order to estimate the total payments for all defendants. The Manville Trust's data for prebankruptcy claims provide an empirical basis for estimating the Manville share for the various types of diseases, but some plaintiffs and codefendants make different assumptions about this share.

Fourth, the argument is widely made that the seriousness or "quality" of claims has declined in recent years. If this is so, either the number of expected value of pending claims must be discounted to reflect that pending cases have less value than claims already settled.

Fifth, alternative estimates can be made of the costs that asbestos defendants must pay to resolve pending claims.

Sixth, significant changes in the litigation environment have apparently changed the settlement values for claims. Values for resolved claims might not apply to settlements that will be made for pending claims.

This report considers the effects of each of these factors in estimating the total expected costs to all defendants, including Manville, for pending asbestos claims. Most of the limitations do not present insuperable problems in estimating the expected costs of asbestos claimants. Where possible, the report presents a range of estimates based on various assumptions about the factors. But the sixth limitation may be so fundamental that it prevents the analyses from providing a realistic estimate of defendants' likely costs for pending claims. Because we have no systematic information about recent or likely future changes in the character or valuation of asbestos claims, we can only infer the characteristics and values of present cases from information about the past. In effect, the analyses in the report estimate expected costs to asbestos defendants if past litigation practices continue to apply in the future. But as we know, asbestos litigation is currently so unstable that the present estimates may be inapplicable to the changing litigation.

The estimates in this report suggest why asbestos litigation is changing--way the future is unlikely to be like the past. Estimates that are based on empirically supportable assumptions suggest that defendants would face costs that range between $13 and $16 billion to indemnify and defend pending asbestos claims if the litigation were to continue unchanged from the past. The report presents other estimates that fell outside of this range, based on alternative assumptions that do not have empirical support. Nevertheless, even the lowest of these alternative estimates suggests that if the litigation were to continue like the past, defendants would face expenses ranging between $9.7 and $10.4 billion to indemnify and defend asbestos claims that are already pending. But because the asbestos litigation is changing, defendants' actual expenses might be less than these estimated costs and the costs may be shared with defendants who are new to the litigation.

CLAIMS PENDING AGAINST THE MANVILLE TRUST AND CEFENDANTS

As of mid-April, 1991, there were 136,250 claims pending against the Manville Trust. To project the diseases that are likely to be proven, the Trust adjusted the diseases claimed by claimants on the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



basis of its experience about what diseases were actually proven by claimants who claimed each asbestos-related disease. Table One shows the estimates of the number of claimants who are likely to prove each asbestos disease.

TABLE ONE

CLAIMS PENDING AGAINST MANVILLE TRUST

| All Manville Claims | Number * | % by Disease |
|---|---|---|
| Pleural | 74,176 | 54.4 |
| Asbestosis | 41,883 | 30.7 |
| Other cancer | 3,590 | 2.6 |
| Lung cancer | 10,926 | 8.0 |
| Mesothelioma | 5,675 | 4.2 |
| All claims | 136,250 | |

FN* Number of claims reported as of April 10, 1991, by claimed disease. The number for each disease category is an estimate of the number of claimants that will actually have each disease. These estimates are based on the diseases alleged by claimants, with adjustments to reflect the Trust's experience in finding what types of injuries were proven for claimants alleging a particular disease.

The 136,250 includes 990 claims that Manville Trust settled in a class action total for $44 million. The total settlement has not been allocated across claims nor for disease types. The average settlement for these 990 claims is similar to that for all Manville Trust settlements, so their treatment as pending claims does not materially change any present estimates.

Some of these 136 thousand claimants filed claims only against Manville. The number of Manville-only claims must estimated, so that estimates of the global asbestos liability do not include projected payments by codefendants for claims that are only against Manville. In addition, the Manville liability for these claims is greater because Manville must pay for claimants' entire injuries.

The portion of pending claims against Manville that are Manville-only can be estimated by looking at the portion of such claims among claims already resolved by the Trust. In order to identify Manville-only claims, we must have data on codefendants' payments. These data are available only for a sample of 6,000 claims filed before the Manville Corporation emerged from bankruptcy, data reviewed in my report of April 11, 1991. Table Two-A estimates the number of pending Manville-only claims based on the percent of Manville-only claims for each type of disease among these prebankruptcy claims.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



Westlaw.

TABLE TWO-A

ESTIMATE OF NUMBER OF MANVILLE-ONLY AND JOINT CLAIMS

| | All Manville Claims | | Manville-Only | | MANVILLE & Codef | |
|---|---|---|---|---|---|---|
| | Number | % by Disease | % JM * Only | Number | Number | % by Disease |
| Pleural | 74,176 | 54.4 | 15 | 11,118 | 63,058 | 53.3 |
| Asbestosis | 41,883 | 30.7 | 9 | 3,769 | 38,114 | 32.2 |
| Other cancer | 3,590 | 2.6 | 11 | 395 | 3,195 | 2.7 |
| Lung cancer | 10,926 | 8.0 | 12 | 1,311 | 9,615 | 8.1 |
| Mesothelioma | 5,675 | 4.2 | 22 | 1,248 | 4,427 | 3.7 |
| All claims | 136,250 | | 13 | 17,841 | 118,409 | |

FN* Estimate of the percent of each disease type that is a Manville-only claimed, based on the Manville Trust's experience with prebankruptcy claims. See, Peterson report of April 11, 1991.

As Table Two-A shows, this analysis estimates that approximately 13 percent of claims against Manville are Manville-only. This may be an overestimate. Historically for prebankruptcy claims, Manville-only were greatest among pleural and mesothelioma claims. In turn, pleural claims are more frequent now among pending claims than for prebankruptcy claims. As a result, Table Two-A estimates more Manville-only claims overall among pending claims (13 percent) than the 11 percent among prebankruptcy claims. Contrary to this, claims supervisors for the Manville Trust find fewer rather than more Manville-only claims among recent and presumably future claims. Many prebankruptcy claims involved Manville plant workers who could file only against Manville. A far smaller proportion of recent and pending claims are from Manville plant workers.

Table Two-B attempts to reflect this recent experience, estimating that the proportion of Manville-only claims among pending claimants will be half that for prebankruptcy claims. This assumption yields an estimate of about 6.6 percent Manville-only claims, which is consistent with the expectations of the Trust's claims supervisors.

TABLE TWO-B

ALTERNATIVE ESTIMATE OF NUMBER OF MANVILLE-ONLY AND JOINT CLAIMS

| | All Manville Claims | | Manville-Only | | Joint Manv & Codef | |
|---|---|---|---|---|---|---|
| | Number | % by Disease | % JM * Only | Number | Number | % by Disease |
| Pleural | 74,176 | 54.4 | 7.5 | 5,563 | 68,613 | 53.9 |
| Asbestosis | 41,883 | 30.7 | 4.5 | 1,885 | 39,998 | 31.4 |
| Other cancer | 3,590 | 2.6 | 5.5 | 197 | 3,393 | 2.7 |
| Lung cancer | 10,926 | 8.0 | 6.0 | 656 | 10,270 | 8.1 |
| Mesothelioma | 5,675 | 4.2 | 11.0 | 624 | 5,051 | 4.0 |

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



| All claims | 136,250 | 6.6 | 8,925 | 127,325 |
|---|---|---|---|---|

FN* Estimate of the percent of each disease type that is a Manville-only claimed, based on an assumption that this rate for pending claims will be half the rate found among prebankruptcy claims.

Most codefendants have resolved more claims than the Manville Trust, because of the two extended periods when no Manville claims have been resolved. Estimates of the global liability for pending asbestos claims should not include projected liability for codefendants for cases that they have already settled. However, because codefendants will not provide information about their settlements, it is impossible to determine precisely how many claims have been resolved by each codefendant and the proportion of liability in each case that has been resolved. Table Three compares available information about the number of resolved and pending claims reported by the Manville Trust, Owens Corning Fiberglass and the two defense consortia, the Asbestos Claims Facility and the Center for Claims Resolution. When Manville-only claims are subtracted from the total number of claims against Manville, there is close similarity in the number of claims represented by each.

TABLE THREE

RESOLVED AND PENDING CLAIMS AGAINST MANVILLE AND CODEFENDANTS

| | Resolved | Pending | Total |
|---|---|---|---|
| Manville * | | | |
| All | 26,669 | 136,250 | 162,919 |
| Exclude 6.6% JM only | 24,636 | 127,325 | 151,961 |
| Exclude 13% JM only | 23,326 | 118,409 | 141,735 |
| CCR and ACF ** | 63,000 | 77,000 | 140,000 |
| OCF *** | 60,500 | 88,000 | 148,500 |

FN* Number of settled, Manville-only claims was estimated as 11% for 6207 prebankruptcy claims and respectively 13% and 6.6% of the remaining 20,462 settled claims.

FN** Data provided by Larry Fitzpatrick of the Center for Claims Resolution, February 1991. 18,000 cases were settled by ACF, the rest by CCR.

FN*** Data from the 1990 financial statement for Owens Corning Fiberglass. OCF reported 56,400 resolved and 84,500 pending claims as of December 31, 1990. These were adjusted to April 1991 on the basis of OCF's report of annual rates of new claims and dispositions.

Table Three suggests a range that can be used to estimate the remaining liability among defendants for claims now pending. There are 77,000 claims which have not yet been resolved by the Center for

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



Claims Resolution, an entity that represents a substantial proportion of liability among defendants. The 77,000 claims are a minimum estimate of the number of pending claims that remain unsettled by most or all defendants. But this is only a minimum estimate. Although Table Three suggests that the CCR and the defunct ACF might have together resolved around forty thousand claims that are still pending against Manville, not all of these claims will have been resolved by other significant defendants. Owens Corning Fiberglass, which still faces 88,000 claims, presumably faces liability in ten thousand cases that have been resolved by the CCR. The number of claims pending against OCF--88,000--seems a defensible, if conservative estimate of the maximum number of claims that remain unsettled by most or all defendants.

The pattern of claims against and settlements by the various asbestos defendants is complex: Even though CCR has resolved more claims, OCF will have resolved some claims not yet resolved by CCR; CCR will have resolved some of the 88,000 claims pending against OCF; across all defendants there are undoubtedly more than 88,000 claims that are pending against at least one defendant other than Manville; some claims have been filed only against codefendants and not Manville; and other claims have been filled against only a single defendant (i.e. they are like Manville-only claims). This complex pattern of facts could be clarified by research that obtains information about all settlements for a sample of claims pending against the Manville Trust.

However, since such data are not now available, the present assumptions simplify this complexity (1) by treating every claim as having been settled either by all or by no codefendant and (2) by setting a range of 77,000 to 88,000 claims that have been settled by no defendant. Under these assumptions, the Manville Trust would be the only potentially liable defendant for as many as 58,889 claims (136,250 minus 77,000) and it would be solely liable for at least 47,889 claims (136,250 minus 77,000 ). Note that the 47,889 to 58,889 claims for which the Manville Trust is assumed to be solely liable include both claims where all other defendants settled and other were a claim was made by only against the Manville Trust.

ESTIMATE OF INDEMNITY PAYMENTS FOR CLAIMS SOLELY AGAINST MANVILLE

Manville's exposure differs between Manville-only claims and joint claims against both Manville and a codefendant. As Table Four shows, the Manville Trust has historically paid more in Manville-only claims than joint claims. The table displays the actual payments among prebankruptcy claims and calculates the ratios of average payments in Manville-only claims to average payments in joint claims.

Unfortunately, there are no available data that would allow us to determine directly the average payments for Manville-only and joint claims among all settled claims. We can identify Manville-only claims only among the six thousand prebankruptcy claims, and we cannot simply assume that the average payments for the two types of claims among prebankruptcy cases also apply to other settled claims. Manville Trust data show that prebankruptcy claims averaged lower settlements than the twenty thousand other claims settled by the Trust.

However, we can estimate the average settlements for Manville-only and joint claims by assuming that the ratios of the averages observed for prebankruptcy claims were maintained for all settled claims. To estimate the averages, we also have to assume what proportion of all claims settled by the Manville Trust were Manville-only. Table Four provides estimates of the average payments to Manville-only and joint claims under the two assumptions of the number of Manville-only claims, 13 and 6.6 percent.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



TABLE FOUR

RATIO OF PAYMENTS IN MANVILLE ONLY AND JOINT CLAIMS *
(Payments in $ Thousands)

| | Prebankruptcy Claims Average Payment | | | 13% Manv Only Average Payment | | 6.6% Manv Only Average Payment | |
|---|---|---|---|---|---|---|---|
| | Joint Claim | Manville Only | Ratio | Joint Claim | Manville Only | Joint Claim | Manville Only |
| Pleural | 18 | 24 | 1.34 | 23 | 31 | 23 | 31 |
| Asbestosis | 29 | 43 | 1.50 | 36 | 54 | 37 | 56 |
| Other cancer | 36 | 53 | 1.45 | 41 | 59 | 42 | 61 |
| Lung cancer | 67 | 113 | 1.68 | 68 | 115 | 71 | 119 |
| Mesothelioma | 112 | 209 | 1.87 | 124 | 232 | 135 | 253 |

FN* Ratio of payments in Manville-only divided by payments in joint claims among 6,207 prebankruptcy claims. "13% Manv Only" and "6.6% Manv Only" estimate the average settlements for Manville-only and joint claims among all 26,669 claims settled by the Manville Trust, assuming that ratios for prebankruptcy claims apply to all settled claims and assuming respectively that 13 percent and 6.6 percent of settled claims were Manville-only.

The total expected liability of asbestos defendants includes both liability among all defendants--including Manville--for cases that remain completely unsettled (i.e. the 77,000 to 88,000 claims) and the Manville Trust's liability for pending asbestos claims where it is solely liable. Table Five estimates the latter, separating the Trust's liability for Manville-only claims and claims where all other defendants have settled. The table presents estimates of the value of Manville-only claims for each of the two alternative assumptions about the number of such claims using estimates of past settlement averages shown on Table Four. The table presents four estimates of payments expected from Manville for claims already settled by all other defendants under the two assumptions that 77,000 or 88,000 pending claims remain unsettled by other defendants and the two assumptions about the number of Manville-only claims.

TABLE FIVE

ESTIMATE OF VALUE OF CLAIMS SOLELY AGAINST MANVILLE
(Total Values in $ Millions; Average Values in $ Thousands)

| | Where Codefendants Have Settled * | | | | | Manville Only | | |
|---|---|---|---|---|---|---|---|---|
| | | 77,000 Unsettled | | 88,000 Unsettled | | | | |
| | Avg Value | Number | Total Value | Number | Total Value | Number | Avg Value | Total Value |
| 13% Manv.-Only | | | | | | | | |
| Pleural | 23 | 22,052 | 507 | 16,194 | 372 | 11,118 | 31 | 345 |
| Asbestosis | 36 | 13,329 | 480 | 9,788 | 352 | 3,769 | 54 | 204 |
| Other cancer | 41 | 1,117 | 46 | 820 | 34 | 395 | 59 | 23 |

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Lung cancer | 68 | 3,362 | 229 | 2,469 | 168 | 1,311 | 115 | 151 |
| Mesothelioma | 124 | 1,548 | 192 | 1,137 | 141 | 1,248 | 232 | 290 |
| All claims | | 41,408 | 1,454 | 30,408 | 1,067 | 17,841 | | 1,013 |
| 6.6% Manv.-Only | | | | | | | | |
| Pleural | 23 | 27,119 | 624 | 21,191 | 487 | 5,563 | 31 | 174 |
| Asbestosis | 37 | 15,809 | 585 | 12,354 | 457 | 1,885 | 56 | 105 |
| Other cancer | 42 | 1,341 | 56 | 1,048 | 44 | 197 | 61 | 12 |
| Lung cancer | 71 | 4,059 | 288 | 3,172 | 225 | 656 | 119 | 78 |
| Mesothelioma | 135 | 1,996 | 269 | 1,560 | 211 | 624 | 253 | 158 |
| All claims | | 50,324 | 1,822 | 39,325 | 1,424 | 8,925 | | 527 |

FN* Table estimates separately the values of (1) claims where all defendants other than Manville have settled and (2) where a claim was filed only against Manville. The expected average payments by Manville for these two types of cases are shown in Table Four. The Table presents estimates under two assumptions about the number of pending Manville-only claims and under two estimates of the number of claimants who have not yet settled with any defendant: With 77,000 claims unsettled by any defendant, Manville faces 41,408 claims where all other defendants have settled if 13 percent of its claims are Manville-only and 50,324 claims settled by all other defendants if 6.6 percent are Manville-only; with 88,000 claims Manville faces respectively 30,408 and 39,325 claims settled by all other defendants.

## ESTIMATE OF INDEMNITY PAYMENTS FOR CLAIMS AGAINST ALL DEFENDANTS

The next analysis estimates the total amount that all defendants, including Manville, can be expected to pay for the 77,000 to 88,000 claims in which claimants have yet to receive substantial settlements. This analysis requires assumptions about the average payments that all defendants can be expected to make for pending claims. These assumptions about payments for pending claims are the most troublesome element of the analysis. Assumptions about average payments that will be made for pending claims can only be made by extrapolating from payments that have been made in previously resolved claims. The extrapolations are problematic, if the bases for settling claims have or will change. The extrapolations would then provide little information about what defendants will actually pay, but would at most indicate what defendants' expected payments would have been if past practices had continued into the future. Because the environment of asbestos litigation is changing significantly in ways that likely effect how claims are evaluated, this criticism is pertinent and fundamental for the present analyses. The last section of this report looks more closely at this issue and at ways to carry out estimates in light of changes in the asbestos litigation.

The next sections put aside this criticism in order to evaluate pending claims by extrapolating from settlement values for past claims. These sections present analyses based on alternative assumptions (1) about how to estimate the unknown total amount of payments by all defendants from the known amount of payments by the Manville Trust and (2) about the comparability between previously resolved and pending claims.

Table Six presents estimates of full value of pending claims, i.e. the total amount that all defendants might be expected to pay on average for claims for each disease. The estimates have been calculated by dividing the average past payments by the Manville Trust for each disease by the historic share of full payments made by the Trust for the disease. The Manville Trust's share of payments was derived from the Trust's data for prebankruptcy claims. Those data indicate that when Manville-

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



only claims are excluded, the Manville Trust paid between 28 percent and 33 precent of the total payments by all defendants, depending upon the type of disease (see, Peterson Memorandum of April 11, 1991). The estimates on Table Six assume that the Manville shares found for prebankruptcy claims apply to payments for pending claims, an assumption that is controversial (Table 14, below presents estimates of the expected payments by defendants based on alternative assumptions about the Manville share). The estimates on Table Six are provided for both of the assumptions that 13 or 6.6 percent of pending claims are Manville-only. Note that analyses do not assume that the Manville Trust will continue to pay between 28 and 33 percent of all payments by the Trust. The historic Manville shares are used simply to estimate the total expected payment by all defendants from data on historic payments by the Manville Trust.

TABLE SIX

EXPECTED AVERAGE PAYMENTS BY ALL DEFENDANTS *
(Average Values in $ Thousands)

| | 13% Manv Only | | | 6.6% Manv Only | | |
|---|---|---|---|---|---|---|
| | Manville | | Full | Manville | | Full |
| | Avg Value | Share | Avg Value | Avg Value | Share | Avg Value |
| Pleural | 23 | .31 | 74 | 23 | .31 | 74 |
| Asbestosis | 36 | .30 | 120 | 37 | .30 | 123 |
| Other cancer | 41 | .33 | 124 | 42 | .33 | 127 |
| Lung cancer | 68 | .31 | 219 | 71 | .31 | 229 |
| Mesothelioma | 124 | .28 | 442 | 135 | .28 | 482 |

FN* The Table estimates payments by all defendants, including Manville. The Manville shares for disease types are based on empirical evidence of the share of Manville Trust payments for prebankruptcy claims (see, Peterson Memorandum of April 11, 1991). Manville Average Values are from Table Four. Full Average Value is calculated as follows:

(Manville Avg. Value) / (Manville Share)

Table Seven estimates the total amount that all defendants, including Manville, can be expected to pay for the 77,000 to 88,000 claims where claimants have received no settlements, assuming that claimants will receive on average the amounts shown on Table Six.

As Table Seven shows, estimates of the full value of pending claims range between $8.9 and $10.2 billion, assuming that 13 percent of claims against the Manville Trust are Manville-only. The full value ranges from $9.2 to

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



$10.5 billion, assuming 6.6 percent Manville-only claims. All estimates are based on the assumption that claims now pending will be valued in the same manner as were resolved claims. The estimation of defendants' payments for these claims would vary if the average payments shown on Table Six were calculated using different assumptions about the Manville share. Estimations of the full value of pending claims using different assumptions about the Manville share are presented in Tables Fifteen and Sixteen below.

TABLE SEVEN

ESTIMATED VALUE OF CLAIMS PENDING AGAINST ALL DEFENDANTS *
(Total Values in $ Millions; Average Values in $ Thousands)

| | Full Average Value | 77,000 Claims Number of Claims | 77,000 Claims Total Value | 88,000 Claims Number of Claims | 88,000 Claims Total Value |
|---|---|---|---|---|---|
| 13% Manville Only | | | | | |
| Pleural | 74 | 41,006 | 3,034 | 46,864 | 3,468 |
| Asbestosis | 120 | 24,785 | 2,974 | 28,326 | 3,399 |
| Other cancer | 124 | 2,078 | 258 | 2,374 | 294 |
| Lung cancer | 219 | 6,253 | 1,369 | 7,146 | 1,564 |
| Mesothelioma | 442 | 2,879 | 1,273 | 3,290 | 1,454 |
| All claims | | 77,001 | 8,908 | 88,000 | 10,179 |
| 6.6% Manv. Only | | | | | |
| Pleural | 74 | 41,494 | 3,070 | 47,422 | 3,509 |
| Asbestosis | 123 | 24,189 | 2,975 | 27,644 | 3,400 |
| Other cancer | 127 | 2,052 | 261 | 2,345 | 298 |
| Lung cancer | 229 | 6,2121 | 1,422 | 7,098 | 1,625 |
| Mesothelioma | 482 | 3,055 | 1,473 | 3,491 | 1,683 |
| All claims | | 77,001 | 9,201 | 88,000 | 10,515 |

FN* The Table estimates the total amount that will be paid by all defendants, including Manville, for 77,000 and 88,000 claims, respectively, that have not been settled by any defendant. Full Average Value from Table Six. Number of claims is shown for low and high estimates of number of pending claims that remain unsettled (see, text accompanying Table Three). The number of claims for each disease is the same as for "Manville & Codef" on Tables Two-A and Two-B.

TOTAL INDEMNITY PAYMENTS FOR ALL PENDING CLAIMS, BASED ON HISTORIC VALUES

Table Eight calculates the total expected payments by asbestos defendants for indemnity of pending claims by adding the Manville Trust's expected payments for claims where it is solely liable to the expected payments by all defendants, including Manville, for cases that remain completely unsettled. Estimates of the total indemnity payments are presented for the two assumptions of the number of Manville-only claims and for the alternatives of

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



77,000 and 88,000 claims that are assumed to have been settled with no defendant. All of the estimates on Table Eight are based on assumptions that the payments by all defendants, including Manville, will average 3.33 times the payments by the Manville Trust and that the values placed on past claims payments by the Manville Trust should continue to apply to pending claims. Under these assumptions, the total expected indemnity payments by all asbestos defendants ranges between $11.4 and $12.5 billion, if those claims are to be valued as they had been in the past. These estimates represent only the expected payments to claimants and do not include the anticipated costs for defense or other resolution of these claims.

TABLE EIGHT

ESTIMATED VALUE OF PENDING CLAIMS ACROSS ALL DEFENDANTS
BASED ON FULL HISTORIC VALUE
(Total Values in $ Millions)

| | Claims w/o Settlement | |
|---|---|---|
| | 77,000 | 88,000 |
| 13% of Claims Are Manville Only | | |
| Claims Against All Defendants | 8,908 | 10,179 |
| Claims Solely Against Manville | | |
| Settled by Other Defendants | 1,454 | 1,067 |
| Manville-only Claims | 1,013 | 1,013 |
| Total Expected Liability | 11,375 | 12,259 |
| 6.6% of Claims Are Manville Only | | |
| Claims Against All Defendants | 9,201 | 10,515 |
| Claims Solely Against Manville | | |
| Settled by Other Defendants | 1,822 | 1,424 |
| Manville-only Claims | 527 | 527 |
| Total Expected Liability | 11,550 | 12,466 |

Of course, even setting aside the fundamental criticism that historic values might not continue to apply, the estimates summarized on Table Eight cannot be regarded as matters of certainty. The assumptions that underlie these analyses are simply reasonable projections about the types, numbers and values of claims. Estimates of the total indemnity payments for pending cases will vary under different assumptions. Indeed there is a widely held perception that many pending cases are not as serious as those cases already resolved, which argues that the analyses in Table Eight overstate the total indemnity payments. Similarly, opposing parties to the litigation argue that the Manville share is greater or less than the average 30 percent assumed for the present analyses.

The analyses below examine the total indemnity payments under assumptions (1) that pending claims present less serious injuries than those already resolved and (2) that the Manville share is respectively 25 percent and 40 percent of full payments by all defendants. The analyses then estimate the total cost of both indemnity and defense of pending claims, under two assumptions about defense costs.

ADJUSTMENT FOR THE APPARENT DECLINE IN THE SERIOUSNESS OF CLAIMS

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.





Many participants in asbestos litigation--judges, defendants and plaintiffs' lawyers--observe that taken as a whole, claims pending against asbestos defendants are less serious than those already resolved. If this is the case, then total indemnity payments by asbestos defendants would be overestimated by simply using past average payments to project future claims. Again, data could be collected on the characteristics of a sample of resolved and pending claims to see if and how claims have changed. But in the absence of such data, the present analyses can only make assumptions about the comparability of resolved and pending claims.

The analyses described above in Tables Six through Eight assume that resolved and pending claims are comparable and that historic values could be directly applied to pending claims. The analyses in this section are based on the assumption that as a whole pending claims are less serious than resolved claims. These analyses use an adjustment to reflect a decline in seriousness of claims that is consistent with the projections that estimated the future performance of the Manville Trust.

Negotiations over the restructuring of the Manville Trust revealed a broadly-held perception that many asbestosis claimants would be unable to prove an asbestos-related disease. Projections of the expected payments to claimants under the reorganized trust assumed that as many as 20,000 claims pending against the Manville Trust (approximately 15 percent of such claims) might be subject to dismissal for failure to state a cause of action. Table Nine shows how 20,000 such nonclaims might be distributed across claims pending against the Manville Trust. The Table assumes relatively few nonclaims among claimants alleging an asbestos-related cancer, based on the Trust's experience showing that few cancer claims failed to involve some type of asbestos-related disease. The remainder of the projected 20,000 nonclaims are distributed between pleural and asbestosis claims so that the assumed rate of nonclaims is four times greater for pleural than asbestosis claims.

TABLE NINE

CLAIMS AGAINST THE MANVILLE TRUST, ADJUSTING FOR CLAIMS THAT MIGHT BE UNABLE TO PROVE AN ASBESTOS RELATED INJURY

| | Reported | Assumed | Estimated |
|---|---|---|---|

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



| | Number Pending | Nonclaims | Number Compensible |
|---|---|---|---|
| Pleural | 74,176 | 17,472 | 56,704 |
| Asbestosis | 41,883 | 2,466 | 39,417 |
| Other cancer | 3,590 | 18 | 3,572 |
| Lung cancer | 10,926 | 33 | 10,893 |
| Mesothelioma | 5,675 | 11 | 5,664 |
| All claims | 136,250 | 20,000 | 116,250 |

FN* This adjustment represents an assumption that as many as 20,000 or approximately 15 percent of claims pending against the Manville Trust might fail to provide evidence of an asbestos-related disease. The number of nonclaims for cancer claims represent historical experience of the Manville Trust of the proportion of such claims that do not provide evidence of an injury. The numbers for pleural and asbestosis claims assume that the frequency of nonclaims will be four times greater for pleural disease than for asbestosis.

Of course, there is no reason to believe that this assumption of 20,000 nonclaims is precisely correct. Rather, the assumption provides a means of representing the argument that, taken as a whole, present claims involve less serious injuries. The analyses in this section exclude these 20,000 claims and then use the average payments for past claims to estimate the value of the remaining 116,250 claims pending against the Manville Trust. The adjustment is admittedly arbitrary: it may either overadjust or underadjust for any changes in the seriousness of claims. Unfortunately, without empirical information about the changing characteristics of claims, any adjustments will be arbitrary.

Table Ten shows the number of Manville-only and joint claims expected for the pending 116,250 claims that remain. Because the percent of Manville-only claims has little impact on estimated global liability, all remaining analyses assume that 13 percent of claims are Manville-only.

TABLE TEN

ESTIMATE OF NUMBER OF MANVILLE-ONLY AND JOINT CLAIMS
AFTER ELIMINATION OF 20,000 ASSUMED NONCLAIMS

| | Estimated | | Manville Only | | Joint Manv & Codef | |
|---|---|---|---|---|---|---|
| | Number Compensible | % by Disease | % JM Only | Number | Number | % by Disease |
| Pleural | 56,704 | 48.8 | 15 | 8,506 | 48,198 | 47.6 |
| Asbestosis | 39,417 | 33.9 | 9 | 3,548 | 35,869 | 35.4 |
| Other cancer | 3,572 | 3.1 | 11 | 393 | 3,179 | 3.1 |
| Lung cancer | 10,893 | 9.4 | 12 | 1,307 | 9,586 | 9.5 |
| Mesothelioma | 5,664 | 4.9 | 22 | 1,246 | 4,418 | 4.4 |
| All claims | 116,250 | | 13 | 15,000 | 101,250 | |

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



---

Table Eleven estimates the Manville Trust's liability for pending claims in which it is solely liable, after elimination of the assumed 20,000 nonclaims. Again, the table separates the Trust's Manville-only liability from liability for claims where all other defendants have settled.

TABLE ELEVEN

ESTIMATE OF VALUE OF CLAIMS SOLELY AGAINST MANVILLE, AFTER ELIMINATION OF 20,000 ASSUMED NONCLAIMS
(Total Values in $ Millions; Average Values in $ Thousands)

| | Where Codefendants Have Settled * | | | | | Manville Only | | |
|---|---|---|---|---|---|---|---|---|
| | | 77,000 Unsettled | | 88,000 Unsettled | | | | |
| | Avg Value | Number | Total Value | Number | Total Value | Number | Avg Value | Total Value |
| Pleural | 23 | 16,855 | 388 | 12,378 | 285 | 8,506 | 31 | 264 |
| Asbestosis | 36 | 12,544 | 452 | 9,212 | 332 | 3,548 | 54 | 192 |
| Other cancer | 41 | 1,112 | 46 | 816 | 33 | 393 | 59 | 23 |
| Lung cancer | 68 | 3,352 | 228 | 2,462 | 167 | 1,307 | 115 | 150 |
| Mesothelioma | 124 | 1,545 | 192 | 1,135 | 141 | 1,246 | 232 | 289 |
| All claims | | 35,408 | 1,306 | 26,002 | 958 | 15,000 | | 918 |

---

Table presents analyses under two alternative estimates of the total number of claim unsettled by all defendants: 77,000 claims which implies that the Manville Trust faces another 35,408 claims where all other defendants have settled [101,250 (compensible Manville joint claims, Table Ten) minus 65,842 (compensible claims unsettled by defendants, Table Twelve)]; and 88,000 claims which implies another 26,002 Trust claims settled by all other defendants [[[[[[[[101,250 minus 77,248].

TABLE TWELVE

ESTIMATED VALUE OF CLAIMS PENDING AGAINST ALL DEFENDANTS, AFTER ELIMINATION OF 20,000 ASSUMED NONCLAIMS
(Total Values in $ Millions; Average Values in $ Thousands)

| | Codefs Avg Value | 77,000 Claims Number of Claims | Total Value | 88,000 Claims Number of Claims | Total Value |
|---|---|---|---|---|---|
| Pleural | 74 | 31,341 | 2,319 | 35,818 | 2,650 |
| Asbestosis | 120 | 23,308 | 2,797 | 26,638 | 3,197 |
| Other cancer | 124 | 2,041 | 253 | 2,333 | 289 |
| Lung cancer | 219 | 6,255 | 1,370 | 7,149 | 1,566 |
| Mesothelioma | 442 | 2,897 | 1,280 | 3,311 | 1,463 |
| All claims | | 65,842 | 8,019 | 75,248 | 9,165 |

---

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



FN* The Table estimates the total amount that will be paid by all defendants, including Manville, for 77,000 and 88,000 claims, respectively, that have not been settled by any defendant. It assumes that the proportion of claims that are compensible is the same as for all joint Manville claims. This proportion is the number of compensible claims (101,250 from Table Ten) divided by the total number of joint Manville claims (118,409 from Table Two-A) i.e. 101,250 / 118,409 = .86. Among 77,000 pending claims, 86 percent of 65,842 are compensible and 11,158 are assumed to be unable to state a cause of action. Among 88,000 claims, 75,248 are assumed to be compensible and 12,752 do not state a cause of action. The percent of claimants with each type of disease is the same as for all Manville joint claims (Table Ten).

Table Twelve shows the full value of pending claims after the 20,000 assumed noncompensible claims are excluded. The elimination of these assumed noncompensible claims reduces the total of the historically based value for pending claims about ten percent, from between $11.4 to $12.3 billion when the cases are included (Table Eight) to between $10.2 to $11.0 billion when the cases are excluded (Table Thirteen). Note that while the estimates on Table Thirteen provide an adjustment for possible changes in the seriousness of pending asbestos claims, they make no provision for possible changes in valuations of claims. The estimates assume that the values placed on claims in the past will continue to apply to the settlements of claims now pending.

TABLE THIRTEEN

ESTIMATED VALUE OF PENDING CLAIMS ACROSS ALL DEFENDANTS
AFTER ELIMINATION OF 20,000 ASSUMED NONCLAIMS
(Total Values in $ Millions)

| | Claims w/o Settlement | |
|---|---|---|
| | 77,000 | 88,000 |
| Claims Against All Defendants | 8,019 | 9,165 |
| Claims Solely Against Manville | | |
| Settled by Other Defendants | 1,306 | 958 |
| Manville-only Claims | 918 | 918 |
| Total Expected Liability | 10,243 | 11,041 |

## ALTERNATIVE ASSUMPTIONS ABOUT THE MANVILLE SHARE

The analyses of the historically-based value of pending claims have been based on the assumption that the full payments by all defendants average about three-and-one-third times the Manville payment, based on the Manville share of 30 percent of prebankruptcy payments. This assumption is supported by empirical analysis of the Manville Trust's data for prebankruptcy claims.

Others argue that the Manville share has been more or less than 30 percent, which would mean that full value of claims is less or greater than the values assumed in the analyses. The following analyses estimate the full value of claims under two alternatives: an assumption that the full value of claims is four times the Manville payments (assuming a Manville share of 25 percent) and an assumption that the full value of claims was two-and-one-half times the Manville payments (assuming a Manville share of 40 percent). These alternative assumptions have no empirical support, but they provide means for examining the upper and lower bounds of what all defendants could expect to pay

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



for pending asbestos claims based on historic values.

Table Fourteen shows estimates of expected average payments by all defendants, including Manville, under the three alternative assumptions about the Manville share. Again, these estimates have nothing to do with the share of payments that the Manville Trust might make in cases now pending. The assumptions about the Manville share are used only to provide alternative estimates of the total payments that all defendants might be expected to make for pending claims. This report does not consider what part of these payments might be borne by the Manville Trust. As Table Fourteen shows, defendants' expected payments decline as the Manville share increases.

TABLE FOURTEEN

DEFENDANTS' EXPECTED PAYMENTS UNDER ALTERNATIVE ESTIMATES OF THE MANVILLE SHARE *
(Average Values in $ Thousands)

| | | | | Alternative Estimates | | | |
|---|---|---|---|---|---|---|---|
| | Manv Average Value | Manv Share | Full Avg Value | Manv Share | Full Avg Value | Manv Share | Full Avg Value |
| Pleural | 23 | .31 | 74 | .26 | 88 | .41 | 56 |
| Asbestosis | 36 | .30 | 120 | .25 | 144 | .40 | 90 |
| Other cancer | 41 | .33 | 124 | .28 | 146 | .44 | 93 |
| Lung cancer | 68 | .31 | 219 | .26 | 262 | .41 | 166 |
| Mesothelioma | 124 | .28 | 442 | .23 | 539 | .37 | 335 |
| All claims | | .30 | | .25 | | .40 | |

FN* Full Average Value estimates payments by all defendants, including Manville. The Manville shares for disease types when Manville share averaged 30 percent are based on empirical evidence of the share of Manville Trust payments for prebankruptcy claims (see, Peterson Memorandum of April 11, 1991). Manville shares for disease types when Manville share is assumed to average 25 percent were 5/6 of the observed averages for diseases at an average Manville share of 30 percent. Share for disease types when the Manville share is assumed to average 40 percent are 4/3 of the observed averages at 30 percent. Defendants' Average Value is calculated as follows:

(Manville Avg. Value) / (Manville Share)

Tables Fifteen and Sixteen estimate an upper and lower bound on the total values of pending asbestos claims, when those claims are valued as they have been in the past. Table Fifteen estimates a lower bound on defendants' payments by assuming that the average payments by all defendants will be 2.5

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



times the averages paid by the Manville Trust and by eliminating 20,000 claims that are assumed to be noncompensible. In contrast, Table Sixteen estimates an upper bound on defendants' payments by assuming that the average payments by all defendants will be 4 times the averages paid by the Manville Trust and by including all pending claims, including the 20,000 claims.

TABLE FIFTEEN

LOWER BOUND ESTIMATE OF VALUE OF PENDING CLAIMS AGAINST DEFENDANTS
(Total Values in $ Millions; Average Values in $ Thousands)

| | Full | 77,000 Claims | | 88,000 Claims | |
|---|---|---|---|---|---|
| | Average Value | Number of Claims | Total Value | Number of Claims | Total Value |
| Pleural | 56 | 31,341 | 1,755 | 35,818 | 2,006 |
| Asbestosis | 90 | 23,308 | 2,098 | 26,638 | 2,397 |
| Other cancer | 93 | 2,041 | 190 | 2,333 | 217 |
| Lung cancer | 166 | 6,255 | 1,038 | 7,149 | 1,187 |
| Mesothelioma | 335 | 2,897 | 970 | 3,311 | 1,109 |
| All claims | | 65,842 | 6,051 | 75,248 | 6,916 |

FN* The Table estimates the total amount that will be paid by all defendants, including Manville, for 77,000 and 88,000 claims, respectively, that have not been settled by any defendants. It assumes that full average value (i.e. average amount paid by all defendants for each disease) will be 2.5 times Manville payments for non-Manville-only claims, that 11,158 of 77,000 claims are noncompensible and that 12,752 of 88,000 claims are noncompensible.

TABLE SIXTEEN

UPPER BOUND ESTIMATE OF VALUE OF PENDING CLAIMS AGAINST DEFENDANTS
(Total Values in $ Millions; Average Values in $ Thousands)

| | Full | 77,000 Claims | | 88,000 Claims | |
|---|---|---|---|---|---|
| | Average Value | Number of Claims | Total Value | Number of Claims | Total Value |
| Pleural | 88 | 41,006 | 3,609 | 46,864 | 4,124 |
| Asbestosis | 144 | 24,785 | 3,569 | 28,326 | 4,079 |
| Other cancer | 146 | 2,078 | 303 | 2,374 | 347 |
| Lung cancer | 262 | 6,253 | 1,638 | 7,146 | 1,872 |
| Mesothelioma | 539 | 2,879 | 1,552 | 3,290 | 1,773 |
| All claims | | 77,001 | 10,671 | 88,000 | 12,195 |

FN* The Table estimates the total amount that will be paid by all defendants, including Manville, for 77,000 and 88,000 claims, respectively, that have not been settled by any defendants. It assumes that full average value (i.e. average amount paid by all defendants for each disease) will be 4 times Manville payments for non-Manville-only claims. No claims are eliminated as

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



being noncompensible.

Although there are reasons to be skeptical about assumptions underlying the upper and lower bound estimates, these analyses set a range of between around $8 billion to over $14 billion when pending claims are valued as they have been in the past (Table Seventeen). This range understates what these pending claims would have cost asbestos defendants in the past environment of asbestos litigation, because the estimates do not include the significant expenses for defending cases.

TABLE SEVENTEEN

UPPER AND LOWER BOUND ESTIMATES OF VALUE OF PENDING CLAIMS
ACROSS ALL DEFENDANTS
(Total Values in $ Millions)

| | Claims w/o Settlement | |
|---|---|---|
| | 77,000 | 88,000 |
| LOWER BOUND: | | |
| Claims Against All Defendants | 6,051 | 6,916 |
| Claims Solely Against Manville Settled by Other Defendants | 1,306 | 958 |
| Manville-only Claims | 918 | 918 |
| Total Expected Liability | 8,275 | 8,792 |
| UPPER BOUND: | | |
| Claims Against All Defendants | 10,671 | 12,195 |
| Claims Solely Against Manville Settled by Other Defendants | 1,454 | 1,067 |
| Manville-only Claims | 1,013 | 1,013 |
| Total Expected Liability | 13,138 | 14,275 |

THE TOTAL COSTS OF INDEMNITY AND DEFENSE

A RAND Corporation study of asbestos litigation prior to the Manville bankruptcy found that 33 percent of defendants' expenditures went for defense and costs in processing claims. Only 67 percent of those payments went to claimants. So far the present analyses have estimated what defendants might have to pay to claimants for pending cases without considering defense expenses--they look only at the 67 percent.

Although the RAND research examined an earlier period of asbestos litigation, the study's findings about defense expenses seem to apply to defendants who continue an active defense. Most defendants will not reveal the precise amount of their defense expenses, but some indicate informally that defense expenses run at least 30 percent of all their expenditures on asbestos litigation.

CONCLUSIONS

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



Westlaw.

Table Eighteen adds defense costs to four alternative estimates of the historically based values of pending claims. Although uncertain, the best evidence is that defense costs have represented about 33 percent of all expenditures by defendants (i.e. 33 percent of the total of indemnity payments plus defense costs). Similarly, the only empirical evidence suggests that payments by all defendants, including Manville, have averaged 3.33 times the Manville Trust's payments. Analyses using these assumptions provide the most reasonable estimates of what the defense and indemnification of pending asbestos claims would cost defendants, including Manville, if claims continue to be defended and settled on the same bases as they have in the past--total costs ranging between $13.0 and $16.1 billion. Even under assumptions that minimize these estimates--that total payments by all defendants including Manville will be only 2.5 times payments by the Manville Trust, that 20,000 pending claims are noncompensible, that litigation costs will only be 30 percent of all expenditures--the analyses suggest that asbestos defendants might have reasonably expected to spend between $9.7 and $10.4 billion for pending claims if the environment of asbestos litigation remained unchanged.

TABLE EIGHTEEN

DEFENDANTS' FULL COSTS OF INDEMNITY AND DEFENSE *
(Total Values in $ Billions)

| | Indemnity | | Defense Costs 30% | | Defense Costs 33% | |
|---|---|---|---|---|---|---|
| | 77,000 | 88,000 | 77,000 | 88,000 | 77,000 | 88,000 |
| **Empirically Based** | | | | | | |
| Adjust for nonclaims | 10.2 | 11.0 | 12.4 | 13.6 | 13.0 | 14.2 |
| Full historic value | 11.4 | 12.3 | 14.2 | 15.4 | 14.8 | 16.1 |
| **Lower Bound** | | | | | | |
| Adjust for nonclaims | 8.3 | 8.8 | 9.7 | 10.4 | 10.2 | 10.9 |
| **Upper Bound** | | | | | | |
| Full historic value | 13.1 | 14.3 | 16.7 | 18.3 | 17.3 | 19.1 |

FN* These calculations assume that defense costs for the Manville Trust will be 10 percent and that the Trust will pay $1.6 billion in indemnification to present claimants (35 percent of their full liability). For remaining liability, calculations assume alternatively that indemnification represents 70 percent or 67 percent of the total expenses of defendants.

But asbestos litigation is changing and will likely change even more significantly, in great part because the litigation is so costly. More than a dozen defendants who participated in the past litigation have gone into bankruptcy or effectively disappeared because their assets have been exhausted or compromised. To an uncertain degree, the remaining defendants may be required to pick up payments previously made by bankrupt defendants--this report makes no attempt to assess the legal

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



requirements or effects of alternative theories of contribution. To an uncertain degree, some of the historic value of asbestos claims will be lost because there is no solvent defendant to provide payment. The litigation has been changed by the addition of new defendants, many of whom have significant assets. These new defendants might absorb appreciable portions of the costs of asbestos litigation or their costs might be limited if their liability runs to only a small portion of asbestos claimants. Defense costs may shrink as defendants adopt more efficient practices and as claims facilities assume a bigger role.

There is broad recognition that the values of claims have changed and are likely to change further in the future, even though there is no agreement on how values have changed. Some participants report that the values of claims have decreased as plaintiffs become willing to take what they can get now from financially-strapped defendants. Others report that values have increased because plaintiffs demand more when payments are made over time rather than in one lump sum. The greater use of consolidated trials, class actions and other aggregative procedures undoubtedly affect values, but in uncertain directions. These procedures could decrease the values of claims, following the general pattern of litigation that claims settled in groups receive less money than those settled individually. Or these procedures might increase the values of claims, because far more claims now appear at the courthouse steps. The values of claims and defense costs could be modified greatly if plaintiffs and defendants agree upon global resolution of claims against one or more defendants. Because the valuation of asbestos claims seems to have changed and seems likely to continue to change, the analyses of this report cannot be regarded as realistic projections of expected payments by asbestos defendants. The estimates are based on the extrapolation of past values that may well not apply to the settlement of pending claims.

But while the analyses of the present report are limited in several important ways, these limitations can be substantially addressed by further research. The analyses suffer from the absence of critical information, primarily about the nature of present claims and the patterns of payments by various defendants. These data may become available as the Manville Trust and the Selected Counsel for the Beneficiaries collect data that they need to allocate assets between present and future claimants. But more fundamentally, the present analyses are ignorant of recent and likely future changes in asbestos litigation. Realistic estimates of the likely costs of asbestos litigation require that analyses such as those in this report be done in conjunction with analyses of defendants' assets that will be called upon to pay those costs, and that both sets of analyses draw upon current information about the nature and value of claims.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Westlaw.