18



```
2005 FL H.B. 1019 (NS)                                                   Page 1
  2005 Florida House Bill No. 1019, Florida One Hundred Seventh Regular Session
    (FULL TEXT - NETSCAN)
```

FLORIDA BILL TEXT

VERSION: Engrossed

 May 05, 2005
Pickens; Cannon; Carroll; Goodlette; Grimsley; Homan; Murzin; Stargel

HB 1019
A bill to be entitled

An act relating to asbestos and silica claims; providing a short title; providing purposes; providing definitions; requiring physical impairment as an essential element of a claim; providing criteria for prima facie evidence of physical impairment for claims and certain actions; providing exceptions; providing additional requirements for evidence relating to physical impairment; specifying absence of certain presumptions at trial; providing procedures for claims and certain actions; providing for venue; providing for preliminary proceedings; requiring asbestos and silica claims to include certain information; specifying certain limitation periods for certain claims; specifying distinct causes of action for certain conditions; limiting damages under certain circumstances; prohibiting a general release from liability; prohibiting award of punitive damages; providing for collateral source payments; specifying liability rules applicable to certain persons; providing for construction; providing severability; providing application to certain civil actions; providing an effective date. WHEREAS, asbestos is a mineral that was widely used before the mid 1970's for insulation, fireproofing, and other purposes, and WHEREAS, millions of American workers and others were exposed to asbestos, especially during and after World War II and before the advent of regulation by the Occupational Safety and Health Administration in the early 1970's, and WHEREAS, long-term exposure to asbestos has been associated with various types of cancer, including mesothelioma and lung cancer, as well as such nonmalignant conditions as asbestosis, pleural plaques, and diffuse pleural thickening, and WHEREAS, the diseases caused by asbestos often have long latency periods, and WHEREAS, although the use of asbestos has dramatically declined since the 1970's and workplace exposures have been regulated since 1971 by the Occupational Safety and Health Administration, past exposures will continue to result in significant claims of death and disability as a result of such exposure, and WHEREAS, exposure to asbestos has created a flood of litigation in state and federal courts that the United States Supreme Court in Ortiz v. Fibreboard Corporation, 119 S. Ct. 2295, 2302 (1999), has characterized as an 'elephantine mass' of cases that 'defies customary judicial administration,' and WHEREAS, asbestos personal injury litigation can be unfair and inefficient, imposing a severe burden on litigants and taxpayers alike, and WHEREAS, the inefficiencies and societal costs of asbestos litigation have been well documented in reports such as the RAND Institutes study on Asbestos Litigation Costs and Compensation, the study of Joseph E. Stiglitz on The Impact of Asbestos Liabilities on Workers in Bankrupt Firms, Dr. Joseph Gitlin's report from Johns Hopkins Medical School on Comparison of B Readers' Interpretations of Chest Radiographs for Asbestos Related Changes, and the Report to the House of Delegates from the American Bar Association Commission on Asbestos Litigation, and WHEREAS, the extraordinary volume of nonmalignant asbestos cases continues to strain

              ©  2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

2005 FL H.B. 1019 (NS)                                                Page 2
 2005 Florida House Bill No. 1019, Florida One Hundred Seventh Regular Session
 (FULL TEXT - NETSCAN)

state courts, and WHEREAS, the vast majority of asbestos claims are filed by
individuals who allege they have been exposed to asbestos and who may have
some physical sign of exposure but who suffer no present asbestos-related
impairment, and WHEREAS, the cost of compensating exposed individuals who
are not sick jeopardizes the ability of defendants to compensate people with
cancer and other serious asbestos-related diseases, now and in the future,
and WHEREAS, the cost of compensating exposed individuals who are not sick
threatens the savings, retirement benefits, and jobs of defendants' current
and retired employees and adversely affects the communities in which these
defendants operate, and WHEREAS, the crush of asbestos litigation has been
costly to employers, employees, litigants, and the court system, and
WHEREAS, in 1982, the Johns-Manville Corporation, the nation's largest
single supplier of insulation products containing asbestos, declared
bankruptcy due to the burden of the asbestos litigation, and WHEREAS, since
1982, more than 70 other companies have declared bankruptcy due to the
burden of asbestos litigation, and WHEREAS, estimates show that between
60,000 and 128,000 American workers already have lost their jobs as a result
of asbestos-related bankruptcies and that the total number of jobs that will
be lost due to asbestos-related bankruptcies will eventually reach 432,000,
and WHEREAS, each worker who loses his or her job due to an asbestos-related
bankruptcy loses between $25,000 and $50,000 in wages over his or her career
and loses 25 percent or more of the value of his or her retirement plan, and
WHEREAS, asbestos litigation is estimated to have cost over $54 billion,
with well over half of this expense going to attorney's fees and other
litigation costs, and WHEREAS, the seriously ill too often find that the
value of their recovery is substantially reduced due to defendant
bankruptcies and the inefficiency of the litigation process, and WHEREAS,
silica is a naturally occurring mineral, and WHEREAS, the Earth's crust is
over 90 percent silica, and crystalline silica dust is the primary component
of sand, quartz, and granite, and WHEREAS, silica-related illness, including
silicosis, can occur when tiny silica particles are inhaled, and WHEREAS,
silicosis was recognized as an occupational disease many years ago, and
WHEREAS, the American Foundrymen's Society has distributed literature for
more than 100 years to its members warning of the dangers of silica
exposure, and WHEREAS, the number of new lawsuits alleging silica-related
disease being filed each year began to rise precipitously in recent years,
and WHEREAS, silica claims, like asbestos claims, often arise when an
individual is identified as having markings on his or her lungs that are
possibly consistent with silica exposure but the individual has no
functional or physical impairment from any silica-related disease, and
WHEREAS, the Legislature finds that an overpowering public necessity
requires it to act to prevent a silica-based litigation crisis, and WHEREAS,
concerns about statutes of limitations may prompt claimants who have been
exposed to asbestos or silica but who do not have any current injury to
bring premature lawsuits in order to protect against losing their rights to
future compensation should they become impaired, and WHEREAS,
consolidations, joinders, and similar procedures to which some courts have
resorted in order to deal with the mass of asbestos and silica cases can
undermine the appropriate functioning of the judicial process and further
encourage the filing of thousands of cases by exposed individuals who are
not sick and who may never become sick, and WHEREAS, punitive damage awards
unfairly divert the resources of defendants from compensating genuinely
impaired claimants and, given the lengthy history of asbestos and silica
litigation and the regulatory and other restrictions on the use of asbestos
and silica-containing products in the workplace, the legal justification for
such awards, punishment, and deterrence is either inapplicable or
inappropriate, and WHEREAS, the Legislature finds that there is an
overpowering public necessity to defer the claims of exposed individuals who

             ©  2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

```
2005 FL H.B. 1019 (NS)                                                  Page 3
 2005 Florida House Bill No. 1019, Florida One Hundred Seventh Regular Session
 (FULL TEXT - NETSCAN)
```

are not sick in order to preserve, now and for the future, defendants' ability to compensate people who develop cancer and other serious asbestos-related and silica-related injuries and to safeguard the jobs, benefits, and savings of workers in this state and the well-being of the economy of this state, NOW, THEREFORE,

                              TEXT:

Be It Enacted by the Legislature of the State of Florida:

Section 1. Short title.--This act may be cited as the 'Asbestos and Silica Compensation Fairness Act'.

Section 2. Purpose.--It is the purpose of this act to:

(1) Give priority to true victims of asbestos and silica, claimants who can demonstrate actual physical impairment caused by exposure to asbestos or silica;

(2) Fully preserve the rights of claimants who were exposed to asbestos or silica to pursue compensation if they become impaired in the future as a result of the exposure;

(3) Enhance the ability of the judicial system to supervise and control asbestos and silica litigation; and

(4) Conserve the scarce resources of the defendants to allow compensation to cancer victims and others who are physically impaired by exposure to asbestos or silica while securing the right to similar compensation for those who may suffer physical impairment in the future.

Section 3. Definitions.--As used in this act, the term:

(1) 'AMA Guides to the Evaluation of Permanent Impairment' means the American Medical Association's Guides to the Evaluation of Permanent Impairment.

(2) 'Asbestos' includes all minerals defined as 'asbestos' in 29 C.F.R. section 1910, as amended.

(3) 'Asbestos claim' means a claim for damages or other civil or equitable relief presented in a civil action, arising out of, based on, or related to the health effects of exposure to asbestos, including loss of consortium, wrongful death, and any other derivative claim made by or on behalf of an exposed person or a representative, spouse, parent, child, or other relative of an exposed person. The term does not include claims for benefits under a workers' compensation law or veterans' benefits program, or claims brought by a person as a subrogee by virtue of the payment of benefits under a workers' compensation law.

(4) 'Asbestosis' means bilateral diffuse interstitial fibrosis of the lungs caused by inhalation of asbestos fibers.

(5) 'Board-certified in internal medicine' means a physician who is certified by the American Board of Internal Medicine or the American Osteopathic Board of Internal Medicine.

(6) 'Board-certified in occupational medicine' means a physician who is

              ©  2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

Case 1:04-cv-01560-JFC    Document 18-7    Filed 05/26/2005    Page 5 of 16

2005 FL H.B. 1019 (NS)                                                    Page 4
 2005 Florida House Bill No. 1019, Florida One Hundred Seventh Regular Session
 (FULL TEXT - NETSCAN)

certified in the subspecialty of occupational medicine by the American Board of Preventive Medicine or the American Osteopathic Board of Preventive Medicine.

(7) 'Board-certified in oncology' means a physician who is certified in the subspecialty of medical oncology by the American Board of Internal Medicine or the American Osteopathic Board of Internal Medicine.

(8) 'Board-certified in pathology' means a physician who holds primary certification in anatomic pathology or clinical pathology from the American Board of Pathology or the American Osteopathic Board of Internal Medicine and whose professional practice:

(a) Is principally in the field of pathology; and

(b) Involves regular evaluation of pathology materials obtained from surgical or postmortem specimens.

(9) 'Board-certified in pulmonary medicine' means a physician who is certified in the subspecialty of pulmonary medicine by the American Board of Internal Medicine or the American Osteopathic Board of Internal Medicine.

(10) 'Bankruptcy proceeding' means a case brought under Title 11, United State Code, or any related proceeding as provided in section 157 of Title 28, United States Code.

(11) 'Certified B-reader' means an individual qualified as a 'final' or 'B-reader' under 42 C.F.R. section 37.51(b), as amended.

(12) 'Civil action' means all suits or claims of a civil nature in court, whether cognizable as cases at law or in equity or in admiralty. The term does not include an action relating to a workers' compensation law, or a proceeding for benefits under a veterans' benefits program.

(13) 'Exposed person' means a person whose exposure to asbestos or to asbestos-containing products is the basis for an asbestos claim.

(14) 'FEV1' means forced expiratory volume in the first second, which is the maximal volume of air expelled in one second during performance of simple spirometric tests.

(15) 'FVC' means forced vital capacity, which is the maximal volume of air expired with maximum effort from a position of full inspiration.

(16) 'ILO Scale' means the system for the classification of chest x-rays set forth in the International Labour Office's Guidelines for the Use of ILO International Classification of Radiographs of Pneumoconioses.

(17) 'Lung cancer' means a malignant tumor in which the primary site of origin of the cancer is inside of the lungs, but the term does not include an asbestos claim based upon mesothelioma.

(18) 'Mesothelioma' means a malignant tumor with a primary site in the pleura or the peritoneum, which has been diagnosed by a board-certified pathologist, using standardized and accepted criteria of microscopic morphology or appropriate staining techniques.

(19) 'Nonmalignant condition' means any condition that can be caused by

            ©  2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

2005 FL H.B. 1019 (NS)                                                    Page 5
 2005 Florida House Bill No. 1019, Florida One Hundred Seventh Regular Session
 (FULL TEXT - NETSCAN)

asbestos or silica other than a diagnosed cancer.

(20) 'Nonsmoker' means the exposed person has not smoked cigarettes or used other tobacco products on a consistent and frequent basis within the last 15 years.

(21) 'Pathological evidence of asbestosis' means a statement by a board-certified pathologist that more than one representative section of lung tissue uninvolved with any other disease process demonstrates a pattern of peribronchiolar or parenchymal scarring in the presence of characteristic asbestos bodies and that there is no other more likely explanation for the presence of the fibrosis.

(22) 'Predicted lower limit of normal' for any test means the fifth percentile of healthy populations based on age, height, and gender, as referenced in the AMA Guides to the Evaluation of Permanent Impairment.

(23) 'Qualified physician' means a medical doctor, who:

(a) Is a board-certified pathologist licensed to practice and actively practices in this country who performed services requested or authorized by a physician who:

1. Has conducted a physical examination of the exposed person or, if the person is deceased, has reviewed all available records relating to the exposed person's medical condition;

2. Is actually treating or treated the exposed person, and has or had a doctor-patient relationship with the person; and 3. Is licensed to practice and actively practices in this country; or

(b) Is a board-certified oncologist, pulmonary specialist, or specialist in occupational and environmental medicine who:

1. Has conducted a physical examination of the exposed person or, if the person is deceased, has reviewed all available records relating to the exposed person's medical condition;

2. Is actually treating or treated the exposed person, and has or had a doctor-patient relationship with the person; and 3. Is licensed to practice and actively practices in this country.

(24) 'Radiological evidence of asbestosis' means a quality 1 chest x-ray under the ILO System of classification (in a death case where no pathology is available, the necessary radiologic findings may be made with a quality 2 film if a quality 1 film is not available) showing small, irregular opacities (s, t, u) graded by a certified B-reader as at least 1/1 on the ILO scale.

(25) 'Radiological evidence of diffuse pleural thickening' means a quality 1 chest x-ray under the ILO System of classification (in a death case where no pathology is available, the necessary radiologic findings may be made with a quality 2 film if a quality 1 film is not available) showing bilateral pleural thickening of at least B2 on the ILO scale and blunting of at least one costophrenic angle.

(26) 'Silica' means a respirable crystalline form of silicon dioxide, including, but not limited to, alpha, quartz, cristobalite, and trydmite.

             © 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

Case 1:04-cv-01560-JFC   Document 18-7   Filed 05/26/2005   Page 7 of 16

2005 FL H.B. 1019 (NS)                                                    Page 6
 2005 Florida House Bill No. 1019, Florida One Hundred Seventh Regular Session
 (FULL TEXT - NETSCAN)

(27) 'Silica claim' means a claim for damages or other civil or equitable relief presented in a civil action, arising out of, based on, or related to the health effects of exposure to silica, including loss of consortium, wrongful death, and any other derivative claim made by or on behalf of an exposed person or a representative, spouse, parent, child, or other relative of an exposed person. The term does not include claims for benefits under a workers' compensation law or veterans' benefits program, or claims brought by a person as a subrogee by virtue of the payment of benefits under a workers' compensation law.

(28) 'Silicosis' means nodular interstitial fibrosis of the lungs caused by inhalation of silica.

(29) 'Smoker' means a person who has smoked cigarettes or used other tobacco products on a consistent and frequent basis within the last 15 years.

(30) 'Substantial occupational exposure' means employment for an extended period of time in industries and occupations in which, for a substantial portion of a normal work year for that occupation, the exposed person did any of the following:

(a) Handled raw asbestos fibers;

(b) Fabricated asbestos-containing products so that the person was exposed to raw asbestos fibers in the fabrication process;

(c) Altered, repaired, or otherwise worked with an asbestos-containing product in a manner that exposed the person on a regular basis to asbestos fibers; or

(d) Worked in close proximity to other persons engaged in any of the activities described in paragraphs (a)-(c) in a manner that exposed the person on a regular basis to asbestos fibers.

(31) 'Veterans benefits program' means a program for benefits in connection with military service administered by the Veterans' Administration under Title 38, United States Code.

(32) 'Workers' compensation law' means a law respecting a program administered by this state or the United States to provide benefits, funded by a responsible employer or its insurance carrier, for occupational diseases or injuries or for disability or death caused by occupational diseases or injuries. The term includes the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. sections 901-944, 948-950, and the Federal Employees Compensation Act, chapter 81 of Title 5, United States Code, but does not include the Act of April 22, 1908, the Federal Employers Liability Act, 45 U.S.C. 51 et seq.

Section 4. Physical impairment.--

(1) Physical impairment of the exposed person, to which asbestos or silica exposure was a substantial contributing factor, is an essential element of an asbestos or silica claim.

(2) A person may not file or maintain a civil action alleging a nonmalignant asbestos claim in the absence of a prima facie showing of physical impairment as a result of a medical condition to which exposure to asbestos

           © 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

2005 FL H.B. 1019 (NS)                                                         Page 7
 2005 Florida House Bill No. 1019, Florida One Hundred Seventh Regular Session
 (FULL TEXT - NETSCAN)

was a substantial contributing factor. The prima facie showing must include all of the following requirements:

(a) Evidence verifying that a qualified physician, or someone working under the direct supervision and control of a qualified physician, has taken a detailed occupational and exposure history of the exposed person or, if the person is deceased, from a person who is knowledgeable about the exposures that form the basis of the nonmalignant asbestos claim, including:

1. Identification of all of the exposed person's principal places of employment and exposures to airborne contaminants; and 2. Whether each place of employment involved exposures to airborne contaminants, including but not limited to asbestos fibers or other disease causing dusts, that can cause pulmonary impairment and the nature, duration and level of any such exposure.

(b) Evidence verifying that a qualified physician, or someone working under the direct supervision and control of a qualified physician, has taken detailed medical and smoking history, including a thorough review of the exposed person's past and present medical problems and their most probable cause.

(c) Evidence sufficient to demonstrate that at least 10 years have elapsed between the date of first exposure to asbestos and the date the diagnosis is made.

(d) A determination by a qualified physician, on the basis of a medical examination and pulmonary function testing, that the exposed person has a permanent respiratory impairment rating of at least Class 2 as defined by and evaluated pursuant to the AMA Guides to the Evaluation of Permanent Impairment.

(e) A diagnosis by a qualified physician of asbestosis or diffuse pleural thickening, based at a minimum on radiological or pathological evidence of asbestosis or radiological evidence of diffuse pleural thickening.

(f) A determination by a qualified physician that asbestosis or diffuse pleural thickening, rather than chronic obstructive pulmonary disease, is a substantial contributing factor to the exposed person's physical impairment, based at a minimum on a determination that the exposed person has:

1. Total lung capacity, by plethysmography or timed gas dilution, below the predicted lower limit of normal;

2. Forced vital capacity below the lower limit of normal and a ratio of FEV1 to FVC that is equal to or greater than the predicted lower limit of normal; or

3. A chest x-ray showing small, irregular opacities (s, t, u) graded by a certified B-reader at least 2/1 on the ILO scale.

(g) If the exposed person meets the requirements of paragraphs (a), (b), and (c), and if a qualified physician determines that the exposed person has a physical impairment, as demonstrated by meeting the criteria set forth in paragraphs (d) and (f)1. or 2., but the exposed person's chest x-ray does not demonstrate radiological evidence of asbestosis, the exposed person may meet the criteria of paragraph (e) if his or her chest x-ray is graded by a certified B-reader as at least 1/0 and a qualified physician, relying on

©  2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

2005 FL H.B. 1019 (NS)                                                          Page 8
 2005 Florida House Bill No. 1019, Florida One Hundred Seventh Regular Session
 (FULL TEXT - NETSCAN)

high-resolution computed tomography, determines to a reasonable degree of medical certainty that the exposed person has asbestosis and forms the conclusion set forth in paragraph (h).

(h) A conclusion by a qualified physician that the exposed person's medical findings and impairment were not more probably the result of causes other than the asbestos exposure revealed by the exposed person's employment and medical history. A diagnosis that states that the medical findings and impairment are 'consistent with' or 'compatible with' exposure to asbestos does not meet the requirements of this subsection.

(i) If a plaintiff files a civil action alleging a nonmalignant asbestos claim, and that plaintiff alleges that his or her exposure to asbestos was the result of extended contact with another exposed person who, if the civil action had been filed by the other exposed person, would have met the requirements of paragraph (a) and the plaintiff alleges that he or she had extended contact with the exposed person during the time period in which that exposed person met the requirements of paragraph (a), the plaintiff has satisfied the requirements of paragraph (a). The plaintiff in such a civil action must individually satisfy the requirements of paragraphs (b), (c),

(d), (e), (f), (g), and (h).

(3) A person who is a smoker may not file or maintain a civil action alleging an asbestos claim which is based upon cancer of the lung, larynx, pharynx, or esophagus in the absence of a prima facie showing that includes all of the following requirements:

(a) A diagnosis by a qualified physician who is board- certified in pathology, pulmonary medicine, or oncology, as appropriate for the type of cancer claimed, of a primary cancer of the lung, larynx, pharynx, or esophagus, and that exposure to asbestos was a substantial contributing factor to the condition.

(b) Evidence sufficient to demonstrate that at least 10 years have elapsed between the date of first exposure to asbestos and the date of diagnosis of the cancer.

(c) Radiological or pathological evidence of asbestosis or diffuse pleural thickening or a qualified physician's diagnosis of asbestosis based on a chest x-ray graded by a certified B- reader as at least 1/0 on the ILO scale and high-resolution computed tomography supporting the diagnosis of asbestosis to a reasonable degree of medical certainty.

(d) Evidence of the exposed person's substantial occupational exposure to asbestos. If a plaintiff files a civil action alleging an asbestos-related claim based on cancer of the lung, larynx, pharynx, or esophagus, and that plaintiff alleges that his or her exposure to asbestos was the result of extended contact with another exposed person who, if the civil action had been filed by the other exposed person, would have met the substantial occupational exposure requirement of this subsection, and the plaintiff alleges that he or she had extended contact with the exposed person during the time period in which that exposed person met the substantial occupational exposure requirement of this subsection, the plaintiff has satisfied the requirements of this paragraph. The plaintiff in such a civil action must individually satisfy the requirements of this subsection.

(e) If the exposed person is deceased, the qualified physician, or someone

©  2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

Case 1:04-cv-01560-JFC   Document 18-7   Filed 05/26/2005   Page 10 of 16

2005 FL H.B. 1019 (NS)                                                Page 9
 2005 Florida House Bill No. 1019, Florida One Hundred Seventh Regular Session
 (FULL TEXT - NETSCAN)

working under the direct supervision and control of a qualified physician, may obtain the evidence required in paragraph (b) and paragraph (d) from the person most knowledgeable about the alleged exposures that form the basis of the asbestos claim.

(f) A conclusion by a qualified physician that the exposed person's medical findings and impairment were not more probably the result of causes other than the asbestos exposure revealed by the exposed person's employment and medical history. A conclusion that the medical findings and impairment are 'consistent with' or 'compatible with' exposure to asbestos does not meet the requirements of this subsection.

(4) In a civil action alleging an asbestos claim by a nonsmoker based on cancer of the lung, larynx, pharynx, or esophagus, a prima facie showing of an impairment due to asbestos exposure is not required.

(5) A person may not file or maintain a civil action alleging an asbestos claim which is based on cancer of the colon, rectum, or stomach in the absence of a prima facie showing that includes all of the following requirements:

(a) A diagnosis by a qualified physician who is board- certified in pathology, pulmonary medicine, or oncology, as appropriate for the type of cancer claimed, of cancer of the colon, rectum, or stomach, and that exposure to asbestos was a substantial contributing factor to the condition.

(b) Evidence sufficient to demonstrate that at least 10 years have elapsed between the date of first exposure to asbestos and the date of diagnosis of the cancer.

(c)1.a. Radiological or pathological evidence of asbestosis or diffuse pleural thickening or a qualified physician's diagnosis of asbestosis based on a chest x-ray graded by a certified B-reader as at least 1/0 on the ILO scale and high-resolution computed tomography supporting the diagnosis of asbestosis to a reasonable degree of medical certainty; or

b. Evidence of the exposed person's substantial occupational exposure to asbestos. If a plaintiff files a civil action alleging an asbestos-related claim based on cancer of the colon, rectum, or stomach, and that plaintiff alleges that his or her exposure to asbestos was the result of extended contact with another exposed person who, if the civil action had been filed by the other exposed person, would have met the substantial occupational exposure requirement of this subsection, and the plaintiff alleges that he or she had extended contact with the exposed person during the time period in which that exposed person met the substantial occupational exposure requirement of this subsection, the plaintiff has satisfied the requirements of this sub-subparagraph. The plaintiff in such a civil action must individually satisfy the requirements of this subsection.

2. In the case of an exposed person who is a smoker, the criteria in sub-subparagraphs 1.a. and b. must be met.

3. If the exposed person is deceased, the qualified physician, or someone working under the direct supervision and control of a qualified physician, may obtain the evidence required in sub-subparagraph 1.b. and paragraph (b) from the person most knowledgeable about the alleged exposures that form the basis of the asbestos claim.

         ©  2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

2005 FL H.B. 1019 (NS) Page 10
 2005 Florida House Bill No. 1019, Florida One Hundred Seventh Regular Session
 (FULL TEXT - NETSCAN)

(d) A conclusion by a qualified physician that the exposed person's medical findings and impairment were not more probably the result of causes other than the asbestos exposure revealed by the exposed person's employment and medical history. A conclusion that the medical findings and impairment are 'consistent with' or 'compatible with' exposure to asbestos does not meet the requirements of this subsection.

(6) In a civil action alleging an asbestos claim based upon mesothelioma a prima facie showing of an impairment due to asbestos exposure is not required.

(7) A person may not file or maintain a civil action alleging a silicosis claim in the absence of a prima facie showing of physical impairment as a result of a medical condition to which exposure to silica was a substantial contributing factor. The prima facie showing must include all of the following requirements:

(a) Evidence verifying that a qualified physician, or someone working under the direct supervision and control of a qualified physician, has taken a detailed occupational and exposure history of the exposed person or, if the person is deceased, from a person who is knowledgeable about the exposures that form the basis of the nonmalignant silica claim, including:

1. All of the exposed person's principal places of employment and exposures to airborne contaminants; and 2. Whether each place of employment involved exposures to airborne contaminants, including but not limited to silica particles or other disease causing dusts, that can cause pulmonary impairment and the nature, duration, and level of any such exposure.

(b) Evidence verifying that a qualified physician, or someone working under the direct supervision and control of a qualified physician, has taken detailed medical and smoking history, including a thorough review of the exposed person's past and present medical problems and their most probable cause, and verifying a sufficient latency period for the applicable stage of silicosis.

(c) A determination by a qualified physician, on the basis of a medical examination and pulmonary function testing, that the exposed person has a permanent respiratory impairment rating of at least Class 2 as defined by and evaluated pursuant to the AMA Guides to the Evaluation of Permanent Impairment.

(d) A determination by a qualified physician that the exposed person has:

1. A quality 1 chest x-ray under the ILO System of classification and that the x-ray has been read by a certified B-reader as showing, according to the ILO System of classification, bilateral nodular opacities (p, q, or r) occurring primarily in the upper lung fields, graded 1/1 or higher; or

2. Pathological demonstration of classic silicotic nodules exceeding one centimeter in diameter as published in 112 Archive of Pathology and Laboratory Medicine 7 (July 1988). In a death case where no pathology is available, the necessary radiologic findings may be made with a quality 2 film if a quality 1 film is not available.

(e) A conclusion by a qualified physician that the exposed person's medical findings and impairment were not more probably the result of causes other than silica exposure revealed by the exposed person's employment and medical

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

2005 FL H.B. 1019 (NS)                                                    Page 11
 2005 Florida House Bill No. 1019, Florida One Hundred Seventh Regular Session
 (FULL TEXT - NETSCAN)

history. A conclusion that the medical findings and impairment are 'consistent with' or 'compatible with' exposure to silica does not meet the requirements of this subsection.

(8) A person may not file or maintain a civil action alleging a silica claim other than as provided in subsection

(7), in the absence of a prima facie showing that includes all of the following requirements:

(a) A report by a qualified physician who is:

1. Board-certified in pulmonary medicine, internal medicine, oncology, or pathology stating a diagnosis of the exposed person of silica-related lung cancer and stating that, to a reasonable degree of medical probability, exposure to silica was a substantial contributing factor to the diagnosed lung cancer; or

2. Board-certified in pulmonary medicine, internal medicine, or pathology stating a diagnosis of the exposed person of silica-related progressive massive fibrosis or acute silicoproteinosis, or silicosis complicated by documented tuberculosis.

(b) Evidence verifying that a qualified physician, or someone working under the direct supervision and control of a qualified physician, has taken a detailed occupational and exposure history of the exposed person or, if the person is deceased, from a person who is knowledgeable about the exposures that form the basis of the nonmalignant silica claim, including:

1. All of the exposed person's principal places of employment and exposures to airborne contaminants; and 2. Whether each place of employment involved exposures to airborne contaminants, including but not limited to, silica particles or other disease causing dusts, that can cause pulmonary impairment and the nature, duration and level of any such exposure.

(c) Evidence verifying that a qualified physician, or someone working under the direct supervision and control of a qualified physician, has taken detailed medical and smoking history, including a thorough review of the exposed person's past and present medical problems and their most probable cause;

(d) A determination by a qualified physician that the exposed person has:

1. A quality 1 chest x-ray under the ILO System of classification and that the x-ray has been read by a certified B-reader as showing, according to the ILO System of classification, bilateral nodular opacities (p, q, or r) occurring primarily in the upper lung fields, graded 1/1 or higher; or

2. Pathological demonstration of classic silicotic nodules exceeding one centimeter in diameter as published in 112 Archive of Pathology and Laboratory Medicine 7 (July 1988). In a death case where no pathology is available, the necessary radiologic findings may be made with a quality 2 film if a quality 1 film is not available.

(e) A conclusion by a qualified physician that the exposed person's medical findings and impairment were not more probably the result of causes other than silica exposure revealed by the exposed person's employment and medical history. A conclusion that the medical findings and impairment are

©  2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

'consistent with' or 'compatible with' exposure to silica does not meet the requirements of this subsection.

(9) Evidence relating to physical impairment under this section, including pulmonary function testing and diffusing studies, must:

(a) Comply with the technical recommendations for examinations, testing procedures, quality assurance, quality control, and equipment of the AMA Guides to the Evaluation of Permanent Impairment, as set forth in 2d C.F.R. Part 404, subpart. P. Appl., part A, section 3.00 E. and F., and the interpretive standards, set forth in the official statement of the American Thoracic Society entitled 'lung function testing: selection of reference values and interpretive strategies' as published in American Review of Respiratory Disease. 1991:

144:1202-1218;

(b) Not be obtained through testing or examinations that violate any applicable law, regulation, licensing requirement, or medical code of practice; and

(c) Not be obtained under the condition that the exposed person retain legal services in exchange for the examination, test, or screening.

(10) Presentation of prima facie evidence meeting the requirements of subsection (2), (3), (5), or (6) of this section may not:

(a) Result in any presumption at trial that the exposed person is impaired by an asbestos-related or silica-related condition;

(b) Be conclusive as to the liability of any defendant; and

(c) Be admissible at trial.

Section 5. Claimant proceedings.--

(1) A civil action alleging an asbestos or silica claim may be brought in the courts of this state if the plaintiff is domiciled in this state or the exposure to asbestos or silica that is a substantial contributing factor to the physical impairment of the plaintiff on which the claim is based occurred in this state.

(2) A plaintiff in a civil action alleging an asbestos or silica claim must include with the complaint or other initial pleading a written report and supporting test results constituting prima facie evidence of the exposed person's asbestos-related or silica-related physical impairment meeting the requirements of subsection (2), subsection (3), subsection

(5), or subsection (6) of section 4. For any asbestos or silica claim pending on the effective date of this act, the plaintiff must file the report and supporting test results at least 30 days before setting a date for trial. The defendant must be afforded a reasonable opportunity to challenge the adequacy of the proffered prima facie evidence of asbestos-related impairment. The claim of the plaintiff shall be dismissed without prejudice upon a finding of failure to make the required prima facie showing.

(3) All asbestos claims and silica claims filed in this state on or after

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

the effective date of this act must include, in addition to the written report described in subsection (3) of section 5 and the information required by subsection (2) of section 7, a sworn information form containing the following information:

(a) The claimant's name, address, date of birth, and marital status;

(b) If the claimant alleges exposure to asbestos or silica through the testimony of another person or alleges other than direct or bystander exposure to a product, the name, address, date of birth, marital status, for each person by which the claimant alleges exposure, hereinafter the 'index person,' and the claimant's relationship to each such person;

(c) The specific location of each alleged exposure;

(d) The beginning and ending dates of each alleged exposure as to each asbestos product or silica product for each location at which exposure allegedly took place for the plaintiff and each index person;

(e) The occupation and name of the employer of the exposed person at the time of each alleged exposure;

(f) The specific condition related to asbestos or silica claimed to exist; and

(g) Any supporting documentation of the condition claimed to exist.

Section 6. Statute of limitations; two-disease rule.--

(1) Notwithstanding any other law, with respect to any asbestos or silica claim not barred as of the effective date of this act, the limitations period does not begin to run until the exposed person discovers, or through the exercise of reasonable diligence should have discovered, that he or she is physically impaired by an asbestos-related or silica-related condition.

(2) An asbestos or silica claim arising out of a nonmalignant condition shall be a distinct cause of action from an asbestos or silica claim relating to the same exposed person arising out of asbestos-related or silica-related cancer. Damages may not be awarded for fear or risk of cancer in a civil action asserting an asbestos or silica claim.

(3) A settlement of a nonmalignant asbestos or silica claim concluded after the effective date of this act may not require, as a condition of settlement, the release of any future claim for asbestos-related or silica-related cancer.

Section 7. Scope of liability; damages.--

(1) Punitive damages may not be awarded in any civil action alleging an asbestos or silica claim.

(2) At the time a complaint is filed in a civil action alleging an asbestos or silica claim, the plaintiff must file a verified written report with the court which discloses the total amount of any collateral source payments received, including payments that the plaintiff will receive in the future, as a result of settlements or judgments based upon the same claim. For any asbestos or silica claim pending on the effective date of this act, the plaintiff shall file a verified written report within 60 days after the

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

2005 FL H.B. 1019 (NS)                                                    Page 14
 2005 Florida House Bill No. 1019, Florida One Hundred Seventh Regular Session
 (FULL TEXT - NETSCAN)

effective date of this act, or at least 30 days before trial. Further, the plaintiff must update the reports on a regular basis during the course of the proceeding until a final judgment is entered in the case. The court shall permit setoff, based on the collateral source payment information provided, in accordance with the laws of this state as of the effective date of this act.

Section 8. Liability rules applicable to protect sellers, renters, and lessors.--

(1)(a) In a civil action alleging an asbestos or silica claim, a product seller other than a manufacturer is liable to a plaintiff only if the plaintiff establishes that:

1.a. The product that allegedly caused the harm that is the subject of the complaint was sold, rented, or leased by the product seller; b. The product seller failed to exercise reasonable care with respect to the product; and c. The failure to exercise reasonable care was a proximate cause of the harm to the exposed person;

2.a. The product seller made an express warranty applicable to the product that allegedly caused the harm that is the subject of the complaint, independent of any express warranty made by the manufacturer as to the same product; b. The product failed to conform to the warranty; and c. The failure of the product to conform to the warranty caused the harm to the exposed person; or

3.a. The product seller engaged in intentional wrongdoing, as determined under the law of this state; and b. The intentional wrongdoing caused the harm that is the subject of the complaint.

(b) For the purpose of sub-subparagraph 1.b., a product seller may not be considered to have failed to exercise reasonable care with respect to a product based upon an alleged failure to inspect the product, if:

1. The failure occurred because there was no reasonable opportunity to inspect the product; or

2. The inspection, in the exercise of reasonable care, would not have revealed the aspect of the product which allegedly caused the exposed person's impairment.

(2) In a civil action alleging an asbestos or silica claim, a person engaged in the business of renting or leasing a product is not liable for the tortious act of another solely by reason of ownership of that product.

Section 9. Miscellaneous provisions.--

(1) This act does not affect the scope or operation of any workers' compensation law or veterans' benefit program, affect the exclusive remedy or subrogation provisions of the law, or authorize any lawsuit which is barred by law.

(2) Nothing in this act is intended to, and nothing in this act shall be interpreted to:

(a) Affect the rights of any party in bankruptcy proceedings; or

              © 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

```
2005 FL H.B. 1019 (NS)                                                Page 15
 2005 Florida House Bill No. 1019, Florida One Hundred Seventh Regular Session
 (FULL TEXT - NETSCAN)
```

(b) Affect the ability of any person who is able to make a showing that the person satisfies the claim criteria for compensable claims or demands under a trust established under a plan of reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. Chapter 11, to make a claim or demand against that trust.

(3) It is the intent of the Legislature that this law render the utmost comity and respect to the constitutional prerogatives of the judiciary of this state, and nothing in this act should be construed as any effort to impinge upon those prerogatives. To that end, if the Florida Supreme Court enters a final judgment concluding or declaring that any provision of this act improperly encroaches on the authority of the court to adopt the rules of practice and procedure in the courts of this state, the Legislature intends that any such provision be construed as a request for a rule change under Section 2, Article V, of the State Constitution and not as a mandatory legislative directive.

(4) This act may not be interpreted to prevent any person from bringing or maintaining an asbestos claim based on nonoccupational exposure where such person would be otherwise able to bring or maintain a claim under this act.

(5) If any provision of this act or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or application of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are declared severable.

Section 10. This act shall take effect July 1, 2005. Because the act expressly preserves the right of all injured persons to recover full compensatory damages for their loss, it does not impair vested rights. In addition, because it enhances the ability of the most seriously ill to receive a prompt recovery, it is remedial in nature. Therefore, the act shall apply to any civil action asserting an asbestos claim in which trial has not commenced as of the effective date of this act. CODING: Words ~~stricken~~ are deletions; words underlined are additions.

2005 FL H.B. 1019 (NS)

END OF DOCUMENT

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)