**19**

Westlaw.

## GEORGIA 2005 SESSION LAWS
## 2005 REGULAR SESSION

Copr. © 2005 Thomson/West

Additions are indicated by ▮▮▮; deletions by
~~Text~~.
Vetoed provisions within tabular material are not displayed.

Act 29
H.B. No. 416
TORTS--ASBESTOS AND SILICA CLAIMS

AN ACT To amend Title 51 of the Official Code of Georgia Annotated, relating to torts, so as to change provisions relating to asbestos claims and silica claims; to provide for applicability; to provide definitions; to provide that physical impairment shall be an essential element of an asbestos claim or a silica claim; to provide for a limitations period for filing a claim; to provide for dismissal of pending claims under certain conditions; to provide for general rules applicable to new filings; to provide for forum non conveniens; to provide for venue; to provide for joinder and consolidation of claims; to provide for other matters relative to the foregoing; to provide for severability; to provide an effective date; to repeal conflicting laws; and for other purposes.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:

SECTION 1.

Title 51 of the Official Code of Georgia Annotated, relating to torts, is amended by inserting at the end thereof a new Chapter 14 to read as follows:

"CHAPTER 14

<< GA ST § 51-14-1 >>

51-14-1.

This chapter applies to any claim defined in this chapter as an asbestos claim or as a silica claim.

<< GA ST § 51-14-2 >>

51-14-2.

As used in this chapter, the term:

(1) 'Asbestos' means chrysotile, amosite, crocidolite, tremolite asbestos, anthophyllite asbestos, actinolite asbestos, and any of these minerals that have been chemically treated or altered, including but not limited to all minerals defined as asbestos in 29 CFR 1910, as amended from time to time.

(2) 'Asbestos claim' means any claim, wherever or whenever made, for damages, losses, indemnification, contribution, loss of consortium, or other relief arising out of, based on, or in any way related to the health effects of exposure to asbestos, including, but not limited to:

(A) Any claim for:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(i) Personal injury or death;

(ii) Mental or emotional injury;

(iii) Risk of disease or other injury; or

(iv) The costs of medical monitoring or surveillance, to the extent such claims are recognized under state law; and

(B) Any claim made by or on behalf of an exposed person or based on that exposed person's exposure to asbestos, including a representative, spouse, parent, child, or other relative of the exposed person.

For purposes of this chapter, 'asbestos claim' shall not mean a claim brought under a workers' compensation law administered by this state to provide benefits, funded by a responsible employer or its insurance carrier, for occupational diseases or injuries or for disability or death caused by occupational diseases or injuries.

(3) 'Asbestosis' means bilateral diffuse interstitial fibrosis of the lungs caused by inhalation of asbestos.

(4) 'Board certified internist' means a qualified physician licensed to practice medicine who has treated or is treating the exposed person or has or had a doctor-patient relationship with the exposed person and who is currently certified by the American Board of Internal Medicine.

(5) 'Board certified pathologist' means a qualified physician licensed to practice medicine who holds primary certification in anatomic pathology or combined anatomic or clinical pathology from the American Board of Pathology and whose professional practice is principally in the field of pathology and involves regular evaluation of pathology materials obtained from surgical or post-mortem specimens.

(6) 'Board certified pulmonologist' means a qualified physician licensed to practice medicine who has treated or is treating the exposed person or has or had a doctor-patient relationship with the exposed person and who is currently certified by the American Board of Internal Medicine in the subspecialty of pulmonary medicine.

(7) 'Certified B-reader' means a qualified physician who has successfully passed the B-reader certification examination for X-ray interpretation sponsored by the National Institute for Occupational Safety and Health and whose certification was current at the time of any readings required by this chapter.

(8) 'Chest X-rays' means films taken in two views (PA and Lateral) and graded quality 1 for reading in accordance with the radiological standards established by the International Labor Office, as interpreted by a certified B-reader.

(9) 'Claimant' means a party seeking recovery of damages for an asbestos claim or silica claim, including the exposed person, any other plaintiff making a claim as a result of the exposed person's exposure to asbestos or silica, counterclaimant, cross-claimant, or third-party plaintiff. If a claim is brought through or on behalf of an estate, the term includes the claimant's decedent; if a claim is brought through or on behalf of a minor or incompetent, the term includes the claimant's parent or guardian.

(10) 'Exposed person' means any person whose exposure to asbestos or silica is the basis for an asbestos claim or a silica claim.

(11) 'FEV-1' means forced expiratory volume in the first second, which is the maximal volume of air expelled in one second during performance of simple spirometric tests.

(12) 'FVC' means forced vital capacity, which is the maximal volume of air expired with maximum effort from a position of full inspiration.

(13) 'ILO system' means the radiological ratings of the International Labor Office set forth in Guidelines for the Use of ILO International Classification of Radiographs of Pneumoconioses, revised edition, as amended from time

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**USG B 0298**

to time by the International Labor Office.

(14) 'Lower limit of normal' means the fifth percentile of healthy populations based on age, height, and gender, as referenced in the American Medical Association's Guides to the Evaluation of Permanent Impairment, fifth edition, as amended from time to time by the American Medical Association.

(15) In the context of an asbestos claim, 'prima-facie evidence of physical impairment' means:

(A) That a board certified pathologist has made a diagnosis of pleural or peritoneal mesothelioma, or a diagnosis of cancer demonstrated by a medical report showing the diagnosis as a primary cancer, and has signed a report certifying to a reasonable degree of medical certainty that exposure to asbestos was a substantial contributing factor to the diagnosed cancer and that it was not more probably the result of causes other than the asbestos exposure revealed by the exposed person's employment and medical histories; or

(B) That a board certified internist, pulmonologist, or pathologist has signed a detailed narrative medical report and diagnosis stating that the exposed person suffers from a nonmalignant disease related to asbestos and that:

(i) Verifies that the doctor signing the detailed narrative medical report and diagnosis or a medical professional employed by and under the direct supervision and control of that doctor has taken:

(I) A detailed occupational and exposure history from the exposed person or, if that person is deceased, from the person most knowledgeable about the exposures that form the basis for the action. The history shall include all of the exposed person's principal employments and his or her exposures to airborne contaminants that can cause pulmonary impairment, including, but not limited to, asbestos, silica, and other disease-causing dusts, and the nature, duration, and level of any such exposure; and

(II) A detailed medical and smoking history that includes a thorough review of the exposed person's past and present medical problems and their most probable cause;

(ii) Sets out the details of the occupational, medical, and smoking histories and verifies that at least 15 years have elapsed between the exposed person's first exposure to asbestos and the time of diagnosis;

(iii) Verifies that the exposed person has:

(I) An ILO quality 1 chest X-ray taken in accordance with all applicable state and federal regulatory standards, and that the X-ray has been read by a certified B-reader according to the ILO system of classification as showing bilateral small irregular opacities (s, t, or u) graded 1/1 or higher or bilateral diffuse pleural thickening graded b2 or higher including blunting of the costophrenic angle; provided, however, that in a death case where no pathology is available, the necessary radiologic findings may be made with a quality 2 film if a quality 1 film is not available; or

(II) Pathological asbestosis graded 1(B) or higher under the criteria published in the Asbestos-Associated Diseases, Special Issue of the <<+ Archives of Pathological and Laboratory Medicine+>>, Volume 106, Number 11, Appendix 3, as amended from time to time;

(iv) Verifies that the exposed person has pulmonary impairment related to asbestos as demonstrated by pulmonary function testing, performed using equipment, methods of calibration, and techniques that meet the criteria incorporated in the American Medical Association's <<+Guides to the Evaluation of Permanent Impairment+>>, fifth edition, and reported as set forth in 20 CFR 404, Subpt. P. App 1, Part (A) Section 3.00 (E) and (F), as amended from time to time by the American Medical Association, and the interpretative standards of the American Thoracic Society, <<+Lung Function Testing: Selection of Reference Values and Interpretive Strategies+>>, 144 Am. Rev. Resp. Dis. 1202-1218 (1991), as amended from time to time by the American Thoracic Society, that shows:

(I) Forced vital capacity below the lower limit of normal and FEV1/FVC ratio, using actual values, at or above the lower limit of normal; or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(II) Total lung capacity, by plethysmography or timed gas dilution, below the lower limit of normal; and

(v) Verifies that the doctor signing the detailed narrative medical report and diagnosis has concluded that exposure to asbestos was a substantial contributing factor to the exposed person's medical condition and physical impairment and that they were not more probably the result of other causes revealed by the exposed person's employment and medical histories.

Copies of the B-reading, the pulmonary function tests, including printouts of the flow volume loops and all other elements required to demonstrate compliance with the equipment, quality, interpretation, and reporting standards set forth herein, and the diagnosing physician's detailed narrative medical report and diagnosis shall be attached to any complaint alleging nonmalignant disease related to exposure to asbestos. All such reports, as well as all other evidence used to establish prima-facie evidence of physical impairment, must meet objective criteria for generally accepted medical standards related to exposure to asbestos and must not be obtained through testing or examinations that violate any applicable law, regulation, licensing requirement, or medical code of practice. Failure to attach the required reports or demonstration by any party that the reports do not satisfy the standards set forth herein shall result in the dismissal of the action, without prejudice, upon motion of any party.

(16) In the context of a silica claim, 'prima-facie evidence of physical impairment' means:

(A) A written diagnosis of silica related lung cancer demonstrated by:

(i) A medical report showing the diagnosis as a diagnosis of a primary lung cancer; and

(ii) A signed report certified by a board certified internist, pulmonologist, or pathologist stating to a reasonable degree of medical probability that exposure to silica was the cause of the diagnosed lung cancer with underlying silicosis demonstrated by bilateral nodular opacities (p, q, or r) occurring primarily in the upper lung fields, graded 1/1 or higher and not more probably the result of causes other than the silica exposure revealed by the exposed person's employment and medical histories;

(B) A written diagnosis of silica related progressive massive fibrosis or acute silicoproteinosis; or silicosis complicated by documented tuberculosis, demonstrated by a signed report certified by a board certified internist, pulmonologist, or pathologist; or

(C) That a board certified internist, pulmonologist, or pathologist has signed a detailed narrative medical report and diagnosis stating that the exposed person suffers from other stages of nonmalignant disease related to silicosis other than those set forth in subparagraphs (A) and (B) of this paragraph, and that:

(i) Verifies that the doctor signing the detailed narrative medical report and diagnosis or a medical professional employed by and under the direct supervision and control of that doctor has taken:

(I) A detailed occupational and exposure history from the exposed person or, if that person is deceased, from the person most knowledgeable about the exposures that form the basis for the action. The history shall include all of the exposed person's principal employments and his or her exposures to airborne contaminants that can cause pulmonary impairment, including, but not limited to, asbestos, silica, and other disease-causing dusts, and the nature, duration, and level of any such exposure; and

(II) A detailed medical and smoking history that includes a thorough review of the exposed person's past and present medical problems and their most probable cause;

(ii) Sets out the details of the occupational, medical, and smoking histories and verifies a sufficient latency period for the applicable stage of silicosis;

(iii) Verifies that the exposed person has at least Class 2 or higher impairment due to silicosis, as set forth in the American Medical Association's Guides to the Evaluation of Permanent Impairment, fifth edition, as amended from time to time; and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(I) An ILO quality 1 chest X-ray taken in accordance with all applicable state and federal regulatory standards, and that the X-ray has been read by a certified B-reader according to the ILO system of classification as showing bilateral nodular opacities (p, q, or r) occurring primarily in the upper lung fields, graded 1/1 or higher; provided, however, that in a death case where no pathology is available, the necessary radiologic findings may be made with a quality 2 film if a quality 1 film is not available; or

(II) Pathological demonstration of classic silicotic nodules exceeding 1 centimeter in diameter as set forth in Archives of Pathological & Laboratory Medicine, July, 1988, as amended from time to time; and

(iv) Verifies that the doctor signing the detailed narrative medical report and diagnosis has concluded that the exposure to silica is a substantial contributing factor to the exposed person's medical condition and physical impairment and that they were not more probably the result of other causes revealed by the exposed person's employment and medical history.

Copies of the B-reading, the pulmonary function tests, including printouts of the flow volume loops and all other elements required to demonstrate compliance with the equipment, quality, interpretation, and reporting standards set forth herein, and the diagnosing physician's detailed narrative medical report and diagnosis shall be attached to any complaint alleging nonmalignant disease related to exposure to silicosis. All such reports, as well as all other evidence used to establish prima-facie evidence of physical impairment, must meet objective criteria for generally accepted medical standards related to exposure to silica and must not be obtained through testing or examinations that violate any applicable law, regulation, licensing requirement, or medical code of practice. Failure to attach the required reports or demonstration by any party that the reports do not satisfy the standards set forth herein shall result in the dismissal of the action, without prejudice, upon motion of any party.

(17) 'Qualified physician' means a medical doctor, who:

(A) Spends no more than 10 percent of his or her professional practice time in providing consulting or expert services in connection with actual or potential civil actions, and whose medical group, professional corporation, clinic, or other affiliated group earns not more than 20 percent of its revenues from providing such services;

(B) Receives or received payment for the treatment of the exposed person from that person or from that person's health maintenance organization or other medical provider; and

(C) Does not require as a condition of diagnosing, examining, testing, screening, or treating the exposed person that legal services be retained by the exposed person or any other person pursuing an asbestos or silica claim based on the exposed person's exposure to asbestos or silica.

(18) 'Silica' means a group of naturally occurring crystalline forms of silicon dioxide, including, but not limited to, quartz and silica sand, whether in the form of respirable free silica or any quartz-containing or crystalline silica-containing dust, in the form of a quartz-containing by-product or crystalline silica-containing by-product, or dust released from individual or commercial use, release, or disturbance of silica sand, silicon dioxide, or crystalline-silica containing media, consumables, or materials.

(19) 'Silica claim' means any claim, wherever or whenever made, for damages, losses, indemnification, contribution, loss of consortium, or other relief arising out of, based on, or in any way related to the health effects of exposure to silica, including, but not limited to:

(A) Any claim for:

(i) Personal injury or death;

(ii) Mental or emotional injury;

(iii) Risk of disease or other injury; or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(iv) The costs of medical monitoring or surveillance, to the extent such claims are recognized under state law; and

(B) Any claim made by or on behalf of any exposed person or based on that exposed person's exposure to silica, including a representative, spouse, parent, child, or other relative of the exposed person.

For purposes of this chapter, 'silica claim' shall not mean a claim brought under a workers' compensation law administered by this state to provide benefits, funded by a responsible employer or its insurance carrier, for occupational diseases or injuries or for disability or death caused by occupational diseases or injuries.

(20) 'Silicosis' means nodular interstitial fibrosis of the lung produced by inhalation of silica.

(21) 'Total lung capacity' means the volume of gas contained in the lungs at the end of a maximal inspiration.

<< GA ST § 51-14-3 >>

51-14-3.

(a) Prima-facie evidence of physical impairment of the exposed person as defined in paragraph (15) or (16) of Code Section 51-14-2 shall be an essential element of an asbestos claim or silica claim.

(b) No person shall bring or maintain a civil action alleging an asbestos claim or silica claim in the absence of prima-facie evidence of physical impairment resulting from a medical condition for which exposure to asbestos or silica was a substantial contributing factor.

<< GA ST § 51-14-4 >>

51-14-4.

Notwithstanding any other provision of law, with respect to any asbestos claim or silica claim not barred as of the effective date of this chapter, the limitations period shall not begin to run until the exposed person or any plaintiff making an asbestos claim or silica claim based on the exposed person's exposure to asbestos or silica discovers, or through the exercise of reasonable diligence should have discovered, that the exposed person is or was physically impaired as defined in paragraph (15) or (16) of Code Section 51-14-2.

<< GA ST § 51-14-5 >>

51-14-5.

(a) Any asbestos claim or silica claim pending in this state on the effective date of this chapter shall be dismissed within 180 days of the effective date of this chapter without prejudice unless:

(1) All parties stipulate by no less than 60 days prior to the commencement of trial that the plaintiff has established prima-facie evidence of physical impairment with respect to an asbestos claim or silica claim; or

(2) The trial court in which the complaint was initially filed issues an order that the plaintiff has established prima-facie evidence of physical impairment with respect to an asbestos claim or silica claim. Such an order shall be issued only if the following conditions and procedures are met:

(A) By no less than 60 days prior to the commencement of trial, the plaintiff files with the trial court and serves on each defendant named in the complaint or on counsel designated by each defendant the medical documentation necessary to establish prima-facie evidence of physical impairment;

(B) Within 30 days of service of plaintiff's documentation establishing prima-facie evidence of physical impairment, any defendant may file an opposition with the trial court challenging plaintiff's prima-facie evidence of physical impairment. To the extent any such opposition is based upon the medical opinion of a licensed physician,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that physician shall be a qualified physician, as that term is defined in subparagraph (A) of paragraph (17) of Code Section 51-14-2, and shall be either a board certified internist, a board certified pathologist, a board certified pulmonologist, or a certified B-reader. Defendant's opposition shall be filed with the trial court and served on plaintiff's counsel and each defendant;

(C) If a defendant does not file an opposition within the time permitted, the trial court shall determine if the plaintiff has established prima-facie evidence of physical impairment in a timely manner based on the papers and documentation submitted to the trial court;

(D) If a defendant files an objection, then within ten days of service of defendant's opposition, the plaintiff may file a reply with the trial court. The reply must be served on each defendant; and

(E) The trial court shall determine if the plaintiff has established prima-facie evidence of physical impairment in a timely manner based on the papers and documentation submitted to the trial court. A hearing will be conducted only if the trial court so orders on its own motion, or if, in the exercise of discretion, the trial court grants a party's request for a hearing. No testimony shall be taken at the hearing. A decision of the trial court not to grant a request for a hearing may not be appealed and does not constitute reversible error. If the trial court determines that the plaintiff has failed to establish prima-facie evidence of physical impairment, it shall dismiss the plaintiff's complaint without prejudice; or

(3) In the event a trial is scheduled to commence in less than 60 days from the effective date of this chapter, a trial court can shorten the deadlines contained in this subsection as necessary in order to make a determination regarding the prima-facie evidence of physical impairment before trial commences.

(b)(1) The plaintiff in any asbestos claim or silica claim filed in this state on or after the effective date of this chapter shall file together with the complaint a medical affidavit and accompanying documentation setting forth the medical findings necessary to establish prima-facie evidence of physical impairment as provided in paragraph (15) or (16) of Code Section 15-14-2. In addition, the plaintiff's complaint shall allege with specificity that the plaintiff satisfies the prima-facie evidence of physical impairment with respect to an asbestos claim or silica claim.

(2) Within 90 days of service of plaintiff's complaint, any defendant may file an opposition with the trial court challenging plaintiff's prima-facie evidence of physical impairment. To the extent any such opposition is based upon the medical opinion of a licensed physician, that physician shall be a qualified physician, as that term is defined in subparagraph (A) of paragraph (17) of Code Section 51-14-2, and shall be either a board certified internist, a board certified pathologist, a board certified pulmonologist, or a certified B-reader. Defendant's opposition shall be filed with the trial court and served on plaintiff's counsel and each defendant.

(3) If the defendant does not file an opposition challenging plaintiff's prima-facie evidence of physical impairment within the time permitted, the trial court shall determine if the plaintiff has established prima-facie evidence of physical impairment based on the papers and documentation submitted to the trial court. The trial court's decision shall be made in a timely manner.

(4) If the defendant files an objection, the plaintiff may file a reply with the trial court within ten days of service of defendant's opposition. The reply must be served on each defendant.

(5) The trial court shall determine if the plaintiff has established prima-facie evidence of physical impairment with respect to an asbestos claim or silica claim in a timely manner based on the papers and documentation submitted to the trial court. A hearing will be conducted only if the trial court so orders on its own motion, or if, in the exercise of discretion, the trial court grants a party's request for a hearing. No testimony shall be taken at the hearing. A decision of the trial court not to grant a request for a hearing may not be appealed and does not constitute reversible error. If the trial court determines that the plaintiff has failed to establish prima-facie evidence of physical impairment, it shall dismiss the plaintiff's complaint without prejudice.

<< GA ST § 51-14-6 >>

51-14-6.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(a) All asbestos claims and silica claims filed in this state on or after the effective date of this chapter shall include a sworn information form containing the following information:

(1) The exposed person's name, address, date of birth, social security number, and marital status;

(2) If the exposed person alleges exposure to asbestos or silica through the testimony of another person or other than by direct or bystander exposure to a product or products, the name, address, date of birth, social security number, and marital status for each person by which claimant alleges exposure, hereafter the 'index person,' and the claimant's relationship to each person;

(3) The specific location of each alleged exposure;

(4) The specific asbestos-containing product or silica-containing product to which the exposed person was exposed and the manufacturer of each product;

(5) The beginning and ending dates of each alleged exposure as to each asbestos-containing product or silica-containing product for each location at which exposure allegedly took place for plaintiff and for each index person;

(6) The occupation and name of employer of the exposed person at the time of each alleged exposure;

(7) The specific condition related to asbestos or silica claimed to exist;  and

(8) Any supporting documentation of the condition claimed to exist.

(b) All asbestos claims and silica claims along with sworn information forms must be individually filed in separate civil actions except that claims relating to the exposure to asbestos or silica for the same exposed person whose alleged injury is the basis for the civil action may be joined in a single action.  Otherwise, no claims on behalf of a group or class of persons shall be joined in single civil action.

<< GA ST § 51-14-7 >>

51-14-7.

(a) Until such time as the trial court enters an order determining that the plaintiff has established prima-facie evidence of physical impairment, no asbestos claim or silica claim shall be subject to discovery, except discovery related to establishing or challenging the prima-facie evidence of physical impairment or by order of the trial court upon motion of one of the parties and for good cause shown.

(b) The medical criteria set forth in this chapter to establish prima-facie evidence of physical impairment are solely for the purpose of determining whether a claim meets the criteria to proceed in court.  The fact that a plaintiff satisfies the criteria necessary to establish prima-facie evidence of physical impairment for an asbestos claim or silica claim shall not be construed as an admission or determination that the exposed person in fact has a condition related to exposure to asbestos or silica and shall not be cited, referred to, or otherwise used at trial.

(c) Unless stipulated to by the parties, an expert report submitted for the purpose of establishing or challenging prima-facie evidence of physical impairment is inadmissible for any other purpose.

<< GA ST § 51-14-8 >>

51-14-8.

(a) Notwithstanding Code Section 1-2-6 or 1-2-10, a civil action alleging an asbestos claim or silica claim may only be brought or maintained in the courts of Georgia if the plaintiff, whether a citizen of Georgia or a citizen of some other state, is a resident of Georgia at the time of filing the action or the exposure to asbestos or silica on which the claim is based occurred in Georgia;  provided, however, nothing contained in this chapter shall preclude a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

nonresident of Georgia who currently has a case pending in this state on the effective date of this chapter from maintaining an asbestos claim or silica claim if that nonresident can establish prima-facie evidence of physical impairment with respect to an asbestos claim or silica claim as provided in paragraph (15) or (16) of Code Section 51-14-2.

(b) The trial court, on motion of a defendant, shall dismiss each asbestos claim or silica claim that is subject to this chapter against the defendant unless the plaintiff files a written statement with the trial court electing to abate the plaintiff's claim against the defendant for a period of 180 days from the date the trial court disposes of the defendant's motions in order to afford the plaintiff an opportunity to file a new action on the claims in another state of the United States.

(c)(1) A trial court may not abate or dismiss a claim under this Code section until the defendant files with the trial court or with the clerk of the court a written stipulation that, with respect to a new action on the claim commenced by the plaintiff, the defendant waives the right to assert a statute of limitations defense in all other states of the United States in which the claim was not barred by limitations at the time the claim was filed in this state as necessary to effect a tolling of the limitations periods in those states beginning on the date the claim was filed in this state and ending on the date the claim is dismissed or the period of abatement ends. The fact that a claim subject to this Code section was barred by the statute of limitations in all other states of the United States at the time it was filed in this state shall not prevent the claim from being dismissed pursuant to this Code section and such claim shall be dismissed even if it can not be filed in another state. The trial court may not abate or dismiss a claim under this Code section until the defendant files with the trial court or with the clerk of the court a written stipulation that, with respect to a new action on the claim commenced by the plaintiff in another state of the United States, the plaintiff may elect that the plaintiff and the defendant may rely on responses to discovery already provided under the Georgia Civil Practice Act, plus any additional discovery that may be conducted under the rules of civil procedure in another state, or use responses to discovery already provided and conduct additional discovery as permitted under the rules of civil procedure in such other state.

(2) If less than all of the defendants agree to provide the stipulations set forth in paragraph (1) of this subsection, then the court shall dismiss the claims of those defendants who so stipulate.

(d) To comply with this Code section in relation to an action that involves both claims that arose in this state and claims that arose outside this state, a trial court shall consider each claim individually and shall sever from the action the claims that are subject to this Code section.

(e) If a plaintiff alleges that the exposed person was exposed to asbestos or silica while located in more than one jurisdiction, the trial court shall determine, for purposes of this Code section, which of the jurisdictions is the most appropriate forum for the claim, considering the relative amounts and lengths of the exposed person's exposure to asbestos or silica in each jurisdiction.

<< GA ST § 51-14-9 >>

51-14-9.

Notwithstanding any other provision of law, an asbestos claim or silica claim that meets the requirements of this chapter permitting a claim to be filed in this state may only be filed in the county where the plaintiff resides or the county in which the exposure to asbestos or silica on which the claim is based occurred and that exposure was a substantial contributing factor to the physical impairment of the exposed person on which the plaintiff's claim is based. If a plaintiff alleges that an exposed person was exposed to asbestos or silica while located in more than one county, the trial court shall determine which of the counties is the most appropriate forum for the claim, considering the relative amounts and lengths of the exposed person's exposure to asbestos or silica in each of those counties.

<< GA ST § 51-14-10 >>

51-14-10.

A trial court may consolidate for trial any number and type of asbestos claims or silica claims with the consent of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

GA LEGIS 29 (2005)                                                    Page 10
**2005 Georgia Laws Act 29 (H.B. 416)**

all the parties. In the absence of such consent, the trial court may consolidate for trial only asbestos claims or silica claims relating to the same exposed person and members of his or her household."

SECTION 2.

In the event any section, subsection, sentence, clause, or phrase of this Act shall be declared or adjudged invalid or unconstitutional, such adjudication shall in no manner affect the other sections, subsections, sentences, clauses, or phrases of this Act, which shall remain of full force and effect as if the section, subsection, sentence, clause, or phrase so declared or adjudged invalid or unconstitutional were not originally a part hereof. The General Assembly declares that it would have passed the remaining parts of this Act if it had known that such part or parts hereof would be declared or adjudged invalid or unconstitutional.

SECTION 3.

This Act shall become effective upon its approval by the Governor or upon its becoming law without such approval and applies to all asbestos claims or silica claims filed on or after the effective date and to any pending asbestos claims or silica claims in which trial has not commenced as of the effective date.

SECTION 4.

All laws and parts of laws in conflict with this Act are repealed.

Approved April 12, 2005

GA LEGIS 29 (2005)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**USG B 0306**