**21**

Westlaw.

2005 TX S.B. 15 (NS)                                              Page 1
 2005 Texas Senate Bill No. 15, Texas Seventy-Ninth Legislature (FULL TEXT -
NETSCAN)

TEXAS BILL TEXT

VERSION: Adopted

 May 19, 2005
Janek, Nelson, Nixon, Rose

S.B. No. 15
AN ACT
relating to civil claims involving exposure to asbestos and silica.

TEXT:

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. FINDINGS; PURPOSE. (a) The Legislature of the State of Texas makes
findings as stated in this section.

(b) Asbestos is a mineral that was used extensively in industrial applications,
especially between the 1940s and the 1970s. It is estimated that as many as 27
million American workers were exposed to asbestos between 1940 and 1979. Exposure
to asbestos, particularly through inhalation of asbestos fibers, has allegedly been
linked to certain malignant and nonmalignant diseases, including mesothelioma and
asbestosis. These diseases have latency periods of up to 40 years.

(c) Over the last three decades, hundreds of thousands of lawsuits alleging
asbestos-related disease have been filed throughout the United States. In the early
1990s, between 15,000 and 20,000 new lawsuits alleging asbestos-related disease
were filed each year. By the late 1990s, the number of new lawsuits alleging
asbestos-related disease filed each year was more than double the number of yearly
filings seen in the early 1990s. By one estimate, the number of asbestos lawsuits
pending in state and federal courts in the United States doubled in the 1990s, from
approximately 100,000 to more than 200,000 claims.

(d) In 1991, the Judicial Conference Ad Hoc Committee on Asbestos Litigation,
appointed by United States Supreme Court Chief Justice William Rehnquist, found
that 'the [asbestos litigation] situation has reached critical dimensions and is
getting worse.' In 1997, the United States Supreme Court acknowledged that the
country was in the midst of an 'asbestos-litigation crisis.' AmChem Products, Inc.
v. Windsor, 521 U.S. 591, 597 (1997).

(e) Texas has not been spared this crisis. In the period from 1988 to 2000, more
lawsuits alleging asbestos-related disease were filed in Texas than in any other
state. Thousands of asbestos lawsuits are pending in Texas courts today.

(f) This asbestos litigation crisis is due, in part, to screening of persons with
possible occupational exposure to asbestos and to the existence of statutes of
limitations that begin to run based merely on knowledge of a possible asbestos-
related disease or symptom. The screening process identifies individuals with
radiographically detectable markings on their lungs that are consistent with
asbestos-related disease regardless of whether the individuals have any physical

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

USG B 0311

2005 TX S.B. 15 (NS)                                                    Page 2
 2005 Texas Senate Bill No. 15, Texas Seventy-Ninth Legislature (FULL TEXT –
NETSCAN)

impairment. The identified individuals then file lawsuits, in part to avoid the
running of limitations triggered by the discovery that they may have an asbestos-
related injury. Many of the identified individuals (at least one estimate puts the
figure as high as 90 percent of identified individuals) are not experiencing any
symptoms of asbestos-related disease and are not suffering from any asbestos-
related illness affecting their daily functions.

(g) The crush of asbestos litigation has been costly to employers, employees,
litigants, and the court system. In 2003, the American Bar Association Commission
on Asbestos Litigation noted that in 1982, the nation's single largest supplier of
asbestos-containing insulation products, the Johns-Manville Corporation, 'declared
bankruptcy due to the burden of the asbestos litigation.' Since then, more than 70
other companies have declared bankruptcy due to the burden of asbestos litigation.
It is estimated that between 60,000 and 128,000 American workers already have lost
their jobs as a result of asbestos-related bankruptcies and that eventually 423,000
jobs will be lost due to asbestos-related bankruptcies. Each worker who loses a job
due to an asbestos-related bankruptcy loses between $25,000 and $50,000 in wages
over the worker's career. These workers also have seen the value of their 401(k)
retirement plans drop by 25 percent or more due to these bankruptcies.

(h) Additionally, it is estimated that asbestos litigation has already cost over
$54 billion, with well over half of this expense going to attorney's fees and other
litigation costs. The crowded dockets that result from the crush of asbestos cases
filed by persons who are not functionally or physically impaired by any asbestos-
related illness severely hampers the ability of seriously ill claimants to seek
redress in the courts. Those claimants who have had their day in court often find
that the value of their recovery is seriously reduced when the company against whom
the judgment was rendered files bankruptcy due to the weight of asbestos litigation
brought by unimpaired claimants.

(i) Silica is a naturally occurring mineral and is the second most common
constituent of the earth's crust. Crystalline silica in the form of quartz is
present in sand, gravel, soil, and rocks.

(j) Silica sand is the primary raw material for the production of glass, including
container glass (bottles and jars), flat glass (windows), and other forms of glass.
Silica sand is used to make foundry molds and cores. Industrial minerals that
contain silica are the essential raw materials for the manufacture of ceramics,
which include industrial ceramics, sanitary ware (bathrooms), and tableware (plates
and cups). Crushed stone and sand and gravel (aggregates), most of which contain
crystalline silica, are the primary raw materials in concrete and asphalt; these
materials are used in the construction of roads, sidewalks, building foundations,
and many other things. Sandstone and granite, both of which contain silica, are
used as building materials.

(k) The primary adverse health effect associated with silica is silicosis.
Silicosis is a lung disease characterized by fibrosis, or scarring, and is caused
by prolonged overexposure to respirable silica through inhalation. Additionally,
silica inhaled from occupational sources was classified as a lung carcinogen in
1996.

(l) Silicosis has been recognized as an occupational disease for over 100 years. By
the 1930s, the federal government had launched a silica-awareness campaign, which
led to greater protection for workers exposed to silica dust. By the early 1970s,
the United States Occupational Safety and Health Administration had begun to
regulate occupational exposure to respirable silica. In 1999, the United States

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

USG B 0312

2005 TX S.B. 15 (NS)
2005 Texas Senate Bill No. 15, Texas Seventy-Ninth Legislature (FULL TEXT –
NETSCAN)

Centers for Disease Control and Prevention/National Institute for Occupational
Safety and Health called the reduction in occupational lung diseases, including
silicosis, one of the ten great public health achievements of the 20th century. The
United States Centers for Disease Control and Prevention/National Institute for
Occupational Safety and Health data disclose a substantial decrease in silicosis
since 1968 (the first year the data were collected). As a result, the number of
silica lawsuits filed each year was relatively predictable through 2001. This trend
has changed. The number of new lawsuits alleging silica-related disease being filed
each year has risen precipitously in recent years. For example, one of America's
largest suppliers of industrial sand had more than 15,000 new claims filed in the
first six months of 2003, which is three times the number of claims it had in all
of 2002 and more than 10 times the number of claims it had in all of 2001.

(m) Silica claims, like asbestos claims, often arise when an individual is
identified as having markings on the individual's lungs that are possibly
consistent with silica exposure, but the individual has no functional or physical
impairment from any silica-related disease. The identified individuals, like those
alleging asbestos-related injury, file lawsuits under the theory that they must do
so to avoid having their claims barred by limitations even though they have no
current impairment and may never have impairment. It is, therefore, necessary to
address silica-related litigation.

(n) It is the purpose of this Act to protect the right of people with impairing
asbestos-related and silica-related injuries to pursue their claims for
compensation in a fair and efficient manner through the Texas court system, while
at the same time preventing scarce judicial and litigant resources from being
misdirected by the claims of individuals who have been exposed to asbestos or
silica but have no functional or physical impairment from asbestos-related or
silica-related disease. To that end, this Act:

(1) adopts medically accepted standards for differentiating between individuals
with nonmalignant asbestos-related or silica-related disease causing functional
impairment and individuals with no functional impairment;

(2) provides a method to obtain the dismissal of lawsuits in which the exposed
person has no functional impairment, while at the same time protecting a person's
right to bring suit on discovering an impairing asbestos-related or silica-related
injury; and

(3) creates an extended period before limitations begin to run in which to bring
claims for injuries caused by the inhalation or ingestion of asbestos or by the
inhalation of silica to preserve the right of those who have been exposed to
asbestos or silica but are not yet impaired to bring a claim later in the event
that they develop an impairing asbestos-related or silica-related disease or
injury.

SECTION 2. Title 4, Civil Practice and Remedies Code, is amended by adding Chapter
90 to read as follows: CHAPTER 90. CLAIMS INVOLVING ASBESTOS AND SILICA

Sec. 90.001. DEFINITIONS. In this chapter:

(1) 'Asbestos' means chrysotile, amosite, crocidolite, tremolite asbestos,
anthophyllite asbestos, actinolite asbestos, and any of these minerals that have
been chemically treated or altered.

(2) 'Asbestos-related injury' means personal injury or death allegedly caused, in

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

USG B 0313

2005 TX S.B. 15 (NS)                                                    Page 4
 2005 Texas Senate Bill No. 15, Texas Seventy-Ninth Legislature (FULL TEXT -
NETSCAN)

whole or in part, by inhalation or ingestion of asbestos.

(3) 'Asbestosis' means bilateral diffuse interstitial fibrosis of the lungs caused
by inhalation of asbestos fibers.

(4) 'Certified B-reader' means a person who has successfully completed the x-ray
interpretation course sponsored by the National Institute for Occupational Safety
and Health (NIOSH) and passed the B-reader certification examination for x-ray
interpretation and whose NIOSH certification is current at the time of any readings
required by this chapter.

(5) 'Chest x-ray' means chest films that are taken in accordance with all
applicable state and federal regulatory standards and in the posterior-anterior
view.

(6) 'Claimant' means an exposed person and any person who is seeking recovery of
damages for or arising from the injury or death of an exposed person.

(7) 'Defendant' means a person against whom a claim arising from an asbestos-
related injury or a silica-related injury is made.

(8) 'Exposed person' means a person who is alleged to have suffered an asbestos-
related injury or a silica-related injury.

(9) 'FEV1' means forced expiratory volume in the first second, which is the maximal
volume of air expelled in one second during performance of simple spirometric
tests.

(10) 'FVC' means forced vital capacity, which is the maximal volume of air expired
with maximum effort from a position of full inspiration.

(11) 'ILO system of classification' means the radiological rating system of the
International Labor Office in 'Guidelines for the Use of ILO International
Classification of Radiographs of Pneumoconioses' (2000), as amended.

(12) 'MDL pretrial court' means the district court to which related cases are
transferred for consolidated or coordinated pretrial proceedings under Rule 13,
Texas Rules of Judicial Administration.

(13) 'MDL rules' means the rules adopted by the supreme court under Subchapter H,
Chapter 74, Government Code.

(14) 'Mesothelioma' means a rare form of cancer allegedly caused in some instances
by exposure to asbestos in which the cancer invades cells in the membrane lining:

(A) the lungs and chest cavity (the pleural region);

(B) the abdominal cavity (the peritoneal region); or

(C) the heart (the pericardial region).

(15) 'Nonmalignant asbestos-related injury' means an asbestos-related injury other
than mesothelioma or other cancer.

(16) 'Nonmalignant silica-related injury' means a silica-related injury other than
cancer.

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

USG B 0314

2005 TX S.B. 15 (NS)
 2005 Texas Senate Bill No. 15, Texas Seventy-Ninth Legislature (FULL TEXT -
NETSCAN)

(17) 'Physician board certified in internal medicine' means a physician who is
certified by the American Board of Internal Medicine or the American Osteopathic
Board of Internal Medicine.

(18) 'Physician board certified in occupational medicine' means a physician who is
certified in the subspecialty of occupational medicine by the American Board of
Preventive Medicine or the American Osteopathic Board of Preventive Medicine.

(19) 'Physician board certified in oncology' means a physician who is certified in
the subspecialty of medical oncology by the American Board of Internal Medicine or
the American Osteopathic Board of Internal Medicine.

(20) 'Physician board certified in pathology' means a physician who holds primary
certification in anatomic pathology or clinical pathology from the American Board
of Pathology or the American Osteopathic Board of Internal Medicine and whose
professional practice:

(A) is principally in the field of pathology; and

(B) involves regular evaluation of pathology materials obtained from surgical or
postmortem specimens.

(21) 'Physician board certified in pulmonary medicine' means a physician who is
certified in the subspecialty of pulmonary medicine by the American Board of
Internal Medicine or the American Osteopathic Board of Internal Medicine.

(22) 'Plethysmography' means the test for determining lung volume, also known as
'body plethysmography,' in which the subject of the test is enclosed in a chamber
that is equipped to measure pressure, flow, or volume change.

(23) 'Pulmonary function testing' means spirometry, lung volume, and diffusion
capacity testing performed in accordance with Section 90.002 using equipment,
methods of calibration, and techniques that meet:

(A) the criteria incorporated in the American Medical Association Guides to the
Evaluation of Permanent Impairment and reported in 20 C.F.R. Part 404, Subpart P,
Appendix 1, Part (A), Sections 3.00(E) and (F)(2003); and

(B) the interpretative standards in the Official Statement of the American Thoracic
Society entitled 'Lung Function Testing: Selection of Reference Values and
Interpretative Strategies,' as published in 144 American Review of Respiratory
Disease 1202-1218 (1991).

(24) 'Report' means a report required by Section 90.003, 90.004, or 90.010(f)(1).

(25) 'Respirable,' with respect to silica, means particles that are less than 10
microns in diameter.

(26) 'Serve' means to serve notice on a party in compliance with Rule 21a, Texas
Rules of Civil Procedure.

(27) 'Silica' means a respirable form of crystalline silicon dioxide, including
alpha quartz, cristobalite, and tridymite.

(28) 'Silica-related injury' means personal injury or death allegedly caused, in

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

 2005 Texas Senate Bill No. 15, Texas Seventy-Ninth Legislature (FULL TEXT –
NETSCAN)

whole or in part, by inhalation of silica.

(29) 'Silicosis' means interstitial fibrosis of the lungs caused by inhalation of
silica, including:

(A) acute silicosis, which may occur after exposure to very high levels of silica
within a period of months to five years after the initial exposure;

(B) accelerated silicosis; and

(C) chronic silicosis.

Sec. 90.002. PULMONARY FUNCTION TESTING. Pulmonary function testing required by
this chapter must be interpreted by a physician:

(1) who is licensed in this state or another state of the United States;

(2) who is board certified in pulmonary medicine, internal medicine, or
occupational medicine; and

(3) whose license and certification were not on inactive status at the time the
testing was interpreted.

Sec. 90.003. REPORTS REQUIRED FOR CLAIMS INVOLVING ASBESTOS-RELATED INJURY. (a) A
claimant asserting an asbestos-related injury must serve on each defendant the
following information:

(1) a report by a physician who is board certified in pulmonary medicine,
occupational medicine, internal medicine, oncology, or pathology and whose license
and certification were not on inactive status at the time the report was made
stating that:

(A) the exposed person has been diagnosed with malignant mesothelioma or other
malignant asbestos-related cancer; and

(B) to a reasonable degree of medical probability, exposure to asbestos was a cause
of the diagnosed mesothelioma or other cancer in the exposed person; or

(2) a report by a physician who is board certified in pulmonary medicine, internal
medicine, or occupational medicine and whose license and certification were not on
inactive status at the time the report was made that:

(A) verifies that the physician or a medical professional employed by and under the
direct supervision and control of the physician:

(i) performed a physical examination of the exposed person, or if the exposed
person is deceased, reviewed available records relating to the exposed person's
medical condition;

(ii) took a detailed occupational and exposure history from the exposed person or,
if the exposed person is deceased, from a person knowledgeable about the alleged
exposure or exposures that form the basis of the action; and

(iii) took a detailed medical and smoking history that includes a thorough review
of the exposed person's past and present medical problems and their most probable
cause;

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

USG B 0316

(B) sets out the details of the exposed person's occupational, exposure, medical, and smoking history and verifies that at least 10 years have elapsed between the exposed person's first exposure to asbestos and the date of diagnosis;

(C) verifies that the exposed person has:

(i) a quality 1 or 2 chest x-ray that has been read by a certified B-reader according to the ILO system of classification as showing:

(a) bilateral small irregular opacities (s, t, or u) with a profusion grading of 1/1 or higher, for an action filed on or after May 1, 2005;

(b) bilateral small irregular opacities (s, t, or u) with a profusion grading of 1/0 or higher, for an action filed before May 1, 2005; or

(c) bilateral diffuse pleural thickening graded b2 or higher including blunting of the costophrenic angle; or

(ii) pathological asbestosis graded 1(B) or higher under the criteria published in 'Asbestos-Associated Diseases,' 106 Archives of Pathology and Laboratory Medicine 11, Appendix 3 (October 8, 1982);

(D) verifies that the exposed person has asbestos-related pulmonary impairment as demonstrated by pulmonary function testing showing:

(i) forced vital capacity below the lower limit of normal or below 80 percent of predicted and FEV1/FVC ratio (using actual values) at or above the lower limit of normal or at or above 65 percent; or

(ii) total lung capacity, by plethysmography or timed gas dilution, below the lower limit of normal or below 80 percent of predicted;

(E) verifies that the physician has concluded that the exposed person's medical findings and impairment were not more probably the result of causes other than asbestos exposure revealed by the exposed person's occupational, exposure, medical, and smoking history; and

(F) is accompanied by copies of all ILO classifications, pulmonary function tests, including printouts of all data, flow volume loops, and other information demonstrating compliance with the equipment, quality, interpretation, and reporting standards set out in this chapter, lung volume tests, diagnostic imaging of the chest, pathology reports, or other testing reviewed by the physician in reaching the physician's conclusions.

(b) The detailed occupational and exposure history required by Subsection (a)(2)(A)(ii) must describe:

(1) the exposed person's principal employments and state whether the exposed person was exposed to airborne contaminants, including asbestos fibers and other dusts that can cause pulmonary impairment; and

(2) the nature, duration, and frequency of the exposed person's exposure to airborne contaminants, including asbestos fibers and other dusts that can cause pulmonary impairment.

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

USG B 0317

2005 TX S.B. 15 (NS)                                              Page 8
 2005 Texas Senate Bill No. 15, Texas Seventy-Ninth Legislature (FULL TEXT –
 NETSCAN)

(c) If a claimant's pulmonary function test results do not meet the requirements of
Subsection (a)(2)(D)(i) or (ii), the claimant may serve on each defendant a report
by a physician who is board certified in pulmonary medicine, internal medicine, or
occupational medicine and whose license and certification were not on inactive
status at the time the report was made that:

(1) verifies that the physician has a physician-patient relationship with the
exposed person;

(2) verifies that the exposed person has a quality 1 or 2 chest x-ray that has been
read by a certified B-reader according to the ILO system of classification as
showing bilateral small irregular opacities (s, t, or u) with a profusion grading
of 2/1 or higher;

(3) verifies that the exposed person has restrictive impairment from asbestosis and
includes the specific pulmonary function test findings on which the physician
relies to establish that the exposed person has restrictive impairment;

(4) verifies that the physician has concluded that the exposed person's medical
findings and impairment were not more probably the result of causes other than
asbestos exposure revealed by the exposed person's occupational, exposure, medical,
and smoking history; and

(5) is accompanied by copies of all ILO classifications, pulmonary function tests,
including printouts of all data, flow volume loops, and other information
demonstrating compliance with the equipment, quality, interpretation, and reporting
standards set out in this chapter, lung volume tests, diagnostic imaging of the
chest, pathology reports, or other testing reviewed by the physician in reaching
the physician's conclusions.

(d) If a claimant's radiologic findings do not meet the requirements of Subsection
(a)(2)(C)(i), the claimant may serve on each defendant a report by a physician who
is board certified in pulmonary medicine, internal medicine, or occupational
medicine and whose license and certification were not on inactive status at the
time the report was made that:

(1) verifies that the physician has a physician-patient relationship with the
exposed person;

(2) verifies that the exposed person has asbestos-related pulmonary impairment as
demonstrated by pulmonary function testing showing:

(A) either:

(i) forced vital capacity below the lower limit of normal or below 80 percent of
predicted and total lung capacity, by plethysmography, below the lower limit of
normal or below 80 percent of predicted; or

(ii) forced vital capacity below the lower limit of normal or below 80 percent of
predicted and FEV1/FVC ratio (using actual values) at or above the lower limit of
normal or at or above 65 percent; and

(B) diffusing capacity of carbon monoxide below the lower limit of normal or below
80 percent of predicted;

(3) verifies that the exposed person has a computed tomography scan or high-

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

USG B 0318

 2005 Texas Senate Bill No. 15, Texas Seventy-Ninth Legislature (FULL TEXT -
NETSCAN)

resolution computed tomography scan showing either bilateral pleural disease or
bilateral parenchymal disease consistent with asbestos exposure;

(4) verifies that the physician has concluded that the exposed person's medical
findings and impairment were not more probably the result of causes other than
asbestos exposure as revealed by the exposed person's occupational, exposure,
medical, and smoking history; and

(5) is accompanied by copies of all computed tomography scans, ILO classifications,
pulmonary function tests, including printouts of all data, flow volume loops, and
other information demonstrating compliance with the equipment, quality,
interpretation, and reporting standards set out in this chapter, lung volume tests,
diagnostic imaging of the chest, pathology reports, or other testing reviewed by
the physician in reaching the physician's conclusions.

Sec. 90.004. REPORTS REQUIRED FOR CLAIMS INVOLVING SILICA-RELATED INJURY. (a) A
claimant asserting a silica-related injury must serve on each defendant a report by
a physician who is board certified in pulmonary medicine, internal medicine,
oncology, pathology, or, with respect to a claim for silicosis, occupational
medicine and whose license and certification were not on inactive status at the
time the report was made that:

(1) verifies that the physician or a medical professional employed by and under the
direct supervision and control of the physician:

(A) performed a physical examination of the exposed person, or if the exposed
person is deceased, reviewed available records relating to the exposed person's
medical condition;

(B) took a detailed occupational and exposure history from the exposed person or,
if the exposed person is deceased, from a person knowledgeable about the alleged
exposure or exposures that form the basis of the action; and

(C) took a detailed medical and smoking history that includes a thorough review of
the exposed person's past and present medical problems and their most probable
cause;

(2) sets out the details of the exposed person's occupational, exposure, medical,
and smoking history;

(3) verifies that the exposed person has one or more of the following:

(A) a quality 1 or 2 chest x-ray that has been read by a certified B-reader
according to the ILO system of classification as showing:

(i) bilateral predominantly nodular opacities (p, q, or r) occurring primarily in
the upper lung fields, with a profusion grading of 1/1 or higher, for an action
filed on or after May 1, 2005; or

(ii) bilateral predominantly nodular opacities (p, q, or r) occurring primarily in
the upper lung fields, with a profusion grading of 1/0 or higher, for an action
filed before May 1, 2005;

(B) pathological demonstration of classic silicotic nodules exceeding one
centimeter in diameter as published in 'Diseases Associated with Exposure to Silica
and Nonfibrous Silicate Minerals,' 112 Archives of Pathology and Laboratory

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

USG B 0319

 2005 Texas Senate Bill No. 15, Texas Seventy-Ninth Legislature (FULL TEXT –
NETSCAN)

Medicine 7 (July 1988);

(C) progressive massive fibrosis radiologically established by large opacities
greater than one centimeter in diameter; or

(D) acute silicosis; and

(4) is accompanied by copies of all ILO classifications, pulmonary function tests,
including printouts of all data, flow volume loops, and other information
demonstrating compliance with the equipment, quality, interpretation, and reporting
standards set out in this chapter, lung volume tests, diagnostic imaging of the
chest, pathology reports, or other testing reviewed by the physician in reaching
the physician's conclusions.

(b) If the claimant is asserting a claim for silicosis, the report required by
Subsection (a) must also verify that:

(1) there has been a sufficient latency period for the applicable type of
silicosis;

(2) the exposed person has at least Class 2 or higher impairment due to silicosis,
according to the American Medical Association Guides to the Evaluation of Permanent
Impairment and reported in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part (A),
Sections 3.00(E) and (F)(2003); and

(3) the physician has concluded that the exposed person's medical findings and
impairment were not more probably the result of causes other than silica exposure
revealed by the exposed person's occupational, exposure, medical, and smoking
history.

(c) If the claimant is asserting a claim for silica-related lung cancer, the report
required by Subsection (a) must also:

(1) include a diagnosis that the exposed person has primary lung cancer and that
inhalation of silica was a substantial contributing factor to that cancer; and

(2) verify that at least 15 years have elapsed from the date of the exposed
person's first exposure to silica until the date of diagnosis of the exposed
person's primary lung cancer.

(d) If the claimant is asserting a claim for any disease other than silicosis and
lung cancer alleged to be related to exposure to silica, the report required by
Subsection (a) must also verify that the physician has diagnosed the exposed person
with a disease other than silicosis or silica-related lung cancer and has concluded
that the exposed person's disease is not more probably the result of causes other
than silica exposure.

(e) The detailed occupational and exposure history required by Subsection
(a)(1)(B) must describe:

(1) the exposed person's principal employments and state whether the exposed person
was exposed to airborne contaminants, including silica and other dusts that can
cause pulmonary impairment; and

(2) the nature, duration, and frequency of the exposed person's exposure to
airborne contaminants, including silica and other dusts that can cause pulmonary

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

 2005 Texas Senate Bill No. 15, Texas Seventy-Ninth Legislature (FULL TEXT -
NETSCAN)

impairment.

Sec. 90.005. PROHIBITED BASIS FOR DIAGNOSIS. (a) For purposes of this chapter, a
physician may not, as the basis for a diagnosis, rely on the reports or opinions of
any doctor, clinic, laboratory, or testing company that performed an examination,
test, or screening of the exposed person's medical condition that was conducted in
violation of any law, regulation, licensing requirement, or medical code of
practice of the state in which the examination, test, or screening was conducted.

(b) If a physician relies on any information in violation of Subsection (a), the
physician's opinion or report does not comply with the requirements of this
chapter.

Sec. 90.006. SERVING REPORTS. (a) In an action filed on or after the date this
chapter becomes law, a report prescribed by Section 90.003 or 90.004 must be served
on each defendant not later than the 30th day after the date that defendant answers
or otherwise enters an appearance in the action.

(b) In an action pending on the date this chapter becomes law and in which the
trial, or any new trial or retrial following motion, appeal, or otherwise,
commences on or before the 90th day after the date this chapter becomes law, a
claimant is not required to serve a report on any defendant unless a mistrial, new
trial, or retrial is subsequently granted or ordered.

(c) In an action pending on the date this chapter becomes law and in which the
trial, or any new trial or retrial following motion, appeal, or otherwise,
commences after the 90th day after the date this chapter becomes law, a report must
be served on each defendant on or before the earlier of the following dates:

(1) the 60th day before trial commences; or

(2) the 180th day after the date this chapter becomes law.

Sec. 90.007. MOTION TO DISMISS. (a) In an action filed on or after the date this
chapter becomes law, if a claimant fails to timely serve a report on a defendant,
or serves on the defendant a report that does not comply with the requirements of
Section 90.003 or 90.004, the defendant may file a motion to dismiss the claimant's
asbestos-related claims or silica-related claims. The motion must be filed on or
before the 30th day after the date the report is served on the defendant. If a
claimant fails to serve a report on the defendant, the motion must be filed on or
before the 30th day after the date the report was required to be served on the
defendant under Section 90.006. If the basis of the motion is that the claimant has
served on the defendant a report that does not comply with Section 90.003 or
90.004, the motion must include the reasons why the report does not comply with
that section.

(b) A claimant may file a response to a motion to dismiss on or before the 15th day
after the date the motion to dismiss is served. A report required by Section 90.003
or 90.004 may be filed, amended, or supplemented within the time required for
responding to a motion to dismiss. The service of an amended or supplemental report
does not require the filing of an additional motion to dismiss if the reasons
stated in the original motion to dismiss are sufficient to require dismissal under
this chapter.

(c) Except as provided by Section 90.010(d) or (e), if the court is of the opinion
that a motion to dismiss is meritorious, the court shall, by written order, grant

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

USG B 0321

 2005 Texas Senate Bill No. 15, Texas Seventy-Ninth Legislature (FULL TEXT –
NETSCAN)

the motion and dismiss all of the claimant's asbestos-related claims or silica-
related claims, as appropriate, against the defendant. A dismissal under this
section is without prejudice to the claimant's right, if any, to assert claims for
an asbestos-related injury or a silica-related injury in a subsequent action.

(d) On the filing of a motion to dismiss under this section, all further
proceedings in the action are stayed until the motion is heard and determined by
the court.

(e) On the motion of a party showing good cause, the court may shorten or extend
the time limits provided in this section for filing or serving motions, responses,
or reports.

Sec. 90.008. VOLUNTARY DISMISSAL. Before serving a report required by Section
90.003 or 90.004, a claimant seeking damages arising from an asbestos-related
injury or silica-related injury may voluntarily dismiss the claimant's action. If a
claimant files a voluntary dismissal under this section, the claimant's voluntary
dismissal is without prejudice to the claimant's right to file a subsequent action
seeking damages arising from an asbestos-related injury or a silica-related injury.

Sec. 90.009. JOINDER OF CLAIMANTS. Unless all parties agree otherwise, claims
relating to more than one exposed person may not be joined for a single trial.

Sec. 90.010. MULTIDISTRICT LITIGATION PROCEEDINGS. (a) The MDL rules apply to any
action pending on the date this chapter becomes law in which the claimant alleges
personal injury or death from exposure to asbestos or silica unless:

(1) the action was filed before September 1, 2003, and trial has commenced or is
set to commence on or before the 90th day after the date this chapter becomes law,
except that the MDL rules shall apply to the action if the trial does not commence
on or before the 90th day after the date this chapter becomes law;

(2) the action was filed before September 1, 2003, and the claimant serves a report
that complies with Section 90.003 or 90.004 on or before the 90th day after the
date this chapter becomes law; or

(3) the action was filed before September 1, 2003, and the exposed person has been
diagnosed with malignant mesothelioma, other malignant asbestos-related cancer, or
malignant silica-related cancer.

(b) If the claimant fails to serve a report complying with Section 90.003 or 90.004
on or before the 90th day after the date this chapter becomes law under Subsection
(a)(2), the defendant may file a notice of transfer to the MDL pretrial court. If
the MDL pretrial court determines that the claimant served a report that complies
with Section 90.003 or 90.004 on or before the 90th day after the date this chapter
becomes law, the MDL pretrial court shall remand the action to the court in which
the action was filed. If the MDL pretrial court determines that the report was not
served on or before the 90th day after the date this chapter becomes law or that
the report served does not comply with Section 90.003 or 90.004, the MDL pretrial
court shall retain jurisdiction over the action pursuant to the MDL rules.

(c) In an action transferred to an MDL pretrial court in which the exposed person
is living and has been diagnosed with malignant mesothelioma, other malignant
asbestos-related cancer, malignant silica-related cancer, or acute silicosis, the
MDL pretrial court shall expedite the action in a manner calculated to provide the
exposed person with a trial or other disposition in the shortest period that is

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

USG B 0322

2005 TX S.B. 15 (NS)
 2005 Texas Senate Bill No. 15, Texas Seventy-Ninth Legislature (FULL TEXT -
NETSCAN)

fair to all parties and consistent with the principles of due process. The MDL
pretrial court should, as far as reasonably possible, ensure that such action is
brought to trial or final disposition within six months from the date the action is
transferred to the MDL pretrial court, provided that all discovery and case
management requirements of the MDL pretrial court have been satisfied.

(d) In an action pending on the date this chapter becomes law that is transferred
to or pending in an MDL pretrial court and in which the claimant does not serve a
report that complies with Section 90.003 or 90.004, the MDL pretrial court shall
not dismiss the action pursuant to this chapter but shall retain jurisdiction over
the action under the MDL rules. The MDL pretrial court shall not remand such action
for trial unless:

(1) the claimant serves a report complying with Section 90.003 or 90.004; or

(2)(A) the claimant does not serve a report that complies with Section 90.003 or
90.004;

(B) the claimant serves a report complying with Subsection (f)(1); and

(C) the court, on motion and hearing, makes the findings required by Subsection
(f)(2).

(e) In an action filed on or after the date this chapter becomes law that is
transferred to an MDL pretrial court and in which the claimant does not serve on a
defendant a report that complies with Section 90.003 or 90.004, the MDL pretrial
court shall, on motion by a defendant, dismiss the action under Section 90.007
unless:

(1) the claimant serves a report that complies with Subsection (f)(1); and

(2) the court, on motion and hearing, makes the findings required by Subsection
(f)(2).

(f) In an action in which the claimant seeks remand for trial under Subsection
(d)(2) or denial of a motion to dismiss under Subsection (e):

(1) the claimant shall serve on each defendant a report that:

(A) complies with the requirements of Sections 90.003(a)(2)(A), (B), (E), and  (F)
and 90.003(b) or Sections 90.004(a)(1), (2), and (4) and 90.004(e); and

(B) verifies that:

(i) the physician making the report has a physician-patient relationship with the
exposed person;

(ii) pulmonary function testing has been performed on the exposed person and the
physician making the report has interpreted the pulmonary function testing;

(iii) the physician making the report has concluded, to a reasonable degree of
medical probability, that the exposed person has radiographic, pathologic, or
computed tomography evidence establishing bilateral pleural disease or bilateral
parenchymal disease caused by exposure to asbestos or silica; and

(iv) the physician has concluded that the exposed person has asbestos-related or

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

USG B 0323

 2005 Texas Senate Bill No. 15, Texas Seventy-Ninth Legislature (FULL TEXT –
NETSCAN)

silica-related physical impairment comparable to the impairment the exposed person
would have had if the exposed person met the criteria set forth in Section 90.003
or 90.004; and

(2) the MDL pretrial court shall determine whether:

(A) the report and medical opinions offered by the claimant are reliable and
credible;

(B) due to unique or extraordinary physical or medical characteristics of the
exposed person, the medical criteria set forth in Sections 90.003 and 90.004 do not
adequately assess the exposed person's physical impairment caused by exposure to
asbestos or silica; and

(C) the claimant has produced sufficient credible evidence for a finder of fact to
reasonably find that the exposed person is physically impaired as the result of
exposure to asbestos or silica to a degree comparable to the impairment the exposed
person would have had if the exposed person met the criteria set forth in Section
90.003 or 90.004.

(g) A court's determination under Subsection (f) shall be made after conducting an
evidentiary hearing at which the claimant and any defendant to the action may offer
supporting or controverting evidence. The parties shall be permitted a reasonable
opportunity to conduct discovery before the evidentiary hearing.

(h) The court shall state its findings under Subsection (f)(2) in writing and shall
address in its findings:

(1) the unique or extraordinary physical or medical characteristics of the exposed
person that justify the application of this section; and

(2) the reasons the criteria set forth in Sections 90.003 and 90.004 do not
adequately assess the exposed person's physical impairment caused by exposure to
asbestos or silica.

(i) Any findings made by a court under Subsection (f) are not admissible for any
purpose at a trial on the merits.

(j) Subsections (d)(2) and (e)-(i) apply only in exceptional and limited
circumstances in which the exposed person does not satisfy the medical criteria of
Section 90.003 or 90.004 but can demonstrate meaningful asbestos-related or silica-
related physical impairment that satisfies the requirements of Subsection (f).
Subsections (d)(2) and (e)-(i) have limited application and shall not be used to
negate the requirements of this chapter.

(k) On or before September 1, 2010, each MDL pretrial court having jurisdiction
over cases to which this chapter applies shall deliver a report to the governor,
lieutenant governor, and the speaker of the house of representatives stating:

(1) the number of cases on the court's multidistrict litigation docket as of August
1, 2010;

(2) the number of cases on the court's multidistrict litigation docket as of August
1, 2010, that do not meet the criteria of Section 90.003 or 90.004, to the extent
known;

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

USG B 0324

2005 TX S.B. 15 (NS)
 2005 Texas Senate Bill No. 15, Texas Seventy-Ninth Legislature (FULL TEXT -
NETSCAN)

(3) the court's evaluation of the effectiveness of the medical criteria established
by Sections 90.003 and 90.004;

(4) the court's recommendation, if any, as to how medical criteria should be
applied to the cases on the court's multidistrict litigation docket as of August 1,
2010; and

(5) any other information regarding the administration of cases in the MDL pretrial
courts that the court deems appropriate.

Sec. 90.011. BANKRUPTCY. Nothing in this chapter is intended to affect the rights
of any party in a bankruptcy proceeding or affect the ability of any person to
satisfy the claim criteria for compensable claims or demands under a trust
established pursuant to a plan of reorganization under Chapter 11 of the United
States Bankruptcy Code (11 U.S.C. Section 1101 et seq.).

Sec. 90.012. SUPREME COURT RULEMAKING. The supreme court may promulgate amendments
to the Texas Rules of Civil Procedure regarding the joinder of claimants in
asbestos-related actions or silica-related actions if the rules are consistent with
Section 90.009.

SECTION 3. Subsection (a), Section 16.003, Civil Practice and Remedies Code, is
amended to read as follows:

(a) Except as provided by Sections 16.010 16.0031, and 16.0045, a person must
bring suit for trespass for injury to the estate or to the property of another,
conversion of personal property, taking or detaining the personal property of
another, personal injury, forcible entry and detainer, and forcible detainer not
later than two years after the day the cause of action accrues.

SECTION 4. Subchapter A, Chapter 16, Civil Practice and Remedies Code, is amended
by adding Section 16.0031 to read as follows:

Sec. 16.0031. ASBESTOS-RELATED OR SILICA-RELATED INJURIES. (a) In an action for
personal injury or death resulting from an asbestos-related injury, as defined by
Section 90.001, the cause of action accrues for purposes of Section 16.003 on the
earlier of the following dates:

(1) the date of the exposed person's death; or

(2) the date that the claimant serves on a defendant a report complying with
Section 90.003 or 90.010(f).

(b) In an action for personal injury or death resulting from a silica-related
injury, as defined by Section 90.001, the cause of action accrues for purposes of
Section 16.003 on the earlier of the following dates:

(1) the date of the exposed person's death; or

(2) the date that the claimant serves on a defendant a report complying with
Section 90.004 or 90.010(f).

SECTION 5. Subsection (a), Section 51.014, Civil Practice and Remedies Code, is
amended to read as follows:

(a) A person may appeal from an interlocutory order of a district court, county

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

USG B 0325

2005 TX S.B. 15 (NS)
  2005 Texas Senate Bill No. 15, Texas Seventy-Ninth Legislature (FULL TEXT -
NETSCAN)

court at law, or county court that:

(1) appoints a receiver or trustee;

(2) overrules a motion to vacate an order that appoints a receiver or trustee;

(3) certifies or refuses to certify a class in a suit brought under Rule 42 of the
Texas Rules of Civil Procedure;

(4) grants or refuses a temporary injunction or grants or overrules a motion to
dissolve a temporary injunction as provided by Chapter 65;

(5) denies a motion for summary judgment that is based on an assertion of immunity
by an individual who is an officer or employee of the state or a political
subdivision of the state;

(6) denies a motion for summary judgment that is based in whole or in part upon a
claim against or defense by a member of the electronic or print media, acting in
such capacity, or a person whose communication appears in or is published by the
electronic or print media, arising under the free speech or free press clause of
the First Amendment to the United States Constitution, or Article I, Section 8, of
the Texas Constitution, or Chapter 73;

(7) grants or denies the special appearance of a defendant under Rule 120a, Texas
Rules of Civil Procedure, except in a suit brought under the Family Code;

(8) grants or denies a plea to the jurisdiction by a governmental unit as that term
is defined in Section 101.001;

(9) denies all or part of the relief sought by a motion under Section 74.351(b),
except that an appeal may not be taken from an order granting an extension under
Section 74.351; or

(10) grants relief sought by a motion under Section 74.351(1); or

(11) denies a motion to dismiss filed under Section 90.007.

SECTION 6. Subsection (d), Section 22.225, Government Code, is amended to read as
follows:

(d) A petition for review is allowed to the supreme court for an appeal from an
interlocutory order described by Section 51.014(a)(3), or (6), or (11), Civil
Practice and Remedies Code.

SECTION 7. Subsection (a), Section 23.101, Government Code, is amended to read as
follows:

(a) The trial courts of this state shall regularly and frequently set hearings and
trials of pending matters, giving preference to hearings and trials of the
following:

(1) temporary injunctions;

(2) criminal actions, with the following actions given preference over other
criminal actions:

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

USG B 0326

2005 Texas Senate Bill No. 15, Texas Seventy-Ninth Legislature (FULL TEXT - NETSCAN)

(A) criminal actions against defendants who are detained in jail pending trial;

(B) criminal actions involving a charge that a person committed an act of family violence, as defined by Section 71.004, Family Code; and

(C) an offense under:

(i) Section 21.11, Penal Code;

(ii) Chapter 22, Penal Code, if the victim of the alleged offense is younger than 17 years of age;

(iii) Section 25.02, Penal Code, if the victim of the alleged offense is younger than 17 years of age; or

(iv) Section 25.06, Penal Code;

(3) election contests and suits under the Election Code;

(4) orders for the protection of the family under Subtitle B, Title 4, Family Code;

(5) appeals of final rulings and decisions of the Texas Workers' Compensation Commission and claims under the Federal Employers' Liability Act and the Jones Act; and

(6) appeals of final orders of the commissioner of the General Land Office under Section 51.3021, Natural Resources Code; and

(7) actions in which the claimant has been diagnosed with malignant mesothelioma, other malignant asbestos-related cancer, malignant silica-related cancer, or acute silicosis.

SECTION 8. Subchapter E, Chapter 21, Insurance Code, is amended by adding Article 21.53X to read as follows:

Art. 21.53X. PROHIBITED PRACTICES RELATED TO EXPOSURE TO ASBESTOS OR SILICA.  (a) In this article, 'health benefit plan' means a plan that provides benefits for medical, surgical, or other treatment expenses incurred as a result of a health condition, a mental health condition, an accident, sickness, or substance abuse, including an individual, group, blanket, or franchise insurance policy or insurance agreement, a group hospital service contract, or an individual or group evidence of coverage or similar coverage document. The term includes:

(1) a small employer health benefit plan or a health benefit plan written to provide coverage with a cooperative under Chapter 26 of this code;

(2) a standard health benefit plan offered under Article 3.80 of this code or Section 9N, Texas Health Maintenance Organization Act (Article 20A.09N, Vernon's Texas Insurance Code); and

(3) a health benefit plan offered under Chapter 1551, 1575, 1579, or 1601 of this code.

(b) This article applies to any entity that offers a health benefit plan or an annuity or life insurance policy or contract in this state, including:

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

 2005 Texas Senate Bill No. 15, Texas Seventy-Ninth Legislature (FULL TEXT -
NETSCAN)

(1) a stock or mutual life, health, or accident insurance company;

(2) a group hospital service corporation operating under Chapter 842 of this code;

(3) a fraternal benefit society operating under Chapter 885 of this code;

(4) a stipulated premium insurance company operating under Chapter 884 of this
code;

(5) a Lloyd's plan operating under Chapter 941 of this code;

(6) an exchange operating under Chapter 942 of this code;

(7) a health maintenance organization operating under Chapter 843 of this code;

(8) a multiple employer welfare arrangement that holds a certificate of authority
under Chapter 846 of this code;

(9) an approved nonprofit health corporation that holds a certificate of authority
under Chapter 844 of this code;

(10) a statewide mutual assessment company operating under Chapter 881 of this
code;

(11) a local mutual aid association operating under Chapter 886 of this code; and

(12) a local mutual burial association operating under Chapter 888 of this code.

(c) An entity that offers a health benefit plan or an annuity or life insurance
policy or contract may not use the fact that a person has been exposed to asbestos
fibers or silica or has filed a claim governed by Chapter 90, Civil Practice and
Remedies Code, to reject, deny, limit, cancel, refuse to renew, increase the
premiums for, or otherwise adversely affect the person's eligibility for or
coverage under the policy or contract.

SECTION 9. (a) Sections 90.009 and 16.0031, Civil Practice and Remedies Code, as
added by this Act, apply to an action commenced on or after the effective date of
this Act or pending on the effective date of this Act and in which the trial, or
any new trial or retrial following motion, appeal, or otherwise, has not commenced
on or before the effective date of this Act. An action commenced before the
effective date of this Act in which trial has commenced on or before the effective
date of this Act or in which there has been a final, unappealable disposition by
order, judgment, voluntary dismissal, or otherwise is governed by the law
applicable to the action immediately before the effective date of this Act, and
that law is continued in effect for that purpose. Section 16.0031, Civil Practice
and Remedies Code, as added by this Act, shall not operate to revive any claims
that are barred by application of the law in effect immediately before the
effective date of this Act.

(b) Article 21.53X, Insurance Code, as added by this Act, applies only to a health
benefit plan or an annuity or life insurance policy or contract delivered, issued
for delivery, or renewed on or after the effective date of this Act. A health
benefit plan or an annuity or life insurance policy or contract delivered, issued
for delivery, or renewed before the effective date of this Act is governed by the
law as it existed immediately before the effective date of this Act, and that law
is continued in effect for that purpose.

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

2005 TX S.B. 15 (NS)                                                    Page 19
  2005 Texas Senate Bill No. 15, Texas Seventy-Ninth Legislature (FULL TEXT –
  NETSCAN)

SECTION 10. There is a direct appeal to the supreme court from an order, however
characterized, of a trial court granting or denying a temporary or otherwise
interlocutory injunction or a permanent injunction on the grounds of the
constitutionality or unconstitutionality, or other validity or invalidity, under
the state or federal constitution of all or any part of this Act. The direct appeal
is an accelerated appeal.

SECTION 11. Section 90.007, Civil Practice and Remedies Code, as added by this Act,
allowing the dismissal of claims for failing to serve reports complying with the
requirements of Sections 90.003 and 90.004, Civil Practice and Remedies Code,
Subsection (d), Section 90.010, Civil Practice and Remedies Code, as added by this
Act, setting standards for certain cases to be remanded for trial from MDL pretrial
courts, and Section 16.0031, Civil Practice and Remedies Code, as added by this
Act, relating to the limitations period for asbestos-related and silica-related
causes of action, are not severable, and none of those sections would have been
enacted without the others. If any of those provisions are held invalid, all of
those provisions are invalid. If any other provision of this Act or its application
to any person or circumstance is held invalid, the invalidity does not affect other
provisions or applications of this Act, and to this end the provisions of this Act,
other than Section 90.007, Subsection (d), Section 90.010, and Section 16.0031,
Civil Practice and Remedies Code, as added by this Act, are declared severable.

SECTION 12. This Act takes effect September 1, 2005.

_____  _____ President of the
Senate Speaker of the House

I hereby certify that S.B. No. 15 passed the Senate on April 27, 2005, by the
following vote: Yeas 30, Nays 0; and that the Senate concurred in House amendment
on May 16, 2005, by the following vote: Yeas 30, Nays 0.


_____

Secretary of the Senate

I hereby certify that S.B. No. 15 passed the House, with amendment, on May 11,
2005, by a non-record vote.


_____

Chief Clerk of the House

Approved:


_____

Date


_____

Governor

2005 TX S.B. 15 (NS)

END OF DOCUMENT

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)

USG B 0329

 2005 Texas Senate Bill No. 15, Texas Seventy-Ninth Legislature (FULL TEXT –
NETSCAN)

© 2005 Thomson/West. (No Claim to Orig. U.S. Govt. Works.)