**25**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Chapter 11 |
| USG CORPORATION, a Delaware | ) | |
| Corporation, et al., | ) | Case No.  01-2094 (RJN) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTORS' MOTION FOR CASE MANAGEMENT ORDER FOR SUBSTANTIVE ESTIMATION HEARINGS

Daniel J. DeFranceschi (DE No. 2732)
Paul N. Heath (DE No. 3704)
RICHARDS, LAYTON, & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

COOLEY GODWARD LLP
STEPHEN C. NEAL (CA 170085)
SCOTT D. DEVEREAUX (CA 146050)
HARMEET K. DHILLON (CA 207873)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
Tel: (650) 843-5000
Fax: (650) 857-0663

Counsel for Debtors and Debtors in Possession

RLF1-2474881-1

**TABLE OF CONTENTS**

PAGE

I.    INTRODUCTION ....................................................................................................2

II.   SUMMARY OF SUBSTANTIVE ESTIMATION PROPOSAL......................................3

      A.    Discovery.................................................................................................4

      B.    Phase I Hearings ....................................................................................4

      C.    Phase II Hearings ...................................................................................5

      D.    § 524(g) Trust And Plan Confirmation .................................................5

III.  AS A MATTER OF LAW, THIS COURT MUST SUBSTANTIVELY ESTIMATE
      DEBTORS' ASBESTOS PERSONAL INJURY LIABILITY........................................6

      A.    Due Process Requires That Debtors Be Heard and Allowed to Present Their
            Substantive Defenses in the Estimation Process .................................6

      B.    This Court Has A Statutory Mandate To Estimate Unliquidated Claims Against
            Debtors....................................................................................................9

      C.    Only Those Claimants With A Right To Payment Hold Valid Claims Against
            Debtors..................................................................................................10

      D.    Asbestos Personal Injury Claimants Have No Right To A Jury Trial Before
            Substantive Estimation .......................................................................11

      E.    Plaintiffs' Counsel Have Previously Supported Debtors' Substantive Estimation
            Approach...............................................................................................13

      F.    Substantive Estimation Is Appropriate And Necessary Here ...........14

IV.   PAST SETTLEMENTS DO NOT PROVE THE VALIDITY OF PRESENT CLAIMS.............14

      A.    Mass Screenings and Consolidations Inundate the Tort System and Defendants
            With Invalid Claims.............................................................................15

      B.    Past Settlements Are An Unreliable Basis For Estimating Debtors' Liability ................18

V.    DAUBERT WILL PLAY A CENTRAL ROLE IN THE PROPOSED SUBSTANTIVE
      ESTIMATION HEARINGS .....................................................................................20

      A.    The Federal Courts' "Gatekeeping" Role Under Daubert .................20

      B.    Daubert Applies In Debtors' Cases.....................................................21

      C.    Expert Evidence Must Be Reliable And Relevant To The Claims At Issue...................22

      D.    This Court Should Invoke The Assistance Of A Scientific Expert Panel.......................23

VI.   PHASE I – DEBTORS' SUBSTANTIVE DEFENSES .................................................24

      A.    Claims That Recite No Legally Compensable Injury Should Be Estimated At
            Zero.......................................................................................................25

            1.    Putative Claimants With No Physical Impairment ...............25

USG B 0381

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

      2.     The Legal Basis For Excluding Asbestos Personal Injury Claimants Without Legally Compensable Injury...................................................................27

  B.   Claims That Do Not Demonstrate The Requisite Exposure To Debtors' Asbestos Products Should be Estimated at Zero ...........................................................30

  C.   Claims Alleging Lung Cancer Without Asbestosis Should Be Estimated At Zero .........31

  D.   Mesothelioma Claims Demonstrating Exposure Only To Chrysotile Should Be Estimated At Zero ........................................................................................32

  E.   "Other" Cancers Should Be Estimated At Zero...........................................................33

VII.   PHASE II: ESTABLISHMENT OF TRUST PARAMETERS AND VOTING RIGHTS...........33

VIII.   LIMITED DISCOVERY WILL BE NECESSARY FOR SUBSTANTIVE ESTIMATION ......................................................................................................34

  A.   This Court May Order Discovery In Estimation Proceedings .........................................35

  B.   Phase I Hearings: Expert Discovery ...........................................................................35

  C.   Phase II Hearings: Expert and Fact Witness Discovery .................................................36

IX.   SUBSTANTIVE ESTIMATION RULINGS WILL IMPACT TRUST SIZE AND PLAN VOTING ...............................................................................................................37

  A.   Asbestos Personal Injury Claimants Whose Claims Have Been Estimated At Zero Value Should Not Vote In The Confirmation Process.......................................................37

  B.   Putative Claimholders Will Submit Declarations and Records Attesting To The Allowability of Their Claims In Order To Vote ...........................................................38

  C.   Because Debtors' Reorganization Plan Will Fully Compensate Valid Asbestos Personal Injury Claims, It Is Likely To Be Approved .......................................................38

X.   PROPOSED ESTIMATION SCHEDULE...............................................................................39

XI.   CONCLUSION...........................................................................................................39

USG B 0382

TABLE OF AUTHORITIES

PAGE

## CASES

*Adams v. Harron*, 1999 WL 710326 (4th Cir. Sept. 13, 1999) ....................................... 16

*Allison v. McGhan Medical Corporation*, 184 F.3d 1300 (11th Cir. 1999) ................................. 24

*Association of Mexican-American Educators v. California*, 231 F.3d 572 (9th Cir. 2000) ............................................................................................................... 24

*Baldwin v. Hale*, 68 U.S. 223 (1863) ............................................................................. 7

*Bath Iron Works Corporation et al. v. Director of Office of Workers' Compensation Programs, USDL*, 137 F.3d 673 (1st Cir. 1998) ...................................................... 32

*Bernier v. Raymark Industries, Incorporated*, 516 A.2d 534 (Me. 1986) ................................... 28

*Bittner v. Borne Chemical Company, Incorporated*, 691 F.2d 134 (3d. Cir. 1984) .......... 9, 10, 38

*Bolt v. Owens-Corning et al.*, 1995 WL 322007 (Tenn. Ct. App. May 30, 1995) ..................... 32

*Bowerman v. United Illuminating*, No. X04CV940115436S, 1998 WL 910271 (Conn. Super. Ct. Dec. 15, 1998) ......................................................................... 28

*Caterinichhio v. Pittsburgh Corning Corporation*, 605 A.2d 1092 (N.J. 1992) ..................... 29

*Chester Valley Coach Works v. Fisher-Price, Incorporated*, No Civ. A. 99 CV 4197 2001 WL 1160012 (E.D. Pa. Aug. 29, 2001) .............................................. 23

*Cohen v. de la Cruz*, 523 U.S. 213 (1998) ..................................................................... 11

*Crawford v. U.S. Department of Labor*, 932 F.2d 152 (2d Cir. 1991) ...................................... 27

*Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) .............. 5, 10, 20, 21, 22, 25, 29

*Dusenbery v. U.S.*, 534 U.S. 161 (2002) ......................................................................... 7

*Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938) ................................................. 21, 22

*Fedor v. Freightliner, Incorporated*, 193 F. Supp. 2d 820 (E.D. Pa. 2002) ......................... 23

*Fuentes v. Shevin*, 407 U.S. 67 (1972) ......................................................................... 7, 9

*General Electric Company v. Joiner* 522 U.S. 136 (1997) ................................................. 23

*In the Matter of George W. Myers Company*, 412 F.2d 785 (3d Cir. 1969) ............................... 8

*Grannis v. Ordean*, 234 U.S. 385 (1914) ....................................................................... 7

*Grzybowski v. Aquaslide 'N' Dive Corporation*, 85 B.R. 545 (9th Cir. 1987) ....................... 12

*Hall v. Baxter Healthcare Corporation*, 947 F. Supp. 1387 (D. Or. 1996) ............................. 24

*Hanna v. Plumer*, 380 U.S. 460 (1965) ......................................................................... 21, 22

*Herber v. Johns-Manville Corporation*, 785 F.2d 79 (3d Cir. 1986) ..................................... 29

*Hinton v. Monsanto Company*, 2001 Ala. LEXIS 347 (September 14, 2001) ........................... 28

*In re A.H. Robins v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) .............................................. 12

USG B 0383

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*In re Asbestos II,* 142 F.R.D. 152 (N.D. Ill. 1991) .................................................................... 28

*In re Baldwin-United Corporation,* 55 B.R. 885 (Bankr. S.D. Ohio 1985) ................................ 10

*In re Chateauguay Corporation,* 111 B.R. 67 (Bankr. S.D.N.Y. 1990) ...................................... 13

*In re Frenville,* 744 F.2d 332 (3d Cir. 1984), *cert. denied,* 469 U.S. 1160 (1985).......... 10, 21, 29

*In re Hawaii Federal Asbestos Cases,* 734 F. Supp. 1563 (D. Haw. 1990) .............. 16, 27, 28, 29

*In re Joint Eastern and Southern Districts Asbestos Litigation,* 830 F.Supp. 686 (E. & S.D.N.Y. 1993) ......................................................................................................... 23, 24

*In re Kaplan,* 186 B.R. 874 (Bankr. D.N.J. 1995) .................................................................. 9, 38

*In re Lane,* 68 B.R. 609 (Bankr. D. Haw. 1986)......................................................................... 13

*In re Orsa Assocation,* 99 B.R. 609 (E.D. Pa. 1989) ................................................................... 8

*In re Paoli Railroad Yard PCB Litigation,* 35 717 (3d Cir. 1994) ......................................... 22, 23

*In re Raymark Asbestos Exposure Cases,* No. 87-1016-K, 1987 U.S. Dist. LEXIS 16122 (D. Kan. 1987) .......................................................................................................... 16

*In re Standard Insulations, Incorporated,* 138 B.R. 947 (Bankr. W.D. Mo. 1992) ................... 12

*In re Thomson McKinnon Securities, Incorporated,* 143 B.R. 612 (Bankr. S.D.N.Y. 1992) ...................................................................................................................... 9, 10

*In re Tyrone F. Conner Corp.,* 140 B.R. 771 (E.D. Cal. 1992) ..................................................... 8

*In re UNR Indus., Inc.,* 45 B.R. 322 (N.D. Ill. 1984).......................................................... 10, 11

*Jones v. Chemetron Corporation,* 212 F.3d 199 (3d Cir. 2000) ................................................ 10

*Jones v. CSX Transportation* 287 F.3d 1341 (11th Cir. 2002) ................................................... 28

*Kelly v. Crown Equipment Company,* 970 F.2d 1273 (3d Cir. 1992)......................................... 22

*Marine Asbestos Cases,* 265 F.3d 861 (9th Cir. 2001) .............................................................. 28

*Mathews v. Eldridge,* 424 U.S. 319 (1976)......................................................................... 7, 8, 9

*Metro-North Commuter Railroad Company v. Buckley,* 521 U.S. 424 (1997) .............. 27, 28, 30

*Midway Motor Lodge of Elk Grove v. Innkeepers' Telemanagement,* 54 F.3d 406 (7th Cir. 1995)........................................................................................................................ 10

*Miller v. Armstrong World Industries,* 817 P.2d 111 (Colo. 1991)........................................... 28

*Mullane v. Central Hanover Bank & Trust Company,* 339 U.S. 306 (1950) ........................... 6, 7

*Nadell v. Las Vegas Metropolitan Police,* 268 F.3d 924 (9th Cir. 2001), *cert. denied,* 122 S. Ct. 1917 (2002) ....................................................................................... 21

*Owens-Illinois v. Armstrong,* 591 A.2d 544 (Md. App. 1991) *aff'd in part and rev'd in part on other grounds,* 604 A.2d 47 (1992)............................................................... 28, 29

*Oddi v. Ford Motor Company,* 234 F.3d 136 (3d Cir. 2000) ...................................................... 23

*Pennsylvania Department of Public Welfare v. Davenport,* 495 U.S. 552 (1990) ...................... 11

- iv -

USG B 0384

## TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Paoline v. Kilgo Trucking, Incorporated*, No. Civ A 00-956, 2002 WL 826421
(E.D. Pa. Apr. 30, 2002) .................................................................. 23

*Pichowicz v. Hoyt*, No. Civ. 92-388-M, 2000 WL 1480445 (D.N.H. February 11,
2000) ...................................................................................... 28

*Pick v. American Medical Systems, Incorporated*, 958 F.Supp. 1151 (E.D. La.
1997) ...................................................................................... 21

*Raymark Industries v. Stemple*, 1990 WL 72588 (D. Kan. May 30, 1990) ................. 16

*Roberts v. Johns-Manville Corporation*, 45 B.R. 823 (S.D.N.Y. 1984) ..................... 12

*Sarapata v. Norfolk & Portsmouth Belt Line Railroad Company*, No. L98-1669,
2000 WL 33258758 .......................................................................... 16

*Schweitzer v. Consolidated Rail Corporation*, 758 F.2d 936 (3d Cir.
1985) ..................................................................................... 26

*Simmons v. Pacor, Incorporated*, 674 A.2d 232 (Pa. 1996) ........................... 28, 29

*Sniadach v. Family Finance Corporation*, 395 U.S. 337 (1969) ............................. 7

*State v. Free*, 2002 WL 1040364 (N.J. Super. A.D., 2002) ................................. 29

*Temple-Inland Forest Products Corporation v. Carter*, 993 S.W. 2d 88 (Tex. 1999) ............... 28

*Theer v. Philip Carey Company*, 611 A.2d 148 (N.J. App. 1992) ...................... 28, 29

*Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156 (1946) ............. 10

*Verbryke v. Owens-Corning Fiberglass Corporation*, 616 N.E.2d 1162 (Ohio Ct.
App. 1992) ................................................................................ 28

*Windsor Communications Group, Incorporated v. Grant*, 75 B.R. 713 (E.D. Pa.
1985) ...................................................................................... 7

## STATUTES

U.S. CONST. AMEND V ............................................................................. 6

11 U.S.C. § 101(5) ........................................................................... 2, 10

11 U.S.C. § 101(5)(A) ....................................................................... 11, 18

11 U.S.C. § 502 ................................................................................. 7

11 U.S.C. § 502(b)(1) .......................................................................... 11

11 U.S.C. § 502(c) .............................................................................. 3

11 U.S.C. § 502(c)(1) ...................................................................... 3, 9, 11

11 U.S.C. § 524(g) ..................................................................... 3, 5, 6, 37, 38

11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb) ........................................................... 6

11 U.S.C. § 1126(a) ........................................................................... 11

28 U.S.C. § 157 .............................................................................. 12

USG B 0385

## TABLE OF AUTHORITIES
### (CONTINUED)

**PAGE**

28 U.S.C. § 157(b)(2)(B) .................................................................................................... 12

28 U.S.C. § 157(b)(5) ...................................................................................................... 11

28 U.S.C. § 1411(a) ......................................................................................................... 11

FED R. BANKR. P. 3018(a) .............................................................................................. 37

FED. R. BANKR. P. 7001(10) .......................................................................................... 35

FED. R. BANKR. P. 9014 .................................................................................................. 35

FED. R. BANKR. P. 9014 ADVISORY COMMITTEE NOTE ............................................... 35

FED. R. CIV. P. 26(a)(2) ........................................................................................... 4, 36

FED. R. CIV. P. 26(b)(4) .................................................................................................. 36

FED. R. EVID. 101 ............................................................................................................. 20

FED. R. EVID. 104 .................................................................................................... 23, 24

FED. R. EVID. 104(a) ........................................................................................................ 23

FED. R. EVID. 407 ............................................................................................................. 22

FED. R. EVID. 702 ..................................................................................... 20, 21, 25, 29

FED. R. EVID. 702 ADVISORY COMMITTEE NOTE, (2000 AMENDMENTS) .................... 21

FED. R. EVID. 706 .................................................................................................... 23, 24

FED. R. EVID. 706(a) ....................................................................................................... 23

### OTHER AUTHORITY

THE USE OF COURT EXPERTS IN ASBESTOS LITIGATION, 137 F.R.D 35 (1991) .......................... 15

USG B 0386

TABLE OF EXHIBITS

| Ex. No. | Title |
|---------|-------|
| 1 | Opposition Of The Official Committee Of Asbestos Personal Injury Claimants To Debtor's Motion For Entry Of A Case Management Order, Establishment Of Bar Date, Approval Of The Proof Of Claim Forms And Approval Of Notice Program, *In re W.R. Grace & Co., et al.*, No. 01-01139 (JJF) (Bankr. D. Del. filed Sept. 10, 2001). |
| 2 | Asbestos Claimants' Committee's And Future Claimants' Representative's Combined Memorandum On The Authority And Purposes For An Estimation Of Debtors' Asbestos Liability, *In re The Babcock & Wilcox Co., et al.*, No. 00-0558, Bankr. No. 00-10992 (E.D. La., Feb. 19, 2002). |
| 3 | Opposition Of The Asbestos Claimants Committee To Debtors' Bar Date Reply Memorandum And Submission of Revised Proof Of Claim Form And To Debtors' Motion For Entry Of An Order Establishing A Bar Date; Approving The Proof Of Claim Forms; And Approving The Form And Manner Of Notice, *In re The Babcock & Wilcox Co., et al.*, No. 00-0558, Bankr. No. 00-10992 (E.D. La., August 2, 2000). |
| 4 | Tillinghast - Towers Perrin PowerPoint presentation from March 7-8, 2002. |
| 5 | Administrative Order No. 8, *In re Asbestos Prod. Liab. Litig.* (*No. VI*), Civ. Action No. MDL 875 (E.D. Penn., entered Jan. 16, 2002). |
| 6 | Raji Bhagavatula, Rebecca Moody, & Jason Russ, *Asbestos: A Moving Target*, Best's Review, Sept. 1, 2001, at 85. |
| 7 | Deborah Hensler *et al.*, *Asbestos Litigation in the U.S.: A New Look at an Old Issue* 29 (RAND Inst. of Civil Justice Aug. 2001). |
| 8 | Unofficial Committee Of Select Asbestos Claimants Memorandum In Support Of Litigation Protocol, *In re The Babcock & Wilcox Co., et al.*, No. 00-0558, Bankr. Case No. 00-10992 (E.D. La., Feb. 22, 2002) (signed by Elizabeth W. Magner, Esq.). |
| 9 | Memorandum By Interested Attorney *In re Johns-Manville Corp.* (E.D.N.Y. 2001) (No. 90 CV 9373) (brief submitted by asbestos plaintiffs' attorney Steve Kazan). |

USG B 0387

| Ex. No. | Title |
|---|---|
| 10 | ..........Churg, A., Neoplastic *Asbestos-Induced Disease,* in Pathology Of Occupational Lung Disease, 2d Edition, p. 339-391 (1998). |
| 11 | ..........Berry, G., Gilson, J.C., Holmes, S., Lewinsohn, H.C., Roach, S.A., *Asbestosis: a Study of Dose-Response Relationships in an Asbestos Textile Factory,* BRIT. J. INDUS. MED., Vol. 36 at 98-112 (1979). |
| 12 | ..........Browne, K., *Asbestos-Related Disorders,* in Occupational Lung Disorders, pp. 411-489 (Raymond Parkes ed., Butterworth-Heinemann Ltd. 1994). |
| 13 | ..........Browne, K., *Is Asbestos or Asbestosis the Cause of the Increased Risk of Lung Cancer in Asbestos Workers?,* 43 BRIT. J. INDUS. MED., 145-149 (1986). |
| 14 | ..........Weiss, W., *Asbestosis: A Marker for the Increased Risk of Lung* Cancer *Among Workers Exposed to Asbestos,* 115 CHEST, pp. 536-549 (1999). |
| 15 | ..........Karjalainen, A., Pukkala, E., Kauppinen, T. & Partanen, T., *Incidence of cancer among Finnish patients with asbestos-related pulmonary or pleural fibrosis,* 10 CANCER CAUSES AND CONTROL, 51-57 (1999). |
| 16 | ..........Davis, J.M.G., *Mineral Fibre Carcinogenesis: Experimental Data Relating to the Importance of Fibre Type, Size Deposition, Dissolution and Migration, World Health Organization International Agency For Research On Cancer,* in Non-Occupational Exposure to Mineral Fibres, 90, International Agency for Research on Cancer, Scientific Publications, 33-45 (1989). |
| 17 | ..........Churg, A., Wright, J.L., *Persistence of Natural Mineral Fibres in Human Lungs: An Overview,* 102 ENVTL. HEALTH PERSP., 229-233 (1994). |
| 18 | ..........Churg, A., *Analysis of Lung Asbestos Content,* 48 Brit. J. Indus. Med., 649-652 (1991). |

609789 v17/PA
d2$l17!.DOC

- viii -

USG B 0388

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re:<br><br>USG CORPORATION, a Delaware<br>Corporation, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case Nos. 01-2094 through<br>01-2104<br><br>Jointly Administered |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTORS' MOTION FOR CASE MANAGEMENT ORDER FOR SUBSTANTIVE ESTIMATION HEARINGS

Debtors have been forced into bankruptcy by a flood of asbestos personal injury lawsuits, a small percentage of which are meritorious and should be compensated, and the vast majority of which are brought by plaintiffs who have no physical impairment or were never exposed to Debtors' products. Debtors have a legal right and a fiduciary obligation to their shareholders and other creditors not to cede their companies to asbestos personal injury plaintiffs who do not have valid claims against Debtors. Unlike other asbestos debtors before them, Debtors insist that they and their stakeholders be granted the protections afforded under the Bankruptcy Code and the Due Process Clause of the United States Constitution to establish the true limits of their legal liability to asbestos claimants. Property interests should not be transferred by fiat.

The substantive estimation approach urged by Debtors ("Substantive Estimation") allows all parties to be heard and to present the medical and scientific evidence relevant to determining injury and causation. From this process, the Court will have the benefit of evidence – not mere arguments – from which to identify the characteristics of *valid* claims and thereby estimate the number and value of such claims. Substantive Estimation contrasts sharply with the Asbestos Personal Injury Creditors Committee's ("ACC") proposed estimation process, which simply assumes that all claims are valid regardless of

- 1 -

USG B 0389

the nature of the claim. Before this Court is a controversy of enormous significance to many parties, including claimants who are truly deserving of compensation. The parties deserve to be heard, and the Constitution and the Code require it.

I.  **INTRODUCTION**

USG Corporation and its affiliated debtors in the above-captioned matter (collectively "Debtors"[1]) respectfully submit this Memorandum of Points and Authorities in response to this Court's Order dated June 19, 2002 ordering that specific parties submit briefs describing their proposals for addressing the asbestos personal injury claims against Debtors. Debtors also submit this Memorandum of Points and Authorities in support of their Motion for a Case Management Order for Substantive Estimation Hearings, filed herewith.

At the heart of Debtors' Substantive Estimation proposal is an elementary proposition: Debtors are entitled by law to have the Court address the substantive issues concerning their asbestos personal injury liability. On its face, Debtors' request – that this Court establish appropriate guidelines for estimating Debtors' true liability for asbestos personal injury claims – would appear to be uncontroversial. After all, Debtors presently face over 100,000 pending claims[2] ranging from mesothelioma and lung cancer claims to claims brought by plaintiffs who suffer no medical impairment whatsoever and have never been exposed to Debtors' products. The sheer number of such claims makes clear

---

[1] Debtors are USG Corporation, United States Gypsum Company, USG Interiors, Inc., USG Interiors International, Inc., L&W Supply Corporation, Beadex Manufacturing, LLC, B-R Pipeline Company, La Mirada Products Co., Inc., USG Industries, Inc., USG Pipeline Company and Stocking Specialists, Inc.

[2] Throughout this Memorandum, Debtors will refer to parties pursuing asbestos personal injury causes of action as "claimants" and their actions as "claims." In so doing, Debtors in no way recognize these causes of action as "claims" within the meaning of 11 U.S.C. § 101(5) ("claim" means (A) right to payment, whether such right is reduced to judgment – liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured…"). Debtors believe and intend to prove that the great majority of asbestos personal injury "claims" pending against them are, instead, mere demands for payment that do not rise to the level of compensable claims under the Bankruptcy Code.

USG B 0390

that this issue is appropriate for estimation under 11 U.S.C. § 502(c).[3]

The ACC agrees that estimation is proper. But the ACC's concept of estimation is very different from what Debtors propose – and, more importantly, from what the law permits. The ACC asks this Court to forego a merits analysis in the context of the applicable law, simply assume that any asbestos personal injury claims filed against Debtors are valid and extrapolate Debtors' liability from the payment of past claims regardless of their validity under the Code. The ACC's approach is seriously deficient when measured against the applicable statutory, Constitutional, and evidentiary norms that must govern these proceedings.

Debtors' Substantive Estimation proposal is summarized in Section II, *infra*, and the legal justification for the proposal is discussed in detail in Section III, *infra*. The entire process, from the opening of discovery through the end of the estimation hearings, should take no longer than nine months from the day this Court issues an order consistent with Debtors' proposal.

## II.    SUMMARY OF SUBSTANTIVE ESTIMATION PROPOSAL

As discussed in greater detail in Section III, *infra*, Debtors seek to quantify their total asbestos personal injury liability to present and future claimants through estimation proceedings pursuant to 11 U.S.C. § 502(c)(1). First, Debtors propose a period of expert and fact witness discovery involving a small, statistically representative sample of the claims currently asserted against them. Second, through motion practice and contested evidentiary hearings, the Court will establish categories of allowable asbestos personal injury claims based on certain of Debtors' threshold defenses discussed in Section VI, *infra*. Third, Debtors will present epidemiological and economic expert testimony on the appropriate size of a trust established pursuant to 11 U.S.C. § 524(g) ("Trust"). Finally,

---

[3] 11 U.S.C. § 502(c)(1) provides that:

> (c) There shall be estimated for purpose of allowance under this section –
>> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . .

USG B 0391

Debtors will propose a plan of reorganization reflecting the Court's rulings on estimation ("Plan"), and the Plan confirmation process may begin.

### A.    Discovery

As discussed in greater detail in Section VIII, *infra*, Debtors propose to take limited discovery of a representative subset of asbestos personal injury claimants (approximately 1% of present claimants) through standardized interrogatories designed to elicit pertinent medical and exposure history. This written discovery will be followed by depositions of a smaller number of claimants to verify their interrogatory responses. The data collected in this exercise will be used in Phase II of the estimation hearings to determine the number of allowable claims under the criteria established by this Court in Phase I hearings. Testifying experts for Phase I and II hearings also will prepare reports pursuant to FED. R. CIV. P. 26(a)(2) and be deposed during this discovery period.[4]

### B.    Phase I Hearings

In Phase I of the Substantive Estimation hearings, Debtors intend to raise five issues arising from basic tort principles and established science. First, Debtors will establish that the overwhelming majority of claimants without measurable physical impairment – including claimants with pleural plaques, pleural thickening, or low-level asbestosis – cannot assert a right to payment under applicable law, and accordingly their claims should be estimated as having zero value. Second, Debtors will establish that claimants must demonstrate a sufficient level of exposure to Debtors' products in order to assert a right to payment. Third, Debtors will demonstrate that lung cancer claimants who do not also have asbestosis cannot prove that their lung cancer is traceable to asbestos exposure, and thus their claims should be estimated at zero value. Fourth, Debtors will prove that the type of asbestos used most commonly in Debtors' products – chrysotile – has not been medically proven to cause the disease mesothelioma, and that such claims

---

[4] Debtors anticipate supplemental discovery of Phase II experts prior to the initiation of the Phase II hearings.

USG B 0392

should be estimated at zero value. Finally, Debtors will establish that claimants with cancers other than lung cancer or mesothelioma cannot prove that their cancer was caused by exposure to asbestos, and that such claims must be valued at zero. *See* Section VI, *infra*. Debtors request that the Court appoint a technical advisory panel of experts in order to advise the Court with respect to the various medical and scientific issues raised in the Phase I hearings. *See* Section V.D., *infra*.

The legal mechanisms to be used in Phase I include (1) *Daubert* challenges; (2) contested motions for estimation determinations; and, if necessary, (3) adversarial evidentiary hearings. The favorable resolution of some or all of these issues will dramatically reduce, by as much as a factor of ten, the number of present claimants entitled to vote on Plan confirmation, and thus will have a significant impact on the interests of all stakeholders.

### C.    Phase II Hearings

In Phase II of the estimation hearings, Debtors will seek to have estimated the total amount of their present and future asbestos personal injury liability based upon the definition of a valid claim resulting from Phase I hearings. Phase II's hearings primarily will involve epidemiological and economic expert testimony concerning (1) the projected number of valid present and future asbestos personal injury claims against Debtors; and (2) the aggregate present values of such claims. These aggregate values will be used to determine the size of the Trust that Debtors will propose in their Plan. The mathematical models that Debtors' experts will use to calculate Debtors' total liability are currently under development. Once the definition of a valid claim is set in Phase I, it will be relatively simple for the Phase II experts to calculate the necessary size of the Trust. *See* Section VII, *infra*.

### D.    § 524(g) Trust And Plan Confirmation

At the conclusion of the Substantive Estimation hearings, Debtors will propose a Plan consistent with the Court's rulings. The Plan will incorporate a § 524(g) trust funded

USG B 0393

by Debtors' assets. The assets of the Trust will be sufficient to pay all valid present and future asbestos personal injury claims in full according to the values determined in Phase II of the estimation hearings. Debtors anticipate that as a consequence of the Court's rulings in Phases I and II, only those claimants who have an asbestos-related physical impairment caused by exposure to Debtors' products – a fraction of those who have asserted claims – will qualify as holding valid claims. Only valid claimholders will be entitled to vote. Because these valid claims will be paid in full under the Plan, it should be confirmed with the 75% supermajority[5] of claims necessary to obtain the § 524(g) channeling injunction and Trust. *See* Section IX.C., *infra*.

### III.  AS A MATTER OF LAW, THIS COURT MUST SUBSTANTIVELY ESTIMATE DEBTORS' ASBESTOS PERSONAL INJURY LIABILITY

Debtors' Substantive Estimation proposal describes a fair and efficient method for determining the true extent of Debtors' asbestos personal injury liability. This section sets forth the statutory and Constitutional bases for Debtors' Substantive Estimation proposal, while demonstrating why the ACC's approach contravenes both.

#### A.  Due Process Requires That Debtors Be Heard And Allowed To Present Their Substantive Defenses In The Estimation Process

The Fifth Amendment's Due Process Clause guarantees Debtors the opportunity to present defenses to claims in a meaningful way before they are deprived of their property. Specifically, Debtors are entitled to an opportunity to challenge invalid claims in the estimation process before the Court determines the scope of their liability to asbestos personal injury claimants.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving a person "of life, liberty, or property, without due process of law." U.S. CONST. Amend. V. The Fifth Amendment due process safeguards require "at a minimum . . . that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing *appropriate to the nature of the case*." *Mullane v.*

---

[5] 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb).

USG B 0394

*Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) (emphasis added).[6] The opportunity to be heard is a "fundamental requisite of due process . . . ." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). *See also Fuentes v. Shevin*, 407 U.S. 67, 82 (1972) ("This is no new principle of constitutional law. The right to a prior hearing has long been recognized by this Court under the Fourteenth and Fifth Amendments.").

Estimation of the value of asbestos personal injury claims made against Debtors clearly implicates a property interest and therefore triggers the due process safeguard of an opportunity to be heard. *Windsor Communications Group, Inc. v. Grant*, 75 B.R. 713, 734 (E.D. Pa. 1985) ("Obviously, a money judgment against a person . . . implicates a due process property interest."); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("This Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest."). The Supreme Court has long held that a debtor must be allowed the opportunity to present a defense to claims made on his property. *See, e.g., Baldwin v. Hale*, 68 U.S. 223, 233 (1863); *see also Sniadach v. Family Fin. Corp.*, 395 U.S. 337 (1969).

Claims made against a debtor in bankruptcy are not automatically allowed. If the debtor objects to claims, both due process and the Bankruptcy Code give the debtor a right to present a defense to establish the invalidity of those claims, and the putative claimant bears the ultimate burden of proof. 11 U.S.C. §502; *Sniadach*, 395 U.S. at 343 ("[D]ue process is afforded only by the kinds of 'notice' and 'hearing' which are aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor before he can be deprived of his property or its unrestricted use.")

---

[6] The due process requirements of the Fifth and Fourteenth Amendments are applied in the same manner. *See, e.g., Dusenbery v. U.S.*, 534 U.S. 161, 122 S. Ct. 694, 699 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"). Therefore, although this case implicates the Fifth Amendment right to due process because it involves federal action, cases cited herein, such as *Mullane*, which analyze procedural due process in the context of the Fourteenth Amendment, are equally applicable.

USG B 0395

(Harlan J., concurring).[7] A bankruptcy court's taking of the debtor's property without allowing the debtor the opportunity to defend against creditors' claims "violate[s] the Debtors' right to due process of law, in violation of the fifth and fourteenth amendments to the United States Constitution." *In re Orsa Assoc.*, 99 B.R. at 609, 619 (E.D. Pa 1989). In short, parties in a bankruptcy must be permitted to rebut claims made against them in order for the bankruptcy process to satisfy due process requirements.

The Third Circuit has held that the due process right to present evidence in one's defense in bankruptcy proceedings is fundamental and cannot be waived. *In the Matter of George W. Myers Co.*, 412 F.2d 785 (3d Cir. 1969). In *Myers*, the alleged debtor at an insolvency hearing denied that it was insolvent but declined to offer any testimony in support of the denial. The debtor was adjudicated a bankrupt and successfully appealed. At the remand hearing the debtor was denied the right to offer evidence in its defense. The Third Circuit held that this was reversible error: "The alleged bankrupt was denied of procedural due process by the Referee's refusal of its offer to present evidence at the close of the evidence introduced by petitioning creditors at the additional remand hearing. . . . " *Id.* at 786. If due process were denied when a bankrupt party was not allowed to present evidence at an *additional* hearing, then certainly the denial of *any meaningful hearing at all* clearly would violate the bankrupt's rights to procedural due process.

The Supreme Court has provided clear guidelines for determining whether procedural safeguards provided by the government before property rights may be terminated are constitutionally sufficient. The guidelines are: 1) whether private interests are affected; 2) the risk of erroneous deprivation and value of substitute procedural safeguards; and 3) the administrative burden of the substitute safeguard. *Mathews*, 424

---

[7] *See also In re Tyrone F. Conner Corp.*, 140 B.R. 771, 782 (E.D. Cal. 1992) ("[n]ot allowing the debtor herein to present rebuttal evidence or cross-examine the witnesses making the factual contentions asserted . . . would be violative of the fundamental concept of procedural due process."); *In re Orsa Assoc.*, 99 B.R. 609, 619 (E.D. Pa. 1989) ("the most significant aspect of procedural due process is that, before a judgment is entered, the party against whom a claim is made is entitled to an opportunity to raise any defenses that the party has to the claim.").

- 8 -

USG B 0396

U.S. at 334-35. Applying these factors to the matter before this Court, one must conclude that the safeguards of procedural due process will be satisfied by nothing less than this Court granting Debtors the opportunity, during estimation, to present substantive defenses to asbestos personal injury claims.

The estimation process in this case will affect the private interests of Debtors' other creditors and shareholders as well as asbestos personal injury claimants, and those creditors and shareholders also will be erroneously deprived of their property interests should this Court allocate to asbestos personal injury claimants a larger portion of the estate than the merits of their claims warrant. The Supreme Court "has traditionally insisted that, whatever its form, opportunity for [the] hearing must be provided before the deprivation at issue takes effect." *Fuentes*, 407 U.S. at 82. Accordingly, this Court should grant Debtors the fundamental due process protection of an opportunity to be heard in Substantive Estimation in order to minimize the possibility that Debtors will be unfairly deprived of their lawful property.

### B. This Court Has A Statutory Mandate To Estimate Unliquidated Claims Against Debtors

11 U.S.C. §502(c)(1) provides that the court *shall* estimate, for purposes of allowance, "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . . ." The Bankruptcy Code grants this Court broad discretionary powers to carry out its estimation mandate, for example permitting the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." [8]

In estimating claims against Debtors, the court should use "whatever method is best suited to the particular contingencies at issue." *Bittner*, 691 F.2d at 134; *see also In re Kaplan*, 186 B.R. 874 (Bankr. D.N.J. 1995); *In re Thomson McKinnon Sec., Inc.*, 143

---

[8] *See, e.g., Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134 (3d. Cir. 1984) (estimating claim against estate at zero value, based upon the applicable tortious interference law that ultimately would be applied to liquidate the claim).

USG B 0397

B.R. 612, 619 (Bankr. S.D.N.Y. 1992). Courts have used their broad powers under the Bankruptcy Code in a flexible and creative manner in estimation proceedings, employing expedited discovery, Rule 42-type issue trials, summary judgment hearings, *Daubert* hearings and other types of proceedings, in order to efficiently estimate unliquidated claims.[9]

### C.     Only Those Claimants With A Right To Payment Hold Valid Claims Against Debtors

In the name of expediency, the ACC would have this Court presume in estimation that every single claimant who has filed an asbestos personal injury suit against Debtors holds a valid claim in these bankruptcy proceedings, so that the Court may proceed to estimate those "claims." However convenient this approach may seem, it is contrary to law. The Bankruptcy Code requires that a petitioning creditor hold a valid "right to payment" under the applicable substantive law before he may assert a valid claim against the debtor in bankruptcy. 11 U.S.C. § 101(5); *In re Frenville*, 744 F.2d 332, 336 (3d Cir. 1984), *cert. denied*, 469 U.S. 1160 (1985) ("although the code definition of a claim has been drafted in extremely broad terms, such definition may not confer the status of a claimant upon a petitioning creditor who has no right to payment."). Thus, while federal law controls which claims are cognizable under the Code, the threshold question of when a right to payment arises, absent overriding federal law, "is to be determined by reference to state law." *Id.* at 337 (quoting *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946)); *see also Jones v. Chemetron Corp.*, 212 F.3d 199, 206 (3d Cir. 2000) ("the *Frenville* decision . . . remains the law of this circuit."). Thus, only when a claimant has a valid cause of action under state law may he assert a claim in bankruptcy.

---

[9] *See, e.g. Midway Motor Lodge of Elk Grove v. Innkeepers' Telemanagement*, 54 F.3d 406, 408 (7th Cir. 1995) (affirming estimation process including abbreviated discovery followed by a pretrial conference, filing of documents, and a one-day trial for estimation); *In re UNR Indus., Inc.*, 45 B.R. 322, 326 (N.D. Ill. 1984) (valuation study by outside experts may be used for estimation purposes); *In re Baldwin-United Corp.*, 55 B.R. 885, 898-899 (Bankr. S.D. Ohio 1985) (utilizing one-day hearing for estimation); *Bittner*, 691 F.2d at 137 n. 9.

USG B 0398

The converse is true as well. The Code makes clear that in estimation proceedings, the Court may *not* allow claims that are "unenforceable" against a debtor under "applicable law." 11 U.S.C. § 502(b)(1). This Court's estimation powers extend only to allowable "claims," not mere demands for payment. 11 U.S.C. §§ 101(5)(A), 502(c)(1); *see Cohen v. de la Cruz*, 523 U.S. 213, 216 (1998) ("a 'claim' is defined . . . as a 'right to payment,' § 101(5)(A), and a 'right to payment,' we have said, 'is nothing more nor less than an *enforceable* obligation.'") (emphasis added) (quoting *Pa. Dep't. of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990)). The ACC's approach would ensure the formation of a Trust that rewards the filing of invalid claims. It would give invalid putative claimants the power to block Plan confirmation by providing them the right to vote on Plan confirmation, even though the Code states that only holders of *allowed* claims are permitted to vote on a reorganization plan. 11 U.S.C. § 1126(a). The Substantive Estimation proposed by Debtors therefore is a necessary predicate to Plan confirmation because it will define both the parameters of the Plan and the parties entitled to a vote.

**D.    Asbestos Personal Injury Claimants Have No Right To A Jury Trial Before Substantive Estimation**

The Asbestos Claimants Committee in *W.R. Grace* has argued that substantive estimation would infringe upon claimants' Seventh Amendment right to jury trials,[10] and we anticipate that the ACC in this case will make a similar argument. The Bankruptcy Code does not deprive a tort claimant of his eventual right to a jury trial. *See* 28 U.S.C. §§ 157(b)(5), 1411(a) (". . . title 11 do[es] not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim"); *In re UNR*, 45 B.R. at 325 ("§ 157(b)(5) and § 1411(a) were

---

[10] Opposition of the Official Committee of Asbestos Personal Injury Claimants to Debtor's Motion for Entry of a Case Management Order, Establishment of Bar Date, Approval of the Proof of Claim Forms and Approval of Notice Program, *In re W.R. Grace & Co., et al.*, No. 01-01139 (JJF) (Bankr. D. Del. filed Sept. 10, 2001) (submitted by Elihu Inselbuch, Esq.) at 11 & 24 (attached hereto as Ex. 1).

- 11 -

USG B 0399

enacted as parts of a single scheme to protect the right to jury trial."). However, it is clear that, as a matter of law, claimants have no absolute right to demand a jury trial *before* Plan confirmation.

Courts that have considered the issue of *when* the right to a jury trial attaches in the bankruptcy context consistently have held that the administrative needs of bankruptcy may justify postponing individual jury trials, particularly in complex mass tort cases:

> [E]ven though the tort claimants may be entitled to their jury trials, the bankruptcy court is not relieved of its duty in a Chapter 11 proceeding to estimate those contingent claims. The real question thus arises as to which proceedings take precedence, whether the estimation by the bankruptcy court of the claims or the jury trials in the district court of the claims. The authorities which have considered this question in connection with a complicated products liability situation such as this are all unanimous. *The estimations of the potential and pending claims by the bankruptcy courts should precede any trials of the claims. This was specifically held in the asbestos cases. Roberts v. Johns-Manville Corp.,* 45 B.R. [823,] 825-26 [(S.D.N.Y. 1984)].

*In re A.H. Robins v. Piccinin,* 788 F.2d 994, 1012 (4th Cir. 1986) (emphasis added). In short, courts have rejected the ACC's argument that jury trials on liability issues must occur before the Court may estimate claim values.

Moreover, in estimation this Court may properly examine and rule on substantive legal defenses to contingent personal injury tort claims without supplanting the jury trial rights of any individual claimant. For instance, *Grzybowski v. Aquaslide 'N' Dive Corp. (In re Aquaslide 'N' Dive Corp.),* 85 B.R. 545, 549 (9th Cir. 1987), reviewed a bankruptcy court's disallowance of a product liability tort claim and estimated it at zero. The Ninth Circuit construed § 157 to permit the bankruptcy court to make dispositive rulings on personal injury claims: "[we] conclude that the bankruptcy court below had the right and duty to estimate these [tort] claims, and did not violate the Grzybowskis' right to a trial by jury for the tort claim in doing so."[11]

---

[11] *See also In re Standard Insulations, Inc.,* 138 B.R. 947, 954 (Bankr. W.D. Mo. 1992) ("[f]rom the plain language in § 157, the bankruptcy court's jurisdiction to reduce a personal injury claim to a dollar value is limited, but it does not appear that § 157(b)(2)(B) is intended to limit the

USG B 0400

### E.    Plaintiffs' Counsel Have Previously Supported Debtors' Substantive Estimation Approach

Debtors' Substantive Estimation proposal is not novel. Indeed, this approach has been advocated by the same asbestos personal injury claimants' counsel who now oppose it. Faced with the bankruptcy court's potential approval of an early bar date in the Babcock & Wilcox bankruptcy proceedings, the ACC argued to the court that B&W should be allowed to present substantive defenses in estimation: "[I]f B&W can persuade this Court that its settlement history does not already adequately take into account the defenses it says it has, *B&W is free in the estimation process to raise any legal defenses it has to claims against it.*"[12] The ACC further urged the *Babcock & Wilcox* court to allow the debtor to present its legal defenses to the court *before* estimating the value of claims, just as Debtors propose here:

> As the Committee has urged strongly before and urges again now, *if there are legal principles which the Debtors believe will bar large categories of claims, let them first set them out* and convince the Court that their arguments have merit.[13]

This is exactly what Debtors are proposing here: the opportunity to set forth their legal defenses to the numerous meritless claims pending against them. The ACC cannot credibly embrace this approach when convenient yet oppose it here.

---

authority to determine the validity of claims against the estate."); *In re Chateaugay Corp.*, 111 B.R. 67, 78 (Bankr. S.D.N.Y. 1990) ("irrespective of whether or not a bankruptcy court is permitted to conduct jury trials, this Court has jurisdiction to allow or disallow the Claims as a matter of law. . . . This Court is not being called upon to determine damages based upon a finding of liability, but rather, *simply that the Claims have no legal basis*." (emphasis added)); *In re Lane*, 68 B.R. 609, 612 (Bankr. D. Haw. 1986) ("[claimants] claim that they are entitled to a jury trial, and that they are entitled to one in this estimation. That is not the case.").

[12] Asbestos Claimants' Committee's And Future Claimants' Representative's Combined Memorandum On The Authority And Purposes For An Estimation Of Debtors' Asbestos Liability, *In re The Babcock & Wilcox Co., et al.*, No. 00-0558, Bankr. Case No. 00-10992 (E.D. La., Feb. 8, 2002) ("B&W Combined Memorandum") (submitted by Elihu Inselbuch, Esq.) (attached hereto as Ex. 2) at p. 20.

[13] Opposition Of The Asbestos Claimants Committee To Debtors' Bar Date Reply Memorandum And Submission of Revised Proof Of Claim Form And To Debtors' Motion For Entry Of An Order Establishing A Bar Date; Approving The Proof Of Claim Forms; And Approving The Form And Manner Of Notice, *In re The Babcock & Wilcox Co., et al.*, No. 00-0558, Bankr. No. 00-10992 (E.D. La., August 2, 2000) (submitted by Elihu Inselbuch, Esq.) (attached hereto as Ex. 3) at p. 6 (emphasis added).

USG B 0401

**F.    Substantive Estimation Is Appropriate And Necessary Here**

Substantive Estimation proceedings that examine the underlying merits of certain types of putative claims against the debtor may be used to streamline these bankruptcy proceedings by effectively eliminating nonmeritorious claims for Trust valuation and Plan confirmation purposes. Moreover, Debtors are entitled by law to the opportunity to present their substantive defenses in estimation. Substantive Estimation would deter the filing of specious claims by unimpaired putative claimants who expect to be paid regardless of any concept of Debtors' actual liability. For these reasons, Substantive Estimation is the proper method for determining the appropriate value of the Trust and for defining Plan confirmation voting rights in Debtors' cases.

**IV.    PAST SETTLEMENTS DO NOT PROVE THE VALIDITY OF PRESENT CLAIMS**

There is an overwhelming body of evidence that thousands of putative asbestos personal injury claims are not valid claims, and previous business decisions to resolve invalid claims in the context of the asbestos personal injury environment does not transform invalid claims into valid ones. Legal commentators and attorneys on both sides of asbestos litigation agree that the tort system has been crippled by the onslaught of asbestos lawsuits brought by plaintiffs with no legally cognizable injury.[14] In some jurisdictions, these waves of nonmeritorious lawsuits have been brought about by mass screenings and mass consolidations of cases. Cases brought by plaintiffs with serious injuries are tied to scores of cases brought by plaintiffs with no asbestos-related injuries. The system is structured such that the invalid cases are packaged with meritorious claims, forcing defendants to settle a multitude of invalid cases in order to be able to resolve the few valid ones.

Lawsuits are filed against scores of defendants without meaningful regard to whether the plaintiff was actually exposed to defendants' products. U.S. Gypsum has

---

[14] Tillinghast - Towers Perrin PowerPoint presentation from March 7-8, 2002 (attached hereto as Ex. 4).

USG B 0402

been named as a defendant in thousands of lawsuits brought by plaintiffs who worked in occupations where it was virtually impossible for them to have had any exposure, much less meaningful exposure, to U.S. Gypsum's products. As a member of the Center for Claims Resolution ("CCR"), U.S. Gypsum made settlement payments in cases where the plaintiffs had no exposure to U.S. Gypsum's products but may have had exposure to other Center members' products. In short, U.S. Gypsum made decisions to buy peace that had nothing to do with its view of the merits of these claims against U.S. Gypsum.

A.    **Mass Screenings And Consolidations Inundate The Tort System And Defendants With Invalid Claims**

Asbestos filings have increased uncontrollably over the past twenty years. A recent news report observed that "asbestos defendants are very likely now paying compensation for every occupational disease known to man. Incipient or marginal asbestosis, as picked up on an x-ray, bears at least a superficial resemblance to more than 130 other lung inflammations including scores caused by airborne particles."[15]

Mass screenings and mass consolidations have led to the filing of tens of thousands of invalid claims. A substantial amount of evidence indicates that mass screenings – where plaintiffs are harvested by the use of mobile x-ray machines – are based largely upon unreliable diagnostic techniques that yield questionable clinical results.[16] Judge Carl Rubin's 1991 study of 65 asbestos lawsuits, in which he employed independent medical experts to assess the pleural conditions of the claimants, concluded that 65% of such claimants *had no asbestos-related condition whatsoever.* Of the remaining 35%, approximately 5% had asbestosis, while the remaining claimants experienced only pleural plaques.[17] Even Ronald L. Motley, one of the most prolific asbestos personal injury plaintiffs' attorneys, has acknowledged the dubious nature of mass screenings: "We have lawyers who have absolutely no ethical concerns for their

---

[15] Roger Parloff., *The $200 Billion Miscarriage of Justice*, FORTUNE, March 4, 2002, at 154.
[16] *See* Carl Rubin and Laura Ringenbach, *The Use of Court Experts in Asbestos Litigation*, 137 F.R.D. 35, 39 (1991).
[17] *Id.*

USG B 0403

own clients that they represent – we have untrammeled screenings of marginally exposed people and the dumping of tens of thousands of cases in our court system, which is wrong [and] should be stopped."[18]

Some courts have criticized and rejected mass screenings. In *Raymark Indus. v. Stemple*, 1990 WL 72588 (D. Kan. May 30, 1990), the court categorized the mass screenings as "a fraud on the court" and a "mockery of the practices of law and medicine"; the court held that claims based upon such screenings were filed "with either knowledge of their lack of merit or with reckless disregard to their merit." *Id.* at *2, *18-22.[19] At least one federal court of appeals has refused to recognize a physician/patient privilege between a screening doctor and a steelworker who had submitted to a lung screening, citing the non-medical nature of the screenings, the purposes of which were simply to "determine whether the employee would qualify as a plaintiff in an asbestos lawsuit." *Adams v. Harron*, 1999 WL 710326 at 2 (4th Cir. Sept. 13, 1999) (unpublished). Earlier this year, Judge Weiner in MDL 875 ordered that all non-malignant asbestos personal injury claims initiated through mass screenings were subject to administrative dismissal.[20]

In an attempt to deal with the flood of asbestos-related lawsuits, some courts have resorted to mass consolidations of cases.[21] By most accounts, however, efforts to

---

[18] Lester Brickman, *The Asbestos Litigation Crisis: Is there a need for an Administrative Alternative?* 13 Cardozo L. Rev. 1819 n. 58 (1992) (quoting AN ADMINISTRATIVE ALTERNATIVE TO TORT LITIGATION TO RESOLVE ASBESTOS Claims, Transcript of the Administrative Conference of the United States 15 (Oct. 31, 1991) (testimony of Ronald L. Motley)).

[19] *See also In re Haw. Fed. Asbestos Cases*, 734 F. Supp. 1563, 1566 (D. Haw. 1990) (criticizing and dismissing claims not founded upon objective clinical evidence); *Sarapata v. Norfolk & Portsmouth Baltline R.R. Co.*, No. L98-1669, 2000 WL 33258758 (Jan 6, 2000) (noting that while the use of mass screenings did not rise to the level of sanctionable behavior, its use was "disturbing").

[20] *See, e.g.*, Admin. Order No. 8, *In re Asbestos Prod. Liab. Litig. (No. VI)*, Civ. Action No. MDL 875 (E.D. Penn., entered Jan. 16, 2002) (dismissing all asbestos personal injury claims founded upon mass-screening evidence) (attached hereto as Ex. 5).

[21] *See, e.g., In re Raymark Asbestos Exposure Cases*, No. 87-1016-K, 1987 U.S. Dist. LEXIS 16122 (D. Kan. 1987). *See also Fairness in Asbestos Compensation Act of 1999*, H.R. 1283 106th Cong; at 91 (testimony of William N. Eskridge Jr., Yale Law School).

USG B 0404

consolidate cases have been ineffective in stemming the tide of meritless asbestos personal injury filings.[22] In fact, mass consolidations – which lower the transaction costs associated with the filing of claims – have actually *increased* the flow of asbestos claims into the judicial system.[23] In short, "the very process of aggregation can generate additional cases."[24]

"By consolidating masses of cases on terms favorable to plaintiffs and by pressuring defendants to settle – all in the name of managing caseloads – judges have created a mechanism that encourages marginal or even frivolous cases to be filed, and in great numbers."[25] Seizing opportunistically on the consolidated case vehicle, "plaintiffs' lawyers include in consolidations hundreds or thousands of plaintiffs who are not sick, using those who suffer from serious disease to inflate the value of [unimpaired] claims."[26]

The vast majority of asbestos personal injury suits filed today are meritless nonmalignant claims of minor pleural plaques diagnosed by dubious methods. As of 1992, pleural plaque claims alone represented approximately sixty to seventy percent of all new claims, which were then being filed at the rate of 1,000 to 2,000 per month.[27] Out of an estimated 1.1 million projected future claims, based on past filings 88% of those are

---

[22] *See, e.g., Fairness in Asbestos Compensation Act of 1999, Legislative Hearing on H.R. 1283*, 106th Cong., at 90 (1999) (testimony of William N. Eskridge, Jr., Yale Law School) ("judicial experimentation has sacrificed both individuation and efficiency, by helping create a juggernaut whereby jumbo settlements generate more lawsuits, with increasing returns for the least-injured and questionable returns for some of those who will become most injured."); Francis E. McGovern, *The Defensive Use of Federal Class Actions in Mass Torts*, 39 ARIZ. L. REV 595 (1997) ("[j]udges who move large numbers of highly elastic torts through their litigation process at low transaction costs create the opportunity for new filings ... If you build a superhighway, there will be a traffic jam.").

[23] *See* McGovern, *supra* note 22.

[24] Francis E. McGovern, Toward a Cooperative Strategy for Federal and State Judges in Mass Tort Litigation, 148 U. PA. L. REV. 1867 n. 14 (2000) (quoting REPORT TO THE ADVISORY COMMITTEE ON CIVIL RULES AND THE WORKING GROUP ON MASS TORTS TO THE JUDICIAL CONFERENCE OF THE UNITED STATES 16 (Feb. 15, 1999)).

[25] *The Fairness in Asbestos Compensation Act of 1999: Legislative Hearing on H.R. 1283*, 106th Cong. at 14 (1999) (testimony of Prof. William N. Eskridge, Jr., Yale Law School.).

[26] *Id.* at 6 (testimony of Prof. Christopher Edley, Jr.).

[27] Lester Brickman, *The Asbestos Litigation Crisis: Is there a Need for an Administrative Alternative?*, 13 CARDOZO L. REV. 1819, 1861 (1992).

USG B 0405

expected to be non-malignant claims.[28] A recent study by RAND indicates that as many as 90% of present and future claims will be non-malignant.[29]

### B.    Past Settlements Are An Unreliable Basis For Estimating Debtors' Liability

As a result of these practices, Debtors have been forced to minimize the costs associated with the incessant waves of asbestos lawsuits. The settlements made on Debtors' behalf reflect a business judgment that was most often made without regard to the merits of the cases. Past settlements in this context are not an admission or reflection that these plaintiffs had a "right to payment" or a valid "claim" for several reasons.

First, the transaction costs incurred in litigating tens of thousands of asbestos cases made the option of vigorously contesting meritless cases impractical. While avoiding transaction costs may have justified a business judgment to pay invalid cases, the "value" associated with transaction cost avoidance does not make those cases valid "claims" within the meaning of the Bankruptcy Code. Under the Code, a claim presupposes a "right to payment," 11 U.S.C. § 101(5)(A), and tens of thousands of claims settled on the Debtors' behalf did not involve a "right to payment."

One obvious example of a mass settlement to avoid transaction costs was U.S. Gypsum's decision in 2001 to settle 3,646 cases filed by a single Mississippi firm for $300 per case. It is certain that most of those cases were non-meritorious, but the cost of litigating or even investigating them was prohibitive compared to the cost of settling them sight unseen for less than nuisance value. Since January 1, 1996, U.S. Gypsum has settled 6,710 cases for less than $200.00 and an additional 27,856 cases for between $200.00 and $400.00 per case; the amounts of these settlements are *prima facie* evidence of their lack of substantive merit. Under the estimation method advocated by the ACC, all such "nuisance" claims would be treated as valid – a completely irrational result.

---

[28] Raji Bhagavatula, Rebecca Moody, & Jason Russ, *Asbestos: A Moving Target*, BEST'S REVIEW, Sept. 1, 2001, at 85 (attached hereto as Ex. 6).

[29] Deborah Hensler *et al.*, *Asbestos Litigation in the U.S.: A New Look at an Old Issue*, 29 (RAND Inst. of Civil Justice Aug. 2001) (attached hereto as Ex. 7).

USG B 0406

The general problem posed by the need to address relentless waves of new asbestos cases was magnified by the fact that the Debtors generally did not have the option of settling only the good cases and litigating the bad. In a number of states – especially Maryland and West Virginia – thousands of claims were consolidated for trial in the 1990s, forcing settlements of the entire consolidation because the risk of going to trial was simply too great for a responsible corporate management to contemplate. Moreover, even in the absence of such "jumbo consolidations," it has been and is the practice of many plaintiffs' lawyers to refuse to settle their cancer cases, in which a defendant may have a substantial risk of a huge judgment, unless the defendant is willing to settle cases involving non-malignant – and overwhelmingly unimpaired – conditions at the same time. Settlement of such "tied-in" non-malignant cases says absolutely nothing about the merits of those cases. Nevertheless, under the ACC's proposed method of estimation all of these cases would be presumed to represent valid claims.

Another confounding factor is the role played by the CCR in attempting to facilitate consensual resolution of asbestos claims as members of the CCR from 1988-2001, U.S. Gypsum often paid settlements to plaintiffs who were not exposed to U.S. Gypsum's products but may have been exposed to other CCR members' products.[30] CCR member companies apportioned the costs of such settlements through a sharing formula, which changed from time to time. Because of this arrangement, certain defenses available to U.S. Gypsum were not raised by the CCR.

A key example is the defense of non-exposure. Under its operative principles, the CCR would settle cases naming Debtors regardless of whether the plaintiff had plausible

---

[30]Debtors were original members of the CCR when it was founded in 1988. The CCR continued to represent the Debtors in settling cases until early 2001. In early 2001, as a result of departures and the bankruptcy of other members, CCR members, including U.S. Gypsum, no longer settled cases as part of a group pursuant to previous indemnity sharing formulae. During the brief transitional period between leaving the CCR and filing these Chapter 11 proceedings, Debtors were faced with a large stockpile of cases that had been prepared on the assumption that they would be litigated or settled by CCR members as a group. Debtors never had the opportunity to develop a wholly independent settlement history.

USG B 0407

evidence of exposure to a product sold by Debtors, *as long as the plaintiff was able to allege exposure to the product of any one CCR member.* Because Debtors' liabilities flow primarily from exposure to joint compound manufactured by U.S. Gypsum, significant exposure should have been limited to the construction industry. However, as reported by the CCR, construction claims comprised only about 11% of the claims settled by CCR on Debtors' behalf. The remaining claims were settled, even in the absence of any plausible identification of a Debtors' products, because there was sufficient product identification involving other CCR members to justify settling the case, because the cost of settlement was so low, or for other reasons unrelated to actual liability or merit. Here, again, the estimation method proposed by the ACC would assume that all of these settled claims were valid.

Finally, we note that the CCR's settlement policy over the years often was determined by overall strategic considerations rather than the merits of individual cases or even groups of cases. For example, in some years the CCR pursued an aggressive policy of settling inventory claims, while in other years it focused on settling cases only when the trial date approached. During any given period of time, strategic considerations unrelated to individual claims validity had significant impact on the likelihood that a claim would be settled and the terms upon which it would be settled.

## V.    *DAUBERT* WILL PLAY A CENTRAL ROLE IN THE PROPOSED SUBSTANTIVE ESTIMATION HEARINGS

Debtors propose to use Substantive Estimation to present expert scientific and medical evidence to determine the characteristics of valid claims. The Court's performance of the "gatekeeping" role imposed by *Daubert* and FED. R. EVID. 702 will be critical to ensuring a result that is both just and legally sound.

### A.    The Federal Courts' "Gatekeeping" Role Under *Daubert*

It is undisputed that the Federal Rules of Evidence apply to proceedings in all federal courts, including bankruptcy courts. FED. R. EVID. 101. At issue here is FED. R.

USG B 0408

EVID. 702, which governs the admissibility of expert testimony. Under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), the trial judge must determine whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. *Id.*[31] Underlying this "gatekeeping" requirement is the recognition that experts are provided wide latitude to offer opinions that are not based on firsthand knowledge, a rule that conflicts with the common law insistence upon the most reliable source of information available. *Daubert*, 509 U.S. at 592.

**B.  *Daubert* Applies In Debtors' Cases**

Federal courts are often called upon to apply substantive state law, *e.g.* in diversity cases pursuant to the *Erie* doctrine,[32] or in bankruptcy cases to determine the validity of a demand for payment.[33] However, Congress may prescribe housekeeping rules for federal courts, even though some of these rules inevitably will differ from comparable state rules.[34] Furthermore, Congress may make rules that fall in the uncertain area between substance and procedure, if such rules are rationally capable of being classified as either, and even if such rules are outcome-determinative. *Hanna v. Plumer*, 380 U.S. 460, 472-73 (1965).[35] FED. R. EVID. 702, although outcome-determinative in some cases, clearly is a procedural rule that must be applied by federal district courts.[36] It

---

[31] FED. R. EVID. 702 was amended in 2000 to incorporate *Daubert's* requirements. *See* FED. R. EVID. 702 Advisory Committee Notes (2000 amendments).

[32] *Erie R.R.. Co. v. Tompkins*, 304 U.S. 64, 77-79 (1938) (federal court sitting in diversity applies its own procedural law, and the substantive law of the state in which it is sitting).

[33] *See, e.g., Frenville*, 744 F.2d at 332 (threshold question of when a right to payment arises is determined by reference to state law).

[34] *Hanna v. Plumer*, 380 U.S. at 464.

[35] *Nadell v. Las Vegas Metro. Police*, 268 F.3d 924 (9th Cir. 2001), *cert. denied*, 122 S. Ct. 1917 (2002) (affirming trial court decision to exclude plaintiff's expert testimony, which was based upon an unreliable diagnostic technique to determine whether the plaintiff had closed head injuries); *Pick v. Am. Med. Sys., Inc.*, 958 F.Supp. 1151 (E.D. La. 1997) (excluding under *Daubert* the proffered testimony of plaintiff's expert regarding the diagnosis of plaintiff's disease (systemic coccal disease)).

[36] *Hanna v. Plumer*, 380 U.S. at 473-74 ("[t]o hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt

USG B 0409

is important to note, as has the Supreme Court, that "[t]he *Erie* rule has never been invoked to void a Federal Rule." *Hanna*, 380 U.S. at 470.

### C.    Expert Evidence Must Be Reliable And Relevant To The Claims At Issue

Pursuant to *Daubert* and Rule 702, the Third Circuit requires that scientific evidence meet the following criteria: 1) testifying experts must have the requisite qualifications; 2) the evidence must be scientifically reliable; and 3) there must be a connection between the scientific testimony to be presented and the particular disputed factual issues in the case ("fit").[37] These determinations are mandatory, even where the analysis results in the exclusion of a plaintiff's *prima facie* case or the rejection of an expert's conclusions. *In re Paoli R.R. Yard PCB Litig.*, 35 717, 742 (3d Cir. 1994), citing *Daubert*, 113 S. Ct. at 2796.

Rule 702's reliability prong requires "that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation;' the expert must have 'good grounds' for his or her belief."[38] The district court should take into account a number of factors when making the reliability evaluation:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

---

to exercise that power in the [Rules] Enabling Act"); *see also Kelly v. Crown Equip. Co.*, 970 F.2d 1273, 1277 (3d Cir. 1992) (federal rule prevails where a direct conflict arises between Federal Rules of Evidence and Pennsylvania state rules on admissibility in a negligence or products liability suit, since FED. R. EVID. 407 is arguably procedural); *Paoli*, 35 F.3d at 751 (conflict between state standards of admissibility and the Federal Rules of Evidence resolved in favor of federal rule).

[37] *Paoli*, 35 F.3d at 741-43.

[38] *Id.* at 742, (citing *Daubert*, 113 S.Ct. at 2795)

USG B 0410

*Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000) (citing *Paoli*, 35 F.3d at 742 n. 8).[39]

### D.    This Court Should Invoke The Assistance Of A Scientific Expert Panel

It is well established that the Court may appoint neutral experts to advise it on certain matters for which expert advice would be relevant and useful. *See, e.g., Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 149-50 (Breyer, J., concurring) ("Judges should be strongly encouraged to make greater use of their inherent authority ... to appoint experts."). Debtors believe that an expert panel would be useful in advising this Court on the scientific issues that will be raised in Substantive Estimation.

Federal courts have at least two statutory options when appointing expert panels: 1) a scientific evidentiary panel explicitly provided for by FED. R. EVID. 706;[40] or 2) a technical advisory panel appointed under the Court's inherent powers pursuant to FED. R. EVID. 104.[41] Courts have used Rule 706 advisory panels in asbestos bankruptcy and other mass tort cases. *See, e.g., In re Joint E. and S. Dist. Asbestos Litig.*, 830 F.Supp. 686, 693 (E. & S.D.N.Y. 1993) (appointment of Rule 706 experts by court in mass tort asbestos

---

[39] *See Paoline v. Kilgo Trucking, Inc.*, No. Civ A 00-956, 2002 WL 826421, *2 (E.D. Pa. Apr. 30, 2002) (rejecting proffered expert testimony regarding the crashworthiness of a car in light of experts' failure to support his conclusions with reliable evidence); *Fedor v. Freightliner, Inc.*, 193 F. Supp. 2d 820, 829 (E.D. Pa. 2002) (rejecting proffered expert testimony of an engineer regarding the surface characteristics of a truck-step in light of the expert's "lack of discernible methodology" and the fact that the testimony was "based purely on speculation"); *Chester Valley Coach Works v. Fisher-Price, Inc.*, No Civ. A. 99 CV 4197, 2001 WL 1160012, *3 (E.D. Pa. Aug. 29, 2001) (excluding proffered expert testimony regarding the origin of a fire, as the expert's testimony was admittedly "not based on any testing, experimentation, or generally accepted texts, treatises, or other writings," but rather on vague notions of the expert's "experience and education").

[40] FED. R. EVID. 706(a) Appointment:

> The court . . . may appoint expert witnesses of its own selection. An expert witness shall not be appointed by the court unless the witness consents to act.

[41] FED. R. EVID. 104(a) Questions of admissibility generally:

> Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

- 23 -

USG B 0411

cases proper); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 n.10 (11th Cir. 1999) (experts in silicone breast implant tort case may be appointed pursuant to Rule 706 or Rule 104). Rule 706 experts act as testifying witnesses.

This Court also could appoint a technical advisory panel pursuant to FED. R. EVID. 104. *Allison*, 184 F.3d at 1131 n.10, citing *Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1392 (D. Or. 1996); *see also Ass'n of Mexican-American Educators v. Cal.*, 231 F.3d 572, 590-91 (9th Cir. 2000). Experts on a Rule 104 panel, rather than acting as witnesses, are advisors to the Court who could prepare a report for the Court evaluating the reliability and relevance of scientific evidence presented by the parties.

Parties may depose and cross-examine experts appointed pursuant to FED. R. EVID. 706, because a Rule 706 expert provides evidentiary testimony or findings. *See In re Joint E. and S. Dist. Asbestos Litig.*, 830 F.Supp. at 694; *Allison,* 184 F.3d at 1311 n.10. In contrast, Rule 104 technical advisors are expert advisors to the Court rather than witnesses, and thus are not subject to the deposition and cross-examination requirements of FED. R. EVID. 706. *Allison,* 184 F.3d at 1311 n. 10, citing *Hall,* 947 F. Supp. at 1392.

The parties in this bankruptcy have scores of expert witnesses through whom they could seek to introduce scientific evidence. The Court need not identify additional testifying experts under Rule 706. By appointing a Rule 104 Panel, the Court would gain the benefit of scientific expertise to assist in its rulings, without the attendant complications inherent in discovery of and trial testimony by experts appointed pursuant to Rule 706. For these reasons, Debtors believe that a Rule 104 panel is most appropriate for assisting the Court with the scientific issues that will arise in Substantive Estimation.

## VI.    PHASE I – DEBTORS' SUBSTANTIVE DEFENSES

Debtors intend to offer reliable medical and epidemiological evidence during Substantive Estimation sufficient to establish that the following five categories of asbestos personal injury claimants do not possess valid claims against Debtors, and may not vote on Plan confirmation: (1) claimants who cannot provide medically reliable

USG B 0412

evidence of physical impairment; (2) claimants who cannot establish sufficient exposure to Debtors' products to cause the claimed disease according to established medical criteria, including claimants who cannot accurately identify a Debtor as the manufacturer of the product(s) alleged to have caused the claimed disease; (3) lung cancer claimants who cannot prove that their lung cancer is both primary and accompanied by a medically reliable diagnosis of asbestosis; (4) mesothelioma claimants who allege that their disease was caused by exposure to Debtors' products, which almost exclusively contained a type of asbestos – chrysotile – that has not been medically proven to cause mesothelioma; and (5) claimants alleging any cancer other than lung cancer or mesothelioma.[42]

As discussed *supra* in Section V, Debtors believe that the proper application of *Daubert* and FED. R. EVID. 702 will render the ACC unable to introduce reliable scientific evidence of causation and injury on these issues sufficient to establish Debtors' liability. Debtors believe that the medical and epidemiological evidence they intend to present at the Substantive Estimation hearings will readily pass through the *Daubert*/Rule 702 filter, and that a neutral panel of Court-appointed experts will agree with Debtors' arguments in support of the standards of impairment and causation discussed in more detail below.

### A. Claims That Recite No Legally Compensable Injury Should Be Estimated At Zero

As discussed *supra* in Section II, the large majority – perhaps as many as 90% – of the claims pending against Debtors were filed by plaintiffs who cannot demonstrate a physical injury of any medical consequence. Simply put, putative claimants who are not sick cannot recover under the law, and their claims should be estimated at zero.

#### 1. Putative Claimants With No Physical Impairment

The vast majority of states do not recognize a right of recovery for asbestos

---

[42] These five issues are by no means exhaustive of Debtors' defenses. Rather, these five issues are the most significant for identifying those claimants who became sick from exposure to Debtors products.

USG B 0413

personal injury claimants who claim exposure but no physical impairment. This reasonable proposition is supported by the Supreme Court, which applied "general principles of tort law" under the Federal Employer's Liability Act and found asbestos exposure without impairment to be noncompensable.[43] Even certain asbestos personal injury claimants' representatives agree that compensation for unimpaired claimants will unfairly divert funds from sick claimants who deserve compensation for their injuries.[44] Rather than compensate these "unimpaired" claimants, the vast majority of whom will *never* develop any asbestos-related health problems, Debtors propose that compensation for these claimants, if any, should be deferred until a medically impairing condition develops, at which time asbestos personal injury claimants may obtain full recovery from the Trust as future claimants.

According to reliable medical evidence, the following classes of asbestos personal injury claimants have not suffered a cognizable "injury" under the applicable tort principles of most states: (a) all pleural plaque claimants; (b) the vast majority of pleural thickening claimants; and (c) all asymptomatic asbestosis claimants. As a means of differentiating the impaired from the unimpaired, Debtors propose that the Court apply widely accepted medical criteria measuring a putative claimant's breathing capacity against normal predicted levels for a healthy individual. Because putative claimants with normal lung function have no compensable injury under state substantive law and federal evidentiary standards, their claims should be estimated at zero value.

The exclusion of unimpaired claims from the bankruptcy is supported by asbestos plaintiffs' attorneys who normally represent the interests of those who have cancer or

---

[43] *Metro-North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 432 (1997); *see also Schweitzer v. Consol. Rail Corp.*, 758 F.2d 936, 942 (3d Cir. 1985) (subclinical injury resulting from exposure to asbestos is insufficient to sustain a cause of action under generally applicable principles of tort law).

[44] *See, e.g.*, Unofficial Committee Of Select Asbestos Claimants Memorandum In Support Of Litigation Protocol at 5-7, *In re The Babcock & Wilcox Co., et al.*, (No. 00-0558), Bankr. Case No. 00-10992 (E.D. La., Feb. 22, 2002) (signed by Elizabeth W. Magner, Esq.) (attached hereto as Ex. 8) ("The only means by which the debtor or the SAC have to protect their respective interests in this case is to embark on a process to challenge claims.").

- 26 -

USG B 0414

impairing asbestosis. Addressing this problem with respect to the Manville Trust, one such attorney argued:

> We should return to the traditional medical model of health care delivery and require that a diagnosis of impairment be based upon appropriate tests and a physical examination; the physician must actually meet the patient, take a history, and perform a physical examination and then prepare a written report synthesizing the results of that history and physical examination with appropriate pulmonary function and imaging test results. Further, since most of the impairment suffered by asbestos claimants with nonmalignant disease is in fact in whole or part caused by cigarette smoking, the Trust should require this reporting physician to make a diagnosis based on (a) an ILO x-ray reading of at least 1/1 with small irregular opacities (s, t); (b) accompanied by impairment that meets the AMA criteria for pulmonary disability of at least class 3; (c) supported by a reasoned statement that asbestos exposure was at least a substantial factor contributing to the development of the impairment (i.e. a "legal cause").[45]

Similarly, Debtors simply ask that the Court determine impairment criteria according to reliable medical evidence, rather than accepting the ACC's *ipse dixit* that a claim alone is sufficient to yield liability.

### 2. The Legal Basis For Excluding Asbestos Personal Injury Claimants Without Legally Compensable Injury

In addition to the medical evidence supporting Debtors' argument that healthy asbestos personal injury claimants have no claim against Debtors, the applicable law generally supports this proposition as well. The dismissal of asbestos claims brought by unimpaired claimants – typically those diagnosed with pleural plaques or diffuse pleural thickening – is not a novel concept. Courts applying various state laws regularly have rejected the notion that such subclinical conditions fall within the definition of a cognizable injury.[46] In fact, the emerging trend in tort law is to require impairment as a

---

[45] Memorandum by Interested Attorney at 4, *In re Johns-Manville Corp.* (No. 90 CV 9373) (E.D.N.Y. 2001) (brief submitted by asbestos plaintiffs' attorney Steve Kazan) (attached hereto as Ex. 9).

[46] *See, e.g., Metro-North*, 521 U.S. at 432 (denying recovery for unimpaired claimants under FELA); *Crawford v. U.S. Dep't. of Labor*, 932 F.2d 152, 154 (2d Cir. 1991) (denying recovery for unimpaired claimants under Long Shore and Harbor Worker's Compensation Act); *In re Haw. Fed. Asbestos Cases*, 734 F. Supp. 1563, 1567 (D. Haw. 1990) (interpreting tort law of Hawaii to

USG B 0415

predicate to compensation. For example, the *In re Hawaii* court squarely held that an award of damages based exclusively on pleural changes without any decrease in quality of life would be "unreasonable" and/or "sheer speculation."[47] The court also held that self-serving lay testimony regarding impairment was unreliable: "[p]laintiffs must show a compensable harm by adducing objective testimony of a *functional impairment* due to asbestos exposure. A claimant's subjective testimony as to shortness of breath and fatigue without more is not sufficient."[48] *See also Simmons v. Pacor, Inc.*, 674 A.2d 232 (Pa. 1996) (pleural plaques are harmless and do not constitute an injury under common law principles).

Only *one* state, Ohio, has ruled that unimpaired, exposure-only plaintiffs have a compensable harm under traditional tort theories.[49] Most states that have addressed this

exclude unimpaired claims); *In re Asbestos II*, 142 F.R.D. 152, 153 (N.D. Ill. 1991) (establishing a pleural registry for unimpaired plaintiffs, deferring such claims until symptoms appear); *Owens-Illinois v. Armstrong*, 591 A.2d 544, 561 (Md. App. 1991) *aff'd in part and rev'd in part on other grounds*, 604 A.2d 47 (finding that because "the medical evidence was clear and uncontradicted that pleural scarring does not cause a functional impairment or harm," plaintiffs suffered no compensable injury); *Bowerman v. United Illuminating*, No. X04CV940115436S, 1998 WL 910271 (Conn. Super. Ct. Dec. 15, 1998) (denying recovery under Connecticut tort law); *Simmons v. Pacor, Inc.*, 674 A.2d 232 (Pa. 1996) (denying recovery under Pennsylvania tort law); *Miller v. Armstrong World Indus.*, 817 P.2d 111, 113 (Colo. 1991) ("the existence of benign pleural thickening and pleural calcification does not constitute proof of the material facts or injury necessary to maintain a personal injury claim for asbestosis"); *Bernier v. Raymark Indus., Inc.*, 516 A.2d 534 (Me. 1986) (denying recovery for exposure to asbestos until manifestation of injury under product liability law of Maine).

[47] *In re Haw. Fed. Asbestos Cases*, 734 F. Supp. at 1567.

[48] *Id.* (emphasis added).

[49] *Verbryke v. Owens-Corning Fiberglass Corp.*, 616 N.E.2d 1162, 1167 (Ohio Ct. App. 1992) (finding that the alteration of another's body, such as pleural plaque, constitutes harm). Unimpaired asbestos plaintiffs occasionally seek recovery for non-traditional torts such as medical monitoring or negligent infliction of emotional distress. However, a cause of action for individual medical monitoring damages is not generally recognized, *see Metro-North*, 521 U.S. at 441-443; *Hinton v. Monsanto Co.*, 2001 Ala. Lexis 347 (September 14, 2001), and even assuming that this cause of action is available in theory, unimpaired asbestos plaintiffs cannot meet their burden of showing that medical monitoring is reasonable and necessary. *In re Marine Asbestos Cases*, 265 F.3d 861, 866-69 (9th Cir. 2001). Similarly, asbestos plaintiffs seeking recovery for emotional distress occasioned by fear of future disease must either show a symptomatic disease or impairment, *Metro-North*, 521 U.S. at 429-31; *Temple-Inland Forest Prods. Corp. v. Carter*, 993 S.W. 2d 88, 91 (Tex. 1999); *Simmons v. Pacor*, 674 A.2d at 238 (Pa. 1996); or demonstrate that their fear of future disease is reasonable and sufficiently severe to be the equivalent of a physical injury, *Jones v. CSX Transp.*, 287 F.3d 1341, 1344-50 (11th Cir. 2002); *Pichowicz v. Hoyt*, No. Civ. 92-388-M, 2000 WL 1480445 (D.N.H. February 11, 2000); *Theer v. Philip Carey Co.*, 611

- 28 -

USG B 0416

issue squarely have held that asbestos-exposed individuals who manifest no physical harm have *not* suffered a compensable injury.[50] As a matter of law, this Court cannot estimate claims from unimpaired individuals in these states at anything other than zero.[51]

At least one state – New Jersey – considers impairment a question of fact for the jury to answer.[52] New Jersey, however, fails to entrust its courts with the gatekeeping standard that *Daubert* and FED. R. EVID. 702 require.[53] Because this Court must apply *Daubert* and its progeny in these proceedings, and because there is no scientifically competent, objective evidence of actual injury in pleural plaque cases, such claims should be estimated at zero value.

Finally, several states have not addressed whether mere exposure to asbestos-containing materials constitutes a compensable injury under applicable tort principles. In estimating claims originating in these states, this Court should not depart from basic traditional tort principles that require actual harm in order to award damages. The Supreme Court, in addressing and denying recovery for asbestos-exposed but unimpaired claimants under FELA, reviewed state tort law and found that "[w]ith only a few exceptions, common-law courts have denied recovery to those who … are disease and

---

A.2d 148, 153 (N.J. App. 1992), *rev'd on other grounds*, 628 A.2d 724 (N.J. 1993). Given the generally low levels of exposure to asbestos in Debtors' products, *see* Section VI.B, *infra*, few non-malignant asbestos plaintiffs will be able to make either showing.

[50] *See, e.g., Simmons*, 674 A.2d at 237; *Owens-Illinois v. Armstrong*, 591 A.2d 544, 561 (Md. App. 1991), *aff'd in part and rev'd in part on other grounds*, 604 A.2d 47 (finding that because "the medical evidence was clear and uncontradicted that pleural scarring does not cause a functional impairment or harm," plaintiffs suffered no compensable injury); *In re Haw. Fed. Asbestos Cases*, 734 F. Supp. at 1567 ("[M]ere presence of asbestos fibers, pleural thickening or pleural plaques in the lung unaccompanied by an objectively verifiable functional impairment is not" a compensable harm).

[51] *Frenville*, 744 F.2d at 337 (threshold question of when a right to payment arises determined by reference to state law).

[52] *See, e.g., Caterinicchio v. Pittsburgh Corning Corp.*, 605 A.2d 1092, 1096 (N.J. 1992) (finding the issue a question of fact for the jury but noting that it had not found "any reported decisions holding that pleural thickening or pleural plaques constitute a compensable injury as a matter of law"); *but see Herber v. Johns-Manville Corp.*, 785 F.2d 79, 89 (3d Cir. 1986) (upholding a jury award of zero damages to an asymptomatic plaintiff with pleural thickening under New Jersey law).

[53] *See, e.g., State v. Free*, 2002 WL 1040364, at *9 (N.J. Super. A.D., 2002) (application of *Daubert* standard constitutes reversible error).

- 29 -

USG B 0417

symptom free."[54] If this Court finds that claims alleging mere exposure or harmless pleural changes are medically unimpaired, then the value of such claims should be estimated at zero. If any such putative asbestos personal injury claimants were to become ill in the future, they would be able to file claims against the Trust at such time.

**B.    Claims That Do Not Demonstrate The Requisite Exposure To Debtors' Asbestos Products Should Be Estimated At Zero**

Debtors intend to fully compensate any claimant who has contracted an impairing asbestos-related disease after sufficient exposure to their products to cause the disease claimed. It is contrary to basic principles of tort law and both improper and unfair to their other creditors, employees and Debtors' shareholders to compensate individuals who were not sufficiently or – as in most cases, at all – exposed to Debtors' products. Asbestos personal injury claimants bear the burden of proving both medical and legal causation in order to prevail on their claims. Medical causation requires that a claimant prove that asbestos caused or contributed to the claimant's injury. Legal causation requires that a claimant prove that a defendant's conduct was a substantial factor in bringing about the injury. Through the introduction of medical and scientific evidence, Debtors will demonstrate that only exposure to asbestos above a certain threshold level can result in the development of asbestos-induced disease.

According to the accepted scientific and medical literature, the general threshold exposure requirement for the development of most asbestos-related diseases range from 25 to 100 fibers per cubic centimeter-year (fibers/cc-yr) depending upon the disease.[55] In other words, the most conservative, medically reliable evidence proves that workers

---

[54] *Metro-North*, 521 U.S. at 432.

[55] *See, e.g.,* Churg, A., *Neoplastic Asbestos-Induced Disease,* in PATHOLOGY OF OCCUPATIONAL LUNG DISEASE, 339-391 (Andrew Churg & Francis Green eds., 2d ed. 1998) (attached hereto as Ex. 10); Browne, K., *Chrysotile Thresholds of Risk; Safety in the Use of Chrysotile Asbestos: Basis for Scientifically Based Regulatory Action* (paper presented Sept. 12 & 13, 2000), online at http://www.chrysotile.com/en/hltsfty/browne.htm, pp. 1-16 (visited June 20, 2002); Berry, G., Gilson, J.C., Holmes, S., Lewinsohn, H.C., Roach, S.A., *Asbestosis: a Study of Dose-Response Relationships in an Asbestos Textile Factory,* 36 BRIT. J. INDUS. MED. 98-112 (1979) (attached hereto as Ex. 11).

USG B 0418

exposed to less than 25 fibers/cc-year will not contract most asbestos-related diseases.[56]
Here, with few exceptions, the only individuals exposed to Debtors' products to this
degree are those who worked directly with Debtors' wall board joint compounds over a
period of years. Claimants who were not occupationally exposed in the construction
industry will have only *de minimis* exposure. Debtors intend to demonstrate through
discovery obtained from a representative sample of claimants that a majority of asbestos
personal injury claimants could not have been sufficiently exposed to Debtors' products –
indeed, the vast majority of plaintiffs historically have been able to demonstrate *no*
exposure to Debtors' asbestos-containing construction products, and thus cannot prove
causation as a matter of law. Because Debtors' products cannot have been a cause of their
harm, these claims should be estimated at zero value.

C.     **Claims Alleging Lung Cancer Without Asbestosis Should Be
Estimated At Zero**

By far the most prevalent cause of lung cancer is smoking, and a high proportion
of workers in the construction trades smoke. Science can distinguish between asbestos
and smoking-induced lung cancer. The scientific literature shows that an individual's
lung cancer could not have been caused by asbestos exposure if the individual does not
also demonstrate clinical evidence of asbestosis.[57] Courts have recognized the
scientifically accepted evidence that asbestosis is a required precursor for the diagnosis of

---

[56] The general threshold exposure requirement for development of mesothelioma, however, is
considerably lower than other asbestos-related diseases. Epidemiological evidence supports the
existence of an exposure level to amphibole asbestos fibers below which mesothelioma is not
induced in the region of 5 fibers/cc-years. *See* Browne, K., *Asbestos-Related Disorders*, in
OCCUPATIONAL LUNG DISORDERS, 430-481 (Raymond Parkes ed., Butterworth-Heinemann Ltd.
1994) (attached hereto as Ex. 12). However, as explained *infra* in Section VI.D., exposure to
*chrysotile* asbestos at low levels cannot cause mesothelioma.

[57] Browne, K., *Is Asbestos or Asbestosis the Cause of the Increased Risk of Lung Cancer in
Asbestos Workers?*, 43 BRIT. J. INDUS. MED. 145-49 (1986) (attached hereto as Ex. 13); Weiss,
W., *Asbestosis: A Marker for the Increased Risk of Lung Cancer Among Workers Exposed to
Asbestos*, 115 CHEST 536-49 (1999) (attached hereto as Ex. 14); Karjalainen, A., Pukkala, E.,
Kauppinen, T. & Partanen, T., *Incidence of cancer among Finnish patients with asbestos-related
pulmonary or pleural fibrosis*, 10 CANCER CAUSES AND CONTROL 51-57 (1999) (attached hereto
as Ex. 15).

USG B 0419

asbestos-induced lung cancer.[58] Accordingly, this Court should estimate at zero value lung cancer claims where the scientific evidence shows that those cancers were not caused by asbestos.

### D.    Mesothelioma Claims Demonstrating Exposure Only To Chrysotile Should Be Estimated At Zero

The mesothelium is a layer of flat cells that lines the abdominal cavity, heart and lungs. Asbestos can, in rare cases, cause malignancy in these areas (mesothelioma), usually in the cells surrounding the lungs. Mesothelioma is an extremely rare disease; it is estimated that there are only 15 to 20 cases per million annually in the United States among men, and 3 to 5 cases per million annually in the United States among women.[59]

The vast majority of Debtors' asbestos-containing products contained chrysotile, a type of asbestos that is far less harmful than amphibole asbestos. Chrysotile asbestos is less harmful because it is soft, flexible and soluble in acid.[60] Amphibole asbestos is straight, rigid and resists dissolution in acid.[61] Studies indicate that while chrysotile is cleared from the lungs in a matter of months, amphibole asbestos takes years or even decades to be cleared.[62]

Powerful epidemiological evidence indicates that chrysotile does not cause mesothelioma. While Debtors believe that this conclusion is correct, it is not without

---

[58] *See, e.g., Bath Iron Works Corp. et al. v. Dir., Office of Workers' Comp. Programs, USDL,* 137 F.3d 673 (1st Cir. 1998) (affirming finding that Longshore and Harbor Workers' Compensation Act claimant did not have asbestosis, and consequently his lung cancer was attributable to smoking); *Bolt v. Owens-Corning et al.,* 1995 WL 322007, *5 (Tenn. Ct. App. May 30, 1995) (where plaintiff had lung cancer but jury found no asbestosis, trial court correctly instructed jury that no further inquiry was necessary in order to reach defense verdict).

[59] *See* Churg, A., *Neoplastic Asbestos-Induced Disease,* Ex. 10 at 349.

[60] Davis, J.M.G., *Mineral Fibre Carcinogenesis: Experimental Data Relating to the Importance of Fibre Type, Size Deposition, Dissolution and Migration, World Health Organization International Agency For Research On Cancer,* in 90 NON-OCCUPATIONAL EXPOSURE TO MINERAL FIBRES, INT'L AGENCY FOR RESEARCH ON CANCER, SCIENTIFIC PUBLICATIONS 33-45 (1989) (attached hereto as Ex. 16).

[61] Browne, K., *Asbestos-Related Disorders,* Ex. 12 at 430-81.

[62] Churg, A., Wright, J.L., *Persistence of Natural Mineral Fibres in Human Lungs: An Overview,* 102 ENVTL. HEALTH PERSP. 229-233 (1994) (attached hereto as Ex. 17); Churg, A., *Analysis of Lung Asbestos Content,* 48 BRIT. J. INDUS. MED. 649-52 (1991) (attached hereto as Ex. 18).

USG B 0420

debate. There is no debate, however, that if chrysotile were to carry any mesothelioma risk, it would be very small compared to the risk of exposure to amphiboles. Thus, even if exposure to Debtors' products were capable of causing mesothelioma – a proposition that is not supported by the scientific evidence – a mesothelioma claimant must be able to show an exposure to Debtors' products far higher than most occupational exposures. As a result, this Court should estimate most, if not all, mesothelioma claims at zero value.

### E.    "Other" Cancers Should Be Estimated At Zero

Some epidemiological studies have posited a link between asbestos exposure and increased risk of various cancers other than lung cancer and mesothelioma, such as laryngeal cancer, colon cancer or gastrointestinal cancer.[63] However, the epidemiological and clinical evidence that asbestos exposure actually *causes* these other cancers is weak at best, and often fails to control for cigarette smoking, diet and other contributing factors.[64] The argument for asbestos's role in other cancers is further weakened by the lack of any generally accepted biological or physiological mechanisms through which asbestos would cause cancer in the human body other than lung cancer or mesothelioma. Because there is no credible and accepted scientific basis for finding that asbestos causes other cancers, claims based on cancers other than lung cancer and mesothelioma should be estimated at zero value.

## VII.    PHASE II: ESTABLISHMENT OF TRUST PARAMETERS AND VOTING RIGHTS

Following the limited discovery from randomly selected claimants proposed herein (*see infra* at Section VIII) and the Court's rulings on Debtors' legal defenses to various asbestos personal injury claims, Debtors will be prepared to offer expert testimony in Phase II on the likely size and shape of Debtors' present and future asbestos-related liability. From this testimony and evidence, the Court confidently may determine whether a proposed Trust is sufficiently funded to meet Debtors' obligations to valid

---

[63] Churg A., *Neoplastic Asbestos-Induced Disease*, Ex. 10 at 381.
[64] *Id.*

USG B 0421

present and future asbestos personal injury claimants.

Debtors will present expert testimony in Phase II consisting of statistical and epidemiological estimates of the future incidence of asbestos-related disease; the future number of asbestos claimants; and the present value of present and future asbestos personal injury claims. These estimates will be based upon calculations performed by economic and statistical experts using certain widely accepted economic and statistical models, and so primarily will require only that the models be populated with data gathered from representative claimants during the discovery process, and rulings by the Court on liability issues in Phase I. With guidance from this statistical and epidemiological testimony, the Court will be well equipped to rule on the sufficiency of any Trust proposed as part of a Plan.

## VIII.  LIMITED DISCOVERY WILL BE NECESSARY FOR SUBSTANTIVE ESTIMATION

As of March 2001, shortly before Debtors initiated these Chapter 11 proceedings, there were over 100,000 asbestos personal injury claims pending against Debtors. In order to estimate how many of these claims will constitute valid claims based on the estimation rulings issued by the Court on the legal questions described *supra* at Sections III and VI, Debtors propose to take two types of discovery.

First, for Phase I hearings Debtors will take expert discovery of any medical or scientific experts upon whose testimony the ACC intends to rely in challenging Debtors' position on its substantive defenses. The ACC would be entitled to take reciprocal expert discovery of Debtors' medical and scientific experts. No claimant-specific discovery is necessary for resolving the generic, threshold issues that Debtors propose be litigated in Phase I. For Phase II hearings, the parties will need to conduct expert discovery of each side's economists and epidemiologists, who will testify regarding the total number of valid claims and their aggregate values. Debtors also will need to take discovery of a statistically significant, randomly selected sample of asbestos personal injury claimants. Debtors propose to serve interrogatories on such a subset of claimants and then follow up

- 34 -

USG B 0422

with depositions of some of these claimants in order to verify their written responses.

### A.     This Court May Order Discovery In Estimation Proceedings

Two distinct bankruptcy discovery regimes are available at different stages in the bankruptcy process. Under the first, popularly known as the "Rule 2004 examination," Debtors may obtain broad-ranging discovery against any relevant person before determining whether to contest a particular claim. The second discovery option is based on the Bankruptcy Rules equivalents to the Federal Rules of Civil Procedure ("Federal Rules"). Using Federal Rules discovery, which is available as of right in adversarial and contested matters,[65] Debtors may take depositions, obtain documents, examine experts and propound interrogatories, just as they could in litigation not governed by the bankruptcy rules. For purposes of Debtors' proposed Substantive Estimation process, Federal Rules discovery is appropriate.

### B.     Phase I Hearings:  Expert Discovery

As noted above in Section VI, in Phase I Debtors will focus on five substantive defenses crucial to the definition of a valid claim. In order to establish their defenses, Debtors will rely upon expert testimony from several medical and scientific disciplines. Debtors anticipate that the ACC will oppose Debtors' efforts to establish reliable medical and scientific criteria at least in part by proffering their own experts in these disciplines. Accordingly, Debtors expect that discovery for Phase I will consist of expert witness reports and depositions concerning the parties' experts in pulmonology, radiology, oncology, pathology, epidemiology, mineral composition, industrial hygiene, and any

---

[65] A personal injury claim in bankruptcy may be rendered adversarial. *See* FED. R. BANKR. P. 7001(10). At the least, substantive estimation is a "contested matter" pursuant to FED. R. BANKR. P. 9014: "Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter. For example, the filing of an objection to a proof of claim, to a claim of exemption, or to a disclosure statement creates a dispute which is a contested matter. Even when an objection is not formally required, there may be a dispute." FED. R. BANKR. P. 9014 Advisory Committee Note.

USG B 0423

other disciplines pertinent to the establishment of Debtors' defenses. This discovery would proceed according to the requirements of FED. R. CIV. P. 26(a)(2) and 26(b)(4).

### C.    Phase II Hearings: Expert And Fact Witness Discovery

Based on the Phase I rulings, the Court will need to estimate the total number of valid claims and the value of each such claim. From this information the Court can determine the necessary size of the Trust. As a starting point for this inquiry the Court will need to know how many present claimants meet the threshold liability standards set in Phase I. This fact may be determined through discovery taken of a sample of present claimants.[66]

Debtors anticipate that a majority of the discovery necessary from the randomly selected subset will be a standardized set of interrogatories and a request for a limited number of documents, primarily certain medical records. Generally, the interrogatories would ask about:

      (a)    the impairment(s) from which the claimant suffers;

      (b)    the lung function and x-ray test scores of the claimant and other relevant medical tests, if any; and

      (c)    the occupational or non-occupational asbestos exposure history of the claimant.

The interrogatories would be similar in form and detail to a claim form, and would not be overly burdensome to those asbestos personal injury claimants selected as sample representatives.

In order to verify the exposure, product identification and medical histories reported in the interrogatory responses, Debtors will seek to depose certain of the randomly selected claimants. These depositions will be crucial for verification of the written discovery responses. Among other purposes, depositions will be required to

---

[66] As a statistical matter, it is possible to attain a 95% confidence interval that a sample is accurate to within plus or minus 3% – clearly a "reasonable estimate" – using a sample size as small as approximately 1,100 claimants.

USG B 0424

explore the reliability of the diagnoses upon which the claims in question are founded. As noted in Section IV, *supra*, asbestos plaintiffs' attorneys historically have used unreliable mass-screening techniques to enlist potential claimants *en masse*, and Debtors are entitled to know whether claimants' diagnoses are based on such mass-screening devices, which increasingly are rejected by the courts.[67]

The results of this discovery will be used as some of the raw data upon which Debtors' epidemiological and economic expert witnesses will base their projections of present and future claims and their present values. Debtors will take expert discovery of the ACC's proffered epidemiological and economic experts, if any, on issues including the accurate estimation of present and future claims by disease type, and the appropriate size of the Trust. Debtors expect the ACC to seek reciprocal discovery of Debtors' experts on these topics.

## IX.   SUBSTANTIVE ESTIMATION RULINGS WILL IMPACT TRUST SIZE AND PLAN VOTING

Having defined, based on threshold defenses, what constitutes a valid claim and the aggregate amount necessary to adequately fund a Trust, Debtors would propose proceeding next to Plan confirmation and establishment of a § 524(g) Trust. This process will require a vote and the determination of who is entitled to vote.

### A.   Asbestos Personal Injury Claimants Whose Claims Have Been Estimated At Zero Value Should Not Vote In The Confirmation Process

Claims to which Debtors object are not entitled to vote on Plan confirmation unless the Court temporarily allows them to vote.[68] Here, putative claimants who do not meet the requirements of a valid claim as determined by this Court's Phase I rulings should not have their claims temporarily allowed for voting on Plan confirmation or § 524(g) injunction purposes. Under Third Circuit precedent, those asbestos personal injury

---

[67] *See* Section IV.A, *supra.*
[68] FED R. BANKR. P. 3018(a).

- 37 -

claims deemed unlikely to succeed under state law may be estimated at zero value, and consequently, the Court may decide not to temporarily allow them to vote on a plan. *Bittner*, 691 F.2d at 136 (after applying relevant state tort law to claim, court estimated claim at zero and barred claimant from voting on plan confirmation); *see also In re Kaplan*, 186 B.R. at 874 ("[i]t is not inappropriate to value a party's claim at zero where the claim is contingent and where the bankruptcy court finds that the party probably would not succeed on the merits in a state court action.").

B. **Putative Claimholders Will Submit Declarations And Records Attesting To The Allowability Of Their Claims In Order To Vote**

Once the threshold determinations have been made, and a Plan proposed, a bar date and voting process should occur coincidentally. In submitting their claims and votes on Plan confirmation and § 524(g) channeling injunction, putative claimholders also must be required to submit sufficient information for the Court and parties to determine if they have valid claims such that the Court has permitted them to vote. This procedure will ensure a fair vote by only valid claimants.

C. **Because Debtors' Reorganization Plan Will Fully Compensate Valid Asbestos Personal Injury Claims, It Is Likely To Be Approved**

Debtors anticipate that a substantial number of asbestos personal injury claims against them will be estimated at zero value, based on the scientific, medical and evidentiary defenses described *supra* in Sections III and VI. As a result, the number of creditors who will be entitled to vote on a Plan of Reorganization, including a § 524(g) injunction, will be narrowed down to a manageable number.

More importantly, Debtors anticipate that if they prevail on most or all of the substantive defenses litigated in Phase I of the estimation proceedings, they will be able to pay the full value of all valid present and future asbestos personal injury claims according to the values set in Phase II of the estimation process. It would thus be in the best interests of all valid claimants to quickly negotiate a mutually acceptable Plan and to vote to confirm that Plan. Valid claimants will have no legitimate reason to vote against a

USG B 0426

Plan that fully compensates them for the value of their claims. They will not "veto" the Plan because they will have every interest in receiving their full payment. Accordingly, Debtors expect that their proposed Plan will be confirmed without delay.

## X.    PROPOSED ESTIMATION SCHEDULE

Debtors propose that the Substantive Estimation described above could commence soon after the conclusion of the briefing on estimation issues ordered by this Court according to the following proposed schedule:

September – January 2003 – Discovery of percipient and expert witnesses

February 2003 – Pre-hearing motions

March 2003 – Phase I substantive estimation hearings

April 2003 – Phase II substantive estimation hearings

Debtors believe that the proposed Substantive Estimation hearings could conclude within nine months from the date of this Court's order setting forth a schedule permitting discovery, motion practice, and Phase I and II substantive estimation hearings. Plan voting and confirmation would follow shortly thereafter.

## XI.    CONCLUSION

For the reasons set forth above and for such other reasons as the Court may deem just and proper, Debtors respectfully request that the Court grant Debtors' Motion for a Case Management Order For Substantive Estimation Hearings and execute the Proposed Order submitted herewith.

USG B 0427

Dated  June 21, 2002

RICHARDS, LAYTON, & FINGER, P.A.

_____
Daniel J. Defranceschi (DE No. 2732)
Paul Heath (DE No. 3704)
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

              -and-

COOLEY GODWARD LLP
STEPHEN C. NEAL (CA 170085)
SCOTT D. DEVEREAUX (CA 146050)
HARMEET K. DHILLON (CA 207873)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
Tel: (650) 843-5000
Fax: (650) 857-0663

Counsel for Debtors and Debtors in Possession

USG B 0428

CERTIFICATE OF SERVICE

I, Paul N. Heath, do hereby certify that on June 21, 2002, I caused copies of the

foregoing *Memorandum of Points and Authorities in Support of Debtors' Motion for Case*

*Management Order For Substantive Estimation Hearings* to be served via Fed Ex (non-local

Core Group), hand delivery (local) and first class mail (non-local) upon the **All Notice Parties**

service list

Paul N. Heath (No. 3704)

USG B 0429

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2005, I electronically filed *Appendix to Debtors'*

*Response to the Joint Statement of the Asbestos Personal Injury Creditors Committee and the*

*Legal Representative for Future Asbestos Claimants Regarding Discovery in Advance of*

*Hearing on Methodology for Asbestos Personal Injury Estimation (Volume 2 of 2)* with the

Clerk of Court using CM/ECF which will send notifications of such filing to the following:

| | |
|---|---|
| **Steven T. Davis**<br>steven.davis@obermayer.com | **Michael R. Lastowski**<br>mlastowski@duanemorris.com |
| **Marla Rosoff Eskin**<br>meskin@camlev.com | **Christopher D. Loizides**<br>loizides@loizides.com |
| **Brett D. Fallon**<br>bfallon@morrisjames.com | **Christopher A. Ward**<br>bankserve@bayardfirm.com<br>cward@bayardfirm.com |
| **Paul N. Heath**<br>heath@rlf.com; rbgroup@rlf.com | |

I hereby certify that on May 26, 2005, I caused a copy of the *Appendix to Debtors'*

*Response to the Joint Statement of the Asbestos Personal Injury Creditors Committee and the*

*Legal Representative for Future Asbestos Claimants Regarding Discovery in Advance of*

*Hearing on Methodology for Asbestos Personal Injury Estimation (Volume 2 of 2)* to be

served via e-mail upon the attached *Service List*[1].


      /s/ *Paul N. Heath*

Paul N. Heath (No. 3704)
Richards, Layton & Finger, P.A.
One Rodney Square, P. O. Box 551
Wilmington, Delaware 19899-0551
Phone:  302-651-7700
Fax:  302-651-7701
E-mail:  heath@rlf.com

---

[1] As defined in and in accordance with *Order Establishing Case Management and Scheduling Procedures for All Matters in the Above-Captioned Bankruptcy Cases Which the Reference has been Withdrawn from the United States Bankruptcy Court for the District of Delaware to the United States District Court for the District of Delaware* [Docket No. 8 in Case #04-1560; Docket No. 6 in Case #04-1559 – entered March 23, 2005]

*In re:  USG Corporation*
*Service List as of May 26, 2005*

*Via E-mail*

*Representing Statutory Committee of Equity Security Holders*
Robert J. Dehney
Daniel B. Butz
Curtis S. Miller
Morris Nichols Arsht & Tunnell
P.O. Box 1347
1201 N. Market Street
Wilmington, DE 19899

*Representing Marathon Ashland Petroleum and Coral Energy Canada*
John D. Demmy
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE 19801

*Representing Official Committee of Asbestos Personal Injury Claimants*
Marla R. Eskin
Kathleen J. Campbell
Campbell & Levine, LLC
800 King Street, Suite 300
Wilmington, DE 19801

*Representing Edward Wally*
Robert Jacobs
Jacobs & Crumplar, P.A.
P.O. Box 1271
2 East 7th Street
Wilmington, DE 19899

*Representing US Trustee*
David Klauder
Office of the United States Trustee
J. Caleb Boggs Federal Building, 844 King Street, Room 2313 Lockbox 35
Wilmington, DE 19801-3519

*Representing Official Committee of Unsecured Creditors*
Michael R. Lastowski
Duane Morris, LLP
P.O. Box 195
1100 North Market Street, Suite 1200
Wilmington, DE 19899-1246

*Representing Airgas, Inc.*
Kathleen M. Miller
Smith Katzenstein & Furlow, LLP
P.O. Box 410
800 Delaware Avenue, 7th Floor
Wilmington, DE 19899

*Representing Dean M. Trafelet, Futures Representative*
James L. Patton
Sharon Zieg
Young Conaway Stargatt & Taylor, LLP
P.O. Box 391
1000 West Street, 17th Floor
Wilmington, DE 19899

*Representing Official Committee of Asbestos Property Damage Claimants*
Steven M. Yoder
Neal B. Glassman
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

*Representing Atlas Roofing Corporation*
Jennifer M. Zelvin
McCarter & English, LLP
P.O. Box 111
919 N. Market Street, Suite 950
Wilmington, DE 19899

*Representing Ancel Abadie and additional claimants*
Julie A. Ardoin
Stephen B. Murray
The Murray Law Firm
909 Poydras Street, Suite 2550
New Orleans, LA 70112-4000

*Representing Asbestos Property Damage Committee*
Scott L. Baena
Jay Sakalo
Annie Martinez
Allyn Danzeisen
Bilzin Sumberg Baena Price & Axelrod LLP
2500 First Union Financial Center, 200
South Biscayne Blvd.
Miami, FL 33131-2336

Gary L. Barnhart
Missouri Dept. of Revenue
P.O. Box 475
301 West High Street, Room 670
Jefferson City, MO 65105-0475

*Representing Statutory Committee of Equity Security Holders*
Martin J. Bienenstock
Judy G. Z. Liu
John J. Rapisardi
Robert J. Lemons
Weil Gotshal & Manges
767 Fifth Avenue
New York, NY 10153

Robert W. Bollar
Southern Counties Oil Co.
P.O. Box 4159
1800 West Katella Avenue, Suite 400
Orange, CA 92863-4159

*Representing Airgas, Inc.*
David Boyle
Airgas, Inc.
P.O. Box 6675
259 Radnor-Chester Road, Suite 100
Radnor, PA 19087

*Representing West Coast Estates*
Thomas J. Brandi
Terrence Edwards
Law Offices of Thomas J. Brandi
44 Montgomery Street, #1050
San Fancisco, CA 94104

*Representing Various Asbestos Claimants*
Alan R Brayton
Brayton & Purcell
222 Rush Landing Road
Novato, CA 94945

*Representing Various Asbestos Claimants*
Russell Budd
Alan B. Rich
Baron & Budd, P.C
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219

ReGen Capital I, Inc.
P.O. Box 626
Planetarium Station
New York, NY 10024-0540

Peter A. Chapman
572 Fernwood Lane
Fairless Hills, PA 19030

*Representing Central States, Southeast and Southwest Areas Pension Fund*
Rathna Chikkalingaiah
Central States, Southeast and Southwest
Areas Pension Fund
Legal Department 9377 West Higgins Road
Rosemont, IL 60018-4938

*Representing Oracle Corporation and Oracle Credit Corporation*
Shawn M. Christianson
Buchalter, Nemer, Fields & Younger
333 Market Street, 25th Floor
San Francisco, CA 94105-2130

*Representing Various Asbestos Claimants*
Rhonda S. Cleaves
Waters & Kraus, LLP
3219 McKinney Avenue, Suite 3000
Dallas, TX 75204

*Representing Tennessee Dept. of Treasury - Unclaimed Property*
Marvin E. Clements, Jr.
C/O TN Attorney General's Office, Bankr. Unit
P.O. Box 20207
Nashville, TN 37202-0207

*Representing Barbara G. Billet, Esq., Deputy Commissioner and Counsel*
Elaine Z. Cole
New York State Department of Taxation and Finance
340 E. Main St.
Rochester, NY 14604

*Representing Committee Member*
Newberry College
c/o Edward J. Westbrook, Esquire
Richardson Patrick Westbrook & Brickman LLC
P.O. Box 1007
1037 Chuck Dawley Blvd, Building A
Mount Pleasant, SC 29465

*Representing Dean M. Trafelet, Futures Representative*
Nicholas J. Cremona
Andress A. Kress
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022

*Representing Ker McGee*
Myron K. Cunningham
Kerr McGee Center
P.O. Box 25861
Oklahoma City, OK 73125

*Representing Catholic Archdiocese of New Orleans*
Martin Dies
1009 Green Avenue
Orange, TX 77630

*Representing Port St. Helens, Oregon*
Charles R. Ekberg
Lane Powell Sears Lubersky LLP
1420 Fifth Avenue, Suite 4100
Seattle, WA 98101-2338

*Representing Debtors*
Brad B. Erens
Robert Krebs
Scott A. Huff
Jones Day
77 West Wacker Drive, Suite 3500
Chicago, IL 60601-1692

*Representing Hayward Industrial Park Associates, a CA general partnership*
Gregg M. Ficks
Coblentz, Patch, Duffy & Bass, LLP
One Ferry Building, Suite 200
San Francisco, CA 94111

*Representing Federal Express Corp.*
Charles J. Filardi, Jr.
Pepe & Hazard LLP
30 Jelliff Lane
Southport, CT 06890-1436

Ryan A. Foster
The Foster Law Firm, PLLC
440 Louisiana, Suite 2100
Houston, TX 77002

Charles O. Freedgood
JP Morgan Chase
270 Park Avenue Floor 12
New York, NY 10017-2036

*Representing Innovative Gas Services, Inc.*
Craig E. Freeman
Thelen, Reid & Priest LLP
875 Third Avenue
New York, NY 10022

*Representing Statutory Committee of Equity*
*Security Holders*
Julie T. Friedman
Victoria Vron
Robert Gee
Weil Gotshal & Manges
767 Fifth Avenue
New York, NY 10153

*Representing Environmental Protection*
*Agency*
Henry S. Friedman
John C. Cruden
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044

*Representing The Valleycrest Landfill Site*
*Group*
Neal A. Frink
Dinsmore & Shohl
1900 Chemed Center 255 East Fifth Street
Cincinnati, OH 45202

*Representing Bear, Stearns & Co. Inc.*
James G. Gereghty, Jr.
Bear, Stearns & Co. Inc.
383 Madison Avenue
New York, NY 10179

*Representing Certain Plaintiffs & Claimants*
Charles E. Gibson, III
620 North Street, Suite 100
Jackson, MS 39202

*Representing California Union Insurance*
*Company*
Leonard P. Goldberger
White and Williams LLP
1800 One Liberty Place
Philadelphia, PA 19103-7395

Terry A. Graffis
National City Bank
1900 East Ninth Street, Locator 01-2136
Cleveland, OH 44114

*Representing Creditor*
Tyler Greif
Peter Faulkner
1313 Avenue of the Americas
New York, NY 10019

*Representing Fox Valley Steel and Wire*
*Company*
Daniel J. Habeck
Cramer, Multhauf & Hammes, LLP
P.O. Box 558
Suite 200, 1601 East Racine Avenue
Waukesha, WI 53187

*Representing Debtor*
Paul Harner
Jones Day
77 West Wacker Drive, Suite 3500
Chicago, Il 60601-1692

*Representing Debtors*
David Heiman
Jones Day
North Point, 901 Lakeside Avenue
Cleveland, OH 44114

*Representing New Jersey Resources*
Robert L. Heugle, Jr.
Lomurro, Davison, Eastman & Munoz, P.A.
Monmouth Executive Center, 100
Willowbrook Road, Building 1
Freehold, NJ 07728-2879

Daniel K. Hogan
The Hogan Firm
1311 Delaware Avenue
Wilmington, DE 19806

*Representing OII Steering Committee*
Allan H. Ickowitz
Kathy K. Emanuel
Nossaman, Guthner, Knox & Elliott, LLP
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071

*Representing Official Committee of Asbestos
Personal Injury Claimants*
Elihu Inselbuch
Caplin & Drysdale, Chartered
399 Park Ave.
New York, NY 10022-4614

Thomas L. Jacob
Air Products and Chemicals, Inc.
7201 Hamilton BLVD.
Alentown, PA 18195-1501

William S. Katchen
Duane Morris, LLP
744 Broad Street, Suite 1200
Newark, NJ 07102

*Representing Various Asbestos Claimants*
Michael V. Kelley
Thomas M. Wilson
Kelley & Ferraro, L.L.P.
1901 Penton Media Building, 1300 East
Ninth Street
Cleveland, OH 44114

Allan Kellman
The Jaques Admiralty Law Firm
1370 Penobscot Building
Detroit, MI 48226

*Representing City and County of Denver*
Eugene J. Kottenstette
Assistant City Attorney
Land Use & Revenue Section
201 West Colfax Avenue, Dept 1207
Denver, CO 80202-3275

Roger Kral
Dietrich Industries
4200 St Rt 22 East #3
Blairsville, PA 15717

*Representing Trucklease Corporation d/b/a
AMI Leasing, sucessor in interest to Biddle
Co., Inc.*
Gary P. Lightman
Glenn A. Manochi
LIGHTMAN, MANOCHI &
CHRISTENSEN
1520 Locust Street, 12th Floor
Philadelphia, PA 19102

*Representing Official Committee of Asbestos
Personal Injury Claimants*
Peter Van N. Lockwood
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005-5802

*Representing USG Corporation*
Mary A. Martin
USG Corporation
125 South Franklin Street
Chicago, IL 60606

*Representing Lexington Insurance Company*
Robert B. Millner
Sonnenschein, Nath & Rosenthal
8000 Sears Tower, 233 South Wacker Drive
Chicago, IL 60606

*Representing Commonwealth of Pennsylvania, Pennsylvania Department of Revenue*
Christopher R. Momjian
Office of the  Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603

*Representing Office of the Attorney General - Washington*
Zachary Mosner
Office of the Attorney General - Bankruptcy & Collections Unit
900 Fourth Avenue, Suite 2000
Seattle, WA 98164-1012

Lisa B. Neimark
E&Y Capital Advisors LLC
233 S. Wacker Drive
Chicago, IL 60606

*Representing The State of Louisiana*
L. Scott Patton
Walter C. Dunn
The Boles Law Firm
P.O. Box 2065
1818 Avenue of America
Monroe, LA 71207-2065

*Representing Center for Claims Resolution*
Michael P. Richman
Jean Marie L. Atamian
Anthony J. Diana
Leslie Chebli
Mayer, Brown, Rowe & Maw LLP
1675 Broadway
New York, NY 10019

Barry Ridings
Lazard Freres & Co. LLC
30 Rockefeller Plaza, 60th Floor
New York, NY 10020

*Representing Commonweath of PA*
Sharon L. Royer
Harrisburg Bankruptcy and Compliance
1171 South Cameron Street, Room 312
Harrisburg, PA 17104-2513

*Representing Parkway, Ltd.*
Howard C. Rubin
Kessler & Collins
5950 Sherry Lane, Suite 222
Dallas, TX 75225

*Representing Doris Saiger, as Personal Representative of the Estate of William Saiger, and Dawn Saiger*
Peter D. Russin
L. Tannenbaum
Meland Russin Hellinger & Budwick, P.A.
3000 Wachovia Financial Center 200 S. Biscayne Boulevard
Miami, FL 33131

*Representing Associates Leasing, Inc.*
Sergio I. Scuteri
Farr Burke Gambacorta & Wright, P.C.
P.O. Box 788
Suite 201, Eastern International Executive Office Center, 211 Benigno Boulevard
Bellmawr, NJ 08099-9811

*Representing IBM Corporation*
Beverly H. Shideler
IBM Corporation
2 Lincoln Center #200
Oakbrook Terrace, IL 60181-4837

*Representing Fee Auditor*
Warren H. Smith
Warren H. Smith & Associates, P.C.
Republic Center, 325 N. Saint Paul, Suite 1275
Dallas, TX 75201

*Representing Anderson Memorial  Hospital*
Daniel A. Speights
Speights & Runyan
P.O. Box  685
200 Jackson Avenue East
Hampton, SC 29924

Adam M. Spence
The Law Offices of Adam M. Spence, P.C.
105 W. Chesapeake Avenue, Suite 400
Towson, MD 21204

*Representing Archiped Classics, Inc.*
Stephen C. Stapleton
Cowles & Thompson
901 Main Street, Suite 4000
Dallas, TX 75202

J.W. Taylor c/o Paul Matthews, Paralegal
Coastal Transport, Inc.
P.O. Drawer 67
Auburndale, FL 33823

*Representing USG Corporation*
Suzanne K. Torrey
USG Corporation
125 S. Franklin Street
Chicago, IL 60606

*Representing Future Claimants*
Dean M. Trafelet
P.O. Box 518
9130 Wild Lane
Baileys Harbor, WI 54202

*Representing New Jersey Self-Insurers
Guaranty Association*
Michael S. Waters
Jeffrey Bernstein, Esquire
Carpenter Bennett & Morrissey
Three Gateway Center 100 Mulberry St.
Newark, NJ 07102

*Representing Blue Cross & Blue Shield of
Florida, Inc.*
Richard Blackstone Webber II
Richard Blackstone Webber II, PA
320 Maitland Avenue
Altamonte Springs, FL 32701

*Representing Nick Ferrante*
Perry Weitz
C. Sanders McNew
Weitz & Luxenborg
180 Maiden Lane
New York, NY 10038-4925

*Representing Asbestos Creditors*
Scott W. Wert
Foster & Sear, L.L.P.
524 E. Lamar Blvd., Suite 200
Arlington, TX 76011

*Representing Official Committee of
Unsecured Creditors*
Denise K. Wildes
Stroock & Stroock & Lavan, LLP
180 Maiden Lane
New York, NY 10038-4982