examine the basis of subject matter jurisdiction <u>sua sponte</u>."); 28
U.S.C. § 1447(c). This is because "[f]ederal courts are courts of
limited jurisdiction." <u>Howery v. Allstate Ins. Co.</u>, 243 F.3d 912,
916 (5th Cir. 2001) (citing <u>Kokkonen v. Guardian Life Ins. Co. of
Am.</u>, 511 U.S. 375, 377 (1994)). Federal courts "must presume that
a suit lies outside this limited jurisdiction, and the burden of
establishing federal jurisdiction rests on the party seeking the
federal forum." <u>Howery</u>, 243 F.3d at 916 (citations omitted).

The reason a federal court's first inquiry must be whether the
case falls within its limited jurisdiction is that "[u]nless a
federal court possesses subject matter jurisdiction over a dispute,
... any order it makes (other than an order of dismissal or remand)
is void." <u>Dahiya v. Talmidge Int'l, Ltd.</u>, 371 F.3d 207, 210 (5th
Cir. 2004) (citing <u>John G. & Marie Stella Kenedy Mem'l Found. v.
Mauro</u>, 21 F.3d 667, 674 (5th Cir. 1994); <u>Shirley v. Maxicare Tex.
Inc.</u>, 921 F.2d 565, 568 (5th Cir. 1991)). The Fifth Circuit has
explained:

> Where a federal court proceeds in a matter without first
> establishing that the dispute is within the province of
> controversies assigned to it by the Constitution and
> statute, the federal tribunal poaches upon the territory
> of a coordinate judicial system, and its decisions,
> opinions, and orders are of no effect.

<u>Howery</u>, 243 F.3d at 916 n.6 (quotation omitted).

The fact that these actions are collected in an MDL does not
alter the normal jurisdictional rules. "While [28 U.S.C.] § 1407
provides a procedure for transferring cases filed in different

-170-

districts to a single district court for pretrial proceedings, nowhere does it expand the jurisdiction of either the transferor or the transferee court." In re Showa Denko K.K. L-Tryptophan Prod. Liab. Litig.-II, 953 F.2d 162, 165 (4th Cir. 1992) ("The authority for consolidating cases on the order of the judicial panel on multi-district litigation ... is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred.").

**B.    Removal**[129]

A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject-matter jurisdiction. See 28 U.S.C. § 1441(a). The removing party--as the party seeking the federal forum--bears the burden of showing that federal jurisdiction exists and that removal was proper. See Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." Id. (citing Acuna v. Brown & Root, Inc., 200 F.3d 335, 339 (5th Cir. 2000) ("[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction.")).

**C.    Diversity Jurisdiction**

---

[129]   Unless specifically referenced infra, the following discussion of the Court's subject-matter jurisdiction applies to the removed cases listed in "Appendix A," attached hereto.

Defendants removed these cases pursuant to 28 U.S.C. § 1441,[130] asserting diversity subject-matter jurisdiction under 28 U.S.C. § 1332.[131]    Therefore, whether this Court has subject-matter jurisdiction depends upon whether the Plaintiffs' claims satisfy the two requirements for diversity jurisdiction: (1) the $75,000 amount-in-controversy requirement, and (2) the complete diversity of citizenship requirement.  See 28 U.S.C. § 1332(a).

### 1.    Amount in Controversy

"Where ... the petition does not include a specific monetary demand, [the defendant] must establish by a preponderance of the evidence that the amount in controversy exceeds $75,000." Manguno, 276 F.3d at 723 (citation omitted).  The complaints in this MDL do not include a specific monetary demand.  In such an instance, "[t]he district court must first examine the complaint to determine whether it is 'facially apparent' that the claims exceed the jurisdictional amount." St. Paul Reinsurance Co. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998) (citing Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995)).  "If it is not thus apparent, the court may rely on 'summary judgment-type' evidence to

---

[130]   The federal removal statute, 28 U.S.C. § 1441(a), allows for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."

[131]   As previously discussed, at the time of removal, Defendants also argued that the Court possessed bankruptcy jurisdiction due to the fact that some Plaintiffs had filed bankruptcy.  However, this argument has been abandoned.  See footnote 16, supra.

-172-

ascertain the amount in controversy." <u>St. Paul Reinsurance Co.</u>, 134 F.3d at 1253 (citing <u>Allen</u>, 63 F.3d at 1336).

As alleged in the Complaints, it is facially apparent that each of the claims exceed the jurisdictional amount of $75,000.[132] For example, the following allegations from <u>Nichols v. Aearo</u>, S.D. Tex. Cause No. 03-391 (one of the cases transferred in this MDL's initial transfer order), are typical:

> As a direct and proximate cause of the conduct of Defendants, Plaintiffs were injured.  The damages Plaintiffs have suffered include, but are not limited to, the following:
> A.   Severe impairment to their lungs and respiratory system;
> B.   Medical Expenses, past and future;
> C.   Pain and Suffering, past and future;
> D.   Mental Anguish, Anxiety, and Discomfort, past and future;
> E.   Lost wages and income, past and future;
> F.   Physical Impairment;
> G.   Physical Disfigurement;
> H.   Loss of Enjoyment;
> I.   Loss of Consortium;
> J.   Pre and post judgment interest;
> K.   Exemplary and Punitive Damages;
> L.   Treble damages;
> M.   Reasonable and necessary attorneys fees; and
> N.   Such other relief to which Plaintiffs may be justly entitled.

---

[132] "The Supreme Court has long interpreted § 1332's phrase 'matter in controversy' not to allow multiple plaintiffs to add together separate and distinct demands, united for convenience and economy in a single suit, to meet the requisite jurisdictional level." <u>Allen</u>, 63 F.3d at 1330 ("The general rule is that each plaintiff who invokes diversity of citizenship jurisdiction must allege damages that meet the dollar requirement of § 1332.") (quotation and citations omitted).

(Pls.' Orig. Compl. at 64; see also Alexander v. Air Liquide Am.
Corp., S.D. Tex. Cause No. 03-533, Pls.' Orig. Compl. at 35
(same).[133])  These are the types of injuries that the Fifth Circuit
has held satisfies the "facially apparent" standard.  See Gebbia v.
Wal-Mart Stores, Inc., 233 F.3d 880, 883 (5th Cir. 2000).[134]

   Therefore, the Plaintiffs' Complaints satisfy the amount-in-
controversy requirement.[135]

---

   [133] As discussed infra, Alexander was originally filed in
this Court.

   [134] In Gebbia, the Fifth Circuit held that it was "facially
apparent" that the following allegations made a claim for damages
in excess of $75,000:
      Plaintiff alleged in her original state court petition
      that she sustained injuries to her right wrist, left
      knee and patella, and upper and lower back.  Plaintiff
      alleged damages for medical expenses, physical pain and
      suffering, mental anguish and suffering, loss of
      enjoyment of life, loss of wages and earning capacity,
      and permanent disability and disfigurement.
Gebbia, 233 F.3d at 883.

   [135] In its Motion to Remand, 3M argues that the evidence
presented during the Daubert hearings constitutes "summary
judgment-type evidence" showing that most Plaintiffs do not
satisfy the amount-in-controversy requirement.  However, in the
Fifth Circuit, a court looks to "summary judgment-type evidence"
only if it is not "facially apparent" that the claims exceed the
jurisdictional minimum.  See St. Paul Reinsurance Co., Ltd. v.
Greenberg, 134 F.3d 1250, 1253-54 (5th Cir. 1998) ("The district
court must first examine the complaint to determine whether it is
'facially apparent' that the claims exceed the jurisdictional
amount.  If it is not thus apparent, the court may rely on
'summary judgment-type' evidence to ascertain the amount in
controversy.") (emphasis added); cf. H&D Tire and Automotive-
Hardware, Inc. v. Pitney Bowes Inc., 227 F.3d 326, 329 (5th Cir.
2000) ("Because it is not facially apparent from the complaint
that the jurisdictional amount is satisfied, we will look
elsewhere in the record to determine the amount in
controversy.") (emphasis added); Allen v. R & H Oil & Gas Co., 63
F.3d 1326, 1336 (5th Cir. 1995) ("In situations where the
facially apparent test is not met, the district court can then

## 2.  Complete Diversity

With respect to the diversity-of-citizenship requirement, "[i]t is well-established that the diversity statute requires 'complete diversity' of citizenship: A district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants." Corfield v. Dallas Glen Hills LP, 355 F.3d 853, 857 (5th Cir. 2003) (citations omitted).

In the case of corporate parties, a corporation is a citizen of both its state of incorporation and the state of its principal place of business for purposes of diversity jurisdiction. See Teal Energy USA, Inc. v. GT, Inc., 369 F.3d 873, 875 (5th Cir. 2004); Stafford v. Mobil Oil Corp., 945 F.2d 803, 806 (5th Cir. 1991) ("For diversity jurisdiction purposes, a corporation is a citizen of the state in which it was incorporated and the state in which it has its principal place of business.") (quoting Getty Oil Corp. v. Ins. Co. N. Am., 841 F.2d 1254, 1258 (5th Cir. 1988); see also 28 U.S.C. § 1332(a).  In these MDL cases, many of the Complaints allege the

---

require parties to submit summary-judgment-type evidence, relevant to the amount in controversy at the time of removal.") (emphasis added).  In a footnote, the Allen court continued: "The efficient procedure is to not require such 'summary judgement' proof until after the initial consideration of the face of the complaint."  Allen 63 F.3d at 1336 n.16.

Therefore, in these MDL cases, because it is "facially apparent" from the Complaints that the amount-in-controversy requirement is satisfied, the evidence adduced at the Daubert Hearings may not be used to subsequently show that the amount-in-controversy requirement is not satisfied.

Defendants' states of incorporation, but none of the Complaints allege any Defendant's principal place of business.

However, it is not Plaintiffs' burden to make such allegations. "For diversity jurisdiction, the party asserting federal jurisdiction must 'distinctly and affirmatively allege' the citizenship of the parties." Howery v. Allstate Ins. Co., 243 F.3d 912, 919 (5th Cir. 2001) (quoting Stafford, 945 F.2d at 806). Here, the Defendants are asserting federal jurisdiction via removal: hence, they "bear[] the burden of establishing diversity; if [they] fail[] to meet that burden, [the court] cannot presume the existence of federal jurisdiction." Howery, 243 F.3d at 919. Therefore, the Defendants must "distinctly and affirmatively allege" the principal place of business of all properly joined Defendants.[136]

But even as the Complaints are currently pleaded (i.e., without any allegations concerning the Defendants' principal places of business), all of the removed actions in this MDL lack complete diversity of citizenship--that is, at least one Plaintiff is of the same citizenship as at least one Defendant. This, however, does not end the inquiry. Defendants removed these cases alleging that the Plaintiffs had improperly (or, "fraudulently") joined the parties. Defendants argued that in deciding jurisdiction, the Court should sever each Plaintiff's claim and focus solely on the

---

[136] The requirement that a Defendant be "properly joined" is discussed infra.

-176-

citizenship of the specific Defendants who allegedly caused that Plaintiff's specific injury. Defendants argued that once this is done, some Plaintiffs' claims will need to be remanded to state court for lack of federal jurisdiction, but the vast majority of severed claims will be within the diversity jurisdiction of federal court. At the time of removal, Defendants provided no proof for its assertions; they merely asserted "[o]n information and belief, few, if any, plaintiffs were exposed to the Mississippi Defendants' products. Therefore, the Mississippi Defendants were fraudulently joined as to [the] overwhelming majority of plaintiffs." (See, e.g., Notice of Removal, Sullivan v. Aearo, S.D. Tex. Cause No. 03-369, ¶ 6.)[137]

### a.    Improper Joinder

The removal statute, 28 U.S.C. § 1441, specifies that suits arising under federal law are removable without regard to the citizenship of the parties, while all other suits are removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (emphasis added). In other words, a court is to disregard the citizenship of parties which have been improperly joined. See Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 572-73 (5th Cir. 2004) (en banc) ("The doctrine of improper joinder rests on ... statutory underpinnings, which entitle a

---

[137]    The pertinent allegations in all of the Notices of Removal are identical.

defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'"). <u>Smallwood</u> explains:

> The Federal courts should not sanction devices intended to prevent the removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction.

<u>Id.</u> at 573 (quotation omitted).

The Fifth Circuit has recognized that "improper joinder" (also known as "fraudulent joinder")[138] may be established in one of two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."    <u>Id.</u> at 573 (citation omitted).

Defendants do not rely on either of these forms of improper joinder here.  Although they alleged during the <u>Daubert</u> Hearings that Plaintiffs' diagnoses are "fraudulent", they have pointedly asserted that this "fraud" is irrelevant to jurisdictional issues. (Certain Defs.' Reply in Support of Jurisdiction, MDL 03-1553 Docket Entry 1755 at 5 ("That plaintiffs' 'diagnoses' have now been shown to be a sham has nothing to do with the jurisdictional issues

---

[138] The term, "improper joinder," was recently adopted by the Fifth Circuit.  <u>See Smallwood</u>, 385 F.3d at 571 n.1 ("We adopt the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past.  Although there is no substantive difference between the two terms, 'improper joinder' is preferred.").

now presented to this Court.").) Similarly, while a handful of
Defendants have argued that Plaintiffs cannot establish a cause of
action against them under state law,[139] they have not contended that
this somehow relates to jurisdiction (such as that the dismissal of
those particular Defendants would result in the existence of
diversity of citizenship between the remaining Plaintiffs and
Defendants).

Instead, the Defendants here rely upon a third type of
improper joinder which is known as "fraudulent misjoinder," and
which exists "where a diverse defendant is joined with a nondiverse
defendant as to whom there is no joint, several or alternative
liability and where the claim against the diverse defendant has no
real connection to the claim against the nondiverse defendant."
Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir.
1998) (citing Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360
(11th Cir. 1996), abrogated on other grounds by Cohen v. Office
Depot, Inc., 204 F.3d 1069 (11th Cir. 2000)). The Fifth Circuit has
not explicitly adopted this rule, but it has spoken in dicta of
"the Tapscott principle that fraudulent misjoinder of plaintiffs is
no more permissible than fraudulent misjoinder of defendants to
circumvent diversity jurisdiction." In re Benjamin Moore & Co.,

---

[139]  For example, in all but one of the MDL cases, the
Defendants who manufacture air compressors have argued that, as a
matter of law, they had no duty to warn Plaintiffs of the health
hazards associated with respirable silica and abrasive blasting.
(See MDL 03-1553 Docket Entries 1107 & 1108; see also Barnes v.
Alabama Carbonates LP, S.D. Tex. Cause No. 03-511, Docket Entry
86.)

318 F.3d 626, 630-31 (5th Cir. 2002) (holding that the Court of
Appeals lacked jurisdiction to review the district court's
rejection of defendants' fraudulent misjoinder claim); see also In
re Benjamin Moore & Co., 309 F.3d 296, 298 (5th Cir. 2002) ("[I]t
might be concluded that misjoinder of plaintiffs should not be
allowed to defeat diversity jurisdiction.") (citing Tapscott).  The
Court will assume for the sake of argument that the Fifth Circuit
would explicitly adopt the Tapscott principle in an appropriate
case.

     Tapscott involved an interpretation of Federal Rule of Civil
Procedure 20(a) to determine whether the joinder of certain claims
in a class action was proper.  Rule 20(a) governs the "permissive
joinder of parties," and it provides, in pertinent part:

> All persons may join in one action as plaintiffs if they
> assert any right to relief jointly, severally, or in the
> alternative in respect of or arising out of the same
> transaction, occurrence, or series of transactions or
> occurrences and if any question of law or fact common to
> all these persons will arise in the action.  All persons
> ... may be joined in one action as defendants if there is
> asserted against them jointly, severally, or in the
> alternative, any right to relief in respect of or arising
> out of the same transaction, occurrence, or series of
> transactions or occurrences and if any question of law or
> fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a).  The first sentence of Rule 20 sets out the
criteria as to when plaintiffs may be joined together in one
action.  The second sentence of Rule 20 sets out the criteria as to
when defendants may be joined in one action.  Plaintiffs may join
together if they allege a claim "arising out of the same

-180-

transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." Fed. R. Civ. P. 20(a); see also Applewhite v. Reichhold Chems., Inc., 67 F.3d 571, 574 n.11 (5th Cir. 1995). Defendants may be joined together only if there is an alleged claim against the defendants "arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a).

"Under the [Federal] Rules [of Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966) (citing, inter alia, Fed. R. Civ. P. 20); see also Alexander v. Fulton County, Ga., 207 F.3d 1303, 1323 (11th Cir. 2000) ("Plainly, the central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits.") (citation omitted). As used in the Federal Rules:

> 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. Accordingly, all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence.

Alexander, 207 F.3d at 1323 (quoting Moore v. New York Cotton Exch., 270 U.S. 593, 610 (1926); Mosley v. Gen. Motors Corp., 497

F.2d 1330, 1333 (8th Cir. 1974)); cf. H.L. Peterson Co. v. Applewhite, 383 F.2d 430, 433 n.4 (5th Cir. 1967) (noting that the "same transaction or occurrence" language in Federal Rule of Civil Procedure 13(a) (governing compulsory counterclaims) "has been broadly interpreted not to require absolute identity of factual backgrounds for the two claims but only a logical relationship between them") (citation omitted). As stated by a commentator:

> [L]anguage in a number of decisions suggests that the courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court.

7 Wright, Miller & Kane, Federal Practice and Procedure § 1653 (citations omitted).

In Tapscott, one group of plaintiffs sued a set of defendants in state court for fraud arising from the sale of automobile service contracts. See Tapscott, 77 F.3d at 1355. In the same lawsuit, another group of plaintiffs sued an entirely separate set of defendants for fraud arising from the sale of service contracts covering retail products, as opposed to automobiles. See id. The retail products defendants were of diverse citizenship from the plaintiffs, while the automobile defendants were non-diverse. See id. at 1359-60. After removal to federal court, the Eleventh Circuit affirmed the district court's denial of the plaintiffs' motion to remand, stating that because the two sets of defendants were unrelated, the plaintiffs' "attempt to join these parties

-182-

[was] so egregious as to constitute fraudulent joinder." <u>Id.</u> at
1360. In so holding, the court expressly "d[id] not hold that mere
misjoinder is fraudulent joinder," but rather held that "egregious"
misjoinder was necessary to constitute fraudulent joinder. <u>See id.</u>
As another MDL court has summarized: "[U]nder <u>Tapscott</u>, something
more than 'mere misjoinder' of parties may be required to find
fraudulent misjoinder. Precisely what the 'something more' is was
not clearly established in <u>Tapscott</u> and has not been established
since." <u>In re Bridgestone/Firestone, Inc.</u>, 260 F. Supp. 2d 722,
728 (S.D. Ind. 2003); <u>see also</u> <u>In re Rezulin Prods. Liab. Litig.</u>,
168 F. Supp. 2d 136, 146-47 (S.D.N.Y. 2001) (same); <u>In re Diet
Drugs</u>, No. 98-20478, 1999 WL 554584, *3 (E.D. Pa., July 16, 1999)
("[A] finding of mere misjoinder does not itself warrant a finding
of fraudulent misjoinder.") (citing <u>Tapscott</u>, 77 F.3d at 1360).[140]

---

[140]  In the Rezulin Products MDL, the court stated:
Although misjoinder is a ground for dismissal or
severance of an improperly joined party, the vast
majority of courts confronting the issue on remand
motions have found that misjoinder of a party with a
unique claim against a non-diverse adversary is not
alone a basis for remand.  One treatise suggests that
this is because improper joinder does not defeat the
possibility of a claim against the misjoined party, as
is required to satisfy the traditional standard for
fraudulent joinder in discounting the citizenship of
non-diverse parties.  Thus, courts considering the
issue generally have looked for the additional element
of a bad faith attempt to defeat diversity, defining
misjoinder of this type as a third species of
fraudulent joinder.
<u>In re Rezulin Prods. Liab. Litig.</u>, 168 F. Supp. 2d at 146-47
(citing <u>inter alia</u>, <u>Tapscott</u>, 77 F.3d at 1360).

Here, it is not necessary for the Court to precisely define the parameters of "mere misjoinder" versus "egregious misjoinder." Instead, it is sufficient to explain why, for jurisdictional purposes, the joinder of the disparate Plaintiffs' claims constitutes egregious misjoinder, while each Plaintiffs' joinder of his or her claims against multiple Defendants does not constitute egregious misjoinder.

### i.    Joinder of Plaintiffs

The MDL Plaintiffs are alleging individual damages resulting from exposure to respirable silica over the course of each particular Plaintiff's work life.    These exposures--and any resulting illnesses--will vary depending upon where each Plaintiff worked, for how long, and with what equipment.    In reviewing the Plaintiffs' Fact Sheets, it is clear that the Plaintiffs who have been joined together have no relevant connection to each other, outside of the fact that all are alleged to have been exposed to respirable silica. The majority of the joined Plaintiffs worked in different locations, for different lengths of time, at different occupations, using different products.

It is worth noting that the joinder of the Plaintiffs in each case is not entirely haphazard.    Instead, it appears that the true reason for the joinders is that the collection of Plaintiffs in each case were all part of a certain law firm's existing asbestos "inventory" and/or they were screened within the same time-period by the same screening company.    Of course, while these reasons

-184-

might explain the joinders, they do not make the joinders proper under Rule 20.

Instead, joinder among plaintiffs is only proper if they allege a claim "arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." Fed. R. Civ. P. 20(a).[141] Here, it is evident from the Plaintiffs' Fact Sheets that this test for joinder has not been met. This point can be illustrated by a random selection of the Fact Sheets of two out of the 4,280 Plaintiffs joined in <u>Prince v. Pearl River Sand & Gravel Co.</u>, S.D. Tex. Cause No. 03-392. The two Fact Sheets are attached hereto as Exhibits 32 & 33.

Plaintiff Raymond Eugene Goodwin alleges silica exposure while working during the following years at the following jobs: from 1958-59 as a grinder at U.S. Steel Company in Gary, Indiana; from 1969-1970 as a truck driver at Ingall Iron in Birmingham, Alabama;

---

[141] As discussed more fully <u>infra</u>, following the lead of the Eleventh Circuit in <u>Tapscott</u>, this Court will apply Federal Rule of Civil Procedure 20, rather than an analogous state-law joinder rule, in determining the jurisdictional issue of "egregious misjoinder." See <u>Tapscott</u>, 77 F.3d at 1360; <u>see also</u> <u>Edwards v. E.I. Du Pont De Nemours & Co.</u>, 183 F.2d 165, 168 (5th Cir. 1950) ("[I]n procedural matters we are controlled by the Federal Rules of Civil Procedure, 28 U.S.C.A. ... [W]e look to the federal statutes as construed by ... federal decisions to determine whether the case is removable in whole or in part, all questions of joinder, non-joinder, and misjoinder being for the federal court.") (citations omitted). Moreover, as discussed <u>infra</u>, in these cases, the result would be no different if the Court analyzed the "egregious misjoinder" issue using Mississippi Rule of Civil Procedure 20.

and from 1994-1995 as a mechanic at United Gunite in Florence, Alabama.  (Exhibit 32 at 3.)  Plaintiff James Earl King alleges silica exposure while working as a mechanic at Tractor & Equipment Company in Anniston, Alabama from 1971-1990.  (Exhibit 33 at 3.) The only "transaction, occurrence, or series of transactions or occurrences" that links these two Plaintiffs is that they were each "diagnosed" with silicosis by Dr. Martindale, they are each represented by the Campbell Cherry firm (located in Waco, Texas), and they each sued the same collection of 134 Defendants in Mississippi state court.  However, these are not the types of transactions or occurrences which are relevant under Rule 20.  See Fed. R. Civ. P. 20(a) ("All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences ....") (emphasis added).  By way of further illustration (and to illustrate the variations--or lack thereof--in the Fact Sheet submissions), two Fact Sheets also have been randomly selected from both Clark v. Air Liquide America Corp., S.D. Tex. Cause No. 03-376 (a case purporting to join 1,566 Plaintiffs), and Woods v. Pulmosan Safety Equipment Corp., S.D. Tex. Cause No. 04-025 (a case purporting to join 25 Plaintiffs).[142]  See Exhibits 34 & 35 and 36

---

[142]  Prince, with 4,280 Plaintiffs, and Clark, with 1,566 Plaintiffs, are the largest cases in this MDL.  Because of this, the egregiousness of the misjoinder of the Plaintiffs in those cases seems especially pronounced.  But even as to the other cases which purport to join lesser numbers of Plaintiffs, each

& 37, attached hereto.[143]  These Fact Sheets show what is apparent

from all of the Fact Sheets--that these Plaintiffs have no relevant

connection to each other.

     As stated by another MDL court:

     The joinder of several plaintiffs who have no connection
     to each other in no way promotes trial convenience or
     expedites the adjudication of the asserted claims.
     Rather, the joinder of such unconnected, geographically
     diverse plaintiffs that present individual circumstances
     material to the final outcome of their respective claims
     would obstruct and delay the adjudication process.  Given
     Plaintiffs' vast geographic diversity and lack of
     reasonable connection to each other, the court finds that
     the attempted joinder of the nonresident Plaintiffs
     wrongfully deprives Defendants of their right of removal.

In re Diet Drugs, No. 98-20478, 1999 WL 554584, at *3 (E.D. Pa.,

July 16, 1999) (applying Tapscott and finding egregious misjoinder

where plaintiffs attempted to join persons from seven different

states who had no connection with one another except that each

ingested diet drugs); see also Coleman v. Conseco, Inc., 238 F.

---

with disparate work and exposure histories, this "egregious
misjoinder" discussion is applicable.  The are, however, two
notable exceptions: Kirkland v. 3M Co., S.D. Tex. Cause No. 04-
639 and Gatlin v. Ash Grove Cement Co., S.D. Tex. Cause No. 04-
638.  Kirkland (a case with only two Plaintiffs, husband and
wife) will be addressed separately, infra.  Gatlin is a single-
Plaintiff case with 6 Defendants.  The portion of this Order
addressing the joinder of Plaintiffs is not applicable to Gatlin.
The case nonetheless has been included with the other cases
listed on "Appendix A" because the discussion related to the
"Appendix A" cases in the other jurisdictional portions of this
Order are applicable to Gatlin.

     [143]  Certain portions of the Fact Sheets have been omitted
from these Exhibits.  Specifically, the signed authorizations to
release medical and financial records have been omitted, as well
as all Social Security earnings statements.

Supp. 2d 804, 818 (S.D. Miss. 2002) (finding egregious misjoinder and dismissing 45 out-of-state plaintiffs because "the out-of-state Plaintiffs' claims ... 'occurred in complete factual, temporal and geographic isolation' from the claims of the three Mississippi Plaintiffs") (quoting Rudder v. Kmart Corp., No. 97-0272, 1997 WL 907916 at *6 (S.D. Ala., Oct. 15, 1997));[144] cf. Abdullah v. Acands, Inc., 30 F.3d 264, 269 n.5 (1st Cir. 1994) ("Appellants' Complaint

---

[144]    Rudder was initially filed in Alabama state court by three plaintiffs, two of which were Alabama residents, and one of which was a resident of Michigan. The sole defendant was Kmart Corporation, a resident of Michigan. The suit was based on the alleged fraudulent sale by Kmart of used auto batteries as new batteries. The Michigan plaintiff purchased batteries at Kmart stores in Michigan and Alabama. However, the Alabama purchase occurred after he initiated suit against Kmart. The Alabama plaintiffs purchased their batteries at Kmart stores in Alabama. Kmart removed the case to Alabama federal court on the jurisdictional basis of diversity of citizenship. Kmart alleged that the Michigan plaintiff was fraudulently misjoined to destroy diversity of citizenship jurisdiction. Finding that the Michigan plaintiff was fraudulently misjoined under Rule 20, the Rudder court held:

> Clearly, McGuire [the Michigan Plaintiff] and the other plaintiffs do not 'assert a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences.' McGuire's Alabama purchase--assuming arguendo that it could possibly form the predicate for a valid cause of action--occurred in complete factual, temporal and geographic isolation from Rudder's and Soleman's [the Alabama plaintiffs]. The record contains no evidence of any connection whatsoever between the plaintiffs or their respective transactions. Indeed, McGuire testifies in essence that he has never spoken to either William Rudder or Cissy Soleman. The record reflects no reason why the joinder of McGuire, a Michigan resident, to the other two plaintiffs, Alabama residents, would serve any legitimate purpose of fairness or judicial efficiency. In short, the claims of McGuire, and Rudder and Soleman, are not claims that a reasonable person would normally expect to be tried together.

Rudder, 1997 WL 907916 at *5 (citations and footnotes omitted).

fails to satisfy the threshold requirement of Fed. R. Civ. P. 20
that the plaintiffs' claim for relief arise out of 'the same
transaction, occurrence, or series of transactions or occurrences.'
The Complaint is bereft of factual allegations indicating why 1000
plaintiffs and 93 defendants belong in the same action.  It gives
no indication of whether plaintiffs were injured while serving on
the same vessels or during the same time periods; no indication of
whether they were injured by exposure to the same asbestos-
containing products or equipment, nor any specification of the
products or equipment to which they were exposed.") (citing Aaberg
v. Acands, Inc., 152 F.R.D. 498, 500 (D. Md. 1994) (same)); In re
Asbestos II Consol. Pretrial, No. 86-C-1739, 1989 WL 56181, at *1
(N.D. Ill., May 10, 1989) (same).

     Therefore, while the Fifth Circuit has not expressly adopted
the Tapscott theory of improper joinder, the Court assumes,
arguendo, that the misjoinder of the Plaintiffs' claims so fails to
meet the requirements of Federal Rule of Civil Procedure 20(a) as
to constitute "egregious misjoinder" under Tapscott.  Thus, when
considering the issue of diversity of citizenship, the Court will
view each Plaintiff's claim in isolation, as if all Plaintiffs'
claims were severed from each other.

     Prior to addressing the issue of each Plaintiff's joinder of
Defendants, two issues related to the joinder of Plaintiffs should
noted.

First, at the time the Complaints were filed in state court,
Plaintiffs had at least a colorable basis to believe the joinders
of these disparate Plaintiffs were proper under Mississippi Rule
20--despite the fact that the text of Mississippi Rule 20 is, in
essence, the same as Federal Rule 20.  For example, in 2002, the
Mississippi Supreme Court stated: "The general philosophy of the
joinder provisions of these Rules is to allow <u>virtually unlimited
joinder</u> at the pleading stage, but to give the Court discretion to
shape the trial to the necessities of the particular case."  <u>Ill.
Cent. R.R. v. Travis</u>, 808 So.2d 928, 931 (Miss. 2002) (emphasis
added).

But more recently, the Mississippi Supreme Court has clarified
that Mississippi Rule 20 would not permit joinder in situations
such as those presented by the cases in this MDL.   In <u>Janssen
Pharmaceutica, Inc. v. Armond</u>, 866 So.2d 1092 (Miss. 2004), the
court held that Mississippi Rule 20 did not allow the joinder of 56
different plaintiffs who were prescribed an allegedly defective
drug (Propulsid) by 42 different doctors.  The court explained:

> [E]ach plaintiff/doctor combination has its own set of
> facts and evidence surrounding the prescribing of
> Propulsid, the transaction or occurrence which is the
> basis for each claim.   Thus, there is no single
> transaction or occurrence or series of transactions or
> occurrences connecting all 56 plaintiffs and 42 physician
> defendants.

-190-

Janssen, 866 So.2d at 1102.[145]   The Mississippi Supreme Court
reaffirmed this holding in the context of an asbestos case which
attempted to join over 150 plaintiffs:

> [T]he plaintiffs ... were improperly joined ..., as the
> only similar trait shared by the plaintiffs is the
> alleged exposure to asbestos at some point in their work
> history. The plaintiffs worked in different occupations,
> for different employers, at different times, were exposed
> to different products and used different respiratory
> protection equipment or no respiratory protection
> equipment at all.

3M Co. v. Johnson, 895 So.2d 151, 158 (Miss. 2005).   Thus, the
Court assumes, arguendo, that in these MDL cases, the Plaintiffs'
attempted joinders would fare no better under Mississippi Rule 20
than they do under Federal Rule 20.

The second issue the Court notes is why it has refrained from
considering Plaintiffs' civil conspiracy allegations.   The
Plaintiffs rely upon these allegations to link their disparate
claims together.   However, as originally plead, the conspiracy

---

[145] After holding that the joinder of the plaintiffs' claims
were improper, the court remanded the case for severance of all
plaintiffs' claims and "also instruct[ed] the trial court to
transfer the severed cases to those jurisdictions in which each
plaintiff could have brought his or her claims without reliance
on another of the improperly joined plaintiffs."   Janssen, 866
So.2d at 1102; see also Dillard's, Inc. v. Scott, --- So.2d ----,
2005 WL 1039141, at *5 (Miss., May 5, 2005) ("[T]he out-of-state
plaintiffs with no connection to Mississippi and whose causes of
action accrued out of state shall be dismissed without prejudice
and all remaining cases without an independent basis for venue in
Hinds County shall be severed and transferred to the appropriate
jurisdiction where each plaintiff could have brought his or her
claim without reliance on an improperly joined plaintiff.").
Although this Court makes no finding on this issue of state-court
procedure, the holdings of Janssen and Dillard's appear to be
applicable to these MDL cases.

allegations were too conclusory to state a claim for civil conspiracy. See, e.g., S. Christian Leadership Conference v. Supreme Court of State of La., 252 F.3d 781, 786 (5th Cir. 2001) ("'[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent [a] motion to dismiss.'") (quoting Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993)).

At the December 17, 2004 Status Conference, the Court asked Plaintiffs' liaison counsel to select the date by which Plaintiffs could replead the conspiracy claims with particularity. He selected January 3, 2005, and then stated, "And we will stand by that." (Dec. 17, 2004 Status Conf. Trans. at 72.)   The Court memorialized the January 3 deadline in Order No. 19. (Order No. 19 ¶ 3.)  On January 3, Plaintiffs moved for a three-week extension of time to replead the conspiracy claims.  The Court denied the motion for extension of time.  (MDL 1553 Docket Entry 1485.)

On January 18, 2005, Plaintiffs filed a motion to reconsider the denial of the extension of time, and attached their proposed repleaded conspiracy claims.  As repleaded, the claims allege that 28 Defendants were members of two organizations (the Air Industrial Hygiene Foundation and the Silica Safety Association) that conspired to misrepresent to the public the dangers of silica exposure and to prevent the strengthening of OSHA's regulations on silica exposure, including a proposed ban on the use of silica in abrasive blasting.  (MDL 1553 Docket Entry 1514, Ex. A at 1-9.)

-192-

This Court denied Plaintiffs' motion to reconsider (see Order No. 23), and leaves the decision of whether to accept the belated allegations, as well as whether the new conspiracy allegations state a cognizable claim under applicable state law, to the state courts to decide in the first instance. As discussed below, these decisions are not necessary to the resolution of federal jurisdiction; remand is required even without considering the conspiracy claims.

### ii.  Joinder of Defendants by Each Individual Plaintiff

Defendants also invite the Court to consider separately (i.e., sever) the claims of each individual plaintiff against each individual defendant for purposes of determining jurisdiction. Apparently--it is never spelled out--Defendants propose that each Plaintiff's claims against multiple Defendants will proceed simultaneously in two separate venues: all claims against diverse Defendants will proceed in federal court, while all claims against non-diverse Defendants will proceed in state court.[146]  In their brief, "Defendants recognize that severing down to the level of claims against individual defendants is not the conventional

---

[146]  The alternative, apparently, is for one plaintiff to be forced to maintain separate actions against each defendant he claims caused his alleged illness.  Hence, under this alternative, if a plaintiff claims 20 defendants' products combined to cause his silicosis, he would be forced to prosecute 20 separate actions (some in state court and some in federal court), which ultimately could culminate in 20 separate jury trials.

-193-

response." (Certain Defs.' Br. on Jurisdiction, MDL 03-1553 Docket
Entry 1583 at 24.)  Indeed, Defendants fail to cite a single case
where a federal court took such a step in determining its
jurisdiction after removal.[147]

Returning to the requirements of Rule 20, it is easy to see
why Defendants' suggestion is so unconventional.  According to the
Rule, defendants may be joined together if there is an alleged
claim against the defendants "arising out of the same transaction,
occurrence, or series of transactions or occurrences, and if any
question of law or fact common to all defendants will arise in the
action."  Fed. R. Civ. P. 20(a).  When viewing each Plaintiff's
case in isolation, whether each Plaintiff is injured (e.g., has
silicosis) is a question of fact common to all Defendants being
sued by that Plaintiff.   The various silica exposures which
allegedly caused that Plaintiff's injury is a series of
occurrences, as well as a mixed question of law and fact, common to
all Defendants.  See Jones v. Nastech Pharm., 319 F. Supp. 2d 720,
727-28 (S.D. Miss. 2004) ("Plaintiff['s] claim against her treating
physician and the pharmaceutical Defendants have a common
transaction or occurrence, that is the injury which she allegedly
sustained as a result of ingesting Stadol.  There are common issues

---

[147] To be fair, the impetus for Defendants' unorthodox
suggestion was a comment made by this Court during the December
17, 2005 Status Conference: "Well it could be that I don't have
to sever each Plaintiff from each case, but that I can just look
at it as each Plaintiff having a separate cause of action against
each Defendant for diversity purposes."  (Dec. 17, 2004 Status
Conf. Trans. at 16.)

-194-

of law and fact relating to the cause of these injuries and the extent of these injuries."). As the Judicial Panel on Multidistrict Litigation found (at the urging of Defendants) at the outset of this MDL:

> On the basis of the papers filed and hearing session held, the Panel finds that the actions in this litigation involve common questions of fact.... These actions share questions of fact arising from alleged injuries and/or exposure to respirable silica and plaintiffs' similar allegations that defendants knew or should have known of the danger to persons exposed to silica products and failed to warn, or inadequately warned, of this danger.

In re Silica Prods. Liab. Litig., 280 F. Supp. 2d 1381, 1382-83 (J.P.M.L. 2003); see also In re Norplant Contraceptive Prods. Liab. Litig., 168 F.R.D. 579, 581 (E.D. Tex. 1996) ("[T]he Defendants' liability under theories of negligence, misrepresentation, and fraud arises out of the same series of occurrences wherein Defendants failed to adequately warn Plaintiffs, thus satisfying Rule 20(a). Further, Plaintiffs satisfy the 'common question' prong of Rule 20(a) given that common questions of law or fact exist in Plaintiffs' allegations of negligence, misrepresentation, and fraud arising out of the alleged series of acts and omissions committed by Defendants.").

It is worth noting that in this jurisdictional analysis, the Court need not--and does not--find that the joinder of all Defendants who allegedly caused a Plaintiff's silicosis is proper

pursuant to Rule 20.[148]    Instead, as discussed above, it is

sufficient under the <u>Tapscott</u> analysis for the Court to find that

the joinder does not constitute an "egregious" misjoinder.    <u>Cf.</u>

<u>Tapscott</u>, 77 F.3d at 1360 ("We do not hold that mere misjoinder is

fraudulent joinder, but we do agree with the district court that

Appellants' attempt to join these parties is so egregious as to

constitute fraudulent joinder.").

Of course, those Defendants who have no connection to a

particular Plaintiff (i.e., where the Plaintiff did not use or was

not exposed to the Defendant's product or worksite) should be

disregarded during the jurisdictional analysis.    Thus, in

determining whether complete diversity exists, the Court will focus

upon each Plaintiff's sworn Fact Sheets, wherein each Plaintiff

clarified the factual basis for his or her individual claim,

including listing the precise Defendants against whom that

---

[148]  While the Court has (at Defendants' urging) applied
<u>Federal</u> Rule 20 in the improper joinder analysis, it is worth
noting that the Mississippi Supreme Court's latest decision on
the issue indicates that under <u>Mississippi</u> Rule 20, each
Plaintiff's joinder of the Defendants (or at least different
classes of Defendants) was improper:
> [T]he plaintiffs sued multiple defendants based on
> multiple theories of causation.  These defendants were
> required to defend themselves alongside unrelated
> defendants.  From 3M's perspective, it was the only
> defendant in the suit which did not manufacture or
> distribute a product containing asbestos.  Therefore,
> not only were the plaintiffs' claims lacking in a
> similar transaction or occurrence, but the defendants
> were improperly joined as well pursuant to Miss. R.
> Civ. P. 20(a).
<u>3M Co. v. Johnson</u>, 895 So.2d 151, 158-59 (Miss. 2005).
But even if this Court were applying Mississippi Rule 20,
the Court would not find "egregious" misjoinder.

Plaintiff alleges caused his or her alleged injury.  But prior to
looking at the Fact Sheets to determine if the Defendants have met
their burden of showing that complete diversity exists, the Court
takes  a  detour  to  consider  two  procedural  issues  which--
potentially--complicate this analysis.

### b.    Procedural Issues

The removal statute, 28 U.S.C. § 1446, in conjunction with
relevant caselaw, establish a number of procedural hurdles that a
defendant must clear in order to remove an action to federal court.
While these requirements may be waived, <u>see, e.g.</u>, <u>Ragas v.
Tennessee Gas Pipeline Co.</u>, 136 F.3d 455, 457 (5th Cir. 1998), in
the majority of these cases, Plaintiffs filed a motion to remand
(complaining of, <u>inter alia</u>, procedural defects in the removal)
within 30 days of the notice of removal.  <u>See</u> 28 U.S.C. § 1447(c)
("A motion to remand the case on the basis of any defect other than
lack of subject matter jurisdiction must be made within 30 days
after the filing of the notice of removal....").  Therefore, in
those cases, Defendants were required to obey the proper removal
procedure.  For the purposes of those cases, there are two relevant
procedural hurdles.

First, "in order to comply with the requirements of § 1446,
all served defendants must join in the removal petition filed prior
to the expiration of the removal period." <u>Gillis v. Louisiana</u>, 294
F.3d 755, 759 (5th Cir. 2002) (citing <u>Getty Oil Corp. v. Ins. Co.
of N. Am.</u>, 841 F.2d 1254, 1262 n.9 (5th Cir. 1988)).  This is known

as the "rule of unanimity." <u>See</u> <u>Tedford v. Warner-Lambert Co.</u>, 327
F.3d 423, 428 n.15 (5th Cir. 2003).

The "removal period" is thirty days after receipt of the
complaint by the first-served defendant.[149]    "[A]ll served
defendants must join in the [removal] petition no later than thirty
days from the day on which the first defendant was served." <u>Getty</u>
<u>Oil Corp.</u>, 841 F.2d at 1263.  An attempt to join in the removal
petition outside of this thirty-day window is ineffective. <u>See</u> <u>id.</u>
at 1262-63.

In order to "join" in the removal petition, "there [must] be
'some timely filed written indication from each served defendant,
or from some person or entity purporting to formally act on its
behalf in this respect and to have the authority to do so, that it
has actually consented to such action.'" <u>Gillis</u>, 294 F.3d at 759
(quoting <u>Getty Oil</u>, 841 F.2d at 1262 n.11).  A blanket statement by
the removing defendant(s) that other defendants join (or consent)
in the removal is insufficient to meet this requirement. <u>See</u> <u>Getty</u>
<u>Oil</u>, 841 F.2d at 1262 n.11.  In looking at the removals in this
MDL, it is clear that many Defendants in almost every case failed
to timely join in the removal.

---

    [149]  Section 1446(b) of the removal statute states, in
relevant part:
        The petition for removal of a civil action ... shall be
        filed within thirty days after the receipt by the
        defendant ... of a copy of the initial pleading setting
        forth the claim for relief upon which such action ...
        is based.
28 U.S.C. § 1446(b).

One exception to the rule of unanimity is that there is no requirement that an improperly-joined party consent to the removal. See Jernigan v. Ashland Oil Co., 989 F.2d 812, 815 (5ᵗʰ Cir. 1993) (consent of defendants who have been "fraudulently joined" not needed for removal); Farias v. Bexar County Mental Health Mental Retardation Servs., 925 F.2d 866, 871 (5ᵗʰ Cir. 1991) ("All defendants who are properly joined and served must join in the removal petition and ... failure to do so renders the petition defective.") (emphasis added).[150]

The second requirement at issue is that "[u]nder 28 U.S.C. § 1441(b), even where an action could have been originally brought in federal court, the defendant may not remove the state action to federal court if the defendant is a citizen of the state in which the action was filed." Hartford Accident & Indem. Co. v. Costa Lines Cargo Servs., Inc., 903 F.2d 352, 358 n.6 (5ᵗʰ Cir. 1990); see also Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996) (same).[151] In other words, if a Plaintiff is asserting a claim against a

---

[150]   The Fifth Circuit in Jernigan explained:
        [A]s a general rule, removal requires the consent of
        all co-defendants.  In cases involving alleged improper
        or fraudulent joinder of parties, however, application
        of this requirement to improperly or fraudulently
        joined parties would be nonsensical, as removal in
        those cases is based on the contention that no other
        proper defendant exists.
Jernigan, 989 F.2d at 815.

[151]   The removal statute provides: "Any [diversity] action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b).

properly joined citizen of the state in which the action was
originally brought (in most of these cases, Mississippi), then
removal was procedurally improper.

Therefore, in order to conduct a complete analysis of the
motions to remand, the Court must look not only at whether complete
diversity exists (i.e., the jurisdictional inquiry), but also must
grant any motions to remand timely filed by Plaintiffs who: (1) are
suing a properly-joined Defendant that did not timely join in the
removal petition, and/or (2) are suing a properly-joined Defendant
that is a citizen of the state where the action was originally
filed.

### c.  Analysis

The issue of this Court's subject-matter jurisdiction was
raised within five minutes of the first conference in this MDL and
it has been raised at every subsequent status conference. As set
out above, Defendants bear the burden of showing that removal was
proper. See Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d
720, 723 (5th Cir. 2002). When the removing party alleges improper
joinder, this burden is "heavy". See Smallwood v. Ill. Cent. R.R.
Co., 385 F.3d 568, 574 (5th Cir. 2004) (en banc) ("The party seeking
removal bears a heavy burden of proving that the joinder of the in-
state party was improper."); see also Hart v. Bayer Corp., 199 F.3d
239, 246 (5th Cir. 2000) ("The burden of persuasion placed upon
those who cry 'fraudulent joinder' is indeed a heavy one.")
(quotation omitted).

-200-

In order to allow the removing Defendants an opportunity to discharge this heavy burden, the Court granted the Defendants' request "to pierce the pleadings" and "consider summary judgment-type evidence." Ross v. Citifinancial, Inc., 344 F.3d 458, 462-63 (5th Cir. 2003) ("For fraudulent joinder vel non, it is well established that the district court may 'pierce the pleadings' and consider summary judgment-type evidence.") (citing, inter alia, Travis v. Irby, 326 F.3d 644, 648-49 (5th Cir. 2003)). Jurisdictional discovery (in the form of Plaintiffs' and Defendants' Fact Sheets) commenced in January 2004. (Order No. 4.) Unfettered discovery has been available to Defendants (and Plaintiffs) for many months.[152] When the Court set the schedule for

---

[152] In September 2004, after this MDL had been pending for a year, the Fifth Circuit issued its en banc Smallwood decision. Among other things, the decision states: "We emphasize that any piercing of the pleadings should not entail substantial hearings. Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity." Smallwood, 385 F.3d at 574. At the time the opinion was issued, discovery had been permitted for approximately five months, and continued to be available during and after the briefing process on subject-matter jurisdiction. Indeed, on June 1, 2005, the Court conducted a phone conference on a discovery dispute in this MDL.

Although Smallwood and a host of other cases establish without equivocation that a court's initial inquiry must be determining its own subject-matter jurisdiction, see id. at 576, this Court was also mindful of its role as an MDL transferee court, a role designed "to avoid duplication of discovery, prevent inconsistent or repetitive pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." In re Silica Prods. Liab. Litig., 280 F. Supp. 2d 1381, 1383 (J.P.M.L. 2003). From the outset, the Court ordered the Plaintiffs' and Defendants' Fact Sheets, which were directly related to jurisdiction. But in simultaneously allowing other discovery, the Court almost certainly moved beyond the "sharply tailored" discovery envisioned by Smallwood.

the parties to present their final submissions on the issue of subject-matter jurisdiction, the Court stated that the schedule applied to "[b]riefing (and any designation of evidence)." (Order No. 19 ¶ 2 (emphasis added).)  It should have been clear that if Defendants were seeking to pierce the pleadings and support its removal with evidence, this was the time to do it.

Despite all of the above, the removing Defendants failed to designate any evidence in support of their position that federal subject-matter jurisdiction exists over these cases.  Defendants failed to show that complete diversity exists in any of the MDL cases.  Defendants failed to pierce the pleadings and show that any Defendant was fraudulently joined.  Defendants failed to show that all properly-joined Defendants had timely consented to the removal. Defendants failed to show that no properly-joined Defendant is a citizen of the state where the action was originally filed.  In short, Defendants failed to take any of the steps necessary to meet their burden of showing that federal jurisdiction exists over these cases.

Instead, the sole Defendant that designated evidence with its jurisdictional submission is 3M, who joined the Plaintiffs (and two other Defendants)[153] in moving for remand.   3M attached CD-ROMs

---

[153]  Other than 3M, Defendant ITW Vortec moved for remand on the basis of lack of subject-matter jurisdiction.  (See Clark v. Air Liquide Am. Corp., S.D. Tex. Cause No. 03-376, Docket Entry 293.)  Also, Defendant Bacou-Dalloz Safety, Inc. joined in and adopted 3M's Motion to Remand.  (See MDL 03-1553, Docket Entry 1631.)  In addition, a large number of Defendants did not join in

-202-

containing each of the Plaintiffs' Fact Sheets submitted as of November 20, 2004 (the last date given by the Court for Plaintiffs to supplement their Fact Sheets under Amended Order No. 14).

As discussed above, on January 26, 2004, at the urging of the parties, the Court ordered both Plaintiffs and Defendants to submit Fact Sheets "that can be used to develop the factual basis for the claims of each Plaintiff." (Order No. 4, ¶ 19; Order No. 6.) The Court ordered that "[a]t a minimum, the Plaintiffs must disclose where they believe they were exposed to silica including the date and location, state their particularized claims against each Defendant, provide medical release authorization, and provide IRS release authorization."[154]   (Order No. 4, ¶ 19.)   The Defendants agreed to the form of these Fact Sheets.  (Order No. 6 ¶ 3 ("The parties have agreed to a sworn declaration form that shall by used by Plaintiffs to identify the factual basis of their claims as contemplated by Order 4 Paragraphs 19-20.").)  Subsequently, the Plaintiffs have been ordered to cure deficiencies and refine their

_____

the removals and have not filed anything in support of or in opposition to federal jurisdiction.  Throughout the discussion of subject-matter jurisdiction contained herein, general references to "Defendants" or "the removing Defendants" refers only to those Defendants who actively advocated federal jurisdiction during the final briefing in February and March 2005.

[154]   In addition, the Defendants were required, _inter alia_, to list (and include photos if possible) of "all silica-related products they manufactured or distributed from the year 1930 forward and include the relevant time frame of production/distribution for each product."  (Order No. 4, ¶ 19.) Plaintiffs argued that this information was necessary for them to determine precisely against which Defendants each Plaintiff had a claim.

Fact Sheets and provide additional information. (Order No. 10 ¶ 5; Order No. 12 ¶¶ 12-14; Order No. 14 ¶ 2.) The primary motivating purpose behind these orders was to clarify the particular Defendants against whom each Plaintiff asserts a claim.

After all of these orders, virtually every Plaintiff's verified Fact Sheet states that he or she asserts a claim against at least one Defendant who is a citizen of that Plaintiff's state of residence. Thus, based upon the Fact Sheets, even when deeming every Plaintiff severed from the other Plaintiffs, complete diversity does not exist in most of the thousands of individual Plaintiff's cases.

According to 3M (the only Defendant who reports having thoroughly reviewed every Plaintiff's Fact Sheet), only 71 Plaintiffs might have complete diversity based upon the Fact Sheets: "[I]t appears that there could be 71 Plaintiffs in a total of 5 lawsuits [who are not asserting a claim against a non-diverse Defendant]. Even this number may be too high because it does not account for a Defendant's citizenship based on its principal place of business." (3M Co.'s Br. Regarding Subject Matter Juris., MDL 03-1553 Docket Entry 1585 at 15.) The reason 3M "does not account for a Defendant's citizenship based on its principal place of business," is that in the Plaintiffs' Complaints (which were all filed in state court), only the place of incorporation is alleged. As permitted under state court rules of procedure, see, e.g., Miss.

-204-

R. Civ. P. 10, the Plaintiffs did not allege the state in which any
Defendant has its principal place of business.

By contrast, in federal court, "[f]or diversity jurisdiction,
the party asserting federal jurisdiction must 'distinctly and
affirmatively allege' the citizenship of the parties." Howery v.
Allstate Ins. Co., 243 F.3d 912, 919 (5th Cir. 2001); see also
Stafford v. Mobil Oil Corp., 945 F.2d 803, 804 (5th Cir. 1991).
"For diversity jurisdiction purposes, a corporation is a citizen of
the state in which it was incorporated and the state in which it
has its principal place of business." Stafford, 945 F.2d at 805
(quoting Getty Oil Corp. v. Ins. Co. N. Am., 841 F.2d 1254, 1258
(5th Cir. 1988) (citing 28 U.S.C. § 1332(c)).  As in Stafford,
"[p]laintiffs have stated facts alleging only one of these two
possible states of corporate citizenship with respect to each
defendant, which is not enough to establish diversity
jurisdiction." Stafford, 945 F.2d at 805.  Therefore, the removing
Defendants, as the parties asserting federal jurisdiction, had the
burden of "distinctly and affirmatively" alleging the principal
places of business of each Defendant.  And yet the Defendants did
not even attempt to meet this seemingly minor burden.  So even as
to the 71 Plaintiffs whose Fact Sheets might point to the existence
of complete diversity, because Defendants have failed to meet their
burden, the Court cannot assume that jurisdiction exists.  See
Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th
Cir. 2002) ("Any ambiguities are construed against removal because

-205-

the removal statute should be strictly construed in favor of remand.") (citing <u>Acuna v. Brown & Root, Inc.</u>, 200 F.3d 335, 339 (5th Cir. 2000) ("[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction.")); <u>Howery</u>, 243 F.3d at 916, 921 ("[Federal courts] must presume that a suit lies outside [their] limited jurisdiction...."); <u>Stafford</u>, 945 F.2d at 806 (same).[155]

Tellingly, the removing Defendants fail to acknowledge in their briefs that they bear the burden of establishing federal jurisdiction. Instead, they propose: "Motions for remand would only be possible for those plaintiffs that previously complied with the Court's orders (by properly describing claims against non-diverse defendants) and can meet the additional requirements discussed below in connection with a remand motion." (Certain Defs.' Br. on Jurisdiction, MDL 03-1553 Docket Entry 1583 at 9.) Among the additional requirements that Defendants seek to impose is

---

[155] Under certain circumstances, when the party bearing the burden of establishing jurisdiction initially fails to adequately allege complete diversity, a court may allow that party to amend its allegations. Specifically, "a party shall be allowed to amend its complaint in order to make a complete statement of the basis for federal diversity jurisdiction <u>where diversity jurisdiction was not questioned by the parties and there is no suggestion in the record that it does not in fact exist</u>." <u>Stafford</u>, 945 F.2d at 806 (emphasis added) (citing <u>Leigh v. Nat'l Aeronautics & Space Admin.</u>, 860 F.2d 652, 653 (5th Cir. 1988); 28 U.S.C. § 1653). However, in these cases, jurisdiction has been questioned and there is a suggestion in the record that diversity does not exist. Moreover, Defendants have failed to even request the opportunity to amend any of their jurisdictional submissions (ranging from the notices of removal, which began in 2002, to their final jurisdictional submission in 2005).

allowing each Defendant the option of "tak[ing] the deposition of
the plaintiff [seeking remand], any affiant supporting the motion
[to remand], or any other party with knowledge." (Certain Defs.'
Br. on Jurisdiction, MDL 03-1553 Docket Entry 1583 at 33.)

As discussed above, virtually all (if not all) of the over
9,000 Plaintiffs who submitted Fact Sheets still assert claims
against non-diverse Defendants.  And since Defendants are of the
opinion that the majority of these Plaintiffs were not truthful in
those sworn Fact Sheets, it can be assumed that Defendants would
seek to depose those Plaintiffs in an effort to prove that their
claims against the non-diverse Defendants are not bona fide.  Thus,
using the Defendants' process, it could take two decades to finally
settle the matter of federal subject-matter jurisdiction.[156]

There are two fatal flaws in the Defendants' proposed process
for determining the Court's subject-matter jurisdiction.  First,
Defendants' plan envisions the Plaintiffs bearing a burden in order
to "obtain remand." (Certain Defs.' Br. on Jurisdiction, MDL 03-
1553 Docket Entry 1583 at 25 ("To obtain remand ... a plaintiff
would have to demonstrate that he or she had asserted a bona fide
claim against a non-diverse defendant (or a properly joined
Mississippi defendant) at the time of removal."). (emphasis added))
However, the law is clear that "[i]t is to be presumed that a cause

_____

[156]    As was the case with their proposed case management
plan, Defendants do not posit a timetable for completing the
deposition process.  Instead, it is a process with no apparent
end.

-207-

lies outside [a federal court's] limited jurisdiction ..., and the burden of establishing the contrary rests upon the party asserting jurisdiction." <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994) (citations omitted); <u>see also</u> <u>Manguno</u>, 276 F.3d at 723 ("The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. ...    Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand.") (citing <u>Acuna</u>, 200 F.3d at 339).

Implicit in Defendants' briefing is the idea that the normal burden of proof should be reversed (i.e., that Plaintiffs should be required to affirmatively prove the absence of federal jurisdiction) because Plaintiffs lack credibility due to their submission of "wholly unreliable" diagnoses.    For instance, Defendants state:

> There is absolutely no reason to presumptively credit any plaintiff's assertions in a 'fact sheet' of a claim against a jurisdiction-defeating defendant--non-diverse, Mississippi-resident, or non-consenting--in this case: Plaintiffs have themselves shown (in connection with the diagnosis issue) that their factual assertions in this case are wholly unreliable--indeed fanciful.

(Certain Defs.' Reply Supp. Jurisdiction, MDL 03-1553 Docket Entry 1755 at 2-3.)    Regardless of how understandable the Defendants' suspicions might be, Defendants have pointed to no legal authority indicating that the usual burden of proof in removals can be shifted as a sanction for other improper litigation tactics/assertions.

-208-

Instead, the proper course of action is for the Defendants to ask a court of competent jurisdiction--here the state courts--to issue sanctions for "wholly unreliable" factual assertions. The Mississippi Supreme Court recently indicated that a complaint similar to the ones in these MDL cases "is sanctionable." Harold's Auto Parts, Inc. v. Mangialardi, 889 So.2d 493 (Miss. 2004). Mangialardi arrived to Mississippi's highest court via an interlocutory appeal of a denial of defendants' motion to sever 264 plaintiffs' claims in an asbestos case. The following discussion from the Mangialardi court's opinion is especially relevant to these MDL cases:

> In essence, we are told that 264 plaintiffs were exposed over a 75-year period of time to asbestos products associated with 137 manufacturers in approximately 600 workplaces. We are not told which plaintiff was exposed to which product manufactured by which defendant in which workplace at any particular time. We do not suggest that this lack of basic information is the result of recalcitrance on the part of plaintiffs' counsel; perhaps plaintiffs' counsel has not [been] furnished the information.
> Defendants have strenuously objected to the failure and/or refusal of plaintiffs[] to provide the information. They point out that it is impossible to argue to the trial court that joinder was improper, because they aren't provided basic information about each of the plaintiffs. Curiously, rather than filing a motion for more definite statement, or to dismiss, defendants[] simply seek the information 'as soon as practicable.' The defendants further argue that [Mississippi] Rule [of Civil Procedure] 20 requires the disclosure to be made. The position stated by plaintiffs is that defendant[]s do not need the information right now, since there apparently is a plan to try the cases[] one at a time.
> We find that all have missed the mark. This matter should not be before us because of a failure to comply with Rule 20, but rather because of an abuse of, and failure to comply with, [Mississippi] Rules [of Civil Procedure] 8, 9, 10 and 11. What is referred to as 'core information' and 'disclosure' is basic information which should be known to plaintiffs' counsel

<u>prior</u> to filing the complaint, not information to be developed in discovery or disclosure.  The information should have been included in the complaint.

Complaints should not be filed in matters where plaintiffs intend to find out in discovery whether or not, and against whom, they have a cause of action.  Absent exigent circumstances, plaintiffs' counsel should not file a complaint until sufficient information is obtained, and plaintiffs' counsel believes in good faith that <u>each plaintiff</u> has an appropriate cause of action to assert against a defendant in the jurisdiction where the complaint is to be filed.  To do otherwise is an abuse of the system, and is sanctionable.

<u>Mangialardi</u>, 889 So.2d at 494 (emphasis in original) (citing Miss.

R. Civ. P. 11);[157] <u>cf.</u> <u>Hale v. Harney</u>, 786 F.2d 688, 692 (5th Cir.

---

[157]  Mississippi Rules of Civil Procedure 8, 9, and 10 govern the rules and form of pleading.  Mississippi Rule of Civil Procedure 11 provides in part:

(a) Signature Required.  Every pleading or motion of a party represented by an attorney shall be signed by at least one attorney of record....  The signature of an attorney constitutes a certificate that the attorney has read the pleading or motion; that to the best of the attorney's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. ...
(b) Sanctions.  If a pleading or motion is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading or motion had not been served.  For wilful violation of this rule an attorney may be subjected to appropriate disciplinary action. ...  If any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay, the court may order such a party, or his attorney, or both, to pay to the opposing party or parties the reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorneys' fees.
Miss. R. Civ. P. 11.
In addition to referencing Rule 11 sanctions, the <u>Mangialardi</u> court decried the plaintiffs' failure to meet the requirements of Mississippi's joinder rule (Mississippi Rule 20), and then stated:
[Plaintiffs] don't appear to know when they were exposed [to asbestos], where they were exposed, by whom

1986) ("The day is past when our notice pleading practice--
circumscribed only by a requirement of subjective good faith on the
pleader's part--plus liberal discovery rules invited the federal
practitioner to file suit first and find out later whether he had
a case or not.") (affirming imposition of federal Rule 11
sanctions).   In short, it is clear that Mississippi trial courts
have the authority to adequately address abuses of the pleading
rules.   See Mangialardi, 889 So.2d at 494-96; see also 3M v.
Hinton, --- So.2d ----, 2005 WL 374460, at *1-*2 (Miss. Feb. 17,
2005) (same).

    A second flaw in the Defendants' jurisdictional proposal is
that it seems to envision a never-ending process for determining
jurisdiction.   Defendants may believe that over time, Plaintiffs
will crumble and admit that they do not have claims against any
non-diverse Defendants, but this would be pure speculation.   The
Defendants exhibited the same belief in the effect of the Fact
Sheets (the form and content of which was agreed to by the
parties).   Defendants now are unhappy that the jurisdictional
discovery failed to unveil the situation that they continue to
believe exists.   But if further substantive discovery and
ultimately trial proves that Plaintiffs lied in the sworn Fact

_____

        they were exposed, or even if they were exposed.
        Presumably, when they learn this information,
        plaintiffs' counsel intends to dismiss those who should
        not have been joined.   This is a perversion of the
        judicial system unknown prior to the filing of mass-
        tort cases.
Mangialardi, 889 So.2d at 495.

-211-

Sheets, and/or violated state pleading rules or court orders, then that behavior would be sanctionable by a court of competent jurisdiction.  Regardless of whether Defendants' suspicions are correct, it should be in all litigants' best interests to have these cases in a court with jurisdiction as soon as possible, so that substantive discovery may be completed, potentially dispositive motions may be considered, and the truth might emerge.

In Smallwood, the Fifth Circuit "emphasize[d] that any piercing of the pleadings should not entail substantial hearings." Smallwood, 385 F.3d at 574.  The court continued: "Indeed, the inability to make the requisite decision [as to jurisdiction] in a summary manner itself points to an inability of the removing party to carry its burden." Id.  Presumably the term, "summary manner," is a relative one: what would be considered "summary" in a 10,000-plaintiff, 100-case MDL should be different than what would be considered "summary" in a single-plaintiff, two-defendant case such as Smallwood.  But by any definition, a year and a half of proceedings must test the outer limits of the term, "summary manner."  And for these proceedings to be considered merely the beginning of a significantly more substantial process stretches the term well beyond its breaking point.  Moreover, as a practical matter, there now are pending motions to dismiss and motions for summary judgment, in addition to the Daubert motions and sanctions motions discussed elsewhere in this Order. If any of these motions have merit, then the Defendants deserve to have them considered

-212-

sooner rather than later by a court confident in its jurisdiction. Likewise, if any of the Plaintiffs' claims have merit, then the Plaintiffs deserve to have their claims adjudicated sooner rather than later.    In short, the Court rejects the Defendants' proposal to allow these proceedings to spiral toward infinity.

For the reasons discussed above, the claims of every Plaintiff who submitted a Fact Sheet in the "Appendix A" cases must be remanded for lack of subject-matter jurisdiction.    But there remains the issue of those Plaintiffs who did not submit a Fact Sheet in the "Appendix A" cases.  Defendants have listed more than 1,000 Plaintiffs who, Defendants contend, failed to submit any Fact Sheets whatsoever.  If, in the face of three separate written Orders, these Plaintiffs have indeed failed to submit a Fact Sheet, then this Court would not hesitate to dismiss the claims of those Plaintiffs without--or with--prejudice.[158]  See Bluitt v. Arco Chem. Co., 777 F.2d 188, 190-91 (5th Cir. 1985) ("[W]e do not find that the district court abused its discretion in dismissing plaintiff's case.  Three times the court ordered plaintiff to more fully answer defendant's interrogatories.  Neither plaintiff nor plaintiff's attorney argued that they were confused by the court's orders or that they were unable, for whatever reason, to comply fully with

---

[158]  Although this issue has not been fully briefed, the parties have noted in passing that, in the absence of a tolling agreement, the dismissal of these claims without prejudice would have the effect of a dismissal with prejudice due to the running of the statute of limitations.  The Court makes no findings as to this issue.

the court's requests."); see also Larson v. Scott, 157 F.3d 1030
(5th Cir. 1998) (upholding district court's dismissal without
prejudice for failure to prosecute where magistrate explicitly
warned plaintiff that failure to comply with court order might so
result and plaintiff was given four months to comply); Truck
Treads, Inc. v. Armstrong Rubber Co., 818 F.2d 427 (5th Cir. 1987)
(upholding dismissal with prejudice where counsel acted with bad
faith and contumacious conduct in failing to respond to court's
order to comply with discovery requests); Kabbe v. Rotan Mosle,
Inc., 752 F.2d 1083 (5th Cir. 1985) (upholding dismissal with
prejudice where plaintiff received notice of deposition on three
occasions and failed to appear).    However, in the absence of
subject-matter jurisdiction, this arrow is not in the Court's
quiver.[159]    See U.S. Catholic Conference v. Abortion Rights
Mobilization, Inc., 487 U.S. 72, 80 (1988) (holding that civil
contempt sanction for failure to comply with district court order
must fail if district court lacks subject-matter jurisdiction);
Hernandez v. Conriv Realty Assoc., 182 F.3d 121, 123 (2d Cir. 1999)
("[W]here a court lacks subject matter jurisdiction, it also lacks
the power to dismiss with prejudice.    It is true that such an
order, if imposed as a procedural sanction, does not involve an
assessment of the merits of the case.    Nevertheless, we believe

---

[159]  This result might be different if the absence of the
Plaintiffs who failed to submit a Fact Sheet would result in the
Court having subject-matter jurisdiction over any of the other
Plaintiffs' claims.  However, there is no suggestion that this is
the case.