# EXHIBIT P

2 of 7 DOCUMENTS

Copyright 2005 The New York Times Company
The New York Times

September 15, 2005 Thursday
Late Edition - Final

**SECTION:** Section C; Column 6; Business/Financial Desk; Pg. 1

**LENGTH:** 1158 words

**HEADLINE:** Asbestos Fund Bars 9 Doctors

**BYLINE:** By JONATHAN D. GLATER

**BODY:**

One of the oldest and largest trusts set up to compensate victims of asbestos exposure has barred payments to claimants who rely on reports by nine doctors and three X-ray screening companies.

The named doctors are responsible for tens of thousands of claims submitted to the trust, which has paid out $3.3 billion to resolve 655,096 claims since it was created in 1988. The move by the Manville Personal Injury Settlement Trust is a response to growing concern that some of the claims it receives are not valid and may even be fraudulent.

Lawyers for Claims Resolution Management Corporation, a wholly owned subsidiary of the Manville Trust, also said that the company had received a subpoena from federal prosecutors in Manhattan who are looking into asbestos claims. The subpoena is an indication that the government's investigation is widening.

And the trust's decision could affect current bankruptcy proceedings of companies coping with asbestos claims and, potentially, legislation mired in Congress that would set up a massive compensation fund for victims, lawyers said.

"It is further evidence that the tide is turning on these doctors," said Jane Thorpe, a lawyer in the Atlanta office of Alston & Bird who has defended corporations in mass tort cases of various types, including asbestos, for more than 20 years. "Things like this letter are going to become more commonplace as people are really going to examine the underpinnings of the expert testimony that has been proffered for years in asbestos litigation."

Jodye Marvin, general counsel for Claims Resolution Management, said the claims supported by documents from the nine doctors "simply were not reliable." She added that by publicizing their names, she hoped both to deter other doctors from assisting in filing questionable claims and to prevent payment of any pending claims based on these doctors' work.

"I don't think most doctors want to have their names associated with lists of suspended doctors or facilities," Ms. Marvin said. The Manville Trust posted the memorandum listing the doctors on its Web site, www.claimsres.com, on Monday.

One doctor, Ray Harron of Bridgeport, W.Va., submitted documents to the Manville Trust supporting 53,724 of the 691,910 claims that the trust has received -- nearly 8 percent -- more than any other doctor, according to the trust.

"I have no comment," Dr. Harron, reached by telephone yesterday, said when asked about his response to being included on the list. "But it doesn't bother me at all. I'm basically retired so I don't care."

Barry Levy, a doctor in Sherborn, Mass., who is on the list and who serves as a consultant on occupational and environmental health matters, said the list was "reactionary, knee-jerk and un-American" and that several investigations of asbestos litigation should be allowed to run their course. The trust's decision to make the list, he said, "is inappropriate and it unfairly damages the claims of the individual claimants as well as the reputations of the physicians involved."

The New York Times September 15, 2005 Thursday

Page 2

Another doctor, Kevin Cooper, a professor of medicine at Virginia Commonwealth University in Richmond, Va., was more puzzled than angry by his inclusion on the list. "Nobody likes to be on a blacklist, even if you don't know what you're blacklisted for," he said. "It makes me more curious than worried."

Luke Dove, a lawyer representing one of the three screening companies, N&M Inc., said he believed his client was no longer involved in the business of screening potential applicants.

A spokeswoman for the United States attorney's office in Manhattan, which is conducting the investigation into asbestos litigation, declined to comment on the matter. Several of the other doctors named on the Manville Trust list did not return messages left for them. Efforts to reach the two other screening companies on the list were unsuccessful.

The vast majority of the claims filed with the Manville Trust, which is a bellwether for other similar compensation vehicles, are submitted by people with no current malignancy -- that is, people who are not yet demonstrably sick. Such claims are worth thousands of dollars each, according to the trust.

The move by the trust will probably affect fewer than 2,000 current claimants, Ms. Marvin said. This is not the first time that the trust has created a blacklist, she added, although it is the longest such list. The trust, which has paid billions of dollars for claims, is running so low on funds that it now offers just 5 cents for every dollar that a claimant is due under a schedule gauging the severity of disease.

The trust currently has no plans to try to recover money already paid to claims supported by documentation from the listed doctors, Ms. Marvin said.

The creation of the list by the Manville Trust appears to be another aftershock from an unusual hearing in federal court in Corpus Christi, Tex., in February. That proceeding dealt with claims by people who said they were injured by exposure to another material that can cause respiratory disease, silica, which is used in making glass, paint, ceramics and other materials. The Manville Trust memorandum that includes the list of doctors cites evidence developed in that litigation.

In the Corpus Christi proceeding, several doctors testified that they diagnosed silicosis in patients they had never met or interviewed. Some of the same doctors conducting separate examinations of the same claimants found only silicosis in one examination and only asbestos-related diseases in the other. That is not an impossible sequence of events, but it was considered unlikely that both illnesses in the same patient would not have been noted in one examination. Some doctors had little training in how to interpret X-rays to find signs of silicosis, which affects the lungs, and they reached their conclusions after spending just minutes looking at an X-ray. Some doctors backed away from their conclusions. Dr. Harron interrupted his testimony to ask for a lawyer.

Defense lawyers said the Manville Trust list was evidence that lawmakers should address the problem of asbestos claims. "It's been such a massive problem for so many years that a legislative solution would be a good one," Ms. Thorpe said.

But lawyers representing claimants who are sick said that the silica litigation in Corpus Christi and all its results were signs that the courts were capable of handling claims, even questionable claims, and that legislation was not necessary.

"This proves the exact opposite," said David McClain, a lawyer at Kazan, McClain, Abrams, Fernandez, Lyons & Farrise in Oakland, Calif., adding that he worried that legislation would slow payments to asbestos victims with little time left to live. "The courts are dealing with any problem of screening doctors directly. The Manville Trust has taken steps to look at whether they see any doctors they think are suspect."

**URL:** http://www.nytimes.com

**LOAD-DATE:** September 15, 2005

1 of 27 DOCUMENTS

Copyright 2005 The New York Times Company
The New York Times

July 20, 2005 Wednesday
Correction Appended
Late Edition - Final

**SECTION:** Section C; Column 1; Business/Financial Desk; Pg. 1

**LENGTH:** 1121 words

**HEADLINE:** Lawyers Challenged On Asbestos

**BYLINE:** By JONATHAN D. GLATER

**BODY:**

Plaintiffs' lawyers, long accustomed to public criticism and lawmakers' wrath, now face a new and more dangerous adversary in federal prosecutors.

The latest evidence that the government may be increasingly willing to pursue these lawyers comes in the bankruptcy of a company overwhelmed by asbestos claims. Recently filed court documents show that federal prosecutors in Manhattan may have begun to investigate the conduct of three law firms.

The documents -- which surfaced in the bankruptcy case of G-1 Holdings, formerly the GAF Corporation, a manufacturer of roofing material -- show that lawyers for G-1 have met with prosecutors from the United States attorney's office in Manhattan in recent months. The documents also show that the company's lawyers have turned over records of extensive interviews with former employees of the three plaintiffs' firms in which some employees described coaching potential claimants and noted efforts to influence doctors' diagnoses.

The investigation is potentially explosive because asbestos litigation has been a hugely costly problem for companies and an almost inconceivably profitable business for plaintiffs' lawyers. About 730,000 people have filed claims for asbestos-related injuries, costing a total of $70 billion as of 2002, according to the RAND Corporation, which estimates that a little less than a third of the total went to plaintiffs' lawyers. And since 1976, asbestos liability has contributed to the bankruptcy of more than 70 companies, including Bethlehem Steel, Owens Corning and W.R. Grace.

"Our system of justice depends on lawyers processing cases and making representations that are based on their sound judgment about the facts," said Stephen P. Younger, a lawyer at Patterson Belknap Webb & Tyler in New York. "As a result, if lawyers are charged with inflating or falsifying claims, it is a bad day for the legal profession."

The current criminal investigation is the latest example of a new willingness by prosecutors to look into the conduct of plaintiffs' lawyers. Last month, the United States attorney's office in Los Angeles announced the first indictments related to a three-year-old investigation of Milberg Weiss Bershad & Schulman, a law firm known for its frequent shareholder class-action lawsuits.

The interviews of former employees were conducted by investigators from Kroll, which was retained by G-1 to gather evidence in its three-year-old civil lawsuit against three plaintiffs' law firms: Baron & Budd of Dallas; Ness, Motley, Loadholt, Richardson & Poole of Mount Pleasant, S.C. (a law firm in the process of disbanding); and Weitz & Luxenberg of New York.

Last month, Kroll investigators, after receiving a subpoena from prosecutors, turned over their findings; the subpoena suggests that prosecutors are interested in the asbestos claims.

Lawyers say at least one insurance company has also received a subpoena.

The New York Times July 20, 2005 Wednesday Correction Appended

A spokeswoman for the United States attorney's office declined to comment on the matter, as did a spokeswoman for Weitz & Luxenberg.

Steven Storch, a New York lawyer representing Ness, Motley, Loadholt, Richardson & Poole, said, "We would've expected that if there were anything of any interest, we would've heard about it during the course of civil litigation, and we didn't hear anything."

Frederick M. Baron, of Baron & Budd, said that he knew documents had been provided to the United States attorney's office, but that the same documents had not proved persuasive in the civil case by G-1 against the firm. "We have received no information that the U.S. attorney's office has done anything other than accept documents that the lawyers from G-1 have asked them to."

Mr. Baron said the judge in the civil case had reviewed the documents and not found them credible. "The Kroll affidavits are bogus in the extreme," he said.

G-1 was driven to seek Chapter 11 protection in 2001 as a result of some 150,000 asbestos claims. The court filings, in which lawyers describe the activities that generated their bills, indicate that lawyers for G-1 have spoken or met with assistant United States attorneys several times in recent months.

The United States attorney's office in Manhattan is also pursuing an investigation into thousands of claims filed on behalf of people who said they were injured by exposure to silica, another dangerous material. Some of the same law firms that brought those claims also brought asbestos claims, some of the same doctors who diagnosed silica injury in claimants also diagnosed asbestos injury in claimants -- and many of the same people claiming they were hurt by silica previously claimed they were harmed by asbestos.

The criminal investigation could have broad implications for the civil justice system that compensates victims of personal injuries. If it proceeds to an actual case, it could also force some lawyers who file what are known as mass tort claims to change their tactics.

And defense lawyers, who have often been reluctant to take on plaintiffs' lawyers armed with thousands of claims in open legal battle, could be emboldened.

The investigation, raising the specter of fraud, will almost certainly be seized on by advocates of changes to the nation's civil justice system. Lawyers who represent people who are already sick as a result of asbestos exposure said they worried that any such changes might make it harder for legitimate asbestos victims to recover damages they deserve.

"They're just going to try to manipulate any investigation and try to use it to take away the rights of all asbestos victims," said David McClain, whose law firm, Kazan, McClain, Abrams, Fernandez, Lyons & Farrise, represents people suffering mesothelioma, a cancer caused by asbestos exposure.

The spreading investigation could unleash a new wave of litigation over claims that were already paid. If many claims are found to be false, people who are genuinely sick and who recovered less money than they might have in the absence of those claims could sue the firms that filed them.

A criminal investigation could provide potent ammunition to litigators like Irving Cohen, a lawyer at Cohen Pope in New York who has filed objections to asbestos settlements in various corporate bankruptcies on the ground that they unfairly discriminate against people who are currently sick as a result of exposure to asbestos.

"It can't give anything but momentum to what we've been doing," Mr. Cohen said. "The implication of a criminal investigation is that perhaps some wrongdoing was occurring and if that were to be the case, it would certainly augment the civil remedy. Depending on what kind of evidence that they can obtain, it is potentially very big."

**URL:** http://www.nytimes.com

**CORRECTION-DATE:** July 25, 2005

**CORRECTION:**

The New York Times July 20, 2005 Wednesday Correction Appended

An article in Business Day on Wednesday about a criminal investigation into the conduct of three law firms involved in asbestos litigation mischaracterized the allegations in civil court filings against two firms, Weitz & Luxenberg, and Ness, Motley, Loadholt, Richardson & Poole.

While the filings discussed other issues involving the two firms, they did not implicate employees of the two firms in the coaching of potential claimants or efforts to influence doctors' diagnoses.

**LOAD-DATE:** July 20, 2005