# EXHIBIT R

US District Court - Delaware
In Re Federal Mogul - Chapter 11

June 1, 2005
William Hanlon, Esquire

Page 1

1    UNITED STATES DISTRICT COURT
     FOR THE DISTRICT OF DELAWARE
2
     ---------------------------------------------
3
     In re:
4                        Chapter 11
     FEDERAL MOGUL GLOBAL,
5    INC., et al.,            Jointly
                          Administered
6         Debtors.
7
8         Case No. 01-10578(RTL)
9
     ---------------------------------------------
10
11
12   CONFIDENTIAL
13
14
15   DEPOSITION OF:  William R. Hanlon, Esquire
16   DATE:           June 1, 2005
17   LOCATION:       Washington, DC
18   LEAD:           Weil, Gotshal & Manges
19   REPORTER:       Susan Ashe, RMR, CRR
20
21   This deposition transcript and exhibits
     thereto contain confidential materials subject
22   to the parties' stipulated protective order.
23
24   FINAL COPY
25   JANE ROSE REPORTING 1-800-825-3341

US District Court - Delaware
In Re Federal Mogul - Chapter 11

June 1, 2005
William Hanlon, Esquire

Page 2

1   ATTORNEYS FOR FUTURES REPRESENTATIVE, ERIC
    GREEN:  (Via Telephone)

2

3       Maribeth Minella, Esquire

4       YOUNG CONAWAY STARGATT & TAYLOR, LLP
        P.O. Box 391
        The Brandywine Building
5       1000 West Street, 17th Floor
        Wilmington, Delaware  19801

6

7       PHONE:  302-576-3317

8

9

10

11  ATTORNEYS FOR THE OFFICIAL COMMITTEE OF THE
    ASBESTOS PROPERTY DAMAGE CLAIMANTS and THE
    WITNESS:

12

13      Peter M. Friedman, Esquire
        Kristin King Brown, Esquire
14      WEIL, GOTSHAL & MANGES LLP
        1501 K Street, N.W., Suite 100
15      Washington, D.C.  20005
16      PHONE:  202-682-7195

17

18          - and -

19  LOCAL COUNSEL FOR THE OFFICIAL COMMITTEE OF THE
    ASBESTOS PROPERTY DAMAGE CLAIMANTS: (Via
20  Telephone)
21      Theodore J. Tacconelli, Esquire
22      FERRY, JOSEPH & PEARCE, P.A.
        824 Market Street, Suite 904
23      P.O. Box 1351
        Wilmington, Delaware  19899

24

        PHONE:  302-575-1555

25

FINAL
CONFIDENTIAL

JANE ROSE REPORTING
1-800-825-3341   janerose@janerose.net

US District Court - Delaware
In Re Federal Mogul - Chapter 11

June 1, 2005
William Hanlon, Esquire

Page 3

1    ATTORNEYS FOR THE OFFICIAL COMMITTEE OF INSURED
     CREDITORS:  (Via Telephone)
2
          Arthur Ruegger, Esquire
3
          SONNENSCHEIN NATH & ROSENTHAL LLP
4         1221 Avenue of the Americas
          New York, NY  10020
5
          PHONE:  212-768-6881
6
7
8
9
10   ATTORNEYS FOR THE ASBESTOS CLAIMANTS COMMITTEE:

11        Nathan D. Finch, Esquire

12        CAPLIN & DRYSDALE, CHARTERED
          One Thomas Circle, N.W.
13        Washington, D.C.  20005

14        PHONE:  202-862-7801
15
16
17   ATTORNEYS FOR THE EQUITY COMMITTEE:

18        Robert V. Shannon, Esquire

19        BELL, BOYD & LLOYD LLC
20        70 West Madison Street, Suite 3300
          Chicago, Illinois  60602-4207
21
          PHONE:  312-372-1121
22
23
24
25

FINAL
CONFIDENTIAL

JANE ROSE REPORTING
1-800-825-3341    janerose@janerose.net

US District Court - Delaware
In Re Federal Mogul - Chapter 11

June 1, 2005
William Hanlon, Esquire

Page 4

1    ATTORNEYS FOR TRAVELERS INDEMNITY COMPANY AND
     CERTAIN AFFILIATES and TRAVELERS CASUALTY AND
2    SURETY COMPANY f/k/a THE AETNA CASUALTY AND
     SURETY COMPANY:  (Via telephone)
3
         Kate Kotsaftis Simon, Esquire
4
         BINGHAM McCUTCHEN LLP
5        One State Street
         Hartford, Connecticut  06103
6
         PHONE:  860-240-2835
7
8
9
10   ALSO PRESENT:
11
12
     ATTORNEYS FOR THE CENTER FOR CLAIMS RESOLUTION,
13   INC., AND THE WITNESS:
14       Richard M. Wyner, Esquire
15       GOODWIN PROCTER LLP
         901 New York Avenue, N.W.
16       Washington, D.C.  20001
17       TELEPHONE:  202-346-4000
18
19
20
     ATTORNEYS FOR FEDERAL MOGUL CORPORATION, as
21   Observer:  (Via Telephone)
22       Richard Seegman, Esquire
23       SIDLEY AUSTIN BROWN & WOOD
         555 West Fifth Street
24       Suite 4000
         Los Angeles, California  90013
25

FINAL
CONFIDENTIAL

JANE ROSE REPORTING
1-800-825-3341    janerose@janerose.net

US District Court - Delaware
In Re Federal Mogul - Chapter 11

June 1, 2005
William Hanlon, Esquire

Page 5

```
1        T A B L E   O F   C O N T E N T S
2
3     WITNESS
4
      WILLIAM R. HANLON, ESQUIRE
5
6     EXAMINATION                    PAGE
7
      By: Mr. Friedman          7, 163
8
      By: Mr. Finch             108
9
10           EXHIBITS
11
      Hanlon Exhibit 1..................Page 11
12    Producer Agreement.
      Bates Nos. CCRFM000001 through -049.
13
      Hanlon Exhibit 2..................Page 92
14    CCR Settlement Agreement.
      Bates Nos. CCRFM000269 through -300.
15
      Hanlon Exhibit 3..................Page 102
16    CCR Settlement Agreement - Future Plaintiffs.
      Bates Nos. CCRFM000380 through -403.
17
      Hanlon Exhibit 4..................Page 121
18    Summary of Billed Shares under 1998-2001
      Settlements.
19    Bates Nos. CCFRMD-1 and -2.
20    Hanlon Exhibit 5..................Page 155
      Settlement Agreement Between CCR and Perry
21    Weitz.
      Bates Nos. CCFRM001130 through -150.
22
      Hanlon Exhibit 6..................Page 155
23    Processing & Verification Procedures Manual.
      Bates Nos. CCRFM000050 through -229.
24
      Hanlon Exhibit 7..................Page 166
25    CCR Settlement Agreement - Present Claims.
```

FINAL
CONFIDENTIAL

JANE ROSE REPORTING
1-800-825-3341   janerose@janerose.net

US District Court - Delaware
In Re Federal Mogul - Chapter 11

June 1, 2005
William Hanlon, Esquire

Page 6

1           DEPOSITION SUPPORT INDEX

2

3    INSTRUCT THE WITNESS:

4    PAGES:  146, 150, 154.

5

6

7    REQUESTS FOR DOCUMENTS OR INFORMATION:

8    PAGES:  None

9

10

11   STIPULATIONS AND/OR STATEMENTS:

12   PAGES:  176.

13

14

15   MARKED QUESTIONS:

16   PAGES:  None

17

18

19   MOTIONS TO STRIKE:

20   PAGES:  None

21

22

23

24

25

FINAL
CONFIDENTIAL

JANE ROSE REPORTING
1-800-825-3341    janerose@janerose.net

US District Court - Delaware

June 1, 2005

In Re Federal Mogul - Chapter 11

William Hanlon, Esquire

Page 7

```
 1            P R O C E E D I N G S
 2    Whereupon,
 3            WILLIAM R. HANLON, ESQUIRE,
 4    the Witness, called for examination, having been
 5    first duly sworn according to law, was examined
 6    and testified as follows:
 7        EXAMINATION BY COUNSEL FOR THE OFFICIAL
 8      COMMITTEE OF THE ASBESTOS PROPERTY DAMAGE
 9              CLAIMANTS:
10    BY MR. FRIEDMAN:
11        Q    Good morning, Mr. Hanlon.
12        A    Good morning.
13        Q    My name is Peter Friedman.
14            I'm appearing today on behalf
15    of the Official Property Damage Committee in the
16    Federal Mogul Chapter 11 cases; and I'm from
17    Weil, Gotshal.
18            Mr. Hanlon, can you just state
19    your formal name for the record, your full name.
20        A    William R. Hanlon.
21            MR. FINCH:  Peter, before we
22    get too much further, I want to put
23    something on the record.
24            Basically, Mr. Friedman and I
25    have agreed to divide the time in this
```

FINAL
CONFIDENTIAL

JANE ROSE REPORTING
1-800-825-3341   janerose@janerose.net

US District Court - Delaware

June 1, 2005

In Re Federal Mogul - Chapter 11

William Hanlon, Esquire

Page 8

1      deposition on a two-thirds/one-third

2      basis -- meaning, he has two-thirds of

3      however much time you have here and I get

4      a third.

5              And I understand you're going

6      to get up and leave at 2:30; correct?

7              THE WITNESS:  That's correct.

8              MR. FINCH:  Okay.  So, do you

9      want to pick a stop time now or...?

10             I guess that is

11     four-and-a-half -- no, five-and-a-half

12     hours from now.

13             So on a two-third/one-third

14     basis -- if you were to stop at 12:30,

15     that would give me enough time.

16             MR. FRIEDMAN:  Agreed.

17             MR. WYNER:  The other thing I

18     just want to put on the record is that the

19     CCR designates this transcript as

20     "Confidential" pursuant to the

21     confidentiality order.

22             So it should have the word

23     "Confidential" placed on the front page of

24     the transcript, please.

25     BY MR. FRIEDMAN:

FINAL

CONFIDENTIAL

US District Court - Delaware
In Re Federal Mogul - Chapter 11

June 1, 2005
William Hanlon, Esquire

Page 9

1       Q     Mr. Hanlon, could you tell me what
2   your current occupation is?
3       A     I'm an attorney.
4       Q     And where do you practice?
5       A     Here at Goodwin Procter.
6       Q     Have you, in your past experience as
7   an attorney, represented the Center for Claims
8   Resolution?
9       A     I have and I still do.
10      Q     Can you tell me when you first began
11  to represent the CCR?
12      A     Personally? or my law firm?
13      Q     Your law firm.
14      A     At its inception in 1988.
15      Q     And you personally?
16      A     I think I began working for the CCR
17  sometime in 1989.
18      Q     And what services did you provide
19  for the CCR?
20      A     It's a wide range of service.
21            We initially were retained,
22  pursuant to the terms of the producer agreement,
23  as CCR's special counsel.
24            It's a designated term under
25  the agreement.

FINAL
CONFIDENTIAL

US District Court - Delaware
In Re Federal Mogul - Chapter 11

June 1, 2005
William Hanlon, Esquire

Page 10

1        And special counsel was
2     primarily retained to assist the members in
3     connection with what were called the "producer
4     shares."  But over the years, our role grew in
5     many ways.
6            We served as outside counsel
7     to the board of directors and to the Center's
8     management.
9            We also became involved in
10    various pieces of litigation and in various
11    settlement negotiations, among other things.
12           It was a very wide-ranging and
13    continues to be a wide-ranging representation.
14        MR. FRIEDMAN:  I'd like to
15    mark this as Exhibit 1, Hanlon Exhibit 1.
16        And I note, this document was
17    not noted – it was not designated as
18    "Confidential."
19        MR. WYNER:  That's correct.
20        MR. RUEGGER:  I'm sorry to
21    interrupt, but the transmission from the
22    deposition is breaking up quite a bit.
23        MR. FRIEDMAN:  I'll speak
24    louder.
25        MR. RUEGGER:  It's difficult

FINAL
CONFIDENTIAL

JANE ROSE REPORTING
1-800-825-3341   janerose@janerose.net

US District Court - Delaware                    June 1, 2005
In Re Federal Mogul - Chapter 11            William Hanlon, Esquire

Page 11

1       to hear everybody.
2               Is there any way to make the
3       microphone a little closer to the
4       speakers?
5               MS. BROWN:  We're putting it
6       closer right now.
7               MR. SEEGMAN:  This is Rick
8       Seegman.  I've got the same problem.
9               MR. FRIEDMAN:  I'll speak
10      louder.
11              MR. WYNER:  Can you hear us
12      now?
13              MR. FRIEDMAN:  Is that better?
14              MR. SEEGMAN:  That's clearer,
15      yes.
16              MR. FRIEDMAN:  Okay.
17              (Whereupon, Hanlon Deposition
18      Exhibit No. 1 was marked for
19      identification.)
20      BY MR. FRIEDMAN:
21      Q    Mr. Hanlon, a moment ago you
22      mentioned the, I believe, "producer agreement."
23              You have before you
24      CCRFM000001 through -49.
25              Do you recognize this as the

FINAL                          JANE ROSE REPORTING
CONFIDENTIAL              1-800-825-3341    janerose@janerose.net

US District Court - Delaware                    June 1, 2005
In Re Federal Mogul - Chapter 11        William Hanlon, Esquire

Page 12

1     producer agreement?
2         A    As a version of the producer
3     agreement.
4             It was amended several times
5     over the years.
6         Q    And this amendment was -- this is
7     adopted as of February 1, 1994?
8         A    Effective as of that date -- yes,
9     that's what it says.
10        Q    Were there subsequent amendments to
11    this document?
12        A    Yes.
13        Q    Do you know when there were
14    subsequent amendments?
15        A    I'm not sure I can recall all of
16    them; but certainly there were amendments after
17    this, in either 2000 or 2001:
18            one to provide that the Center
19    would no longer settle cases, collectively, on
20    behalf of all 20 members;
21            and then subsequently to deal
22    with the transition of the CCR from an
23    organization that handled all cases on behalf of
24    all the members to an organization that would
25    simply continue to handle claims that had been

FINAL                          JANE ROSE REPORTING
CONFIDENTIAL              1-800-825-3341    janerose@janerose.net

US District Court - Delaware
In Re Federal Mogul - Chapter 11

June 1, 2005
William Hanlon, Esquire

Page 13

1    settled on behalf of the members, collectively,
2    through -- I believe it was February 1, 2001.
3           But, there were multiple
4    amendments over the years.
5      Q    Mr. Hanlon, would you say that you
6    spent a substantial portion of your time working
7    on the CCR-related matters?
8      A    Yes.
9      Q    Did you ever have an official title
10   in connection with the CCR?
11     A    Apart from "special counsel," no.
12     Q    "Shea & Gardner" is the predecessor
13   firm that you were affiliated prior to your
14   current employer?
15     A    Yes.  Shea & Gardner combined with
16   Goodwin Procter on October 1st last year.
17     Q    Did Shea & Gardner draft the
18   original producer agreement?
19     A    I believe.
20          I was not a party to it; but I
21   understand that we were involved in the drafting
22   of the initial agreement, although primarily
23   with what is referred to as "Attachment A," not
24   the body of the agreement.
25     Q    Is "Attachment A" --

FINAL
CONFIDENTIAL

JANE ROSE REPORTING
1-800-825-3341   janerose@janerose.net

US District Court - Delaware                    June 1, 2005
In Re Federal Mogul - Chapter 11          William Hanlon, Esquire

Page 14

1            Well, can you describe what
2    "Attachment A" is?
3        A    All right.  "Attachment A" is the
4    portion of the agreement that basically set out,
5    initially, how the producer shares were to be
6    allocated and how they were to be adjusted.
7        Q    And the "producer shares," would
8    that include the shares of liability that an
9    individual member CCR would pay in settlement of
10   a particular case or a group of cases?
11       A    Yes, effectively.
12       Q    To the extent you remember, do you
13   recall who the original founding members of the
14   CCR were?
15       A    Yes.
16       Q    Can you tell me who, the ones you
17   recall?
18       A    Sure.  GAF Corporation; Armstrong
19   World Industries; Turner & Newall; U.S. Gypsum;
20   CertainTeed Corporation; Dana Corporation; Union
21   Carbide; Amchem Products, which was a subsidiary
22   of Union Carbide; I.U. North America, or
23   "I.U.N.A."; Nosroc Corporation; Maremont
24   Corporation; North Brothers, which was a
25   division of National Service Industries; C.E.

FINAL                         JANE ROSE REPORTING
CONFIDENTIAL            1-800-825-3341   janerose@janerose.net

US District Court - Delaware                    June 1, 2005
In Re Federal Mogul - Chapter 11          William Hanlon, Esquire

Page 15

1    Thurston Corporation; Shook & Fletcher; Pfizer,

2    Inc.; Quigley Company; Keene Corporation.

3          I'm missing a couple, if my

4    counsel could assist me.

5          MR. WYNER:  Your counsel is

6    not here to testify.

7    A    I'm missing a couple of others.

8    But...

9          MR. FINCH:  Flexitallic and

10    Ferodo?

11          THE WITNESS:  Thank you.

12          Flexitallic and Ferodo, sister

13    companies -- how could I have forgotten?

14    BY MR. FRIEDMAN:

15    Q    Were all of those companies that had

16    resolved asbestos claims in the past, that you

17    were aware of?

18    A    I think each of those companies had

19    at least been a defendant in a certain number of

20    cases before the inception of the CCR.

21          They were all members of the

22    Asbestos Claims Facility, which was an

23    organization that handled claims on their behalf

24    from roughly 1985 to 1988.

25    Q    Okay.  The CCR was founded after the

FINAL                      JANE ROSE REPORTING
CONFIDENTIAL        1-800-825-3341   janerose@janerose.net

US District Court - Delaware
In Re Federal Mogul - Chapter 11

June 1, 2005
William Hanlon, Esquire

Page 16

1    ACF disbanded; is that correct?

2        A    That's correct.

3        Q    Okay.  Would you characterize all of

4    the members of CCR as having had substantial --

5    as being -- of having substantial exposure to

6    asbestos claims?

7                MR. FINCH:  Object to form.

8        A    No, I would not.

9        Q    All right.  Was CCR governed by a

10   board of directors?

11       A    Yes, it was.

12       Q    Can you describe how the members of

13   the board of directors were selected?

14       A    Yes.

15                Under the terms of the

16   producer agreement, the three largest companies,

17   in terms of their contribution to the producer

18   shares -- and I believe it was a calculation

19   done on a calendar-year basis -- were

20   effectively guaranteed seats on the board.

21                And from the inception of the

22   corporation onward, I think the three largest,

23   initially, were:  Keene, GAF, and Armstrong.

24                And then one additional

25   company was entitled to appoint a representative

FINAL
CONFIDENTIAL

JANE ROSE REPORTING
1-800-825-3341   janerose@janerose.net

US District Court - Delaware
In Re Federal Mogul - Chapter 11

June 1, 2005
William Hanlon, Esquire

Page 17

1     by a vote of the members.
2             And initially, I think that
3     was U.S.G. Corporation.
4             And then the chairman of the
5     board was the president and CEO of the Center.
6     It was initially Mr. Larry Fitzpatrick.
7             Keene left the organization --
8     I believe it was in 1991.
9             And at that point in time, I
10    think T&N became the company entitled to the
11    third seat as a result of its contribution.
12            I think I misspoke.
13            Initially, the members who
14    would have been guaranteed seats were:  GAF,
15    Armstrong, and Keene.
16            And I think T&N was the
17    elected company and U.S.G. was a non-voting
18    member of the board.
19            And I think when Keene left,
20    U.S.G. became the voting member.  T&N became a
21    member as a right.  And CertainTeed became the
22    non-voting member.
23      Q    Okay.  So did T&N remain entitled to
24    a board seat, based on that criteria, until it
25    left the CCR?

FINAL
CONFIDENTIAL

US District Court - Delaware
In Re Federal Mogul - Chapter 11

June 1, 2005
William Hanlon, Esquire

Page 18

1    A   Yes, I believe it did.

2    Q   Could you tell:  Did members of the

3    board or the designee of the member of the board

4    engage in -- what kind of activities did they

5    engage with, in terms of settlement agreements

6    with plaintiff counsel, if any?

7    A   I'm not sure I understand the

8    question.

9    Q   Were members of the board ever

10   involved in the settlement negotiation with

11   plaintiffs firms over specific cases or specific

12   settlement agreements?

13   A   I don't believe so.

14       There were occasional meetings

15   with leaders of the plaintiffs' bar, at which

16   leaders of the defense bar would attend.

17       And on occasion, those

18   meetings included members of our boards of

19   directors.

20       But they were not there acting

21   on the CCR's behalf attempting to negotiate

22   cases.

23   Q   Do you recall if anybody from T&N

24   ever attended any of those meetings?

25   A   Sitting here, I don't.  But that's

FINAL
CONFIDENTIAL

JANE ROSE REPORTING
1-800-825-3341   janerose@janerose.net

US District Court - Delaware                June 1, 2005
In Re Federal Mogul - Chapter 11           William Hanlon, Esquire

Page 19

1    quite possible they did.
2         Q    Do you remember who the board
3    members -- who the members from T&N on the board
4    of CCR was, at various times?
5         A    Yes, I believe I do.
6              Initially, I think it was a
7    "Mr. Atkinson."
8              He was succeeded by "Mr. Harry
9    Baines" sometime in the early '90s -- '91 or
10   '92, I believe.
11             And Mr. Baines continued as
12   the board member up until the acquisition of T&N
13   by Federal Mogul.
14             I think for a short period of
15   time Mr. Ed Gray may have become the designated
16   representative; but whether he did or did not,
17   eventually Mr. Jim Zamoyski became the
18   designated representative for T&N.
19             I think Mr. Gray may not have.
20   I think he may have continued to retain
21   Mr. Baines as a consultant.
22             Mr. Baines may have held on to
23   the board seat, but certainly Mr. Gray
24   participated in the meetings as if he were a
25   board member for some period of time.

FINAL                          JANE ROSE REPORTING
CONFIDENTIAL              1-800-825-3341   janerose@janerose.net

US District Court - Delaware                          June 1, 2005
In Re Federal Mogul - Chapter 11              William Hanlon, Esquire

Page 20

1         Q     Did T&N retain its individual

2    liability share after the acquisition by Federal

3    Mogul, or was it combined with Flexitallic and

4    Ferodo?

5         A     The membership continued as T&N's

6    membership.

7         Q     And T&N remained on the board from

8    19- -- well, actually, would you say -- as an

9    elected member from 1988, and remained on the

10   board until it departed from the CCR?

11        A     I believe he did, yes.

12        Q     What were the purposes of CCR when

13   it was founded?

14        A     Well, they're set out in detail in

15   the producer agreements you have.

16             But basically, it was a

17   claims-handling organization that was created in

18   order to defend, administer, settle, resolve,

19   and process asbestos-related claims on behalf of

20   those members.

21             And as part of their

22   membership, each member of the CCR basically

23   gave a complete power of attorney to the CCR to

24   act as their agent with respect to

25   asbestos-related claims.

FINAL
CONFIDENTIAL

US District Court - Delaware                          June 1, 2005
In Re Federal Mogul - Chapter 11              William Hanlon, Esquire

Page 21

1        Q    Would you say that a principal
2    reason was to manage defense costs -- the
3    creation of the CCR was for its member companies
4    to manage their defense costs?
5              MR. FINCH:  Object to form.
6        A    Yeah, I think that's fair.
7        Q    The CCR was the sole agent of its
8    member companies in connection with all of the
9    asbestos claims that they faced; is that
10   correct?
11       A    It is, although there was a
12   provision in the agreement that provided that
13   the board -- or the Center, acting through the
14   board -- could agree to delegate back cases to a
15   member for the member to handle on its own.
16             But that was always a decision
17   that rested with the Center, not with the
18   individual member.
19             So a member could request to
20   take cases back and handle them on its own
21   behalf; but the Center had the authority to
22   decide whether to accept that request or not.
23       Q    Did that happen frequently,
24   companies requested --
25       A    It happened rarely.

FINAL                          JANE ROSE REPORTING
CONFIDENTIAL            1-800-825-3341   janerose@janerose.net

US District Court - Delaware                    June 1, 2005
In Re Federal Mogul - Chapter 11         William Hanlon, Esquire

Page 22

1      Q    Do you remember if T&N ever
2    requested that to occur?
3      A    Yes.  I think towards the end of its
4    membership, there was an occasion involving some
5    cases in New York where there was a request --
6    from Turner & Newall, at least -- to handle
7    certain cases on their own.  And the Center
8    acknowledged that request.
9            I don't recall the specifics
10   of it in great detail, but I think that did
11   occur on one occasion.
12     Q    So when CCR was the sole agent,
13   except in the instance that you just talked
14   about, it had -- if it settled the case or if it
15   entered into settlement with a plaintiff, an
16   individual -- could an individual company refuse
17   to agree to the settlement?
18     A    If I understand your question, the
19   answer is no.
20     Q    Did the companies assist in the
21   defense process at all?
22     A    I don't know what that means.
23     Q    What kind of information did
24   companies provide to CCR about the product --
25   about the distribution of their

FINAL                    JANE ROSE REPORTING
CONFIDENTIAL        1-800-825-3341   janerose@janerose.net

US District Court - Delaware                                June 1, 2005
In Re Federal Mogul - Chapter 11                  William Hanlon, Esquire

---

Page 23

1    asbestos-containing products?
2         A    It provided substantial information
3    about those products.
4         Q    Did they provide information as to
5    distribution of their products?
6         A    I believe so.
7              You know, I believe as part of
8    the process of membership that information was
9    provided to the Center; and it was also provided
10   to the Center's claims staff and to the Center's
11   legal staff, and through the legal staff and the
12   claim staff to the network of counsel that were
13   representing the members in cases across the
14   country.
15        Q    Were claims initiated against
16   individual members of the CCR, or were they
17   initiated against the CCR as an entity?
18        A    CCR was not generally defended in
19   any case.
20             It was not a manufacturer or
21   producer of products; and it was not simply
22   there to handle the defense and settlement of
23   claims against the individual members.
24             Members were sued -- and the
25   Center did not accept service of process for

---

FINAL
CONFIDENTIAL

JANE ROSE REPORTING
1-800-825-3341   janerose@janerose.net

US District Court - Delaware
In Re Federal Mogul - Chapter 11

June 1, 2005
William Hanlon, Esquire

Page 24

1    those members.
2          Members were served
3    individually, and then they basically tendered
4    those cases to the Center to handle.
5      Q    And then once it --
6          SPEAKER PHONE:  Now joining...
7          MS. SIMON:  Kate Simon of
8    Bingham McCutchen.
9          MR. WYNER:  Who has joined the
10   call, please?
11         MS. SIMON:  "Kate Simon."
12         MR. WYNER:  And Ms. Simon, who
13   do you represent?
14         MS. SIMON:  The Travelers
15   entities.
16         Travelers Indemnity and
17   Travelers Casualty.
18         MR. WYNER:  Is Travelers a
19   party to the Federal Mogul proceeding?
20         MS. SIMON:  It is.
21         MR. WYNER:  It is?
22         MR. FINCH:  It's not a party
23   to this adversary proceeding.
24         MS. SIMON:  Not the adversary
25   proceeding, right.

FINAL
CONFIDENTIAL