IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: ) | | Chapter 11 |
| ) | | Case No. 01-2094 (JKF) |
| USG CORPORATION, a Delaware ) | | Jointly Administered |
| Corporation, et al., ) | | |
| ) | | |
| ) | | |
| Debtors. ) | | |
| In re: ) | | Civ. No. 04-1559 (JFC) |
| ) | | Civ. No. 04-1560 (JFC) |
| USG CORPORATION, et al., ) | | |
| ) | | |
| Movant, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| OFFICIAL COMMITTEE OF ) | | |
| ASBESTOS PERSONAL INJURY ) | | |
| CLAIMANTS, et al., ) | | |
| ) | | |
| Respondents. ) | | |

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
MEMORANDUM IN SUPPORT OF DEBTORS' MOTION
FOR APPROVAL OF DEBTORS' SAMPLING PLAN
AND CLAIMANT QUESTIONNAIRE

The Official Committee of Unsecured Creditors of USG Corporation (the "Creditors' Committee"), by its undersigned counsel, submits this Memorandum in support of the Debtors' Motion for Approval of Debtors' Sampling Plan and Claimant Questionnaire (the "Motion"), pursuant to the stipulated schedule between counsel to the parties.

Inundated with asbestos personal injury claims, the Debtors in June 2001 sought relief under the bankruptcy laws because "using the power of the bankruptcy laws, [the court] can fashion and implement a solution that preserves these businesses and protects the legitimate

WLM\211285.1

interests of asbestos claimants, all other creditors, and the existing shareholders."[1] The Creditors' Committee represents the interests of those "other creditors," who hold some $2 billion in claims against the Debtors and who will ultimately share in their recoveries *pro rata* with the asbestos claimants. As such, the Creditors' Committee has an obvious interest in ensuring that the "solution" to the Debtors' asbestos issues involves satisfying only valid asbestos personal injury claims against these bankruptcy estates.

The Debtors' proposed claimant questionnaire is part of an estimation process designed to meet that goal. The Debtors have identified five issues for which it seeks to develop evidence for the estimation hearing, each designed to determine the characteristics of a valid asbestos personal injury claim:

1. Do "unimpaired" claimants have a compensable injury?

2. What level of exposure must a claimant demonstrate to establish that Debtors' products were a "substantial factor" in causing injury?

3. Does chrysotile asbestos cause mesothelioma?

4. Can lung cancer without asbestosis be asbestos-related?

5. Does asbestos cause "other cancers?"[2]

The Debtors' questionnaire is a fair, efficient and appropriate method for obtaining discovery from claimants, which is directly relevant to these five threshold issues common to large numbers of asbestos personal injury claims.

Although the Asbestos Claimants' Committee ("ACC") and the Future Claimants Representative ("FCR") vehemently oppose a claimants' questionnaire, that fight has already been lost, both in these cases and, recently, in another asbestos bankruptcy case. Here, of course,

---

[1] Debtors' Informational Brief, June 25, 2001, at 1.

[2] *See* Exhibit A, Estimation Decisional Tree, annexed to Debtors' Brief Regarding Request For Discovery In Advance Of Hearing On Issues To Be Considered In Estimation, dated April 26, 2005.

2

this Court previously admonished the parties that discovery with respect to these estimation proceedings would be liberally granted, that "each side is entitled to get what they believe they need, even if you don't think they need it." (Transcript of hearing held June 13, 2005, at 77). The ACC's objection to the use of a questionnaire inappropriately ignores the Court's instructions, but is entirely consistent with their attempts to foreclose any investigation into the substance of their claims.

The ACC in the *W.R. Grace* bankruptcy case (represented by the same counsel as the ACC here), also vehemently objected to the use of a discovery questionnaire, but to no avail. There, the debtors sought permission to send a questionnaire to each and every one of their approximately 118,000 pre-petition personal injury asbestos claimants (far, far more than the 1,000 claimants that would receive the Debtors' questionnaire here). Judge Judith K. Fitzgerald of the Bankruptcy Court held that the use of a questionnaire was an appropriate discovery device in the estimation proceedings before it, and approved the use of the questionnaire for all pre-petition claimants by order entered on August 29, 2005. (A copy of the order approving the *W.R. Grace* questionnaire, with its annexed questionnaire, is attached as Exhibit A).

The ACC's opposition to discovery of claimants is not surprising given recent events, including most particularly the proceedings in the silica multi-district litigation pending before Judge Janice Graham Jack. Those proceedings aptly demonstrate the need for discovery to obtain evidence with respect to the nature of the asbestos claims against the Debtors. In *In re: Silica Products Liability Litigation*, 2005 WL 1593936 (S.D. Tex. June 30, 2005), Judge Jack, after permitting discovery of claimants (through "Fact Sheets"[3]) and their doctors, among others, found that thousands of plaintiffs in the silica MDL litigation had previously asserted claims

---

[3] The Fact Sheets required claimants to provide, under oath, information regarding exposure to silica products and detailed medical information concerning each silica-related injury. *Id.* at [22].

WLM\211285.1

against asbestos defendants based upon the same medical "evidence" that they claimed supported their silica-related claims, notwithstanding that "it would be a clinical rarity" for a person to have both silicosis and asbestosis. *Id.* at *23. Indeed, one screening company identified 6,757 silica plaintiffs, of which 4,031 had previously filed asbestos claims, prompting the court to comment that "a golfer is more likely to hit a hole-in-one than an occupational medicine specialist is to find a single case of both silicosis and asbestosis." *Id.* at *31. The relationship to the asbestos litigation was not lost upon Judge Jack: "[i]t is worth noting that this evidence of unreliability of the B-reads performed for this [silica] MDL is matched only by evidence of unreliability of B-reads in asbestos litigation." *Id.* at *54 (citing Dr. Joseph Gitlin's study published in Academic Radiology that found that of 492 chest x-rays, 95.9% of which were found to show asbestosis when read by physicians paid by plaintiff's lawyers, only 4.5% were found to have asbestosis when the x-rays were read by a blind panel of B-readers). Judge Jack did not pull any punches in determining the reason for these apparent misdiagnoses, concluding that "[i]n the majority of cases, these diagnoses are more the creation of lawyers than of doctors." *Id.* at *59. "[T]he failure of the challenged doctors to observe the same standards for 'legal diagnosis' as they do for a 'medical diagnosis' renders their diagnoses in this litigation inadmissible under Rule 702 [of the Federal Rules of Evidence]." *Id.* at *58. Amazingly, in subsequent proceedings before that court on August 22, 2005, one plaintiff's attorney conceded to Judge Jack that the asbestosis diagnoses for his clients claiming silicosis were "wrong" and that he doubted that those asbestos claimants ever had asbestosis. *See* Transcript of status conference held on August 22, 2005 in MDL-03-1553, at 62-64, attached as Exhibit B.

       The Debtors, and the Creditors' and Equity Committees supporting them, are plainly entitled to discovery as to the merits of the asbestos claims asserted against the Debtors.

4

WLM\211285.1

The proposed questionnaire here, like in *W.R. Grace*, is the appropriate device to obtain that discovery. But, unlike *W.R. Grace*, the Debtors seek to serve the questionnaire not upon each and every of the 150,000 pre-petition claimants, but only upon a statistically significant sample of 1,000 claimants. Notwithstanding this sampling plan, the ACC contends that the questionnaire is too burdensome upon claimants. This position is untenable. The very same argument was rejected by Judge Fitzgerald in *W.R. Grace* with regard to some 118,000 claimants; here, the questionnaire will be sent to 1,000 claimants. Indeed, the asbestos claimants presumably already have the necessary information to support a claim against the Debtors because they each sued USG pre-petition. Requiring certain of those claimants to respond to discovery is simply not burdensome.

Finally, the ACC and FCR have refused to engage the Debtors in any discussion of the proposed sampling plan. They cannot have it both ways. If they do not believe sampling is appropriate, then the questionnaire should be sent to each of the 150,000 pre-petition asbestos claimants (as in *W.R. Grace*). That will resolve any issue regarding sampling. Otherwise, the ACC should have to promptly advise the parties (and this Court) of any objections they may have to the Debtors' sampling plan or be silent on the issue. The ACC and FCR should not be permitted the tactical advantage that they seek in refusing to respond now to the Debtors' sampling protocol.

## CONCLUSION

It is respectfully requested that this Court grant the Debtors' Motion.

Dated: September 19, 2005

Respectfully submitted:

**STROOCK & STROOCK & LAVAN LLP**
Lewis Kruger
Kenneth Pasquale
(Members of the Firm)
180 Maiden Lane
New York, New York  10038-4982
Tel: (212) 806-5400
Fax: (212) 806-6006

and

**DUANE MORRIS LLP**

Michael R. Lastowski (DE I.D. No. 3892)
Richard W. Riley (DE I.D. No. 4052)
William S. Katchen
1100 North Market Street
Suite 1200
Wilmington, Delaware 19801
Tel: (973) 424-2000
Fax: (973) 424-2001

Co-Counsel for the Official Committee
of Unsecured Creditors

6