IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | **Chapter 11** |
| **USG CORPORATION,** | : | |
| a Delaware corporation, et al., | : | **Jointly Administered** |
| | : | **Case No. 01-2094 (JKF)** |
| Debtors. | : | |
| | : | |
| ———————————— | : | |
| **USG CORPORATION, et al.,** | : | |
| | : | |
| Movant | : | |
| | : | |
| v. | : | |
| | : | **Civil Action No. 04-1559 (JFC)** |
| **OFFICIAL COMMITTEE OF** | : | **Civil Action No. 04-1560 (JFC)** |
| **ASBESTOS PERSONAL INJURY** | : | |
| **CLAIMANTS, et al.,** | : | **Hearing:   10/06/05 11:30 a.m.** |
| | : | |
| Respondents. | : | |

**JOINT REPORT REGARDING CLAIMANT QUESTIONNAIRES**

| | |
|---|---|
| COOLEY GODWARD LLP | RICHARDS, LAYTON, & FINGER, P.A. |
| Stephen C. Neal (CA 170085) | Daniel J. DeFranceschi (DE No. 2732) |
| Scott D. Devereaux (CA 146050) | Paul N. Heath (DE No. 3704) |
| Five Palo Alto Square | One Rodney Square |
| 3000 El Camino Real | P.O. Box 551 |
| Palo Alto, CA 94306 | Wilmington, Delaware 19899 |
| Tel: (650) 843-5000 | Tel: (302) 651-7700 |

JONES DAY
David G. Heiman (OH 0038271)
Brad B. Erens (IL 6206864)
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Tel: (216) 586-3939

*Counsel for Debtors*

967038 v1/SF
RLF1-2930063-1

I.   **PRELIMINARY STATEMENT.**

The parties have met and conferred in good faith to narrow their disputes regarding the questionnaire Debtors propose to propound on a sample of claimants in this action ("Debtors' Questionnaire" or the "Questionnaire"). Pursuant to the Court's instructions, the parties submit the following joint report summarizing the areas on which they have reached agreement and the areas of dispute that remain.

II.   **CONTENTS OF THE QUESTIONNAIRE.**

A.   **Debtors' Position.**

Debtors have carefully considered the ACC and FCR's critiques of the Questionnaire. While Debtors maintain their entitlement to all of the information sought in the Questionnaire, in a good faith effort to accommodate the ACC and FCR's concerns, Debtors have agreed to a number of changes, incorporated in a revised version of the Questionnaire, attached hereto as Exhibit A, including:

- Limiting the medical documents for mesothelioma claimants to a narrative statement of diagnosis, and for lung and other cancer claimants to physical exam results, pathology reports, and diagnostic tests or reports that support or conflict with the alleged diagnosis;

- Reimbursing claimants' reasonable expenses incurred in copying documents submitted;

- Limiting the number of doctors for whom name and address information is requested—for mesothelioma claimants, it is requested for only the diagnosing physician, and for lung and other cancer claimants, it is requested for only the diagnosing physician and the physician who issued the most recent pathology report;

- Eliminating smoking history for mesothelioma claimants;

- Deleting requests for the names of distributors of products exposed to;

- Eliminating residential history for all claimants;

- Removing the request that claimants identify the debtor(s) believed responsible for the alleged injury; and

- Eliminating the request that claimants authorize hospitals to release medical records to Debtors.

In addition, Debtors are willing to enter into a strict confidentiality agreement limiting the disclosure of social security numbers and earnings and employment records obtained from the Social Security Administration. Debtors are prepared to negotiate in good faith the specific terms of such an agreement with the ACC and FCR.

Debtors understand that the ACC and FCR intend to argue that the following items, which Debtors are unwilling to remove from the Questionnaire, should not be included:

- All document requests;

- A request for information regarding other lung conditions diagnosed, including chronic obstructive pulmonary disease, asthma, pneumonia, effusion, and congestive heart failure (Part 2, question 9);

- Requests for name and address information for doctors other than a diagnosing physician (Part 2, questions 10-12);

- Smoking history (Part 3);

- Requests for information regarding asbestos exposure, including the date ranges, frequencies, and types of exposure alleged (Parts 4 and 5, question 7; Part 7, questions 4 and 9), and the percentages of exposure at residential and commercial construction sites (Parts 4 and 5, question 10);

- Requests for information about exposure to other defendants' products and non-occupational exposure (Part 5; Part 7, question 1.a; Parts 8 and 9); and

- Requests for occupational information, including descriptions of job duties, employment history, and a release of employment records from the Social Security Administration (Parts 4 and 5, question 8; Part 6; Appendix A).

Briefly, Debtors cannot agree to the removal of these items for the following reasons. The medical information and records that Debtors seek are plainly relevant and not unduly burdensome. Medical records are the very basis of claimants' injury allegations, and the

restricted scope of the record requests for cancer claimants significantly lessens the burden of collecting and producing these highly pertinent records. Doctors' names and addresses are sought for only a limited group of doctors who either made the alleged diagnosis or issued a recent report regarding the diagnosis. These information requests are particularly reasonable given Debtors' concessions narrowing the scope of the medical records sought. Finally, both smoking history and other lung conditions provide information relevant to Debtors' evaluation of the claims as a whole. For example, a long smoking history may evidence a cause other than asbestos exposure for an alleged lung condition, and congestive heart failure may impact the way that x-rays are read.

The exposure and occupational information sought is also obviously discoverable and entirely proper. Debtors must have information about exposure to and claims regarding other defendants' products in order to avoid bestowing a windfall on claimants at the expense of other stakeholders. Employment history is relevant because it may show exposure to other asbestos-containing products of which a claimant was unaware. Finally, because commercial and residential construction sites have different exposure profiles, this information is very likely to lead to the discovery of admissible evidence. It is not surprising therefore that the Court in *In re W.R. Grace* approved requests for medical, exposure, and occupational information very similar to those in Debtors' Questionnaire.

B. **The ACC / FCR's Position.**

The Official Committee of Asbestos Personal Injury Claimants ("ACC") does not represent individual claimants to whom the questionnaire is addressed, see, e.g. In re Kensington Int'l, 368 F.3d 289, 315 (3d Cir. 2004), and thus cannot represent them with respect to claims prosecution and individualized discovery issues. Those claimants and their attorneys are not bound by the objections that counsel for the ACC may make and have the right to advance their

own identical, different, or additional objections. It is impossible at this juncture for counsel to the ACC to know whether compliance with the questionnaire is unduly burdensome in a particular case and what if any cost or confidentiality concerns are implicated by the questionnaire with respect to individual claimants because the factors relevant to such an inquiry will depend on the particular claimants who receive the document.

The ACC continues to object to the questionnaire process as a whole, and the ACC continues to believe that the information sought by the questionnaire will not lead to evidence which is admissible in a proceeding to estimate the Debtor's <u>aggregate</u> asbestos liability. This is not a proceeding try individual claims to a jury or have them determined or estimated one by one by this Court. However, in light of the Court's preliminary ruling at the September 20, 2006 status conference, the ACC and the Debtor have met and conferred on all aspects of the questionnaire, and resolved a number of differences. Our proposals, set forth below, would, if accepted, result in a questionnaire much more detailed than the one we originally proposed.

An objection of "irrelevant" includes, as applicable, an objection that the information sought is not only not relevant but also that it is "not likely to lead to admissible evidence" in the estimation proceeding.

Assuming the Court authorizes a questionnaire, the ACC continues to object to the following specific aspects of the questionnaire currently proposed by the Debtor:

| **Instructions** | **Objection** |
|---|---|
| 6, 7 and 8 | As a general matter, we believe no documents need be required to be attached to the Questionnaire in order to permit the Debtors to explore fully the issues and defenses to claims they have advanced, and because a free-standing questionnaire would both reduce burden and vastly simplify analysis. Moreover, as none of these cases have been allowed to proceed through discovery or to trial against USG due to the bankruptcy stay, the claimants' counsel likely have not made any determinations about what evidence of exposure or disease would be presented at a trial involving |

USG.

If, however, documents are to be attached to the Questionnaire –

- The <u>medical records</u> required should be only the X-ray reader report, PFT report, and narrative diagnosis of asbestos-related disease – other records are irrelevant and unduly invasive as they relate only to impeachment or credibility determinations relevant to a particular claim. Moreover, analysis of peripheral medical records will substantially extend the fact discovery timetable to no purpose.

- The <u>documents concerning exposure</u> should be limited to the claimant's interrogatory answers and the claimant's deposition, if one was taken. The requirement to produce copies of co-worker depositions seeks information unlikely to lead to admissible evidence and makes the discovery overbroad. Assembly and analysis of depositions would greatly complicate and delay the fact discovery process.

| **Questionnaire Part and Question** | **Objection** |
|---|---|
| 2.9.a | The ACC believes the Questionnaire should eliminate all inquiry into other lung conditions except for interstitial lung disease (idiopathic pulmonary fibrosis) and silicosis – other lung conditions or diseases are irrelevant because the other conditions are not even arguably inconsistent with an asbestos-related disease. |
| 2.10 to 2.12 | As noted above, we believe no documents should be required to be attached to the Questionnaire. If documents are allowed to be attached to the Questionnaire, limit the medical records to X-ray reader report, PFT report, and narrative diagnosis of asbestos related disease – other records are irrelevant and unduly invasive as they relate only to impeachment or credibility determinations relevant to a particular claim. Moreover, analysis of peripheral medical records will substantially extend the fact discovery timetable to no purpose. |
| Part 3 | We object to the entire section. Whether a claimant smoked is irrelevant to his legal right to recover for asbestos exposure if there is evidence that the asbestos exposure contributed to his lung cancer. The undisputed medical science shows that asbestos exposure drastically increases the risk of lung cancer even for heavy smokers. Smoking is irrelevant to causation for mesothelioma and non-malignant asbestos diseases. |

| **Questionnaire Part and Question** | **Objection** |
|---|---|
| 4.3 | If documents concerning exposure are to be required, they should be limited to the claimant's interrogatory answers and the claimant's deposition, if one was taken. The requirement to produce copies of co-worker depositions seeks information unlikely to lead to admissible evidence and makes the discovery overbroad. Assembly and analysis of depositions of co-workers would greatly complicate and delay fact discovery process. Moreover, as none of these cases has been allowed to proceed through discovery or to trial against USG due to the bankruptcy stay, the claimants' counsel likely have not made any determinations about what evidence of exposure would be presented at a trial involving USG. |
| 4.7.a and b | Objection – posing the questions about time, type, and extent of exposure in this format is unlikely to lead to information which is admissible because of the likely confusion generated by this section of the form. We believe the proposed Questionnaire attached to the ACC's responsive brief filed on September 19, 2005 is a more appropriate and equally effective format for exposure information. |
| 4.8 | Irrelevant and duplicative of occupational codes |
| 4.10 | Irrelevant – commercial/residential are not meaningful categories to establish exposure. Seeking non-significant, non-meaningful information is not likely to lead to admissible evidence for estimation proceeding. |
| Part 5 | Questions which seek information about exposure to other defendants' products are not likely to lead to admissible evidence in an estimation proceeding because exposure to non-USG products does not affect USG's liability for demonstrated USG exposure. |
| Part 6 | Requiring a complete employment history is overbroad, invasive of privacy, and irrelevant in an estimation proceeding because work in jobs that might have resulted in exposure to non-USG asbestos does not affect USG's liability for exposure to USG products. |
| 7.1.a | Information about non-occupational exposure is irrelevant in an estimation proceeding as to claimants who in other parts of the questionnaire demonstrate occupational exposure to USG products because possible non-occupational exposure to asbestos does not affect liability for occupational USG exposure. |

| Questionnaire<br>Part and Question | Objection |
|---|---|
| Part 7 generally | Questions related to "source individual" exposure should conform to final form of questions for injury party exposure |
| Parts 8 and 9 | Claims against and recoveries from defendants other than USG are irrelevant because the estimation is of USG's several liability, to which recoveries from others is irrelevant. USG's right to contribution and indemnity from other defendants is extinguished by settlements with other defendants and USG would get a set-off against a judgment for settlements with other defendants only if we were to value the cases by trying each of them to judgment. There is no "absolute" value for the entire amount of any given asbestos claim against all defendants. |
| 10.2 | Requiring claimants to release social security work and earnings histories is an invasion of privacy and unlikely to lead to admissible evidence. The possibility of exposure in jobs other than those in which USG products were used does not affect liability for USG exposure. |

### III.    TIME FRAME TO RESPOND TO AND ANALYZE THE QUESTIONNAIRES.

####    A.    Debtors' Position.

As a result of this meet and confer process, Debtors believe the parties have agreed upon a schedule for the service and return of the final, court-approved version of Debtors' Questionnaire. Under this schedule, Debtors will serve the Questionnaire upon the sample claimants on October 20, 2005. Claimants will then have to return their completed Questionnaires and accompanying documents on or before January 9, 2006.

The parties continue to disagree regarding how much time is required after the Questionnaires' return to organize and analyze the Questionnaires' information. The firm that Debtors have retained to compile the Questionnaires' information, Rust Consulting, Inc., has represented that it expects to provide the parties with a searchable database containing all information from the Questionnaires approximately forty-five (45) days after receiving the completed Questionnaires. Assuming the completed Questionnaires are returned on January 9, 2006, the database should be ready on approximately February 24, 2006. Debtors believe a

thorough analysis of the Questionnaire can be completed sixty (60) days later, on April 24, 2006. During the meet and confer sessions, the ACC and FCR stated their belief that 120 days, until June 24, 2006, will be required to analyze this information.

Debtors will not repeat the arguments made in their recent Reply Brief, see pages 16-17, but must note again that the time allotment requested by the ACC and FCR far exceeds the time per questionnaire afforded in *In re W.R. Grace*, where sixty (60) times as many claimant questionnaires must be analyzed in just over one year. In light of this, Debtors cannot agree that the ACC and FCR will require four months after the delivery of a searchable database to analyze the relevant information.

### B. The ACC / FCR's Position.

The FCR and ACC estimate that the time they and their data consultants will need to collate and analyze the information from the questionnaires is four months from the time they receive from RUST Consulting, the Debtors' data consultants, a complete set of the questionnaire responses with all attachments, in an appropriate form, i.e., in scanned electronic copies of documents. This amount of time is necessary because of the need to independently review, code, and analyze not only answers to the questionnaires themselves, but if documents are required to be produced as attachments to the questionnaires, the time needed to analyze also the information contained in the documents such as depositions, interrogatories, medical records, test results, and employment histories.

Submitted on behalf of all parties.

Dated: October 4, 2005                    RICHARDS, LAYTON, & FINGER, P.A.

                                          _____
                                          Daniel J. DeFranceschi (DE No. 2732)
COOLEY GODWARD LLP                        Paul N. Heath (DE No. 3704)
Stephen C. Neal (CA 170085)               One Rodney Square, P.O. Box 551
Scott D. Devereaux (CA 146050)            Wilmington, Delaware 19899
Five Palo Alto Square                     Tel: (302) 651-7700
3000 El Camino Real
Palo Alto, CA 94306
Tel: (650) 843-5000

JONES DAY
David G. Heiman (OH 0038271)
Brad B. Erens (IL 6206864)
North Point - 901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Tel: (216) 586-3939