**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | |
| | : | **Chapter 11** |
| **USG CORPORATION,** | : | |
| **a Delaware corporation, et al.,** | : | **Jointly Administered** |
| | : | **Case No. 01-2094 (JKF)** |
| Debtors. | : | |
| | : | |
| **USG CORPORATION, et al.,** | : | |
| | : | |
| Movant | : | |
| | : | |
| v. | : | |
| | : | |
| **OFFICIAL COMMITTEE OF ASBESTOS PERSONAL** | : | **Civil Action No. 04-1559 (JFC)** |
| **INJURY CLAIMANTS, OFFICIAL COMMITTEE OF** | : | **Civil Action No. 04-1560 (JFC)** |
| **UNSECURED CREDITORS, OFFICIAL** | : | |
| **COMMITTEE OF ASBESTOS PROPERTY** | : | |
| **DAMAGE CLAIMANTS AND LEGAL** | : | |
| **REPRESENTATIVE FOR FUTURE CLAIMANTS,** | : | |
| | : | |
| Respondents. | : | |

---

## DEBTORS' STANDARD QUESTIONNAIRE TO SELECT PERSONAL INJURY ASBESTOS CLAIMANTS

---

| COOLEY GODWARD LLP | RICHARDS, LAYTON, & FINGER, P.A. | JONES DAY |
|---|---|---|
| Stephen C. Neal (CA 170085) | Daniel J. DeFranceschi (DE No. 2732) | David G. Heiman (OH 0038271) |
| Scott D. Devereaux (CA 146050) | Paul N. Heath (DE No. 3704) | Brad B. Erens (IL 6206864) |
| 3000 El Camino Real | P.O. Box 551 | North Point |
| Five Palo Alto Square | One Rodney Square | 901 Lakeside Avenue |
| Palo Alto, CA 94306 | Wilmington, Delaware 19899 | Cleveland, Ohio 44114-1190 |
| Tel: (650) 843-5000 | Tel: (302) 651-7700 | Tel: (216) 586-3939 |

*Counsel for Debtors*

---

Answer separately and truthfully in writing each of the questions in this Questionnaire in accordance with the Questionnaire's Definitions and Instructions. Read the entire Questionnaire carefully <u>before completing it</u>. Your completed Questionnaire and all attachments must be post-marked for return mailing to Rust Consulting, Inc. on or before January 9, 2006. Make sure that you and your attorney, if you have one, sign the last page of the Questionnaire under oath. Completion of this Questionnaire is mandatory under Federal Rules of Civil Procedure, Rules 26 and 33, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7026 and 7033.

| DEFINITIONS |
| --- |

The words in CAPITALS in the Questionnaire are defined as follows:

1.  The INJURED PARTY is the person who allegedly has or had a medical condition caused by asbestos exposure, including but not limited to MESOTHELIOMA, LUNG CANCER, OTHER CANCER, PLEURAL PLAQUES, DIFFUSE PLEURAL THICKENING, ASBESTOSIS, or other non-malignant asbestos-related condition.

2.  The PERSONAL REPRESENTATIVE OF THE INJURED PARTY is the person or entity that is filing the claim on behalf of the INJURED PARTY if the INJURED PARTY is legally incompetent or deceased. This person or entity may be, for example, the INJURED PARTY's legal guardian, executor, or administrator. This person or entity is not the attorney representing the INJURED PARTY or the attorney representing the PERSONAL REPRESENTATIVE OF THE INJURED PARTY.

3.  The CLAIMANT is either the INJURED PARTY or, if the INJURED PARTY is legally incompetent or deceased, the PERSONAL REPRESENTATIVE OF THE INJURED PARTY.

4.  DEBTORS are any or all of the following corporations: USG Corporation, United States Gypsum Company, USG Interiors, Inc., USG Interiors International, Inc., L&W Supply Corporation, Beadex Manufacturing, LLC, B-R Pipeline Company, La Mirada Products Co., Inc., USG Industries, Inc., USG Pipeline Company, and Stocking Specialists, Inc.

5.  US GYPSUM is United States Gypsum Company. For a description of the businesses of US GYPSUM and other DEBTORS and a listing of the types of products they manufactured or sold that may have contained asbestos, see Appendix B to this Questionnaire.

6.  PLEURAL PLAQUES is a non-malignant, circumscribed or localized area of fibrous material appearing in the lining of the lung or the chest wall.

7.  DIFFUSE PLEURAL THICKENING is a diffuse (as opposed to circumscribed or localized) area of fibrosis appearing in the lining of the lung or the chest wall.

8.  ASBESTOSIS is diffuse fibrosis (or scarring) on both lungs caused by the inhalation of asbestos fibers.

9.  LUNG CANCER is a malignant tumor of the lungs.

10. MESOTHELIOMA is a malignant tumor of the pleura, which is the thin membrane or lining surrounding the lung (pleural mesothelioma). It may also be a malignant tumor of the lining of the abdominal cavity (peritoneal mesothelioma).

11. OTHER CANCER is any cancer other than LUNG CANCER or MESOTHELIOMA and includes but is not limited to colon cancer, laryngeal (voicebox) cancer, esophageal cancer, pharyngeal (throat) cancer, stomach cancer, breast cancer, ovarian cancer, liver cancer, brain cancer, lymphoma (cancer of the lymph nodes (or tissues)), and prostate cancer.

12. FORCED VITAL CAPACITY (FVC) describes the total amount of air that can be forcibly and quickly exhaled after inhaling as much air as possible.

13. FORCED EXPIRATORY VOLUME ($FEV_1$) describes the volume of air that can be forced from the lungs in one second of effort.

14. TOTAL LUNG CAPACITY (TLC) represents the total amount of air that can be taken into the lungs, including the air that cannot be exhaled.

15. DIFFUSION CAPACITY (DLCO or $D_{co}$) measures the exchange of oxygen from the air to the blood stream.

| | INSTRUCTIONS |
|---|---|

**1.** Read carefully the entire Questionnaire and the Definitions and Instructions <u>before completing the Questionnaire</u>. It is important to read the entire Questionnaire at least once <u>before completing it</u> because you may need to copy some sections prior to filling them out so that you can submit multiple copies of the sections.  See Instruction No. 4, below.

**2.** Type or print your answers to each question neatly and legibly using black or blue ink.  Use capital letters and avoid contact with the edge of the character boxes.  Mark check boxes with an "X" (example at right).  ☒  Do not use a felt-tip pen, do not write outside the boxes or blocks, and do not bend or fold the pages of the Questionnaire. Do not distribute this Questionnaire to others for their completion because each Questionnaire has a unique identifying barcode and number for each INJURED PARTY.

**3.** Be complete, accurate, and truthful in your answers to the questions asked. This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your claim.  The penalty for knowingly and fraudulently making a false statement under penalty of perjury is a fine of up to $500,000 or imprisonment for up to five years, or both.

**4.** If you cannot fit all information in any particular section or page, make a copy of that page <u>before filling it out</u> and add the necessary information to the copied page(s). Attach as many additional pages as needed.

**5.** If the INJURED PARTY is deceased, submit a copy of the death certificate with the Questionnaire.  If this Questionnaire is being filed by the PERSONAL REPRESENTATIVE OF THE INJURED PARTY, submit with the Questionnaire written evidence of your authority to act on behalf of the INJURED PARTY.

**6.** Submit with the Questionnaire copies of the following medical documents:

   A. If in Part 2 you state that the INJURED PARTY has been diagnosed with MESOTHELIOMA, submit a copy of a narrative statement from a diagnosing physician that shows the alleged diagnosis.

   B. If in Part 2 you state that the INJURED PARTY has been diagnosed with LUNG CANCER or OTHER CANCER, or with PLEURAL PLAQUES, DIFFUSE PLEURAL THICKENING, ASBESTOSIS, or any other non-malignant asbestos-related condition, submit:
   i. An original of the INJURED PARTY's most recent radiographic evaluation, such as an x-ray or CT scan, taken before the filing of the INJURED PARTY's claim;
   ii. Copies of any and all medical reports and records that were relied upon for, or that conflict with, the alleged diagnosis, including but not limited to:
   - Physical exam results;
   - Pathology reports;
   - Diagnostic tests or reports;
   - Laboratory tests;
   - Letters or other written statements from a doctor or medical clinic;
   - Pulmonary function test (PFT) reports, including:
     - Spirogram tracings;
     - FORCED VITAL CAPACITY (FVC);
     - FORCED EXPIRATORY VOLUME (FEV1);
     - TOTAL LUNG CAPACITY (TLC);
     - DIFFUSION CAPACITY (DLCO or $D_{co}$); and
   iii. Copies of any and all written statements by a doctor or medical clinic regarding the cause or potential cause of the alleged diagnosis.

   If in Part 2 you allege multiple diagnoses, submit copies of all medical documents required for each and every diagnosis that you allege.  DEBTORS will reimburse your reasonable expenses incurred in copying the medical documents that you submit.  See Instruction No. 10, below.

**7.** If the INJURED PARTY or the PERSONAL REPRESENTATIVE OF THE INJURED PARTY responded to interrogatories or was deposed in a lawsuit filed by or on behalf of the INJURED PARTY for asbestos-related personal injury, submit with the Questionnaire copies of any and all such interrogatory responses and depositions.  If a written claim, including but not limited to a proof of claim form, was submitted by or on behalf of the INJURED PARTY for asbestos-related personal injury in another bankruptcy case or against a trust established pursuant to a plan of reorganization or liquidation in another bankruptcy case, submit with the Questionnaire copies of any and all such written claims. See Part 8 of the Questionnaire.

   If the INJURED PARTY was exposed to asbestos through another party (the "Source Individual"), and if the Source Individual responded to interrogatories or was deposed in a lawsuit filed by or on behalf of the Source Individual for asbestos-related personal injury, submit with the Questionnaire copies of any and all such interrogatory responses and depositions.  If a written claim, including but not limited to a proof of claim form, was submitted on behalf of the Source Individual for asbestos-related personal injury in another bankruptcy case or against a trust established pursuant to a plan of reorganization or liquidation in another bankruptcy case, submit with the Questionnaire copies of any and all such written claims.  See Part 9 of the Questionnaire.

DEBTORS will reimburse your reasonable expenses incurred in copying the interrogatory responses, depositions, and written claims that you submit.  See Instruction No. 10, below.

8.  If in Part 4 you identify a co-worker or other person upon whom you rely for your belief that the INJURED PARTY was exposed to an asbestos-containing product of US GYPSUM or another DEBTOR, and if that co-worker or other person was deposed in any asbestos-related personal injury action, submit with the Questionnaire copies of any and all such depositions. See Part 4 of the Questionnaire.  DEBTORS will reimburse your reasonable expenses incurred in copying the depositions that you submit.  See Instruction No. 10, below.

9.  In Parts 4-7 of the Questionnaire, you are asked to provide Standard Occupational Classification Codes and Standard Industrial Classification Codes.  For a list of these codes, refer to Appendices C and D, respectively, to the Questionnaire.

10.  Instead of originals, you may submit copies of any and all documents that the Questionnaire requires with the exception of radiographic evaluations, such as x-rays or CT scans.  You must submit the originals of these evaluations.

DEBTORS will reimburse your reasonable expenses incurred in copying documents that you submit. In Part 10, indicate the documents for which you seek reimbursement and the total amount of the reimbursement you seek. Attach to this Questionnaire a receipt that shows the copy costs you incurred.

Upon request, DEBTORS may have access to the original of any document that you submit. Original documents and radiographic evaluations provided to DEBTORS will be returned within a reasonable time after their professionals and experts have reviewed the documents or evaluations.

11.  Make sure that the INJURED PARTY or the PERSONAL REPRESENTATIVE OF THE INJURED PARTY completes and signs the Authorization for Release of Earnings Information and Employment Records From the Social Security Administration contained in Appendix A.  You do not need to complete the Request for Social Security Earnings Information Form (Form SSA-7050-F4) that is included in Appendix A with the Authorization.  This form is only for your reference.  You need only complete and return the Authorization on the first page of Appendix A.

A confidentiality agreement entered in this case provides that the following information may be disclosed only to persons involved in the case, that it will be held in strict confidence by persons who receive it, and that it will be used only for purposes related to the case: (1) social security numbers collected in the Questionnaire or its supporting documentation; (2) all records regarding the INJURED PARTY that DEBTORS receive from the Social Security Administration pursuant to the Authorization in Appendix A ("SSA Documents"); (3) information contained in the SSA Documents when disclosed in conjunction with the INJURED PARTY's name, address, or social security number; and (4) medical records or medical information collected with or in the Questionnaire when disclosed in conjunction with the INJURED PARTY's name, address, or social security number.

12.  If you have questions concerning this Questionnaire or want to request additional copies of it, your attorney may call the toll-free automated helpline of Rust Consulting, Inc. The helpline may be reached at 1-800-611-9738. Rust Consulting cannot provide legal advice.

13.  If you prefer to input your responses to the Questionnaire on a computer, you must call Rust Consulting's toll-free automated helpline at 1-800-611-9738 to obtain a copy of the Questionnaire as a writable Portable Document Format (PDF) document. Once you have entered all responses into the PDF document, you must print the document and have the CLAIMANT and the CLAIMANT's attorney, if any, sign the certification in Part 10 of the Questionnaire. Return to Rust Consulting the printed and signed Questionnaire along with all supporting documentation as directed in Instruction No. 14, below. Alternatively, you may convert the printed and signed Questionnaire to a PDF document and return it to Rust Consulting on a CD-ROM as long as: (1) the conversion does not alter the structure or visual presentation of the Questionnaire in any way, including the unique identifying barcode and number at the bottom of each page of the Questionnaire; and (2) the CD-ROM is labeled with the INJURED PARTY's name, date of birth, and a fully intact, machine-readable copy of the INJURED PARTY's unique identifying barcode and number. You may also submit any and all of the required supporting documentation as PDF documents on a CD-ROM as long as the CD-ROM complies with this label requirement. Do not submit radiographic evaluations, such as x-rays or CT Scans, on a CD-ROM. However, do label such evaluations with the INJURED PARTY's name, date of birth, and a fully intact, machine-readable copy of the INJURED PARTY's unique identifying barcode and number.

14.  Make sure that the CLAIMANT and the attorney of the CLAIMANT, if any, signs the Questionnaire in Part 10.  Submit your completed Questionnaire and all supporting documentation to the following address:

| If by mail: | If by hand or overnight delivery: |
|---|---|
| Rust Consulting, Inc. | Rust Consulting, Inc. |
| P.O. Box 1797 | 201 S. Lyndale Ave. |
| Faribault, MN 55021-1797 | Faribault, MN 55021 |

Your completed Questionnaire and all supporting documentation must be post-marked for return mailing to  Rust Consulting, Inc. on or before January 9, 2006.  Do not send your Questionnaire to DEBTORS or DEBTORS' counsel.

**PART 1: IDENTIFYING INFORMATION**

Provide identifying information regarding the INJURED PARTY, the PERSONAL REPRESENTATIVE OF THE INJURED PARTY, and the CLAIMANT'S attorney, if any.

**A.** INJURED PARTY – the person who allegedly has or had a medical condition caused by asbestos exposure.

   **1.** **Full Name:**

      Last

      First       MI

   **2.** **Other Names Used:**

      **(including maiden name)**   Last

      First       MI

   **3.** **Social Security Number:** ☐☐☐ - ☐☐ - ☐☐☐☐ *

      **\*** **A confidentiality agreement limits disclosure and use of this social security number to persons involved in this case for purposes related to the case.**

   **4.** **Gender:**    **Male** ☐   **Female** ☐

   **5.** **Date of Birth:**   ☐☐ / ☐☐ / ☐☐☐☐
      Month   Day   Year

   **6.** **The Injured Party is:**   **Living** ☐   **Deceased** ☐   **(If deceased, enclose the death certificate.)**

      **a.** **If deceased, date of death:**  ☐☐ / ☐☐ / ☐☐☐☐
         Month   Day   Year

      **b.** **If deceased, was death asbestos-related?**  **Yes** ☐  **No** ☐

   **7.** **If the INJURED PARTY is living, provide that person's mailing address:**

      Street/P.O. Box

      City      State      Zip

**PART 1: IDENTIFYING INFORMATION (Continued)**

**B.** PERSONAL REPRESENTATIVE OF THE INJURED PARTY (**not filing attorney**) – If the INJURED PARTY is legally incompetent or deceased, and has a PERSONAL REPRESENTATIVE other than, or in addition to, his/her attorney, provide the following information for the PERSONAL REPRESENTATIVE submitting the claim. **(Enclose written evidence of your authority to act on behalf of the INJURED PARTY.)**

    **1.** Name of PERSONAL REPRESENTATIVE:

        Last

        First      MI

    **2.** Relationship to INJURED PARTY:
        The PERSONAL REPRESENTATIVE is the INJURED PARTY'S:

        (Guardian, Administrator, Brother, etc.)

    **3.** PERSONAL REPRESENTATIVE's mailing address:

        Street/P.O. Box

        City      State      Zip

**C.** Attorney – If the CLAIMANT is represented by an attorney, provide the following information.

    **1.** Attorney Name:

        Last

        First      MI

    **2.** Email Contact Information:

    **3.** Name of Law Firm:

        (Print full name)

    **4.** Firm Address:

        Street/P.O. Box

        City      State      Zip

    **5.** Phone Number:  (   )   –

        Fax Number:  (   )   –

**PART 2:  ASBESTOS-RELATED AND OTHER INJURIES**

Provide information about the Injured Party's asbestos-related personal injury.

1.  Has the Injured Party been diagnosed with cancer?    Yes ☐    No ☐

2.  If "Yes," identify the type of cancer that was diagnosed for the Injured Party and the date of diagnosis.  Refer to the definitions of Lung Cancer, Mesothelioma, and Other Cancer on page 1 of this Questionnaire.

Lung Cancer ☐          Date of Diagnosis: ☐☐ / ☐☐☐☐
                                           Month      Year

Mesothelioma ☐         Date of Diagnosis: ☐☐ / ☐☐☐☐
                                           Month      Year

Other Cancer ☐         Date of Diagnosis: ☐☐ / ☐☐☐☐
                                           Month      Year

If Other Cancer, identify what type.

```



```

3.  a.  Has the doctor who made the diagnosis of cancer stated that
        the cancer in question was caused by asbestos exposure?    Yes ☐    No ☐

    b.  Has any doctor stated that the cancer in question was caused
        by asbestos exposure or that asbestos exposure was a
        substantial contributing factor in the cause of the disease?    Yes ☐    No ☐

4.  Has the Injured Party been diagnosed with a non-malignant
    asbestos-related condition?    Yes ☐    No ☐

5.  If "Yes," identify the type of non-malignant asbestos-related condition that was diagnosed for the Injured Party and the date of diagnosis.  Refer to the definitions of Pleural Plaques, Diffuse Pleural Thickening, and Asbestosis on page 1 of this Questionnaire.

Pleural Plaques ☐              Date of Diagnosis: ☐☐ / ☐☐☐☐
                                                   Month      Year

Diffuse Pleural Thickening ☐   Date of Diagnosis: ☐☐ / ☐☐☐☐
                                                   Month      Year

Asbestosis ☐                   Date of Diagnosis: ☐☐ / ☐☐☐☐
                                                   Month      Year

Other Non-Malignant

Asbestos-Related Condition ☐   Date of Diagnosis: ☐☐ / ☐☐☐☐
                                                   Month      Year

If Other Non-Malignant Asbestos-Related Condition, identify what type.

```



```

**PART 2:  ASBESTOS-RELATED AND OTHER INJURIES (Continued)**

6.  a.  Has the doctor who made the diagnosis of non-malignant asbestos-related condition stated that the condition in question was caused by asbestos exposure?     Yes ☐   No ☐

   b.  Has any doctor stated that the non-maglignant asbestos-related condition in question was caused by asbestos exposure or that asbestos exposure was a substantial contributing factor in the cause of the condition?     Yes ☐   No ☐

7.  a.  Has the INJURED PARTY taken a pulmonary function test (PFT)?     Yes ☐   No ☐   Do Not Know ☐

   b.  If "Yes," provide all of the following information regarding the INJURED PARTY's __most recent__ pulmonary function test (PFT) results.

   FORCED VITAL CAPACITY (FVC):

   Test Date: ☐☐ / ☐☐ / ☐☐☐☐   Result: ☐ . ☐☐ L   % of Predicted: ☐☐☐ %
   Month      Day      Year

   FORCED EXPIRATORY VOLUME (FEV₁):

   Test Date: ☐☐ / ☐☐ / ☐☐☐☐   Result: ☐ . ☐☐ L   % of Predicted: ☐☐☐ %
   Month      Day      Year

   TOTAL LUNG CAPACITY (TLC):

   Test Date: ☐☐ / ☐☐ / ☐☐☐☐   Result: ☐ . ☐☐ L   % of Predicted: ☐☐☐ %
   Month      Day      Year

   DIFFUSION CAPACITY (DLCO or D$_{co}$):

   Test Date: ☐☐ / ☐☐ / ☐☐☐☐   Result: ☐ . ☐☐ L   % of Predicted: ☐☐☐ %
   Month      Day      Year

8.  a.  Has the INJURED PARTY had an ILO reading of a chest x-ray?     Yes ☐   No ☐   Do Not Know ☐

   b.  If "Yes," provide information regarding the INJURED PARTY's __most recent__ ILO x-ray reading.

   Reading Date: ☐☐ / ☐☐ / ☐☐☐☐   Results: ☐ / ☐
   Month      Day      Year

9.  a.  Has the INJURED PARTY been diagnosed with any other lung condition?     Yes ☐   No ☐

   Another lung condition includes but is not limited to:
   (i)   chronic obstructive pulmonary disease (including emphysema and chronic bronchitis),
   (ii)  asthma,
   (iii) pneumonia,
   (iv) interstitial lung disease (idiopathic pulmonary fibrosis),
   (v)  silicosis,
   (vi) effusion (fluid around the lung (pleural cavity)), and
   (vii) congestive heart failure (fluid in the lung) (lung edema).

   b.  If "Yes," identify the other lung condition.

   [                                                                        ]

10. If in Part 2, Question 2, you allege that the INJURED PARTY has been diagnosed with MESOTHELIOMA, complete this question. Otherwise, continue to Question 11.

   Attach to this Questionnaire a copy of a narrative statement from a diagnosing physician that shows the alleged MESOTHELIOMA diagnosis, and provide the following information regarding the diagnosing physician.

   a.  Doctor's Name: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐
                                          Last

   ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐   ☐
                    First                                MI

   b.  Doctor's Address: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐
                                      Street/P.O. Box

   ☐☐☐☐☐☐☐☐☐☐☐☐☐   ☐☐   ☐☐☐☐☐
                City                          State        Zip

**PART 2:  ASBESTOS-RELATED AND OTHER INJURIES (Continued)**

11. If in Part 2, Question 2, you allege that the Injured Party has been diagnosed with Lung Cancer or Other Cancer, complete this question. Otherwise, continue to Question 12.

   Attach to this Questionnaire copies of all medical documents identified in Instruction 6, subsection B. See page 2 of the Questionnaire.

   Provide the following information regarding the Injured Party's doctor(s). If you allege that the Injured Party has been diagnosed with both Lung Cancer and Other Cancer, or with more than one type of Other Cancer, copy this section and complete it for each alleged diagnosis.

   **A.   For the doctor who made the alleged diagnosis of Lung Cancer or Other Cancer:**

   a.   Doctor's Name:

   Last

   First                                                                                    MI

   b.   Doctor's Address:

   Street/P.O. Box

   City                                                        State                Zip

   c.   Doctor's Diagnosis:    ☐ Lung Cancer    ☐ Other Cancer, Identify what type:

   **B.   For the doctor, if any, who issued the most recent pathology report regarding the alleged diagnosis:**

   a.   Doctor's Name:

   Last

   First                                                                                    MI

   b.   Doctor's Address:

   Street/P.O. Box

   City                                                        State                Zip

12. If in Part 2, Question 2, you allege that the Injured Party has been diagnosed with Pleural Plaques, Diffuse Pleural Thickening, Asbestosis, or another non-malignant asbestos-related condition, complete this question. Otherwise, continue to Part 3.

   Attach to this Questionnaire copies of all medical documents identified in Instruction 6, subsection B. See page 2 of the Questionnaire.

   Provide the following information regarding the Injured Party's doctor(s). If you allege that the Injured Party has been diagnosed with more than one non-malignant asbestos-related condition, copy this section and complete it for each alleged diagnosis.

   **A.   For the doctor who made the alleged diagnosis of Pleural Plaques, Diffuse Pleural Thickening, Asbestosis, or another non-malignant asbestos-related condition:**

   a.   Doctor's Name:

   Last

   First                                                                                    MI

   b.   Doctor's Address:

   Street/P.O. Box

   City                                                        State                Zip

   c.   Doctor's Diagnosis:

   ☐ Pleural Plaques        ☐ Diffuse Pleural Thickening        ☐ Asbestosis

   ☐ Other Non-Malignant Asbestos-Related Condition, Specify:

**PART 2:  ASBESTOS-RELATED AND OTHER INJURIES (Continued)**

B.  For the doctor, if any, who issued the <u>most recent</u> pathology report regarding the alleged diagnosis:

   a.  Doctor's Name:

   Last

   First                                                                MI

   b.  Doctor's Address:

   Street/P.O. Box

   City                                        State              Zip

C.  For the doctor, if any, who issued the <u>most recent</u> ILO x-ray reading of the Injured Party:

   a.  Doctor's Name:

   Last

   First                                                                MI

   b.  Doctor's Address:

   Street/P.O. Box

   City                                        State              Zip

D.  For the doctor, if any, who took the <u>most recent</u> pulmonary function test (PFT) of the Injured Party:

   a.  Doctor's Name:

   Last

   First                                                                MI

   b.  Doctor's Address:

   Street/P.O. Box

   City                                        State              Zip

E.  For the doctor, if any, who <u>most recently</u> treated the Injured Party for the alleged diagnosis:

   a.  Doctor's Name:

   Last

   First                                                                MI

   b.  Doctor's Address:

   Street/P.O. Box

   City                                        State              Zip

**PART 3: SMOKING HISTORY OF THE INJURED PARTY**

If in Part 2, you allege that the INJURED PARTY has been diagnosed with MESOTHELIOMA, continue to Part 4. Otherwise, complete this Part.

1.  Has the INJURED PARTY ever smoked cigarettes, cigars, or pipes?    Yes ☐    No ☐

    Mark the box(es) that apply and provide the information requested.

| | Age When First Started Smoking | Date, If Any, When Completely Stopped Smoking | Average Daily Usage |
|---|---|---|---|
| **Cigarettes:** ☐ | ☐☐ Age Started | ☐☐ / ☐☐☐☐ Month Year | Packs per Day: ☐☐ . ☐ * (#) |
| **Cigars:** ☐ | ☐☐ Age Started | ☐☐ / ☐☐☐☐ Month Year | Cigars per Day: ☐☐ . ☐ * (#) |
| **Pipes:** ☐ | ☐☐ Age Started | ☐☐ / ☐☐☐☐ Month Year | Pipes per Day: ☐☐ . ☐ * (#) |

2.  Has the INJURED PARTY ever used chewing tobacco or snuff?    Yes ☐    No ☐

    Mark the box(es) that apply and provide the information requested.

| | Age When First Started Using | Date, If Any, When Completely Stopped Using | Average Daily Usage |
|---|---|---|---|
| **Chewing Tobacco:** ☐ | ☐☐ Age Started | ☐☐ / ☐☐☐☐ Month Year | Number of Times per Day: ☐☐ . ☐ * (#) |
| **Snuff:** ☐ | ☐☐ Age Started | ☐☐ / ☐☐☐☐ Month Year | Number of Times per Day: ☐☐ . ☐ * (#) |

*    Indicate fractional amounts as appropriate, e.g., three and one-half would be entered as 3.5.

**PART 4:  OCCUPATIONAL EXPOSURE TO PRODUCTS OF UNITED STATES GYPSUM COMPANY OR ANY OTHER DEBTOR**

Provide information about the Injured Party's occupational exposure to asbestos-containing products that were manufactured or sold by US Gypsum or any other Debtor.  In Appendix B to the Questionnaire, you will find a description of the businesses of US Gypsum and other Debtors and a listing of the types of products they manufactured or sold that may have contained asbestos.

1.  Did the Injured Party have occupational exposure to an asbestos-containing product manufactured or sold by US Gypsum or another Debtor?                    Yes ☐    No ☐

   **If "Yes," complete the remainder of this Part as instructed.**

   **If "No," continue to Part 5.**

2.  Did the Injured Party have occupational exposure to more than one asbestos-containing product manufactured or sold by US Gypsum or another Debtor?                    Yes ☐    No ☐

   **If "Yes," copy this Part and complete the Part for each product.**

3.  Product Exposed To: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐
   (one product per page)

   Brand Name: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

   Manufacturer of Product: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

   What is the basis for your belief that the exposure was to a Debtor's product and not to another manufacturer's?

   ☐ Personal Recollection    ☐ Other, Specify: _____

   If you rely on a co-worker of the Injured Party or on another person for your belief that the Injured Party was exposed to a Debtor's product, provide that person's name:

   ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐
   Last

   ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐  ☐
   First                                                                                    MI

   If you rely on a co-worker or other person, has this person been deposed in any asbestos-related personal injury action?                    Yes ☐    No ☐

   **If the co-worker or other person has been deposed, attach to this Questionnaire a copy of any and all such depositions.**

4.  Was the Injured Party exposed to the product in more than one occupation? (Use the Standard Occupational Classification Codes listed in Appendix C.)

   **If "Yes," copy this Part and complete the Part for each occupation.**        Yes ☐    No ☐

5.  Occupation during exposure:
   (Use the Standard Occupational Classification Codes listed in Appendix C.)        ☐☐☐  Specify if "Other": _____

6.  Industry during exposure:
   (Use the Standard Industrial Classification Codes listed in Appendix D.)        ☐☐☐  Specify if "Other": _____

**PART 4:  OCCUPATIONAL EXPOSURE TO PRODUCTS OF UNITED STATES GYPSUM COMPANY
OR ANY OF THE DEBTORS (Continued)**

7.  Provide the date range and frequency of product exposure in the occupation and industry listed in Questions 5 and 6. If exposure was not continuous in the listed occupation and industry, provide all separate date ranges and frequencies of exposure.  Start with the first date range of exposure and finish with the last date range of exposure.  If there are more than four date ranges of exposure, copy this section before completing it and attach additional pages.

For each date range of exposure, describe the exposure type as A, B, C, or D as follows:

The INJURED PARTY was:

(A)  a worker who personally worked with the product identified in Question 3 of this Part;
(B)  a worker in a room where other workers were personally working with the product identified in Question 3 of this Part;
(C)  a worker on a floor where other workers were personally working with the product identified in Question 3 of this Part; or
(D)  a worker at a site where other workers were personally working with the product identified in Question 3 of this Part.

Choose the category that best describes the INJURED PARTY's type of exposure and choose only one category. The best category is the INJURED PARTY's most typical or most usual form of exposure during the date range at issue.

Estimate the frequency of exposure as the average number of man-days per month and hours per man-day that the INJURED PARTY was exposed during the listed date range. If you are unable to do so, then estimate the aggregate number of man-days of exposure during the date range. One man-day of exposure equals eight hours of exposure.

**Date Range of Exposure:**

From: [  ] / [    ]
        Month    Year

To: [  ] / [    ]
      Month    Year

**Exposure Type:**

Indicate A, B, C or D per Instructions above.

[  ]

**Frequency of Exposure During this Date Range:**
Estimate either:

Regular Exposure:        OR        Aggregate Exposure:

[  ] Man-Day(s) per Month        [    ]
and                                Total Man-Day(s) per
[  ] Hour(s) per Man-Day          Instructions above

---

**Date Range of Exposure:**

From: [  ] / [    ]
        Month    Year

To: [  ] / [    ]
      Month    Year

**Exposure Type:**

Indicate A, B, C or D per Instructions above.

[  ]

**Frequency of Exposure During this Date Range:**
Estimate either:

Regular Exposure:        OR        Aggregate Exposure:

[  ] Man-Day(s) per Month        [    ]
and                                Total Man-Day(s) per
[  ] Hour(s) per Man-Day          Instructions above

---

**Date Range of Exposure:**

From: [  ] / [    ]
        Month    Year

To: [  ] / [    ]
      Month    Year

**Exposure Type:**

Indicate A, B, C or D per Instructions above.

[  ]

**Frequency of Exposure During this Date Range:**
Estimate either:

Regular Exposure:        OR        Aggregate Exposure:

[  ] Man-Day(s) per Month        [    ]
and                                Total Man-Day(s) per
[  ] Hour(s) per Man-Day          Instructions above

---

**Date Range of Exposure:**

From: [  ] / [    ]
        Month    Year

To: [  ] / [    ]
      Month    Year

**Exposure Type:**

Indicate A, B, C or D per Instructions above.

[  ]

**Frequency of Exposure During this Date Range:**
Estimate either:

Regular Exposure:        OR        Aggregate Exposure:

[  ] Man-Day(s) per Month        [    ]
and                                Total Man-Day(s) per
[  ] Hour(s) per Man-Day          Instructions above

---

8.  Describe the INJURED PARTY's job duties:  (attach additional pages if needed)

[                                                                    ]

9.  Describe how the product identified in Question 3 of this Part was used at the site(s):  (attach additional pages if needed)

[                                                                    ]

10. If the exposure(s) listed in response to the above questions was/were at a construction site, estimate the percentage of time such exposure(s) occurred at residential and commercial sites:

Residential: [    ] %    Commercial: [    ] %    = 100 %

**PART 5:  OCCUPATIONAL EXPOSURE TO OTHER ASBESTOS-CONTAINING PRODUCTS**

Provide information about the Injured Party's occupational exposure to asbestos-containing products that were not manufactured or sold by US Gypsum or another Debtor.

1.  **Did the Injured Party have occupational exposure to an asbestos-containing product that was not manufactured or sold by US Gypsum or another Debtor?**    Yes ☐    No ☐

   **If "Yes," complete the remainder of this Part as instructed.**

   **If "No," continue to Part 6.**

2.  **Did the Injured Party have occupational exposure to more than one asbestos-containing product that was not manufactured or sold by US Gypsum or another Debtor?**    Yes ☐    No ☐

   **If "Yes," copy this Part and complete the Part for each product.**

3.  **Product Exposed To:**    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

   (one product per page)

   **Brand Name:**    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

   **Manufacturer of Product:**    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

4.  **Was the Injured Party exposed to the product in more than one occupation?  (Use the Standard Occupational Classification Codes listed in Appendix C.)**    Yes ☐    No ☐

   **If "Yes," copy this Part and complete the Part for each occupation.**

5.  **Occupation during exposure:**
   **(Use the Standard Occupational Classification Codes listed in Appendix C.)**    [ ][ ][ ]    Specify if "Other": [                    ]

   **If the Injured Party was exposed to the Product in more than one occupation, copy this Part and complete the Part for each occupation.**

6.  **Industry during exposure:**
   **(Use the Standard Industrial Classification Codes listed in Appendix D.)**    [ ][ ][ ]    Specify if "Other": [                    ]

**PART 5:  OCCUPATIONAL EXPOSURE TO OTHER ASBESTOS-CONTAINING PRODUCTS (Continued)**

7.  Provide the date range and frequency of product exposure in the occupation and industry listed in Questions 5 and 6. If exposure was not continuous in the listed occupation and industry, provide all separate date ranges and frequencies of exposure.  Start with the first date range of exposure and finish with the last date range of exposure.  If there are more than four date ranges of exposure, copy this section before completing it and attach additional pages.

   For each date range of exposure, describe the exposure type as A, B, C, or D as follows:

   The INJURED PARTY was:

   (A)  a worker who personally worked with the product identified in Question 3 of this Part;
   (B)  a worker in a room where other workers were personally working with the product identified in Question 3 of this Part;
   (C)  a worker on a floor where other workers were personally working with the product identified in Question 3 of this Part; or
   (D)  a worker at a site where other workers were personally working with the product identified in Question 3 of this Part.

   Choose the category that best describes the INJURED PARTY's type of exposure and choose only one category. The best category is the INJURED PARTY's most typical or most usual form of exposure during the date range at issue.

   Estimate the frequency of exposure as the average number of man-days per month and hours per man-day that the INJURED PARTY was exposed during the listed date range. If you are unable to do so, then estimate the aggregate number of man-days of exposure during the date range. One man-day of exposure equals eight hours of exposure.

| Date Range of Exposure: | Exposure Type: | Frequency of Exposure During this Date Range: |
|---|---|---|
| From: [  ] / [  ] Month  Year  To: [  ] / [  ] Month  Year | Indicate A, B, C or D per Instructions above. [  ] | Estimate either: Regular Exposure:  **OR**  Aggregate Exposure: [  ] Man-Day(s) per Month _and_ [  ] Hour(s) per Man-Day   Total Man-Day(s) per Instructions above |
| Date Range of Exposure:  From: [  ] / [  ] Month  Year  To: [  ] / [  ] Month  Year | Exposure Type:  Indicate A, B, C or D per Instructions above. [  ] | Frequency of Exposure During this Date Range:  Estimate either: Regular Exposure:  **OR**  Aggregate Exposure: [  ] Man-Day(s) per Month _and_ [  ] Hour(s) per Man-Day   Total Man-Day(s) per Instructions above |
| Date Range of Exposure:  From: [  ] / [  ] Month  Year  To: [  ] / [  ] Month  Year | Exposure Type:  Indicate A, B, C or D per Instructions above. [  ] | Frequency of Exposure During this Date Range:  Estimate either: Regular Exposure:  **OR**  Aggregate Exposure: [  ] Man-Day(s) per Month _and_ [  ] Hour(s) per Man-Day   Total Man-Day(s) per Instructions above |
| Date Range of Exposure:  From: [  ] / [  ] Month  Year  To: [  ] / [  ] Month  Year | Exposure Type:  Indicate A, B, C or D per Instructions above. [  ] | Frequency of Exposure During this Date Range:  Estimate either: Regular Exposure:  **OR**  Aggregate Exposure: [  ] Man-Day(s) per Month _and_ [  ] Hour(s) per Man-Day   Total Man-Day(s) per Instructions above |

8.  Describe the INJURED PARTY's job duties:  (attach additional pages if needed)

   [                                                                          ]

9.  Describe how the product identified in Question 3 of this Part was used at the site(s):  (attach additional pages if needed)

   [                                                                          ]

10.  If the exposure(s) listed in response to the above questions was/were at a construction site, estimate the percentage of time such exposure(s) occurred at residential and commercial sites:

   Residential: [  ] %   Commercial: [  ] %   **= 100 %**

**PART 6:  OCCUPATIONAL HISTORY**

Provide the complete occupational history of the INJURED PARTY in chronological order, starting with the INJURED PARTY'S earliest employer.  Include all jobs in which the INJURED PARTY worked at least a month, including any summer jobs, and conclude with any current employment. For Occupation Codes, use the Standard Occupational Classification Codes listed in Appendix C.  For Industry Codes, use the Standard Industrial Classification Codes listed in Appendix D.  If the INJURED PARTY has had more jobs than can fit on this page, copy the page before filling it out as many times as needed and complete the additional pages.

1.  **Employer Name:**

**Employer Address:**

Street

City                          State          Zip

**Dates Worked:**

From: ____ / ____   To: ____ / ____

Month    Year        Month    Year

**Occupation Code:** ____   **Specify if "Other":** _____

**Industry Code:** ____   **Specify if "Other":** _____

2.  **Employer Name:**

**Employer Address:**

Street

City                          State          Zip

**Dates Worked:**

From: ____ / ____   To: ____ / ____

Month    Year        Month    Year

**Occupation Code:** ____   **Specify if "Other":** _____

**Industry Code:** ____   **Specify if "Other":** _____

3.  **Employer Name:**

**Employer Address:**

Street

City                          State          Zip

**Dates Worked:**

From: ____ / ____   To: ____ / ____

Month    Year        Month    Year

**Occupation Code:** ____   **Specify if "Other":** _____

**Industry Code:** ____   **Specify if "Other":** _____

**PART 7:  OTHER EXPOSURE TO ASBESTOS**

1.  a.  Was the INJURED PARTY exposed to asbestos outside the INJURED PARTY's occupation?

Yes ☐  No ☐

b.  Was the INJURED PARTY exposed to asbestos through another person (the "Source Individual")?

Yes ☐  No ☐

If you checked "Yes" to either Question 1(a) or Question 1(b), answer Questions 2 through 4.  If you checked "Yes" to Question 1(b), additionally answer Questions 5 through 14.

2.  Was the INJURED PARTY exposed to more than one asbestos-containing product outside the INJURED PARTY's occupation or through a Source Individual?

Yes ☐  No ☐

If "Yes," copy this Part and complete the Part for each product.

3.  Product Exposed To: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

(either directly or through Source Individual)

Brand Name: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

Manufacturer of Product: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

What is the basis for your belief that the exposure was to a DEBTOR's product and not to another manufacturer's?

☐ Personal Recollection    ☐ Other, Specify: _____

If you rely on another person for your belief that the INJURED PARTY was exposed to a DEBTOR's product, provide that person's name:

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

Last

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐  ☐

First                                                                MI

If you rely on another person, has this person been deposed in any asbestos-related personal injury action?

Yes ☐  No ☐

If the other person has been deposed, attach to this Questionnaire a copy of any and all such depositions.

**PART 7:  OTHER EXPOSURE TO ASBESTOS (Continued)**

4.  Provide the date range and frequency of the INJURED PARTY's product exposure (either direct or through the Source Individual).  If exposure was not continuous, provide all separate date ranges and frequencies of exposure.  Start with the first date range of exposure and finish with the last date range of exposure.  If there are more than four date ranges of exposure, copy this section before completing it and attach additional pages.

Estimate the frequency of exposure as the average number of man-days per month and hours per man-day that the INJURED PARTY was exposed during the listed date range.  If you are unable to do so, then estimate the aggregate number of man-days of exposure during the date range.  One man-day of exposure equals eight hours of exposure.

**Date Range of Exposure:**

From: [  ][  ] / [  ][  ][  ][  ]
    Month       Year

To: [  ][  ] / [  ][  ][  ][  ]
    Month       Year

**Frequency of Exposure During this Date Range:**
Estimate either:

Regular Exposure:    **OR**    Aggregate Exposure:

[  ] Man-Day(s) per Month
and
[  ] Hour(s) per Man-Day

[  ] Total Man-Day(s) per Instructions above

**Date Range of Exposure:**

From: [  ][  ] / [  ][  ][  ][  ]
    Month       Year

To: [  ][  ] / [  ][  ][  ][  ]
    Month       Year

**Frequency of Exposure During this Date Range:**
Estimate either:

Regular Exposure:    **OR**    Aggregate Exposure:

[  ] Man-Day(s) per Month
and
[  ] Hour(s) per Man-Day

[  ] Total Man-Day(s) per Instructions above

**Date Range of Exposure:**

From: [  ][  ] / [  ][  ][  ][  ]
    Month       Year

To: [  ][  ] / [  ][  ][  ][  ]
    Month       Year

**Frequency of Exposure During this Date Range:**
Estimate either:

Regular Exposure:    **OR**    Aggregate Exposure:

[  ] Man-Day(s) per Month
and
[  ] Hour(s) per Man-Day

[  ] Total Man-Day(s) per Instructions above

**Date Range of Exposure:**

From: [  ][  ] / [  ][  ][  ][  ]
    Month       Year

To: [  ][  ] / [  ][  ][  ][  ]
    Month       Year

**Frequency of Exposure During this Date Range:**
Estimate either:

Regular Exposure:    **OR**    Aggregate Exposure:

[  ] Man-Day(s) per Month
and
[  ] Hour(s) per Man-Day

[  ] Total Man-Day(s) per Instructions above

5.  **Source Individual's Name (if you checked "Yes" to Question 1(b)):**

[ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]
Last

[ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]  [ ]
First                         MI

6.  **Was the Source Individual exposed to the product in more than one occupation? (Use the Standard Occupational Classification Codes listed in Appendix C.)**

Yes [  ]  No [  ]

**If "Yes," copy this Part and complete the Part for each occupation.**

7.  **Source Individual's occupation during exposure: (Use Standard Occupational Classification Codes listed in Appendix C.)**  [  ][  ]  Specify if "Other": [                    ]

8.  **Source Individual's industry during exposure: (Use the Standard Industrial Classification Codes listed in Appendix D.)**  [  ][  ]  Specify if "Other": [                    ]

**PART 7:  OTHER EXPOSURE TO ASBESTOS (Continued)**

9.  Provide the date range and frequency of the Source Individual's product exposure in the occupation and industry listed in Questions 7 and 8.  If the Source Individual's exposure was not continuous in the listed occupation and industry, provide all separate date ranges and frequencies of exposure.  Start with the first date range of exposure and finish with the last date range of exposure.  If there are more than four date ranges of exposure, copy this section before completing it and attach additional pages.

For each date range of exposure, describe the exposure type as A, B, C, or D as follows:

The Source Individual was:

(A)  a worker who personally worked with the product identified in Question 3 of this Part;

(B)  a worker in a room where other workers were personally working with the product identified in Question 3 of this Part;

(C)  a worker on a floor where other workers were personally working with the product identified in Question 3 of this Part; OR

(D)  a worker at a site where other workers were personally working with the product identified in Question 3 of this Part.

Choose the category that best describes the Source Individual's type of exposure and choose only one category.  The best category is the Source Individual's most typical or most usual form of exposure during the date range at issue.

Estimate the frequency of exposure as the average number of man-days per month and hours per man-day that the Source Individual was exposed during the listed date range.  If you are unable to do so, then estimate the aggregate number of man-days of exposure during the date range. One man-day of exposure equals eight hours of exposure.

| Date Range of Exposure: | Exposure Type: | Frequency of Exposure During this Date Range: |
|---|---|---|
| From: ☐☐ / ☐☐☐☐ <br>     Month    Year <br> To: ☐☐ / ☐☐☐☐ <br>     Month    Year | Indicate A, B, C or D per Instructions above. ☐ | Estimate either: <br> Regular Exposure:  **OR**  Aggregate Exposure: <br> ☐ Man-Day(s) per Month <br> **and** <br> ☐ Hour(s) per Man-Day  ☐☐☐ Total Man-Day(s) per Instructions above |
| From: ☐☐ / ☐☐☐☐ <br>     Month    Year <br> To: ☐☐ / ☐☐☐☐ <br>     Month    Year | Indicate A, B, C or D per Instructions above. ☐ | Estimate either: <br> Regular Exposure:  **OR**  Aggregate Exposure: <br> ☐ Man-Day(s) per Month <br> **and** <br> ☐ Hour(s) per Man-Day  ☐☐☐ Total Man-Day(s) per Instructions above |
| From: ☐☐ / ☐☐☐☐ <br>     Month    Year <br> To: ☐☐ / ☐☐☐☐ <br>     Month    Year | Indicate A, B, C or D per Instructions above. ☐ | Estimate either: <br> Regular Exposure:  **OR**  Aggregate Exposure: <br> ☐ Man-Day(s) per Month <br> **and** <br> ☐ Hour(s) per Man-Day  ☐☐☐ Total Man-Day(s) per Instructions above |
| From: ☐☐ / ☐☐☐☐ <br>     Month    Year <br> To: ☐☐ / ☐☐☐☐ <br>     Month    Year | Indicate A, B, C or D per Instructions above. ☐ | Estimate either: <br> Regular Exposure:  **OR**  Aggregate Exposure: <br> ☐ Man-Day(s) per Month <br> **and** <br> ☐ Hour(s) per Man-Day  ☐☐☐ Total Man-Day(s) per Instructions above |

10. Source Individual's Social Security Number:  ☐☐☐ - ☐☐ - ☐☐☐☐ *

    *  A confidentiality agreement limits disclosure and use of this social security number to persons involved in this case for purposes related to the case.

11. Source Individual's Gender:  Male ☐  Female ☐

12. Source Individual's Date of Birth:  ☐☐ / ☐☐ / ☐☐☐☐

**PART 7: OTHER EXPOSURE TO ASBESTOS (Continued)**

**13. If the Source Individual is living, provide that person's mailing address:**

Street/P.O. Box

City                        State          Zip

**14. Source Individual's Relationship to Injured Party:**

The Injured Party is the Source Individual's:

(Spouse, Son, Daughter, etc.)

**PART 8:  THE INJURED PARTY'S LAWSUITS AND BANKRUPTCY CLAIMS**

**A.  LAWSUITS**

1. Has a lawsuit been filed by or on behalf of the INJURED PARTY for an asbestos-related personal injury?

   Yes [　]　No [　]

   **If "Yes," complete the remainder of Part 8.A as instructed.  If "No," continue to Part 8.B.**

2. Has more than one lawsuit been filed by or on behalf of the INJURED PARTY for an asbestos-related personal injury?

   Yes [　]　No [　]

   **If "Yes," copy Part 8.A and complete the Part for each lawsuit filed.**

3. Case Caption:

   [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

4. Case Number:

   [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

5. Court Name:

   [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

6. Case Filing Date:  [ ][ ] / [ ][ ] / [ ][ ][ ][ ]
   
   　　　　　　　　　Month　　Day　　　　Year

7. Did the INJURED PARTY or the PERSONAL REPRESENTATIVE OF THE INJURED PARTY respond to any interrogatories in this lawsuit?

   Yes [　]　No [　]

   **If "Yes," attach to this Questionnaire a copy of any and all such interrogatory responses.**

8. Were the INJURED PARTY or the PERSONAL REPRESENTATIVE OF THE INJURED PARTY deposed in this lawsuit?

   Yes [　]　No [　]

   **If "Yes," attach to this Questionnaire a copy of any and all such depositions.**

9. a. Was the lawsuit dismissed?　　　　　　　　　　　　　　　Yes [　]　No [　]

   b. If "Yes," the basis for dismissal:

   [ ]

10. a. Has a judgment or verdict been entered in this lawsuit?　　Yes [　]　No [　]

    b. If "Yes," against what defendant(s) and in what amount(s)?  If against more than five defendants, copy this question before completing it and complete it for all defendants against whom a judgement or verdict was entered.

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]  $ [ ][ ][ ][ ][ ][ ] . [ ][ ]
    　　　　　　　Defendant　　　　　　　　　　　　Amount

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]  $ [ ][ ][ ][ ][ ][ ] . [ ][ ]
    　　　　　　　Defendant　　　　　　　　　　　　Amount

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]  $ [ ][ ][ ][ ][ ][ ] . [ ][ ]
    　　　　　　　Defendant　　　　　　　　　　　　Amount

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]  $ [ ][ ][ ][ ][ ][ ] . [ ][ ]
    　　　　　　　Defendant　　　　　　　　　　　　Amount

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]  $ [ ][ ][ ][ ][ ][ ] . [ ][ ]
    　　　　　　　Defendant　　　　　　　　　　　　Amount

**PART 8:  THE INJURED PARTY'S LAWSUITS AND BANKRUPTCY CLAIMS (Continued)**

**A.  LAWSUITS (Continued)**

11.  a.  **Was a settlement agreement reached in this lawsuit?**    Yes ☐  No ☐

b.  **If "Yes," were any settlement agreement(s) subject to a binding confidentiality agreement?**    Yes ☐  No ☐

c.  **If "Yes," for each settlement agreement that was the subject of a binding confidentiality agreement, provide the total number of defendant(s) who settled the lawsuit pursuant to the agreement, the aggregate settlement amount for the agreement, the lowest amount paid by a defendant under the agreement, and the highest amount paid by a defendant under the agreement. If there is more than one settlement agreement for the lawsuit, copy this question before completing it and attach additional pages.**

Total Number of Settling Defendant(s): ☐☐          Aggregate Settlement Amount: $ ☐☐☐☐☐☐☐.☐☐

$ ☐☐☐☐☐☐☐.☐☐          $ ☐☐☐☐☐☐☐.☐☐
Highest Settlement Amount                    Lowest Settlement Amount

d.  **If "No," or if some defendants settled the lawsuit without a confidentiality agreement, then identify the defendant(s) who settled the lawsuit without a confidentiality agreement and in what amount(s). If with more than five defendants, copy this question before completing it and complete it for all defendants.**

☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐☐.☐☐
Defendant                                    Amount

☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐☐.☐☐
Defendant                                    Amount

☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐☐.☐☐
Defendant                                    Amount

☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐☐.☐☐
Defendant                                    Amount

☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐☐.☐☐
Defendant                                    Amount

e.  **If a settlement agreement was reached with US Gypsum or another Debtor, have any settlement amounts been paid?**

Yes ☐  No ☐

f.  **If "Yes," by what Debtor(s) and in what amount(s)?  If by more than two Debtors, copy this question before completing it and complete it for all Debtors who paid a settlement amount.**

☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐☐.☐☐
Debtor                                       Amount

☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐☐.☐☐
Debtor                                       Amount

| PART 8:  THE INJURED PARTY'S LAWSUITS AND BANKRUPTCY CLAIMS (Continued) |
|---|

| B.  BANKRUPTCY CLAIMS |
|---|

1.  Has a claim been submitted by or on behalf of the INJURED PARTY for an asbestos-related personal injury in another bankruptcy case ("Other Bankruptcy") or against a trust established pursuant to a plan of reorganization or liquidation in another bankruptcy case ("Bankruptcy Trust")?

Yes ☐    No ☐

**If "Yes," complete the remainder of Part 8.B as instructed.**

**If "No," continue to Part 9.**

2.  Has more than one bankruptcy claim been filed by or on behalf of    Yes ☐    No ☐
the INJURED PARTY for an asbestos-related personal injury?

**If "Yes," copy Part 8.B and complete the Part for each bankruptcy claim filed.**

3.  Other Bankruptcy or Bankruptcy Trust in which the claim was submitted:

| | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

4.  Date the claim was submitted:  ☐☐ / ☐☐ / ☐☐☐☐
                                    Month   Day      Year

5.  Description of the claim:

| |
|---|

6.  Did the INJURED PARTY or the PERSONAL REPRESENTATIVE OF THE INJURED PARTY submit any written claim, including but not limited to a proof of claim form, in the Other Bankruptcy or against the Bankruptcy Trust?

Yes ☐    No ☐

**If "Yes," attach to this Questionnaire a copy of any and all such written claims.**

7.  a.  Was the claim paid?

    Yes ☐    No ☐

    b.  If "Yes," the payment amount:

    $ ☐☐☐☐☐☐☐.☐☐

8.  a.  Was the claim dismissed or otherwise disallowed or not honored?

    Yes ☐    No ☐

    b.  If "Yes," the basis for disallowance:

| |
|---|

**PART 9:  THE SOURCE INDIVIDUAL'S LAWSUITS AND BANKRUPTCY CLAIMS**

**A. LAWSUITS**

If you answered "Yes" to Question 1(b) in Part 7 regarding the INJURED PARTY's exposure to asbestos through a Source Individual, complete this Part as instructed.

If you answered "No," continue to Part 10.

1.  **Has a lawsuit been filed by or on behalf of the Source Individual for an asbestos-related personal injury?**

    Yes ☐    No ☐

    If "Yes," complete the remainder of Part 9.A as instructed.

    If "No," continue to Part 9.B.

2.  **Has more than one lawsuit been filed by or on behalf of the Source Individual for an asbestos-related personal injury?**

    Yes ☐    No ☐

    If "Yes," copy Part 9.A and complete the Part for each lawsuit filed.

3.  **Case Caption:**

4.  **Case Number:**

5.  **Court Name:**

6.  **Case Filing Date:** ☐☐ / ☐☐ / ☐☐☐☐
       Month    Day      Year

7.  **Did the Source Individual respond to any interrogatories in this lawsuit?**    Yes ☐    No ☐
    If "Yes," attach to this Questionnaire a copy of any and all such interrogatory responses.

8.  **Was the Source Individual deposed in this lawsuit?**    Yes ☐    No ☐
    If "Yes," attach to this Questionnaire a copy of any and all such depositions.

9.  a.  **Was the lawsuit dismissed?**    Yes ☐    No ☐
    b.  **If "Yes," the basis for dismissal:**

10. a.  **Has a judgment or verdict been entered in this lawsuit?**    Yes ☐    No ☐
    b.  If "Yes," against what defendant(s) and in what amount(s)?   If against more than five defendants, copy this question before completing it and complete it for all defendants against whom a judgement or verdict was entered.

    | Defendant | $ Amount |
    |---|---|
    | | |
    | | |
    | | |
    | | |
    | | |

**PART 9:  THE SOURCE INDIVIDUAL'S LAWSUITS AND BANKRUPTCY CLAIMS (Continued)**

**A. LAWSUITS (Continued)**

11.  a.  **Was a settlement agreement reached in this lawsuit?**          Yes ☐    No ☐

  b.  **If "Yes," were any settlement agreement(s) subject to a binding confidentiality agreement?**          Yes ☐    No ☐

  c.  **If "Yes," for each settlement agreement that was the subject of a binding confidentiality agreement, provide the total number of defendant(s) who settled the lawsuit pursuant to the agreement, the aggregate settlement amount for the agreement, the lowest amount paid by a defendant under the agreement, and the highest amount paid by a defendant under the agreement. If there is more than one settlement agreement for the lawsuit, copy this question before completing it and attach additional pages.**

  **Total Number of Settling Defendant(s):** ☐☐          **Aggregate Settlement Amount:** $ ☐☐☐☐☐☐☐.☐☐

  $ ☐☐☐☐☐☐☐.☐☐          $ ☐☐☐☐☐☐☐.☐☐
  **Highest Settlement Amount**          **Lowest Settlement Amount**

  d.  **If "No," or if some defendants settled the lawsuit without a confidentiality agreement, then identify the defendant(s) who settled the lawsuit without a confidentiality agreement and in what amount(s). If with more than five defendants, copy this question before completing it and complete it for all defendants.**

  ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐.☐☐
  **Defendant**          **Amount**

  ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐.☐☐
  **Defendant**          **Amount**

  ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐.☐☐
  **Defendant**          **Amount**

  ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐.☐☐
  **Defendant**          **Amount**

  ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐.☐☐
  **Defendant**          **Amount**

  e.  **If a settlement agreement was reached with US GYPSUM or another DEBTOR, have any settlement amounts been paid?**

  Yes ☐    No ☐

  f.  **If "Yes," by what DEBTOR(s) and in what amount(s)?  If by more than two DEBTORS, copy this question before completing it and complete it for all DEBTORS who paid a settlement amount.**

  ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐.☐☐
  **DEBTOR**          **Amount**

  ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐.☐☐
  **DEBTOR**          **Amount**

**PART 9:  THE SOURCE INDIVIDUAL'S LAWSUITS AND BANKRUPTCY CLAIMS (Continued)**

**B.  BANKRUPTCY CLAIMS**

1.  Has a claim been submitted by or on behalf of the Source Individual for an asbestos-related personal injury in another bankruptcy case ("Other Bankruptcy") or against a trust established pursuant to a plan of reorganization or liquidation in another bankruptcy case ("Bankruptcy Trust")?

    Yes ☐    No ☐

    If "Yes," complete the remainder of Part 9.B as instructed.

    If "No," continue to Part 10.

2.  Has more than one bankruptcy claim been filed by or on behalf of the Source Individual for an asbestos-related personal injury?

    Yes ☐    No ☐

3.  Other Bankruptcy or Bankruptcy Trust in which the claim was submitted:

    [                                        ]

4.  Date the claim was submitted:  ☐☐ / ☐☐ / ☐☐☐☐
                                    Month   Day      Year

5.  Description of the claim:  [                        ]

6.  Did the Source Individual submit any written claim, including but not limited to a proof of claim form, in the Other Bankruptcy or against the Bankruptcy Trust?

    Yes ☐    No ☐

    If "Yes," attach to this Questionnaire a copy of any and all such written claims.

7.  a.  Was the claim paid?

    Yes ☐    No ☐

    b.  If "Yes," the payment amount:
        $ ☐☐☐☐☐☐☐ . ☐☐

8.  a.  Was the claim dismissed or otherwise disallowed or not honored?

    Yes ☐    No ☐

    b.  If "Yes," the basis for disallowance:
        [                                        ]

**PART 10:  CERTIFICATION THAT INFORMATION IS TRUE AND COMPLETE**

Make sure that this Questionnaire is certified as true and complete by the CLAIMANT and by any attorney that the CLAIMANT has.  Both the CLAIMANT (either the INJURED PARTY or the PERSONAL REPRESENTATIVE OF THE INJURED PARTY) and any attorney for the CLAIMANT must sign below.

1.  Use the checklist below to indicate which document(s) you are submitting with this Questionnaire and which you seek reimbursement for.  DEBTORS will reimburse your reasonable expenses incurred in copying documents that you submit.  Attach to this Questionnaire a receipt that shows the copy costs you incurred.

☐     Medical reports or records regarding a diagnosis alleged in Part 2     ☐ Copy costs sought

☐     Responses to interrogatories in lawsuits indicated in Parts 8 or 9     ☐ Copy costs sought

☐     Radiographic evaluations, such as x-rays or CT scans     ☐ Originals attached as required

☐     Depositions in lawsuits indicated in Parts 4, 8, or 9     ☐ Copy costs sought

☐     Pulmonary function test (PFT) reports, including spirogram tracings, FORCED VITAL CAPACITY (FVC), FORCED EXPIRATORY VOLUME ($FEV_1$), TOTAL LUNG CAPACITY (TLC), and DIFFUSION CAPACITY (DLCO OR $D_{CO}$)     ☐ Copy costs sought

☐     Written claims, including proof of claim forms, in another bankruptcy or against a bankruptcy trust indicated in Parts 8 or 9     ☐ Copy costs sought

☐     Written evidence of the authority of the PERSONAL REPRESENTATIVE OF THE INJURED PARTY to act on behalf of the INJURED PARTY (if this Questionnaire is submitted by the PERSONAL REPRESENTATIVE)     ☐ Copy costs sought

☐     Death certificate (if the INJURED PARTY is deceased)     ☐ Copy costs sought

Total amount of copy costs sought:     $ ☐☐☐☐ . ☐☐
                                                                  **Amount**

☐     A receipt showing copy costs is attached.

2.  Complete and sign the Authorization for Release of Earnings Information and Employment Records From the Social Security Administration contained in Appendix A.

A confidentiality agreement entered in this case limits disclosure and use of the records and information received from the Social Security Administration pursuant to the Authorization. See Instruction No. 11 on page 3.

☐     The executed release is attached.

3.  I have reviewed the information submitted on this Questionnaire and all supporting documents submitted with it.  I declare, under penalty of perjury, that, to the best of my knowledge, the information submitted is accurate and complete.

☐☐ / ☐☐ / ☐☐☐☐       _____
Month    Day    Year         (Signature of CLAIMANT)

☐☐ / ☐☐ / ☐☐☐☐       _____
Month    Day    Year         (Signature of CLAIMANT's attorney, if any)

<u>Review your Questionnaire to ensure that it is true and complete and that you have attached all supporting documentation</u>.  This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your claim. The penalty for knowingly and fraudulently making a false statement under penalty of perjury is a fine of up to $500,000 or imprisonment for up to five years, or both.

**APPENDIX A**

**AUTHORIZATION FOR RELEASE OF EARNINGS INFORMATION AND EMPLOYMENT RECORDS FROM THE SOCIAL SECURITY ADMINISTRATION**

AUTHORIZATION:

I hereby authorize the Social Security Administration to furnish to the law firm of Cooley Godward LLP, its partners, employees and agents ("Cooley Godward"), any and all earnings information and employment records ("SSA Employment Records") pertaining to:

Name:

Other Name(s) Used (Including Maiden Name):

Social Security Number          Date of Birth

I hereby further authorize Cooley Godward to prepare and sign a Request for Social Security Earnings Information (Form SSA-7050-F4) on my behalf in order to permit Cooley Godward to request my SSA Employment Records from the Social Security Administration.  I acknowledge that I was provided with a blank copy of a Request for Social Security Earnings Information form (Form SSA-7050-F4) for my reference.

AUTHORIZED PERSONS AND ENTITIES:

This release authorizes Cooley Godward to obtain, receive and use my SSA Employment Records in connection with the litigation entitled *In re USG Corporation*, United States District Court for the District of Delaware, Case Nos. 01-02094 (JKF), 04-1559 (JFC) and 04-1560 (JFC) ("USG Litigation").

A confidentiality agreement entered into by the parties in the USG Litigation provides that the following information may be disclosed only to persons involved in the case, that it will be held in strict confidence by persons who receive it, and that it will be used only for purposes related to the case: (1) my social security number; (2) my SSA Employment Records; and (3) information contained in my SSA Employment Records when disclosed in conjunction with my name, address, or social security number.

DURATION:

This authorization shall become effective immediately and shall expire upon final resolution of the USG Litigation identified above.

SIGNATURE:

Signature          Date

If the Authorization is signed by a Personal Representative of the individual, a description of such representative's authority to act for the individual.

Form Approved
OMB No. 0960-0525

# REQUEST FOR SOCIAL SECURITY EARNINGS INFORMATION

*Use This Form If You Need

### 1. Certified/Non-Certified Detailed Earnings Information

Includes periods of employment or self-employment and the names and addresses of employers.

**OR**

### 2. Certified Yearly Totals of Earnings

Includes total earnings for each year but does not include the names and addresses of employers.

---

**DO NOT USE THIS FORM FOR:**

**Non-certified yearly totals of earnings**

This service is free to the public.

These totals can be obtained by calling 1-800-772-1213 to receive Form SSA-7004, Request for Earnings and Benefit Estimate Statement.

---

**PRIVACY ACT NOTICE:** We are authorized to collect this information under section 205 of the Social Security Act, and the Federal Records Act of 1950 (64 Stat. 583). It is needed so we can identify your records and prepare the statement you request. You do not have to furnish the information, but failure to do so may prevent your request from being processed.

**PAPERWORK REDUCTION ACT:** This information collection meets the clearance requirements of 44 U.S.C. §3507, as amended by Section 2 of the Paperwork Reduction Act of 1995. You are not required to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take you about 11 minutes to read the instructions, gather the necessary facts, and answer the questions.

## INFORMATION ABOUT YOUR REQUEST

- **How Do I Get This Information?**

  You need to complete the attached form to tell us what information you want.

- **Can I Get This Information For Someone Else?**

  Yes, if you have their written permission. For more information, see page 3.

- **Who Can Sign On Behalf Of The Individual?**

  The parent of a minor child, or the legal guardian of an individual who has been declared legally incompetent, may sign if he/she is acting on behalf of the individual.

- **Is There A Fee For This Information?**

  ### 1. Certified/Non-Certified Detailed Earnings Information

  Yes, we usually charge a fee for detailed information. In most cases, this information is used for purposes NOT directly related to Social Security such as for a private pension plan or personal injury suit. The fee chart on page 3 gives the amount of the charge.

  Sometimes, there is no charge for detailed information. If you have reason to believe your earnings are not correct (for example, you have previously received earnings information from us

and it does not agree with your records), we will supply you with more detail for the period in question. Occasionally, earnings amounts are wrong because an employer did not correctly report earnings or earnings are credited to the wrong person. In situations like these, we will send you detailed information, at no charge, so we can correct your record.

Be sure to show the year(s) involved on the request form and explain why you need the information. If you do not tell us why you need the information, we will charge a fee.

We will certify the detailed earnings information for an additional fee of $15.00. Certification is usually not necessary unless you plan to use the information in court.

### 2. Certified Yearly Total of Earnings

Yes, there is a fee of $15 to certify yearly totals of earnings. Certification is usually not necessary unless you plan to use the information in court.

### 3. Method of Payment

Enclose a check or money order for the entire fee required. Payment can also be made by credit card. To do so, complete page 4 of this form and return it with your request form.

---

Form **SSA-7050-F4** (1-2004)    EF (1-2004)
Destroy prior editions

## REQUEST FOR SOCIAL SECURITY EARNINGS INFORMATION

1. From whose record do you need the earnings information?

   Print the Name, Social Security Number (SSN), and date of birth below.

   Name _____

   Social Security Number _____

   Other Name(s) Used (Include Maiden Name) _____

   Date of Birth (Mo/Day/Yr) _____

2. What kind of information do you need?

   ☐ **Detailed Earnings Information**
   (If you check this block, tell us below why you need this information.)

   For the period(s)/year(s): _____

   _____
   _____

   ☐ **Certified Total Earnings For Each Year.**
   (Check this box only if you want the information certified. Otherwise, call 1-800-772-1213 to request Form SSA-7004, Request for Earnings and Benefit Estimate Statement)

   For the year(s): _____

3. If you owe us a fee for this detailed earnings information, enter the amount due
   using the chart on page 3 · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   A. $ _____

   Do you want us to certify the information?                    ☐ Yes      ☐ No

   If yes, enter $15.00 · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   B. $ _____

   ADD the amounts on lines A and B, and
   enter the TOTAL amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   C. $ _____

   - You can pay by CREDIT CARD by completing and returning the form on page 4, or
   - Send your CHECK or MONEY ORDER for the amount on line C with the request and make check or money order payble to "Social Security Administration"
   - DO NOT SEND CASH.

4. I am the individual to whom the record pertains (or a person who is authorized to sign on behalf of that individual). I understand that any false representation to knowingly and willfully obtain information from Social Security records is punishable by a fine of not more than $5,000 or one year in prison.

   SIGN your name here
   (Do not print)  >  _____       Date _____

   Daytime Phone Number  _____
   (Area Code) (Telephone Number)

5. Tell us where you want the information sent. (Please print)

   Name _____     Address _____

   City, State & Zip Code _____

6. Mail Completed Form(s) To:            Exception: If using private contractor (e.g., FedEx) to mail form(s), use:

   Social Security Administration
   Division of Earnings Record Operations
   P.O. Box 33003
   Baltimore Maryland  21290-3003

   Social Security Administration
   Division of Earnings Record Operations
   300 N. Greene St.
   Baltimore Maryland  21290-0300

Form **SSA-7050-F4** (1-2004) EF (01-2004)                    2

## REQUEST FOR SOCIAL SECURITY EARNINGS INFORMATION

How Much Do I Have to Pay For Detailed Earnings?

1. Count the number of years for which you need detailed earnings information.  Be sure to add in both the first and last year requested.  However, do not add in the current calendar year since this information is not yet available.

2. Use the chart below to determine the correct fee.

| Number of Years Requested | Fee | Number of Years Requested | Fee | Number of Years Requested | Fee |
|---|---|---|---|---|---|
| 1 | $15.00 | 15 | $43.75 | 28 | $64.50 |
| 2 | 17.50 | 16 | 45.50 | 29 | 66.00 |
| 3 | 20.00 | 17 | 47.25 | 30 | 67.50 |
| 4 | 22.50 | 18 | 49.00 | 31 | 68.75 |
| 5 | 25.00 | 19 | 50.75 | 32 | 70.00 |
| 6 | 27.00 | 20 | 52.50 | 33 | 71.25 |
| 7 | 29.00 | 21 | 54.00 | 34 | 72.50 |
| 8 | 31.00 | 22 | 55.50 | 35 | 73.75 |
| 9 | 33.00 | 23 | 57.00 | 36 | 75.00 |
| 10 | 35.00 | 24 | 58.50 | 37 | 76.25 |
| 11 | 36.75 | 25 | 60.00 | 38 | 77.50 |
| 12 | 38.50 | 26 | 61.50 | 39 | 78.75 |
| 13 | 40.25 | 27 | 63.00 | 40 | 80.00 |
| 14 | 42.00 | | | | |

**For Requests Over 40 Years, Please Add 1 Dollar for Each Additional Year.**

- **Whose Earnings Can Be Requested**

  ### 1. Your Earnings

  You can request earnings information from your own record by completing the attached form; we need your handwritten signature.  If you sign with an "X", your mark must be witnessed by two disinterested persons who must sign their name and address.

  ### 2. Someone Else's Earnings

  You can request earnings information from the record of someone else if that person tells us in writing to give the information to you.  This writing or "authorization" must be presented to us within 60 days of the date it was signed by that person.

  ### 3. A Deceased Person's Earnings

  You can request earnings information from the record of a deceased person if you are the legal representative of the estate, a survivor (that is, the spouse, parent, child, divorced spouse of divorced parent), or an individual with a material interest (example-financial) who is an heir at law, next of kin, beneficiary under the will or donee of property of the decedent.

  Proof of death must be included with your request. Proof of appointment as representative or proof of your relationship to the deceased must also be included.

Form **SSA-7050-F4** (1-2004)  EF (01-2004)          3

## YOU CAN MAKE YOUR PAYMENT BY CREDIT CARD

As a convenience, we offer you the option to make your payment by credit card.  However, regular credit card rules will apply.
You may also pay by check or money order.

Please fill in all the information below and return
this form along with your request to:

Social Security Administration
Division of Earnings Record Operations
P.O. Box 33003
Baltimore Maryland  21290-3003

**Exception:**
If using private contractor (e.g., FedEx) to mail form(s), use:

Social Security Administration
Division of Earnings Record Operations
300 N. Greene St.
Baltimore Maryland  21290-0300

### Note: Please read Paperwork/Privacy Act Notice

| | |
|---|---|
| CHECK ONE | ☐ Visa  ☐ American<br>☐ MasterCard  ☐ Discover  ☐ Diners Card |
| Credit Card Holder's Name<br>(Enter the name from the credit card) | First Name, Middle Initial, Last Name |
| Credit Card Holder's Address | Number & Street<br>City, State, & Zip Code |
| Daytime Telephone Number | Area Code          Telephone Number |
| Credit Card Number | --        --        -- |
| Credit Card Expiration Date | Month          Year |
| Amount Charged | |
| Credit Card Holder's Signature | |

*For Reference Only*

*Do Not Fill Out*

| DO NOT WRITE IN THIS SPACE<br>OFFICE USE ONLY | Authorization |
| | Name                                    Date |
| | Remittance Control # |

### PRIVACY ACT NOTICE

The Social Security Administration (SSA) has authority to collect the information requested on this form under section 205 of the
Social Security Act.  Giving us this information is voluntary.  You do not have to do it.  We will need this information only if
you choose to make payment by credit card.  You do not need to fill out this form if you choose another means of payment (for
example, by check or money order).

If you choose the credit card payment option, we will provide the information you give us to the banks handling your credit card
account and SSA's account.  We may also provide this information to another person or government agency to comply with
federal laws requiring the release of information from our records.  You can find these and other routine uses of information
provided to SSA listed in the Federal Register.  If you want more information about this, you may call or write any Social
Security Office.

Form **SSA-7050-F4** (1-2004)  EF (1-2004)                     4

**APPENDIX B**
**COMPANY HISTORY ABOUT PRODUCTS CONTAINING ASBESTOS**

**United States Gypsum Company** is a subsidiary of USG Corporation. United States Gypsum Company was formed in 1901 and is in the business of manufacturing and selling building products. Some of the building products manufactured and sold by United States Gypsum Company from 1920 through 1978 contained asbestos. Products that may have contained asbestos during this period include some wall and ceiling plasters, spray fireproofing, fire-rated ceiling tiles, decorative textures, joint compound, and industrial insulation. Most of these products did not contain asbestos at all times from 1920 through 1978. No product contained asbestos as part of the product formulation after 1978.

A list of trade names of products manufactured by United States Gypsum Company during the period from 1920 through 1978 that may have contained asbestos includes, but may not be limited to, the following:

| | |
|---|---|
| A-B Tex Texture Paint | RED TOP Firecode D Plaster |
| ACOUSTONE 120 Ceiling Tiles | RED TOP Firecode "V" Plaster |
| ACOUSTONE 180 Ceiling Tiles | RED TOP Gypsum Plaster |
| AUDICOTE Acoustical Plaster | RED TOP Patching Plaster |
| Aggregated Spray Finish, White | RED TOP Sanded Wall Plaster |
| CHINA GLAZE Siding | RED TOP Strucolite Plaster |
| Column Fire Board | RED TOP Trowel Finish |
| Concrete Ceiling Texture | RED TOP Wood Fiber Plaster |
| DURABOND Joint Compound | REGENCY Shingles |
| Exterior Texture Wallboard Finish | SABINITE Acoustical Plaster |
| Fire Door Coreboard | SHEETROCK Radiant Heat Filler-Machine Application |
| Hi-LITE Acoustical Plaster | SHEETROCK Radiant Heat Simulated Acoustical Texture |
| IMPERIAL "QT" (Spray) Texture Finish | Simulated Acoustical Spray Texture/Finish |
| KEMIDOL Joint Compound | Special Texture Paint |
| K-FAC 19 Block Insulation | SPRAYDON Powercote |
| K-FAC Block Insulation | SPRAYDON Standard A |
| MAYFAIR Shake Siding | SPRAYDON Standard G |
| Multi-Purpose Texture Finish | STRUCTOLITE Plaster |
| ORIENTAL Exterior Finish Stucco | Superhard Spray Texture Finish |
| ORIENTAL Interior Finish | SUPERTITE Roofing Products |
| PAC-TEX Texture Paint | TEXOLITE Block Filler |
| PERF-A-TAPE Joint Compound | TEXOLITE Dry Fill |
| PYROBAR Mortar Mix | TEXOLITE Drywall Surfacer |
| USG "QT" Simulated Acoustical Spray Texture | TEXTONE Texture Finish |
| Ready-Mixed Imperial "QT" Simulated Acoustical | THERMALUX Radiant Heating Panels |
| Spray Texture | USG Joint Compound |
| RED TOP Acoustical Plaster | Wainscoat Trowel Finish Plaster |
| RED TOP BONDCRETE Plaster-Basecoat | |
| RED TOP Cover Coat Finish Plaster | |

United States Gypsum Company also manufactured other products in the following generic categories that may have contained asbestos:

| | |
|---|---|
| Adhesives | Joint Compound |
| Asbestos Board | Pipecovering |
| Asbestos Paper | Roofing Products |
| Insulating Cement | Cement Siding Shingles |

**USG Corporation** was formed in 1985 and is the parent company of various debtors in this chapter 11 proceeding. USG Corporation has never manufactured or sold any building products. Various subsidiaries of USG Corporation manufactured or sold building products that contained asbestos at various times in the past.

**L&W Supply Company,** a subsidiary of USG Corporation, is a distributor of building materials manufactured by United States Gypsum Company and other companies. L&W Supply Company was created in 1971 as a subsidiary of United States Gypsum Company and, since 1985, has been a subsidiary of USG Corporation. In the 1970s, some of the products distributed by L&W Supply Corporation, primarily joint compound and roofing materials, contained asbestos. Since its formation in 1971, L&W Supply Company distribution centers have operated under different business names in different locations. A list of these business names is available on the USG claims website at http://www.usgclaims.com/LandWbusiness_names.asp.

**Beadex Manufacturing, LLC,** a subsidiary of United States Gypsum Company, manufactured and sold joint compound containing asbestos from 1963 through 1978. Distribution of products that contained asbestos is believed to have been limited to Washington, Oregon, Idaho, Alaska, and possibly Colorado.

**USG Interiors, Inc.,** a subsidiary of USG Corporation, was formed in 1986. USG Interiors has manufactured mineral fiber ceiling tiles and suspension systems, mineral fiber insulation, access floors, and wall partition systems. None of the products manufactured or sold by USG Interiors contained asbestos as part of the product formulation.

# APPENDIX C
## STANDARD OCCUPATIONAL CLASSIFICATION CODES[1]

**Healthcare Practitioners and Technical Occupations**

1. Dentists, General

**Protective Service Occupations**

2. Fire Fighters

**Building and Grounds Cleaning and Maintenance Occupations**

3. Janitors and Cleaners, Except Maids and Housekeeping Cleaners

**Construction and Extraction Occupations**

4. Asbestos Removal Workers[2]
5. Boilermakers
6. Brickmasons and Blockmasons
7. Carpenters
8. Carpet Installers
9. Cement Masons and Concrete Finishers
10. Construction and Building Inspectors
11. Construction Laborers
12. Continuous Mining Machine Operators
13. Drywall and Ceiling Tile Installers
14. Drywall Finishers (Tapers)
15. Electricians
16. Elevator Installer & Repairers
17. First-Line Supervisors/Managers of Construction Trades and Extraction Workers
18. Floor Layers, Except Carpet, Wood, and Hard Tiles
19. Floor Sanders and Finishers
20. Glaziers
21. Hazardous Materials Removal Workers
22. Helpers – Brickmasons, Blockmasons, Stonemasons, and Tile and Marble Setters
23. Helpers – Electricians
24. Helpers – Extraction Workers
25. Helpers – Painters, Paperhangers, Plasterers, and Stucco Masons
26. Helpers – Pipelayers, Plumbers, Pipefitters, and Steamfitters
27. Insulation Workers
28. Mine Cutting and Channeling Machine Operators
29. Miner 1[2]
30. Operating Engineers and Other Construction Equipment Operators
31. Painters, Construction and Maintenance
32. Paperhangers
33. Pipelayers
34. Plasterers and Stucco Masons
35. Plumbers, Pipefitters, and Steamfitters
36. Rail-Track Laying and Maintenance Equipment Operators
37. Reinforcing Iron and Rebar Workers
38. Rock Splitters, Quarry
39. Roof Bolters, Mining
40. Roofers
41. Service Unit Operators, Oil, Gas, and Mining
42. Sheet Metal Workers
43. Stonemasons
44. Structural Iron and Steel Workers
45. Terazzo Workers and Finishers
46. Tile and Marble Setters

**Installation, Maintenance, and Repair Occupations**

47. Automotive Service Technicians and Mechanics
48. Boiler House Mechanics[2]
49. Bus and Truck Mechanics and Diesel Engine Specialists
50. Control Valve Installers and Repairers, Except Mechanical Door
51. Electrical and Electronics Repairers, Powerhouse, Substation, and Relay
52. Fabric Menders, Except Garment
53. Heating, Air Conditioning, and Refrigeration Mechanics and Installers
54. Industrial Machinery Mechanics
55. Maintenance and Repair Workers, General
56. Maintenance Workers, Machinery

57. Millwrights
58. Mobile Heavy Equipment Mechanics, Except Engines
59. Motorcycle Mechanics
60. Rail Car Repairers
61. Refractory Materials Repairers, Except Brickmasons
62. Riggers
63. Valve Repairers[2]

**Production Occupations**

64. Cabinetmakers and Bench Carpenters
65. Chemical Equipment Operators and Tenders
66. Coating, Painting, and Spraying Machine Setters, Operators, and Tenders
67. Crushing, Grinding and Polishing Machine Setters, Operators and Tenders
68. Cutters and Trimmers, Hand
69. Cutting, Punching, and Press Machine Setters, Operators, and Tenders, Metal and Plastic
70. Dental Laboratory Technician
71. Engine and Other Machine Assemblers
72. Foundry Mold and Coremakers
73. Gas Plant Operators
74. Lay-Out Workers, Metal and Plastic
75. Machinists
76. Metal-Refining Furnace Operators and Tenders
77. Mixing and Blending Machine Setters, Operators, and Tenders
78. Molders, Shapers, and Casters, Except Metal and Plastic
79. Painting, Coating and Decorative Worker
80. Petroleum Pump System Operators, Refinery Operators, and Gaugers
81. Pourers and Casters, Metal
82. Power Plant Operators
83. Prepress Technicians and Workers
84. Printing Machine Operators
85. Sawing Machine Setters, Operators, and Tenders, Wood
86. Stationary Engineers and Boiler Operators
87. Structural Metal Fabricators and Fitters
88. Textile Cutting Machine Setters, Operators and Tenders
89. Textile Knitting and Weaving Machine Setters, Operators and Tenders
90. Textile Winding, Twisting, and Drawing Out Machine Setters, Operators, and Tenders
91. Tool and Die Makers
92. Welders, Cutters, Solderers, and Brazers
93. Welder, Production Line[2]
94. Welding, Soldering, and Brazing Machine Setters, Operators and Tenders

**Transportation and Material Moving Occupations**

95. Cleaners of Vehicles and Equipment
96. Conveyor Operators and Tenders
97. Crane and Tower Operators
98. Excavating and Loading Machine and Dragline Operators
99. Industrial Truck and Tractor Operators
100. Laborers and Freight, Stock, and Material Movers, Hand
101. Loading Machine Operators, Underground Mining
102. Locomotive Engineers
103. Locomotive Firers
104. Pump Operators, Except Wellhead Pumpers
105. Rail Yard Engineers, Dinkey Operators, and Hostlers
106. Railroad Conductors and Yardmasters
107. Railroad Car Inspectors[2]
108. Sailors and Marine Oilers
109. Ship Engineers
110. Shuttle Car Operators
111. Tank Car, Truck, and Ship Loaders
112. Transportation Inspectors
113. Truck Drivers, Heavy and Tractor Trailer
114. Truck, Drivers, Light or Delivery Service

115. **Other (please specify)**

---

[1] Codes are based on U.S. Department of Labor, Bureau of Labor Statistics, List of Standard Occupation Classifieds, found at http://stats.bls.gov/oes/1999/oes_stru.htm unless otherwise indicated.
[2] Codes are based on U.S. Department of Labor, Dictionary of Occupational Titles, Fourth Edition, Revised 1991 found at http://www.oalj.dol.gov/public/dot/refrnc/dotalpha.htm with definitions at http://www.oalj.dol.gov/libdot.htm#definitions.

# APPENDIX D
## STANDARD INDUSTRY CLASSIFICATION CODES[3]

A.   Agriculture, Forestry & Fishing

B.1  Mining & Milling (asbestos)
B.2  Mining & Milling (non-asbestos)

C.   Construction

D.1  Manufacturing – Asbestos Containing Products
D.2  Manufacturing – Boilers
D.3  Manufacturing – Chemicals
D.4  Manufacturing – Insulation (asbestos containing)
D.5  Manufacturing – Insulation (non-asbestos containing)
D.6  Manufacturing – Petroleum Refining and Related Industries
D.7  Manufacturing – Plastic Products
D.8  Manufacturing – Rubber
D.9  Manufacturing – Textiles (asbestos containing)
D.10 Manufacturing – Textiles (non-asbestos containing)
D.11 Manufacturing – Transportation Equipment (other than shipbuilding or shipbreaking)
D.12 Manufacturing – Transportation Equipment (shipbuilding or shipbreaking)
D.13 Manufacturing – Other (please specify product)


E.1  Transportation – Electric, Gas, and Sanitary Services
E.2  Transportation – Railroad
E.3  Transportation – Water
E.4  Transportation – Other (please specify)

F.   Wholesale Trade

G.   Retail Trade

H.   Finance, Insurance, and Real Estate

I.1  Services – Automotive Repair
I.2  Services – Miscellaneous Repair
I.3  Services – Other (please specify)

J.   Public Administration

K.   Military (Non-Navy)

L.   Navy

M.   Other (please specify)

---

[3] Codes are based on OSHA, U.S. Department of Labor, Standard Industry Classifications, Division Structure, at http://www.osha.gov/oshstats/sicser.html.

‖< < ‖‖‖‖‖‖‖ # > > ‖ - <<SEQ>>
<<NAME>>
<<ADDRESS1>>
<<ADDRESS2>>
<<CITY STATE ZIP>>
<<COUNTRY>>

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2005, I electronically filed the **Debtors'**

**Standard Questionnaire to Select Personal Injury Asbestos Claimants** with the Clerk of

Court using CM/ECF which will send notifications of such filing to the following:

| | |
|---|---|
| **Steven T. Davis** | **Michael R. Lastowski** |
| steven.davis@obermayer.com | mlastowski@duanemorris.com |
| | |
| **Marla Rosoff Eskin** | **Christopher D. Loizides** |
| meskin@camlev.com | loizides@loizides.com |
| | |
| **Brett D. Fallon** | **Christopher A. Ward** |
| bfallon@morrisjames.com | bankserve@bayardfirm.com |
| | cward@bayardfirm.com |
| **Paul N. Heath** | |
| heath@rlf.com; rbgroup@rlf.com | **Daniel Bryan Butz** |
| | dbutz@mnat.com |

I hereby certify that on October 14, 2005, I caused a copy of the **Debtors'**

**Standard Questionnaire to Select Personal Injury Asbestos Claimants** to be served via e-

mail upon the attached *Service List*[1] and *Interested Party Service List.*

                                                /s/ *Paul N. Heath*
Paul N. Heath (No. 3704)
Richards, Layton & Finger, P.A.
One Rodney Square, P. O. Box 551
Wilmington, Delaware 19899-0551
Phone:  302-651-7700
Fax:  302-651-7701
E-mail:  heath@rlf.com

---

[1] As defined in and in accordance with *Order Establishing Case Management and Scheduling Procedures for All Matters in the Above-Captioned Bankruptcy Cases Which the Reference has been Withdrawn from the United States Bankruptcy Court for the District of Delaware to the United States District Court for the District of Delaware* [Docket No. 8 in Case #04-1560; Docket No. 6 in Case #04-1559 – entered March 23, 2005]

*In re: USG Corporation*
*General Service List as of October 14, 2005*
*Via Email*

*Representing Statutory Committee of Equity*
*Security Holders*
Robert J. Dehney
Daniel B. Butz
Curtis S. Miller
Morris Nichols Arsht & Tunnell
P.O. Box 1347
1201 N. Market Street
Wilmington, DE 19899

*Representing Marathon Ashland Petroleum*
*and Coral Energy Canada*
John D. Demmy
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE 19801

*Representing Official Committee of Asbestos*
*Personal Injury Claimants*
Marla R. Eskin
Kathleen J. Campbell
Campbell & Levine, LLC
800 King Street, Suite 300
Wilmington, DE 19801

*Representing Edward Wally*
Robert Jacobs
Jacobs & Crumplar, P.A.
P.O. Box 1271
2 East 7th Street
Wilmington, DE 19899

*Representing US Trustee*
David Klauder
Office of the United States Trustee
J. Caleb Boggs Federal Building, 844 King
Street, Room 2313 Lockbox 35
Wilmington, DE 19801-3519

*Representing Administrative Agent*
Adam G. Landis
Landis Rath & Cobb LLP
919 Market St., Ste. 600
Wilmington, DE 19801

*Representing Official Committee of*
*Unsecured Creditors*
Michael R. Lastowski
Duane Morris, LLP
P.O. Box 195
1100 North Market Street, Suite 1200
Wilmington, DE 19899-1246

*Representing Airgas, Inc.*
Kathleen M. Miller
Smith Katzenstein & Furlow, LLP
P.O. Box 410
800 Delaware Avenue, 7th Floor
Wilmington, DE 19899

*Representing Dean M. Trafelet, Futures*
*Representative*
James L. Patton
Sharon Zieg
Young Conaway Stargatt & Taylor, LLP
P.O. Box 391
1000 West Street, 17th Floor
Wilmington, DE 19899

*Representing Official Committee of Asbestos*
*Property Damage Claimants*
Steven M. Yoder
Neal B. Glassman
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

*Representing Atlas Roofing Corporation*
Jennifer M. Zelvin
McCarter & English, LLP
P.O. Box 111
919 N. Market Street, Suite 950
Wilmington, DE 19899

*Representing Ancel Abadie and additional claimants*
Julie A. Ardoin
Stephen B. Murray
The Murray Law Firm
909 Poydras Street, Suite 2550
New Orleans, LA 70112-4000

*Representing Asbestos Property Damage Committee*
Scott L. Baena
Jay Sakalo
Annie Martinez
Allyn Danzeisen
Bilzin Sumberg Baena Price & Axelrod LLP
2500 First Union Financial Center, 200
South Biscayne Blvd.
Miami, FL 33131-2336

Gary L. Barnhart
Missouri Dept. of Revenue
P.O. Box 475
301 West High Street, Room 670
Jefferson City, MO 65105-0475

*Representing Statutory Committee of Equity Security Holders*
Martin J. Bienenstock
Judy G. Z. Liu
Robert J. Lemons
Weil Gotshal & Manges
767 Fifth Avenue
New York, NY 10153

Robert W. Bollar
Southern Counties Oil Co.
P.O. Box 4159
1800 West Katella Avenue, Suite 400
Orange, CA 92863-4159

*Representing Airgas, Inc.*
David Boyle
Airgas, Inc.
P.O. Box 6675
259 Radnor-Chester Road, Suite 100
Radnor, PA 19087

*Representing West Coast Estates*
Thomas J. Brandi
Terrence Edwards
Law Offices of Thomas J. Brandi
44 Montgomery Street, #1050
San Fancisco, CA 94104

*Representing Various Asbestos Claimants*
Alan R Brayton
Brayton & Purcell
222 Rush Landing Road
Novato, CA 94945

*Representing Various Asbestos Claimants*
Russell Budd
Alan B. Rich
Baron & Budd, P.C
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219

ReGen Capital I, Inc.
P.O. Box 626
Planetarium Station
New York, NY 10024-0540

Peter A. Chapman
572 Fernwood Lane
Fairless Hills, PA 19030

*Representing Central States, Southeast and Southwest Areas Pension Fund*
Rathna Chikkalingaiah
Central States, Southeast and Southwest Areas Pension Fund
Legal Department 9377 West Higgins Road
Rosemont, IL 60018-4938

*Representing Oracle Corporation and
Oracle Credit Corporation*
Shawn M. Christianson
Buchalter, Nemer, Fields & Younger
333 Market Street, 25th Floor
San Francisco, CA 94105-2130

Steven M. Cimalore
Wilmington Trust Company
Rodney Square North, 1100 North Market
Street
Wilmington, DE 19890

*Representing Tennessee Dept. of Treasury -
Unclaimed Property*
Marvin E. Clements, Jr.
C/O TN Attorney General's Office, Bankr.
Unit
P.O. Box 20207
Nashville, TN 37202-0207

*Representing Barbara G. Billet, Esq.,
Deputy Commissioner and Counsel*
Elaine Z. Cole
New York State Department of Taxation and
Finance
340 E. Main St.
Rochester, NY 14604

*Representing Committee Member*
Newberry College
c/o Edward J. Westbrook, Esquire
Richardson Patrick Westbrook & Brickman
LLC
P.O. Box 1007
1037 Chuck Dawley Blvd, Building A
Mount Pleasant, SC 29465

*Representing Dean M. Trafelet, Futures
Representative*
Nicholas J. Cremona
Andrew A. Kress
Jane Parver
Edmund M. Emrich
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022

*Representing Ker McGee*
Myron K. Cunningham
Kerr McGee Center
P.O. Box 25861
Oklahoma City, OK 73125

*Representing Catholic Archdiocese of New
Orleans*
Martin Dies
1009 Green Avenue
Orange, TX 77630

*Representing Port St. Helens, Oregon*
Charles R. Ekberg
Lane Powell Sears Lubersky LLP
1420 Fifth Avenue, Suite 4100
Seattle, WA 98101-2338

*Representing Debtors*
Brad B. Erens
Robert Krebs
Kaye Sobczak
Jones Day
77 West Wacker Drive, Suite 3500
Chicago, IL 60601-1692

*Representing Hayward Industrial Park
Associates, a CA general partnership*
Gregg M. Ficks
Coblentz, Patch, Duffy & Bass, LLP
One Ferry Building, Suite 200
San Francisco, CA 94111

*Representing Federal Express Corp.*
Charles J. Filardi, Jr.
Pepe & Hazard LLP
30 Jelliff Lane
Southport, CT 06890-1436

Ryan A. Foster
The Foster Law Firm, PLLC
440 Louisiana, Suite 2100
Houston, TX 77002

*Representing Wilmington Trust Company*
Edward M. Fox
Kirkpatrick & Lockhard Nicholson Graham
LLP
599 Lexington Avenue
New York, NY 10022

Charles O. Freedgood
JP Morgan Chase
270 Park Avenue Floor 12
New York, NY 10017-2036

*Representing Innovative Gas Services, Inc.*
Craig E. Freeman
Thelen, Reid & Priest LLP
875 Third Avenue
New York, NY 10022

*Representing Statutory Committee of Equity
Security Holders*
Peter M. Friedman
Weil, Gotshal & Manges LLP
1501 K Street, NW Suite 100
Washington, DC 20005

*Representing Environmental Protection
Agency*
Henry S. Friedman
John C. Cruden
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044

*Representing Statutory Committee of Equity
Security Holders*
Julie T. Friedman
Victoria Vron
Robert Gee
Weil Gotshal & Manges
767 Fifth Avenue
New York, NY 10153

*Representing The Valleycrest Landfill Site
Group*
Neal A. Frink
Dinsmore & Shohl
1900 Chemed Center 255 East Fifth Street
Cincinnati, OH 45202

*Representing Certain Plaintiffs & Claimants*
Charles E. Gibson, III
620 North Street, Suite 100
Jackson, MS 39202

*Representing California Union Insurance
Company*
Leonard P. Goldberger
Stevens & Lee
1818 Market Street, 29th Floor
Philadelphia, PA 19103

Terry A. Graffis
National City Bank
1900 East Ninth Street, Locator 01-2136
Cleveland, OH 44114

*Representing Creditor*
Tyler Greif
Peter Faulkner
1313 Avenue of the Americas
New York, NY 10019

*Representing Fox Valley Steel and Wire
Company*
Daniel J. Habeck
Cramer, Multhauf & Hammes, LLP
P.O. Box 558
Suite 200, 1601 East Racine Avenue
Waukesha, WI 53187

*Representing Debtor*
Paul Harner
Jones Day
77 West Wacker Drive, Suite 3500
Chicago, Il 60601-1692

*Representing Debtors*
David Heiman
Jones Day
North Point, 901 Lakeside Avenue
Cleveland, OH 44114

*Representing New Jersey Resources*
Robert L. Heugle, Jr.
Lomurro, Davison, Eastman & Munoz, P.A.
Monmouth Executive Center, 100
Willowbrook Road, Building 1
Freehold, NJ 07728-2879

Daniel K. Hogan
The Hogan Firm
1311 Delaware Avenue
Wilmington, DE 19806

*Representing OII Steering Committee*
Allan H. Ickowitz
Kathy K. Emanuel
Nossaman, Guthner, Knox & Elliott, LLP
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071

*Representing Official Committee of Asbestos
Personal Injury Claimants*
Elihu Inselbuch
Caplin & Drysdale, Chartered
399 Park Ave.
New York, NY 10022-4614

Thomas L. Jacob
Air Products and Chemicals, Inc.
7201 Hamilton BLVD.
Alentown, PA 18195-1501

William S. Katchen
Duane Morris, LLP
744 Broad Street, Suite 1200
Newark, NJ 07102

*Representing Various Asbestos Claimants*
Michael V. Kelley
Thomas M. Wilson
Kelley & Ferraro, L.L.P.
1901 Penton Media Building, 1300 East
Ninth Street
Cleveland, OH 44114

Allan Kellman
The Jaques Admiralty Law Firm
1370 Penobscot Building
Detroit, MI 48226

*Representing City and County of Denver*
Eugene J. Kottenstette
Assistant City Attorney
Land Use & Revenue Section
201 West Colfax Avenue, Dept 1207
Denver, CO 80202-3275

Roger Kral
Dietrich Industries
4200 St Rt 22 East #3
Blairsville, PA 15717

*Representing Trucklease Corporation d/b/a
AMI Leasing, sucessor in interest to Biddle
Co., Inc.*
Gary P. Lightman
Glenn A. Manochi
LIGHTMAN, MANOCHI &
CHRISTENSEN
1520 Locust Street, 12th Floor
Philadelphia, PA 19102

*Representing Official Committee of Asbestos Personal Injury Claimants*
Peter Van N. Lockwood
Nathan D. Finch
Walter B. Slocombe
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005-5802

*Representing USG Corporation*
Mary A. Martin
USG Corporation
125 South Franklin Street
Chicago, IL 60606

*Representing Lexington Insurance Company*
Robert B. Millner
Sonnenschein, Nath & Rosenthal
8000 Sears Tower, 233 South Wacker Drive
Chicago, IL 60606

*Representing Commonwealth of Pennsylvania, Pennsylvania Department of Revenue*
Christopher R. Momjian
Office of the  Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603

*Representing Office of the Attorney General - Washington*
Zachary Mosner
Office of the Attorney General - Bankruptcy & Collections Unit
900 Fourth Avenue, Suite 2000
Seattle, WA 98164-1012

Lisa B. Neimark
Guiliani Capital
233 S. Wacker Drive
Chicago, IL 60606

*Representing The State of Louisiana*
L. Scott Patton
Walter C. Dunn
The Boles Law Firm
P.O. Box 2065
1818 Avenue of America
Monroe, LA 71207-2065

*Representing Dean M. Trafelet, Futures Representative*
Allan Pepper
Michael Lynn
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022

*Representing Center for Claims Resolution*
Michael P. Richman
Jean Marie L. Atamian
Anthony J. Diana
Leslie Chebli
Mayer, Brown, Rowe & Maw LLP
1675 Broadway
New York, NY 10019

Barry Ridings
Lazard Freres & Co. LLC
30 Rockefeller Plaza, 60th Floor
New York, NY 10020

*Representing Commonweath of PA*
Sharon L. Royer
Harrisburg Bankruptcy and Compliance
1171 South Cameron Street, Room 312
Harrisburg, PA 17104-2513

*Representing Parkway, Ltd.*
Howard C. Rubin
Kessler & Collins
5950 Sherry Lane, Suite 222
Dallas, TX 75225

*Representing Doris Saiger, as Personal*
*Representative of the Estate of William*
*Saiger, and Dawn Saiger*
Peter D. Russin
L. Tannenbaum
Meland Russin Hellinger & Budwick, P.A.
3000 Wachovia Financial Center 200 S.
Biscayne Boulevard
Miami, FL 33131

*Representing Associates Leasing, Inc.*
Sergio I. Scuteri
Farr Burke Gambacorta & Wright, P.C.
P.O. Box 788
Suite 201, Eastern International Executive
Office Center, 211 Benigno Boulevard
Bellmawr, NJ 08099-9811

*Representing IBM Corporation*
Beverly H. Shideler
IBM Corporation
2 Lincoln Center #200
Oakbrook Terrace, IL 60181-4837

*Representing Various Asbestos Claimants*
Charles Siegel
Waters & Kraus, LLP
3219 McKinney Avenue, Suite 3000
Dallas, TX 75204

*Representing Fee Auditor*
Warren H. Smith
Warren H. Smith & Associates, P.C.
Republic Center, 325 N. Saint Paul, Suite
1275
Dallas, TX 75201

*Representing Anderson Memorial  Hospital*
Daniel A. Speights
Speights & Runyan
P.O. Box  685
200 Jackson Avenue East
Hampton, SC 29924

Adam M. Spence
The Law Offices of Adam M. Spence, P.C.
105 W. Chesapeake Avenue, Suite 400
Towson, MD 21204

*Representing Archiped Classics, Inc.*
Stephen C. Stapleton
Cowles & Thompson
901 Main Street, Suite 4000
Dallas, TX 75202

J.W. Taylor c/o Paul Matthews, Paralegal
Coastal Transport, Inc.
P.O. Drawer 67
Auburndale, FL 33823

*Representing USG Corporation*
Suzanne K. Torrey
USG Corporation
125 S. Franklin Street
Chicago, IL 60606

*Representing Future Claimants*
Dean M. Trafelet
P.O. Box 518
9130 Wild Lane
Baileys Harbor, WI 54202

*Representing New Jersey Self-Insurers*
*Guaranty Association*
Michael S. Waters
Jeffrey Bernstein, Esquire
Carpenter Bennett & Morrissey
Three Gateway Center 100 Mulberry St.
Newark, NJ 07102

*Representing Blue Cross & Blue Shield of*
*Florida, Inc.*
Richard Blackstone Webber II
Richard Blackstone Webber II, PA
320 Maitland Avenue
Altamonte Springs, FL 32701

*Representing Nick Ferrante*
Perry Weitz
C. Sanders McNew
Weitz & Luxenborg
180 Maiden Lane
New York, NY 10038-4925

*Representing Asbestos Creditors*
Scott W. Wert
Foster & Sear, L.L.P.
524 E. Lamar Blvd., Suite 200
Arlington, TX 76011

*Representing Asbestos Property Damage
Committee*
Mitchell Widom
Bilzin Sumberg Baena Price & Axelrod LLP
2500 First Union Financial Center, 200
South Biscayne Blvd.
Miami, FL 33131-2336

*Representing Official Committee of
Unsecured Creditors*
Denise K. Wildes
Ken Pasquale
Stroock & Stroock & Lavan, LLP
180 Maiden Lane
New York, NY 10038-4982

landis@lrclaw.com;
adam@spencefirm.com;
arich@baronbudd.com;
bankruptcy@braytonlaw.com;
akellman@jaquesadmiralty.com;
apepper@kayescholer.com;
aickowitz@nossaman.com;
adanzeisen@bilzin.com;
akress@kayescholer.com;
amartinez@bilzin.com;
barry.ridings@lazard.com;
bhshide@us.ibm.com;
usg@jonesday.com;
lbusch@weitzlux.com;
EWESTBROOK@RPWB.COM;
siegel@awpk.com;
charles@cegibsonlawfirm.com;

abothwell@pepehazard.com;
charles.freedgood@jpmorgan.com;
EkbergC@LanePowell.com;
crmomjian@attorneygeneral.gov;
cfreeman@thelenreid.com;
cmiller@mnat.com;
dspeights@speightsrunyan.com;
dbutz@mnat.com;
djh@cmhlaw.com;
usg@rlf.com;
dkhogan@dkhogan.com;
david.boyle@airgas.com;
david.klauder@usdoj.gov;
usg@jonesday.com;
dtrafelet@dcwis.com;
dwildes@stroock.com;
eemrich@kayescholer.com;
efox@klng.com;
elaine_cole@tax.state.ny.us;
EI@capdale.com;
Bankruptcy.Gene@ci.denver.co.us;
deecf@dor.mo.gov;
gmanochi@lightmanlaw.com;
gficks@cpdb.com;
henry.friedman@usdoj.gov;
bsteward@dallasbuildings.com;
legal@comcar.com;
jpatton@ycst.com;
jparver@kayescholer.com;
jsakalo@bilzin.com;
jbernstein@mdmc-law.com;
jzelvin@mccarter.com;
jdd@stevenslee.com;
judy.liu@weil.com;
dlawless@murray-lawfirm.com;
julie.friedman@weil.com;
kcampbell@camlev.com;
kmiller@skfdelaware.com;
ksobczak@jonesday.com;
kpasquale@stroock.com;
s.patton@boleslawfirm.com;
ltannenbaum@melandrussin.com;
lpg@stevenslee.com;
lisa.neimark@guilianicap.com;
meskin@camlev.com;
mwdies@aol.com;

martin.bienenstock@weil.com;
ICBRCAL.ICO1SO1.SDO5@STATE.TN.US;
mamartin@usg.com;
mlynn@kayescholer.com;
mrichman@mayerbrown.com;
mlastowski@duanemorris.com;
ssolazzo@mdmc-law.com;
mcunningham@kmg.com;
ndf@capdale.com;
nfrink@dinslaw.com;
ncremona@kayescholer.com;
usg@jonesday.com;
pweitz@weitzlux.com;
peter@bankrupt.com;
prussin@melandrussin.com;
pfaulkner@psamllc.com;
peter.m.friedman@weil.com;
pvnl@capdale.com;
rchikkalingaiah@centralstatesfunds.org;
notice@regencap.com;
rbwiipa@aol.com;
smaurer@dca.net;
rmillner@sonnenschein.com;
robert.gee@weil.com;
rdehney@mnat.com;
robert.lemons@weil.com;
RHEUGLE@Lomurrolaw.com;
fitchettt@scfuels.com;
rkral@dietrichindustries.com;
nikim@rfosterlaw.com;
sbaena@bilzin.com;
swert@fostersear.com;
sscuteri@farrlawnet.com;
sroyer@state.pa.us;
szieg@ycst.com;
schristianson@buchalter.com;
sstapleton@cowlesthompson.com;
scimalore@wilmingtontrust.com;
syoder@bayardfirm.com;
storrey@usg.com;
terry.graffis@nationalcity.com;
tjb@brandilaw.com;
jacobtl@apci.com;
tgreif@psamllc.com;
victoria.vron@weil.com;
wbs@capdale.com;

feeaudit@whsmithlaw.com;
wskatchen@duanemorris.com;
zacharym@atg.wa.gov;

**In re: USG Corporation**
**Case Nos.: 04-1559 & 04-1560 (JFC)**
**Interested Party Service List**

*Via Email*

Ralph Miller
Judy Liu
David Hickerson
Peter Friedman
Jarrad Wright
**Weil Gotshal & Manges**
Ralph.Miller@weil.com
Judy.Liu@weil.com
David.Hickerson@weil.com
Peter.M.Friedman@weil.com
Jarrad.Wright@weil.com


Nathan Finch
Peter Van Lockwood
Walter Slocombe
**Caplin & Drysdale**
ndf@capdale.com
pvnl@capdale.com
knb@capdale.com
jal@capdale.com
alv@capdale.com
wbs@capdale.com
dkg@capdale.com
ei@capdale.com


Marla Eskin
**Campbell & Levine**
meskin@camlev.com


Ken Pasquale
Denise Wildes
Lewis Kruger
**Stroock & Stroock & Lavan**
Kpasquale@stroock.com
Dwildes@stroock.com
Lkruger@stroock.com
Jstrauss@stroock.com

Scott Baena
Jay Sakalo
Allyn Danzeisen
Michael Kramer
**Bilzin Sumberg Baena Price & Axelrod**
sbaena@bilzin.com
jsakalo@bilzin.com
adanzeisen@bilzin.com
mkramer@bilzin.com


Jane Parver
Andrew Kress
Michael Lynn
**Kaye Scholer**
jparver@kayescholer.com
akress@kayescholer.com
mlynn@kayescholer.com
mveidemanis@kayescholer.com
eschwalb@kayescholer.com


Scott Deveraux
Kathleen Goodhart
Jeff Gutkin
**Cooley Godward**
devereauxsd@cooley.com
kgoodhart@cooley.com
pgunn@cooley.com
jgutkin@cooley.com
jkarr@cooley.com


Sharon Zieg
James Patton
Sean Greecher
**Young Conaway Stargatt & Taylor**
szieg@ycst.com
jpatton@ycst.com
sgreecher@ycst.com

RLF1-2934206-1

Brad Erens
**Jones Day**
bberens@jonesday.com

**Dean Trafelet**
dtrafelet@dewis.com

Daniel Butz
**Morris Nichols Arsht & Tunnel**
dbutz@mnat.com

Ralph.Miller@weil.com
Judy.Liu@weil.com
David.Hickerson@weil.com
Peter.M.Friedman@weil.com
Jarrad.Wright@weil.com
ndf@capdale.com
pvnl@capdale.com
knb@capdale.com
jal@capdale.com
alv@capdale.com
wbs@capdale.com
dkg@capdale.com
ei@capdale.com
meskin@camlev.com
Kpasquale@stroock.com
Dwildes@stroock.com
Lkruger@stroock.com
Jstrauss@stroock.com
sbaena@bilzin.com
jsakalo@bilzin.com
adanzeisen@bilzin.com
mkramer@bilzin.com
jparver@kayescholer.com
akress@kayescholer.com
mlynn@kayescholer.com
mveidemanis@kayescholer.com
eschwalb@kayescholer.com
devereauxsd@cooley.com
kgoodhart@cooley.com
pgunn@cooley.com
jgutkin@cooley.com
jkarr@cooley.com
szieg@ycst.com
jpatton@ycst.com
sgreecher@ycst.com
bberens@jonesday.com
dtrafelet@dewis.com
dbutz@mnat.com